# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARIAN MURPHY, et al.,      : | |
|      : | |
| PLAINTIFFS      : | |
|      : | **Civ. Action No. 07-1241 (RCL)** |
| v.      : | |
|      : | |
| DISTRICT OF COLUMBIA, et al.,      : | |
|      : | |
| DEFENDANTS.      : | |

## ADMINISTRATIVE RECORD

Attached is an index and the record of the administrative proceedings at issue in this action. The reporting service has not provided a copy of the transcript for the April 11, 2007 and September 1, 2005 hearings. Defendants will file those transcripts as a supplement to the administrative record as soon as they are received.

Respectfully submitted,

LINDA SINGER
Attorney General for the
  District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

*/s/ Edward P. Taptich*_____
EDWARD P. TAPTICH (012914)
Section Chief
Equity Section Two

/s/ *Veronica A. Porter*

VERONICA A. PORTER (412273)
Assistant Attorney General
Civil Litigation Division
Equity Section Two
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C.  20001
(202) 724-6651 (phone)
(202) 727-3625 (facsimile)
veronica2.porter@dc.gov

**October 2, 2007**

# Murphy v. District of Columbia, 07-1241

## Index of Record

|  | | **Page** |
|---|---|---|
| 1. | Certification of Record | 1 |
| 2. | Hearing Officer's Decision, 4/11/07 | 2-6 |
| 3. | Barrie's 5-day Disclosure letter, 4/3/07 | 7-8 |
| 4. | Barrie's Exhibit DW-01, Due Process Complaint Notice, 2/6/07 | 9-14 |
| 5. | Barrie's Exhibit DW-02, Settlement agreement, 6/24/04 | 15-17 |
| 6. | Barrie's Exhibit DW-03, Cognitive Psychological Eval, 5/6/02 | 18-24 |
| 7. | Barrie's Exhibit DW-04, Psychological Report, 6/20/00 | 25-30 |
| 8. | Barrie's Exhibit DW-05, Psychiatric Evaluation, 7/23/04 | 31-32 |
| 9. | Barrie's Exhibit DW-06, Social Work Evaluation, 8/19/04 | 33-36 |
| 10. | Barrie's Exhibit DW-07, Letter to Office of Compliance, 12/18/04 | 37-39 |
| 11. | Barrie's Exhibit DW-08, Letter to Schreibman, DCPS, 9/5/04 | 40-42 |
| 12. | Barrie's Exhibit DW-09, HOD, 8/23/02 | 43-45 |
| 13. | Barrie's Exhibit DW-10, Letter to Village Learning Center, 3/26/04 | 46-48 |
| 14. | Barrie's Exhibit DW-11, IEP, 4/22/04 | 49-57 |
| 15. | Barrie's Exhibit DW-12, New Addendum Meeting Page, 5/25/05 | 58-60 |
| 16. | Barrie's Exhibit DW-13, Letter to Wallace Henry, III, 6/19/05 | 61-62 |
| 17. | Barrie's Exhibit DW-14, IEP, 9/17/04 | 63-67 |
| 18. | Barrie's Exhibit DW-15, Letter to Ideal PCS, 5/7/02 | 68-69 |
| 19. | Barrie's Exhibit DW-16, §504 Summary of Meeting, 4/24/01 | 70-73 |
| 20. | Barrie's Exhibit DW-17, HOD, 3/16/05 | 74-79 |

21. Barrie's Exhibit DW-18, IEP, 10/11/05                                          80-100

22. Barrie's Exhibit DW-19, Neuropsychological Evaluation, 1/5/06        101-106

23. Barrie's Exhibit DW-20, Psychoeducational Evaluation, 1/13/06        107-116

24. Barrie's Exhibit DW-21, Letter to Breana Harrison, 11/15/05            117-118

25. Barrie's Exhibit DW-22, Letter to DCPS Re: Independent                  119-121

     Evaluation, 2/11/06

26. Barrie's Exhibit DW-23, Letter to DCPS requesting copies of             122-124

     Evaluation, 11/15/05

27. Barrie's Exhibit DW-24, HOD, 9/1/05                                            125-129

28. Barrie's Exhibit DW-25, IEP Meeting Notes, 1/30/07                        130-131

29. Barrie's Exhibit DW-26, Prescription, 1/19/07                               132

30. Barrie's Exhibit DW-27, Curriculum Vitae for Sharon Millis,            133-147

     Arvette Page

31. Hearing Notice, 3/27/07                                                           148

32. Scheduling Memorandum, 2/6/07                                               149-151

33. Due Process Complaint Notice, 2/6/07                                         152-158

34. HOD, 9/28/05                                                                      159-165

35. Dalton's letter to Barrie Re: witnesses and documents, 9/7/05         166-168

36. Dalton's Exhibit Edison-01, IEP, 4/22/04                                      169-175

37. Dalton's Exhibit Edison-02, Educational Evaluation, 8/31/04           176-179

38. Dalton's Exhibit Edison-03, IEP, 9/17/04                                      180-191

39. Dalton's Exhibit Edison-04, Letter from Pressley requesting           192-194

     tracker forms for specialized instructions and related svc., 6/19/05

40. Hearing Notice, 8/24/05                                           195-196

41. Interim Order, 8/24/05                                            197

42. Transcript, 9/13/05                                              198-235

43. HOD, 9/1/05                                                       236-241

44. Motion for Continuance of Due Process Hearing, 8/12/05           242

45. Barrie's 5-day Disclosure letter w/att., 8/11/05                 243-244

46. Barrie's Exhibit DW-01, Hearing Request, 6/30/05                 245-249

47. Barrie's Exhibit DW-02, Settlement Agreement, 6/24/04            250-252

48. Barrie's Exhibit DW-03, Cognitive Psychological Eval, 5/6/02     253-259

49. Barrie's Exhibit DW-04, Psychological Report, 6/20/00            260-265

50. Barrie's Exhibit DW-05, Psychiatric Evaluation, 7/23/04          266-268

51. Barrie's Exhibit DW-06, Social Work Evaluation, 8/19/04          269-272

52. Barrie's Exhibit DW-07, Letter to Office of Compliance, 12/18/04 273-275

53. Barrie's Exhibit DW-08, Letter to Schreibman, DCPS, 9/5/04       276-278

54. Barrie's Exhibit DW-09, HOD, 8/23/02                             279-282

55. Barrie's Exhibit DW-10, Letter to Village Learning Center, 3/26/04 283-285

56. Barrie's Exhibit DW-11, IEP, 4/22/04                             286-294

57. Barrie's Exhibit DW-12, New Addendum Meeting Page, 5/25/05       295-297

58. Barrie's Exhibit DW-13, Letter to Wallace Henry, III, 6/19/05    298-299

59. Barrie's Exhibit DW-14, IEP, 9/17/04                             300-304

60. Barrie's Exhibit DW-15, Letter to Ideal PCS, 5/7/02              305-306

61. Barrie's Exhibit DW-16, §504 Summary of Meeting, 4/24/01         307-310

62. Barrie's Exhibit DW-17, HOD, 3/16/05                             311-318

63. DCPS Disclosure Notice, 8/10/05                                        319-320

64. Hearing Notice, 7/20/05                                               321-322

65. Request for Mediation/Hearing, 6/30/05                                323-328

66. HOD, 3/15/05                                                          329-336

67. Dalton Motion to Dismiss Due Process Hearing Request, 3/2/05          337-338

68. DCPS Disclosure Statement & Motion to Join Party, 3/1/05              339-340

69. Barrie's 5-day Disclosure Statement, 3/1/05                           341-342

70. Barrie's Supplemental 5-day Disclosure Statement, 3/7/05              343-344

71. Barrie's Exhibit DW-01, Request for Mediation, 2/2/05                 345-349

72. Barrie's Exhibit DW-02, Settlement Agreement, 6/24/04                 350-352

73. Barrie's Exhibit DW-03, Cognitive Psychological Eval, 5/6/02          353-359

74. Barrie's Exhibit DW-04, Psychological Report, 6/20/00                 360-365

75. Barrie's Exhibit DW-05, Psychiatric Evaluation, 7/23/04               366-368

76. Barrie's Exhibit DW-06, Social Work Evaluation, 8/19/04               369-372

77. Barrie's Exhibit DW-07, Letter to Office of Compliance, 12/18/04      373-375

78. Barrie's Exhibit DW-08, Letter to Schreibman, DCPS, 9/5/04            376-378

79. Barrie's Exhibit DW-09, HOD, 8/23/02                                  379-382

80. Barrie's Exhibit DW-10, Letter to Village Learning Center, 3/26/04    383-385

81. Barrie's Exhibit DW-11, IEP, 4/22/04                                  386-396

82. Barrie's Exhibit DW-12, High Road Acceptance Letter, 3/7/05           397-401

83. Dalton letter to Barrie Re: witnesses and documents, 2/16/05          402-404

84. Dalton's Exhibit Edison-01, Educational Evaluation, 8/31/04           405-408

85. Dalton's Exhibit Edison-02, IEP, 9/17/04                              409-416

86. Dalton's Exhibit Edison-03, Counseling Notes, 2004-2005          417-424

87. Hearing Notice, 2/8/05                                           425-426

88. Request for Mediation/Hearing, 2/2/05                            427-431

89. Transcript, 3/3/05                                               432-452

# CERTIFICATION OF RECORD

INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA) 20 USC § 1400

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
### *STUDENT HEARING OFFICE*
### SPECIAL EDUCATION

In the Matter RE:      W███, D███ vs. DCPS, Friendship-Edison PCS & IDEAL PCS

Case Information:      Hearing Dates: **03/08/2005, 08/18/2005, 09/13/2005 & 04/10/2007**
Held at: **District of Columbia Public Schools Headquarters**
         **825 N. Capitol Street, N.E.**
         **Washington, D.C. 20002**
Student Identification Number: **8458263**
Student's Date of Birth: ███**/1989**
Attending School: **Friendship-Edison PCS**
Managing School: **DCPS**
Hearing Request Date(s): **02/03/2005, 06/30/2005 & 02/06/2007**

## CERTIFICATION OF RECORD

     I, **Shawnta Maddox, Legal Assistant of the Student Hearing Office,**

DO HEREBY CERTIFY that the attached Record of Proceeding is the entire record in

the above entitled matter as of this date, consisting of all letters, pleadings, orders,

exhibits and depositions.

     I FURTHER CERTIFY that the materials forwarded herewith are the true copy

of the original documents submitted in this matter.

EXECUTED this Wednesday, August 29, 2007.

_____
**LEGAL ASSISTANT**
**STUDENT HEARING OFFICE**

1

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## ENFORCEMENT AND INVESTIGATION DIVISION
### SPECIAL EDUCATION DUE PROCESS HEARING
### CONFIDENTIAL

Seymour DuBow, Due Process Hearing Officer
825 North Capitol Street, N.E., 8th Floor
Washington, D.C. 20002
(202) 442-5432; (202) 442-5556 (fax)

## HEARING OFFICER'S DETERMINATION

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| ██████ W██████, student | ) | |
| Date of Birth: ████/89 | ) | |
| | ) | |
| Petitioner, | ) | DATE OF HEARING: |
| | ) | April 10, 2007 |
| v. | ) | |
| | ) | |
| The District of Columbia Public Schools | ) | Attending School: |
| | ) | High Road Academy |
| | ) | |
| Respondent | ) | |

2007 APR 11 AM 10: 16
DC PUBLIC
SCHOOL SYSTEM

Counsel for Parent/Student:          Fatmata Barrie, Esq.
                                     1003 K Street, N.W.
                                     Washington, D.C. 20001


Counsel for DCPS:                    Quinne Harris-Lindsey, Esq.
                                     825 N. Capitol Street, N.E.,
                                     Washington, D.C. 20002

2

**INTRODUCTION:**

A hearing was held at the District of Columbia Public Schools (DCPS), 825 N. Capitol Street, N.E., Washington, D.C. 20002, on April 10, 2007, at the request of Fatmata Barrie, counsel for the grandparent and the student. Quinne Harris-Lindsey represented DCPS, the other party to this hearing.

**JURISDICTION:**

The hearing was held and this decision was written pursuant to the Individuals with Disabilities Education Act (IDEA) (P.L. 101-476), reauthorized as the IDEA Improvement Act of 1997 (P.L. 105-17) 20 U.S.C. 1400 Et. seq; further reauthorized as the IDEA Improvement Act of 2004 (P.L. 108-446); and their current regulations, specifically the Code of Federal Regulations at 34 CFR Part 300 and District of Columbia Municipal Regulations, Chapter 30, Education Handicapped, Title V, Sections 3000-3099.

**ISSUES:**

1.     Did DCPS deny a Free Appropriate Public Education (FAPE) to the student by failing to provide him with compensatory education?

**DOCUMENTS SUBMITTED INTO EVIDENCE BY STUDENT:**

DW-1-DW-27

**DOCUMENTS SUBMITTED INTO EVIDENCE BY DCPS:**

None

**TESTIFIED AT THE HEARING:**

**Marian Murphy**                    **Grandparent**

**FINDINGS OF FACT:**

1.     The student is a seventeen-year-old male who has been found eligible for special education services by DCPS as a student with the disability classification of learning disabled.  (DW-18)

2.     The student had been attending Friendship Edison Public Charter School until he was placed by a Hearing Officer's Determination at the High

2

Road Academy on an interim basis on March 16, 2005. (DW-17) Friendship Edison PCS is its own LEA. The student has been attending the High Road Academy since the March 16, 2005 HOD.

3.     On September 1, 2005 an HOD was issued ordering DCPS to provide two years of compensatory education for missed services. The hearing on this HOD only involved the parent and DCPS as parties. FEPCS was not a party to this action. The hearing officer accepted the testimony of the grandparent that the student did not receive any special education services and was involved in all regular education classes. (DW-24)

4.     Prior to going to Friendship Edison Public Charter School, the student had attended DCPS's Backus Middle School for seventh and eighth grade. The August 19th 2004 independent social history by Interdynamics stated: "Ms. Murphy reports that he attended the seventh and eighth grade at Backus Middle School where he began to make some progress due to special education assistance received for math and English." (DW-6)

5.     The student's last IEP in the record does contain a transition services plan. (DW-18) There is no MDT team recommendation for a vocational assessment, only a request at the January 2007 MDT meeting from the educational advocate.

**DISCUSSION AND CONCLUSIONS OF LAW:**

Based on the above Findings of Fact, this hearing officer concludes that the student's last DCPS placement of Backus Middle School provided him with special education services and he made progress according to his grandmother's report in the independent social history. The student then went to Friendship Edison Public Charter School which is its own LEA. The student attended Friendship Edison until he was placed on an interim basis at The High Road Academy pursuant to a March 16, 2005 HOD. The September 1, 2005 HOD only involved DCPS and the grandparent/student as parties and Friendship Edison was not a party to those proceedings. Despite the fact that at the last DCPS placement the student received special education services and made progress, the hearing officer ordered DCPS to provide two years of compensatory education that appears to be based on the testimony of the grandmother that the student did not receive special education services at his prior placement of Friendship Edison. The September 1, 2005 erroneously ordered compensatory education against DCPS instead of Friendship Edison. This hearing officer concludes that counsel for the grandparent's action for compensatory education should be against Friendship Edison – not DCPS. In this case, counsel for the grandparent only filed a complaint against DCPS. Because Friendship Edison is not a party to this action, this hearing officer can not enter any order on compensatory education with respect to missed services at Friendship Edison. Counsel for the grandparent will need to bring a new complaint against Friendship Edison in order to recover compensatory education.

Counsel for the grandparent/student has also failed to meet her burden of proof that the failure of DCPS to conduct a vocational assessment has resulted in a loss of educational benefits and a denial of a FAPE. The student is attending The High Road Academy, a private full-time day special education program for students with learning disabilities and counsel for the grandparent agrees it is an appropriate placement that provides educational benefits. In *Kingsmore v. District of Columbia*, No. 05-7156, (September 29, 2006), The U.S. Court of Appeals for the District of Columbia has recently reiterated that procedural violations of IDEA that are harmless do not deny a FAPE.: "this Court joined the majority of other circuits in ruling that a claim based on a violation of IDEA's procedural requirements 'is viable only if those procedural violations affected the student's substantive rights.' *Lesesne v. District of Columbia*, 447 F.3d 828, 834 (D.C. Cir. 2006) This Court denied relief to the plaintiff in *Lesesne* because she failed to demonstrate 'that [the student's] education was affected by any procedural violations DCPS might have committed.' *Id.* The *2004 Improvement Act* and its Regulation at *34 C.F.R. Section 300.513* requires that "In matters alleging a procedural violation, a hearing officer may find that a child did not receive a FAPE only if the procedural inadequacies – (i) Impeded the child's right to a FAPE; (ii) Significantly impeded the parent's opportunity to participate in the decision-making process regarding the provision of a FAPE to the parent's child; or (iii) Caused a deprivation of educational benefit." None of those conditions have been met here.

It is hereby **ORDERED** that:

**Counsel for the grandparent/student's request for relief is DENIED and the case is DISMISSED.**

This is the final administrative decision in this matter. Appeals on legal grounds may be made to a court of competent jurisdiction within 90 days of the rendering of this decision.

Seymour DuBow, Esq.
Impartial Hearing Officer                    Date filed: April 11, 2007

Date Issued:

4

5

**ATTENDANCE SHEET**

STUDENT'S NAME: _____

SCHOOL OF ATTENDANCE: _____

D.O.B:_____

HEARING DATE: _4/0/07_    ROOM: _8115_    TIME: _9_ A.M./P.M.

| PARTICIPANT NAME: | ON BEHALF OF DCPS OR STUDENT: | TITLE: |
|---|---|---|
| Quime Harris Lindsey | DCPS | Attorney Advisor |
| Fatmata Barrie | Student | atty. |
| Marian Murphy | Grandmother | Grandmother |
| _____ | Student | Student |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Impartial Hearing Officer

Revised 10/17/2006

6

# LAW OFFICES OF
# CHRISTOPHER N. ANWAH, PLLC

**Attorneys and Counselors at Law**

Christopher N. Anwah, Esq.
   (DC, MD, NJ)
Fatmata Barrie, Esq.
   (DC, FL)
Georgina A. Oladokun, Esq.
   (DC, MD)
Allen Mohaber, Esq.
   (MD)

Carpenter's Building
1003 K Street, N.W.
Suite 565
Washington, D.C. 20001
Phone: (202) 626-0040
Fax: (202) 626-0048
Email: chrisanwahfirm@chrisanwahfirm.com

April 3, 2007

Office of General Counsel
825 North Capitol St, NE
9th Floor
Washington, DC  20002

**Via Facsimile: 202-442-5098/97**

RE:   D█████ W██████
DOB:  ███████89

## Disclosure of Witnesses and Documents

To Whom It May Concern:

Pursuant to the five-day rule set forth in 34.C.F.R. 509 (a) (3), attached is a list of witnesses and documents, which we intend to rely on for the upcoming Due Process Hearing scheduled for April 10, 2007.

## Witnesses*

1. Marian Murphy – Parent, 5019 11th St., NE, WDC 20017, 202-832-1048
2. D█████ W██████ – Student, 11th St., NE, WDC 20017, 202-832-1048
3. Sharon Millis and/or designee – Expert and/or Knowledgeable Person in Special Educational, 11666 Cygnet Drive, Waldorf, Maryland 20601, 301-870-6474
4. Arvette D. Page and/or designee- Expert and/or Knowledgeable Person in Special Educational, 6204 Gothic Lane, Bowie, Maryland 20720, 202-491-3451
5. Derek Marryshow and/or designee-Psychologist/ Expert and/or Knowledgeable Person in Special Educational,5104 Aldershot Drive, Lanham, Maryland 20706, 301-333-2009
6. Mary Rinder and/or designee – High Road, 711 Edgewood NE, WDC 20017, 202-259-7677
7. Stephanie James and/or designee – High Road, 711 Edgewood NE, WDC 20017, 202-259-7677
8. Shannon Redman and/or designee – High Road, 711 Edgewood NE, WDC 20017, 202-259-7677

D█████ W██████ 5-day          1
DOB: ██████/89

9.   Caryl Banks and/or designee – Social Worker, High Road, 711 Edgewood NE, WDC
      20017, 202-259-7677
10.  Michael Williams and/or designee – Teacher, High Road, 711 Edgewood NE, WDC
      20017, 202-259-7677

*Witnesses may testify by telephone

## Documents

DW-01  02/06/07 Due Process Complaint Notice
DW-02  06/22/04 Settlement Agreement
DW-03  05/06/02 Cognitive Psychological Evaluation
DW-04  05/20/00 Psychological Report
DW-05  07/23/04 Psychiatric
DW-06  08/19/04 Social Work Evaluation
DW-07  12/18/04 Letter to Office of Compliance
DW-08  09/05/04 Letter to DCPS Counsel
DW-09  08/23/02 HOD
DW-10  03/26/04 Letter to Village Learning Center
DW-11  04/22/04 IEP
DW-12  05/25/05 New Addendum Meeting Page and Notes
DW-13  Letters to FEPC Re: Encounter Tracker Forms
DW-14  09/17/04 IEP
DW-15  05/07/02 Letter to Ideal PCS
DW-16  04/24/01 §504 Summary Meeting and Plan
DW-17  03/16/05 HOD
DW-18  10/11/05 IEP
DW-19  12/29/05 Neuropsychological Evaluation
DW-20  12/29/05 Psycho-educational Evaluation
DW-21  11/15/05 Letter to DCPS Re: Requests for Evaluations
DW-22  02/11/06 Letter to DCPS Re:  Independent Evaluations and Meeting
DW-23  11/15/05 Letter to DCPS Re: Requests for Evaluations
DW-24  09/01/05 HOD
DW-25  01/30/07 IEP Meeting Notes
DW-26  01/19/07 Prescription
DW-27  Curriculum Vitae for Sharon Millis and Arvette Page

       We reserve the right to disclose additional documents as they become available, the right to
rely on and call on DCPS' witnesses and to rely on DCPS' evidence as if disclosed by parent and
the right to rely on documents previously disclosed to counsel for any prior hearings or
proceedings.  We also reserve the right to produce rebuttal witnesses and documents.  Should you
have any questions or need additional information, please do not hesitate to contact me.

                                          Sincerely,


                                          Fatmata Barrie, Esq.


cc: SHO

Delante Williams 5-day                    2
DOB: ████789

8

**State Education Agency for the District of Columbia**
**State Enforcement and Investigation Division (SEID)**
**Special Education Programs**

Dw-01



# Due Process Complaint Notice

- The form is used to give notice of a due process complaint to the **District of Columbia Public Schools, District of Columbia Public Charter Schools (DCPS or LEA) and/or parents** with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a free appropriate public education to that child. **A party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of the Individuals with Disabilities Education Improvement Act (IDEIA).**

- The due process complaint must describe an alleged violation that occurred not more than two (2) years before the date that the parent or school system knew or should have known about the alleged action that is the basis of the complaint.

- Notice must be provided to the Student Hearing Office of the DC Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, DC 20002; fax number 202/442-5556.

- Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice. Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting (called a "Resolution Session") with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. **The Student Hearing Office does NOT schedule resolution meetings.**

- Mediation is also available to all parties as an alternative to a resolution meeting or a Due Process Hearing.

## A.    INFORMATION ABOUT THE STUDENT:

Student Name:  D████ W█████                                Birth Date:  ███/89

Address:    5019 11th STREET, NE, WASHINGTON, DC 20017

Home School:                UNKNOWN

Present School of Attendance:  HIGH ROAD ACADEMY SCHOOL

      Is this a charter school?  NO            (If yes, you must also provide a copy of this notice to the charter school principal or director)

Parent/Guardian of the Student:  MS. MARIAN MURPHY

Address (if different from the student's above): _____

1

9

Phone/Contact Number: 202-832-1048      Fax Number (if applicable): _____

**B.**    **<u>Individual Making the Complaint/Request for Due Process Hearing</u>:**

Name:   MS. MARIAN MURPHY _____

Complete Address:   5019 11th STREET, NE, WASHINGTON, DC 20017 _____

_____

Phone: (h)  202-832-1048 _____  (W) _____  (Fax) _____  (e-mail) _____

Relationship to the Student:

X       Parent              ☐    Legal Guardian          ☐    Parent Surrogate

☐       Self/Student        ☐    Local Education Agency (LEA)   ☐    Parent Advocate

☐       Court Appointed Educational Advocate

**C.**    **<u>Legal Representative/Attorney (if applicable)</u>:**

Name:   Fatmata Barrie, Esq.  (Law Offices of Christopher N. Anwah, PLLC) _____

Address:  1003 K St. NW #565 Washington, DC  20001 _____

_____

Phone: (w)  202-626-0040 _____  (Fax) 202-626-0048 _____  (e-mail) _____

Will attorney / legal representative attend the resolution session?   **X** Yes          ☐ No

**D.**    **<u>Complaint Made Against (check all that apply)</u>:**

X DCPS school (name of the school if different from page one)  _____
☐ Charter school (name of the charter school if different from page one)  _____
☐ Non-public school or residential treatment facility (name)  _____
☐ Parent

**E.**    **<u>Resolution Session Meeting Between Parent and LEA</u>:**

I understand that it is my right to have a resolution meeting to resolve this complaint.  I also understand that I may voluntarily waive this right if I choose.  (Note:  All parties must agree to waive the resolution meeting to avoid having this meeting.)

☐ I wish to waive the Resolution Session Meeting

2

**F.**    **Mediation Process:**

IDEIA requires that any time a party requests a due process hearing mediation should be offered at no cost to the parent. Both parties can request mediation as an alternative to the Resolution Session Meeting or as an alternative to a Due Process Hearing. Please check all that apply:

☐    I am requesting mediation as an alternative to the resolution session meeting.

☐    I am requesting mediation and a due process hearing.

☐    I am requesting mediation **only** at this time.

**G.**    **Facts and Reasons for the Complaint:**

In accordance with the Individuals with Disabilities Education Improvement Act (IDEIA), please complete the following questions. Provide complete details about all the facts supporting your claims. (You may attach additional pages if needed):

1.    What is the nature of the problem, including the facts relating to the problem that will need to be addressed at a Resolution Session meeting, a Mediation Conference, and/or a Due Process Hearing?

   A.   DCPS has violated the 09/01/05 HOD because they failed to timely convene and complete an MDT/IEP meeting for D███████. DCPS was ordered to convene an MDT/IEP meeting 15 days after receiving D███████ independent evaluations. D███████ evaluations were sent to DCPS on February 11, 2006, and DCPS failed to timely convene the MDT/IEP meeting until 01/30/07. In fact, that meeting did not occur because DCPS failed to attend in person or by teleconference. Further, DCPS violated the HOD because they were ordered to develop D███████ IEP and discuss compensatory education, which did not occur. DCPS egregious conduct has left D███████ without any appropriate special education services and the MDT/IEP has not been re-scheduled. Therefore, DCPS has violated the 09/01/05 HOD and denied D███████ FAPE.

   B.   DCPS has failed to update D███████ triennials because it has been over 3 years since they completed his psychological. DCPS is federally mandated to update all evaluations of special education children every 3 years. D███████ psychological has not been completed for over 3 years and DCPS has failed to complete it. Therefore, DCPS has denied D███████ FAPE.

   C.   DCPS has failed to provide D███████ with an appropriate IEP for the 2004-05SY at FE, and for the 2005-06SY, and 2006-07SY at High Road Academy because D███████ IEP is expired and DCPS has failed to complete it since 10/11/2005. In fact, D███████ had an MDT/IEP meeting on 1/30/07 and DCPS failed to attend the meeting did not go forward. DCPS has failed to include D███████ ADHD for his disabilities. This was recommended at his October 2005 MDT/IEP meeting, but DCPS failed to do it. Further, D███████ goals and objectives from his previous IEPs are similar, and not helped him improve. Therefore, DCPS has denied him FAPE.

   D.   DCPS has failed to complete the following evaluation, which is a comprehensive psychological because no documentation exists to the contrary. D███████ psychological has not been completed for over 3 years and he requires a new to determine his services and needs. Without it, D███████ IEPs, services, and education will not be reflective of his needs and services. Therefore, DCPS has denied him FAPE.

   E.   DCPS has failed to provide D███████ with appropriate special education and related services and all his special education and related services for the 2004-05SY at FE, and for the 2005-06SY, and 2006-07SY at High Road Academy because they are not reflective of his needs and services. D███████ services were developed with expired evaluations and IEPs. In fact D███████ did not receive any of his services, because the 09/01/05 HOD stated that DCPS shall provide 2 years of Compensatory Education (See Paragraph G) for missed services. Without an updated IEP, D███████ will not receive all of his related services and without updated triennials they will not be reflective of his needs and wants, i.e. specialized instruction, counseling, tutoring. Therefore, DCPS has denied him FAPE.

3

11

F.  DCPS has failed to provide D▆▆▆▆ transition services for the 2004-05SY at FE, and for the 2005-06SY, and 2006-07SY at High Road Academy because he has not received a vocational assessment. Upon a student reaching his or her 16th birthday DCPS is federally mandated to provide transition services. The first part is a vocational assessment. D▆▆▆▆ has not received a vocational assessment since turning 16 during the 2004-05SY. Therefore, DCPS has denied him FAPE.

G.  DCPS has failed to provide D▆▆▆▆ with the needed compensatory education for the denial of FAPE for the 2004-05SY at FE, and for the 2005-06SY, and 2006-07SY at High Road Academy for the past and present denial of FAPE for not providing D▆▆▆▆ appropriate placement, IEPs, related services, and evaluations, in the form of independent tutoring and counseling. In fact, the 09/01/05 HOD stated that DCPS shall provide 2 years of Compensatory Education for missed services. Yet, DCPS has failed to provide or fund D▆▆▆▆ any in the form of independent one-on-one tutoring or counseling. Therefore, DCPS has denied D▆▆▆▆ FAPE.

2.  To the extent known to you at this time, how can this problem be resolved?

A.  DCPS to continue funding placement at High Road Academy

B.  DCPS to develop an appropriate IEP.

C.  DCPS to fund independent evaluation which is a comprehensive psychological and fund any evaluations recommended by it.

D.  DCPS to fund an independent vocational assessment for Delonta's transition services.

E.  DCPS to provide transition services.

F.  DCPS to provide all educational and related services to D▆▆▆▆.

G.  DCPS to fund the needed compensatory education for the denial of FAPE for the 2004-05SY at FE, and for the 2005-06SY, and 2006-07SY at High Road Academy for the past and present denial of FAPE for not providing D▆▆▆▆ appropriate placement, IEPs, related services, and evaluations, in the form of independent one-on-one tutoring and counseling.

H.  DCPS to pay all reasonable attorneys fees.

3.  Issues presented:

A.  Whether DCPS denied D▆▆▆▆ a Free Appropriate Public Education (FAPE) when they violated the 09/01/05 HOD?

B.  Whether DCPS denied D▆▆▆▆ FAPE when they failed to update his triennials for over 3 years?

C.  Whether DCPS denied D▆▆▆▆ FAPE when they failed to develop an appropriate IEP for the 2004-05SY at FE, and for the 2005-06SY, and 2006-07SY at High Road Academy?

D.  Whether DCPS denied D▆▆▆▆ FAPE when they failed to fund a comprehensive psychological evaluation!?

E.  Whether DCPS denied D▆▆▆▆ FAPE when they failed to provide him with appropriate special education and related services and all his related and special education services for the 2004-05SY at FE, and for the 2005-06SY, and 2006-07SY at High Road Academy?

F.  Whether DCPS denied D▆▆▆▆ FAPE when they failed to provide him with appropriate transition services for the 2004-05SY at FE, and for the 2005-06SY, and 2006-07SY at High Road Academy?

4

      G.   Whether DCPS denied D███████ FAPE when they failed to fund an independent vocational assessment for the 2004-05SY at FE, and for the 2005-06SY, and 2006-07SY at High Road Academy

      H.   Whether DCPS denied D███████ FAPE when they failed to fund the needed compensatory education for the denial of FAPE for the 2004-05SY at FE, and for the 2005-06SY, and 2006-07SY at High Road Academy for the past and present denial of FAPE for not providing D███████ appropriate placement, IEPs, related services, and evaluations, in the form of independent one-on-one tutoring and counseling.

## H. Estimated amount of time needed for the hearing: _____ 4 Hours

Note:  In the absence of a specified amount of time, the SHO schedules hearings in two hour blocks of time and will allocate two hours to conduct the hearing.  Please indicate if you believe more than two hours will be needed.

## I. Accommodations and Assistance Needed:

Please list any special accommodations you may require for a Resolution Session Meeting/Mediation Conference/Due Process Hearing.

- Interpreter (please specify the type) _____
- Special Communication (please describe the type) _____
- Special Accommodations for Disability (please be specific) _____
- Other _____

## J. Waiver of Procedural Safeguards:

☐ I (parent/guardian) waive receiving a copy of the procedural safeguards at this time.

## K. Parent Signature and Affirmation:

I affirm that the information provided on this form is true and correct.

_____
Signature of Parent or Guardian        Date

## L. Signature of Attorney/ Legal Representative:

                            02/06/07

Legal Representative / Advocate      Date

## M. Signature of LEA Representative (if hearing requested by LEA):

D███ W████ ████/89

13

# LAW OFFICES,
# CHRISTOPHER N. ANWAH, PLLC

Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
  (DC, MD, NJ)
Fatmata Barrie, Esq.
  (DC, FL)
Georgina A. Oladokun, Esq.
  (MD)
Allen Mohaber, Esq.
  (MD)
Jani Tillery, Esq.
  (DC)

**Carpenter's Building**
1003 K Street, N.W.
Suite 565
Washington, D.C. 20001
Phone: (202) 626-0040
Fax: (202) 626-0048
Email: chrisanwahfirm@chrisanwahfirm.com

## FACSIMILE COVER LETTER

DATE: 02/06/07

TO: SHO

COMPANY: SHO

FAX NUMBER: (202) 442-5556

FROM: Allen Mohaber, Esq

RE: DUE PROCESS COMPLAINT NOTICE FOR D███████ W██████ (DOB: ████/89)

**TOTAL NUMBER OF PAGES INCLUDING COVER SHEET:_____7_____**
**MESSAGE:**
If there is any problem with this transmission, please call as soon as possible at (202) 626-0040

***CONFIDENTIALITY NOTICE***
The pages that accompany this facsimile transmission contain information from CHRISTOPHER N. ANWAH, PLLC, which is confidential or privileged, or both. The information is needed to be for the use of the individual or entity named on this cover letter. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this facsimile in error, please notify us by telephone immediately at 202-626-0040 so that we can arrange for the retrieval of the original documents at no cost to you.

06/23/2004 10:00 FAX 202 442 5098    OFF. OF GENERAL COUNSEL    ☑002/0 DW-02



**DISTRICT OF COLUMBIA
PUBLIC SCHOOLS**

*Office of the Superintendent*
Office of the General Counsel
*825 North Capitol Street, N.E., 9th Floor*
202-442-5000 Fax # 202-442-5098
*www.k12.dc.us*

June 22, 2004

Christopher Anwah, Esq.
Attorneys and Counselors at Law
Federal District Building
1010 Vermont Avenue, N.W.
Suite 600
Washington, D.C. 20005

**PROPOSED SETTLEMENT**

**VIA FACSIMILE 202-347-7108**

Subject: **Due Process Hearing for D█████ W██████**
**DOB:** ████/89

**Attending School: The Village Learning Center Public Charter School**
**Home School:**

Dear Mr. Anwah:

    In lieu of the formal Due Process Hearing in the above-referenced matter, scheduled for Monday, June 28, at 11:00 a.m., the parties to this action, District of Columbia Public Schools (hereinafter DCPS), and parent's representative agree to resolve this matter pursuant to the following terms and conditions:

    1. Parent/Counsel verifies that the student is a resident of the District of Columbia, has established residency, and has registered as attending or non-attending at their local school. If DCPS becomes aware subsequently to the executions of this settlement agreement that residency and/or registration has not been completed and/or established then any DCPS obligations under this agreement will not be completed until proof of registration and/or residency is provided to DCPS.

    2. The Parent/Counsel verifies that the student's date of birth is September 20, 1989 that the attending school is The Village Learning Center Public Charter School.

    3. Parent/Counsel agrees to cooperate fully with DCPS in the implementation of the terms of this settlement agreement. Any delay caused by the unavailability of the student, parent, or advocate as it pertains to testing, meeting dates, or compliance with the terms of this agreement will toll any deadlines herein by one day for each day of delay.

---

*Children First*

15

06/23/2004 10:01 FAX 202 442 5098    OFF.OF GENERAL COUNSEL    ☑003/004

DCPS Office of the General Counsel
Page 2

4. DCPS agrees to a fund independent evaluations, consistent with DCPS guidelines. Parent/counsel agrees that DCPS' liability is limited to costs not to exceed those specified in the Superintendent Directive Number 530.6, dated March 20, 2002. The evaluations DCPS agrees to fund are a psychiatric evaluation and a social history evaluation.

5. DCPS agrees to conduct a MDT meeting within 15 business days of the receipt of the independent evaluation. DCPS agrees to update the student's IEP as warranted. Placement will be also be discussed and determined. For a public placement, a Prior Notice of Placement will be issued within 5 school days of the MDT meeting and for a private placement a PNOP will be issued within 30 calendar days of the MDT meeting. DCPS also agrees to discuss compensatory education, and if warranted a plan will be developed. Parent reserves the right to bring a hearing if the parent disagrees with the compensatory education plan developed.

6. All meetings/conferences/evaluations shall be scheduled through counsel for the parent, via facsimile, at 202-347-7108.

7. Both parties agree that execution of this agreement will occur when the signature of both parties has been affixed below and counsel of DCPS has received transmittal of the signed agreement.

8. If for some reason DCPS is unable to comply with this agreement as of result of unforeseen circumstances beyond its control, DCPS will request that Parent/Counsel agree to extend the deadlines or negotiate new timelines, whichever appropriate. Parent/Counsel will not unreasonably deny any such request for extension/renegotiation.

9. Parent/Counsel agrees to contact DCPS Office of Mediation & Compliance personnel when there has been a failure to comply with the terms incorporated in this agreement in order to bring the case into compliance prior to filing a hearing request alleging DCPS' failure to comply.

10. This agreement is in full satisfaction and settlement of all the claims contained in the pending hearing request, and including all claims that the parent now asserts or could have asserted as of the date of this agreement in relation to special education issues.

11. Parent/Counsel agrees to accept reasonable attorney fees not to exceed Four Thousand ($4,000.00) Dollars, as full and final payment of the attorney fees and related costs incurred in this matter. Payment of the specified amount is contingent upon the submission of a certified, itemized invoice conforming to the DCPS attorney fee guidelines.

12. Parent/Counsel agrees that the hearing request that is subject of this Agreement will be immediately withdrawn and the written evidence of such withdrawal is required before any invoices will be processed.

Sincerely,

Jack L. Schreibman
Attorney Advisor

DCPS Office of the General Counsel
Page 3


Agreed to:    _Christopher Anwah, Esq._    Date: 6/24/04
Christopher Anwah, Esq.
Counsel for Parent


Agreed to:    _Jack Schreibman, Esq._    Date 6/2/04
Jack Schreibman, Esq.
Attorney Advisor


*Children First*

17



YW-03

# EDI, Inc.

Educational Diagnostics Institute, Inc.
1401 New York Ave., NW, Suite 700
Washington, DC 20005  (202) 347-9101

Sandra R. Saulter, Ph.D.
Licensed Clinical Psychologist

## COGNITIVE PSYCHOLOGICAL EVALUATION

**Name:** Wilson, Demonte                    **School:** Academy for Ideal Education
**Date of Birth:** ████1989                   **Grade:** Seventh
**Date of Evaluation:** 04/19/02              **Date of Report:** 05/06/02
**Chronological Age:** 12 years, 6 months

### REASON FOR REFERRAL AND BACKGROUND INFORMATION:

Demonte is a 12-year-old African-American male, who was referred for a psychological evaluation to determine his current level of cognitive functioning. He resides in Northeast Washington, D.C. with his legal guardian and paternal grandmother, Marian Murphy. An aunt and cousin also reside in the home. Demonte is a seventh grader at Academy for Ideal Education in Washington, D.C. The record reflects that he attended Berkshire Elementary School in Prince George's County prior to attending Ideal. A Section 504 Plan was developed for him at Berkshire "to address academic concerns affected by ADHD." The plan included his asking for help when needed, seeing the guidance counselor before and after school to check assignments, and his parents checking his homework assignment notebook and reviewing his homework at home. The plan also included his being accommodated in the classroom with "special seating and an additional support person."

***Interview with Guardian*** - Ms. Marian Murphy was interviewed by this examiner at Educational Diagnostics Institute, Inc. (EDI) on April 19, 2002. Ms. Murphy reported that she has had legal custody of Demonte since he was five or six years old. However, he has been living with her since he was about three months old. He stayed with his mother briefly when he was in the second grade, and half of the fifth and sixth grades. Ms. Murphy indicated that Demonte has seasonal allergies and takes Claritin. His birth was without complications, but he was exposed in the uterus to crack cocaine. In addition, both mother and father were using crack cocaine at the time of his conception. Ms. Murphy also reported that Demonte was a "little slow" at walking and talking. He did well in kindergarten and first grade. He started to have problems in the second grade with inattention, retaining information, and keeping still in the classroom. He attended Berkshire Elementary School in Forestville, Maryland in the sixth grade. There, "they" threatened to retain him, but Ms. Murphy took him back from his mother, worked with him, and he managed to "pull up" his grades. Although he resided with Ms. Murphy in Washington, D.C. for the remainder of the sixth grade, the administration at Berkshire allowed him to remain there (in Maryland) until the school year was completed.

Ms. Murphy indicated that Demonte is not getting any special accommodations at Ideal, and this is a violation of his Section 504 Plan. His teachers at Ideal do not think that he

COGNITIVE PSYCHOLOGICAL EVALUATION (continued):                    Page 2 of 7
W██████, D█████, DOB: ███/89

has a problem or needs special accommodations. Ms. Murphy stated that she is
"extremely" dissatisfied with Ideal. She feels that D█████ is not getting what he needs
academically, and she alluded to his physical safety being in jeopardy at Ideal. She
shared that D█████ has been physically injured more than once at Ideal, and she was not
informed immediately of his injuries. Ms. Murphy also expressed that she is concerned
about D█████ "short attention span, inability to remember all steps in verbal
instruction, and social immaturity." In regard to the latter, she explained that he prefers
to play with younger children, and he does not fight back when kids beat up on him at
school. Ms. Murphy also indicated that D█████ is "an inward person;" it is hard for him
to talk about what is bothering him.

Ms. Murphy was administered the CPRS-RS, a parent-report questionnaire, as a means of
obtaining more precise information regarding D█████ behavior. He scored in the
clinical range on scales assessing inattention, hyperactivity, and symptoms of ADHD per
se. Specially, he attained T scores of 43 on the Oppositional Scale, 71 on the Cognitive
Problems/Inattention Scale, 77 on the Hyperactivity Scale, and 72 on the Conners'
ADHD Index Scale. T scores at and above 65 are considered clinically significant.
Ms. Murphy reported that D█████ has a short attention span, and is easily frustrated and
distractible. He has problems organizing his work, completing tasks or schoolwork, and
concentrating in class and on tasks that require sustained mental effort. He also fidgets
with his hands and feet, and is disorganized at school. Ms. Murphy also disclosed that
D█████ bites his fingernails. His pediatrician has referred him to a psychiatrist to
determine if he is "ADHD."

## TESTS ADMINISTERED AND DATA SOURCES:
### Wechsler Abbreviated Scale of Intelligence (WASI)
**Verbal Subtests**
    Vocabulary TS = 49; SS = 10
    Similarities TS = 42; SS = 8
**Performance Subtests**
    Block Design TS = 57; SS = 12
    Matrix Reasoning TS = 60; SS = 13
Verbal IQ 93 (average); Performance IQ = 114 (high average); Full Scale IQ = 103 (average)
### Cognitive Assessment System (CAS)
**Planning (PLAN) Processing Scale Subtests**
    Matching Numbers SS = 10
    Planned Codes SS = 8
**Simultaneous (SIM) Processing Scale Subtests**
    Nonverbal Matrices SS = 8
    Verbal-Spatial Relations SS = 8
**Attention (ATT) Processing Scale Subtests**
    Expressive Attention SS = 10
    Number Detection SS = 7
**Successive (SUC) Processing Scale Subtests**
    Word Series SS = 11
    Sentence Repetition SS = 10
PLAN SS = 94 (average); SIM SS = 88 (low average); ATT SS = 91 (average);
SUC SS = 108 (average); FS SS = 92 (average)

COGNITIVE PSYCHOLOGICAL EVALUATION (continued).                    Page 3 of 7
W██████ D█████, DOB: ██████/89

(Standard scores for the Scales and Full Scale are set at a mean of 100 and standard deviation of 15.)

**Wide Range Achievement Test-Revision 3** (WRAT3)
    Reading (word recognition) Test SS = 105; GE = Eighth
    Spelling Test SS = 103; GE = Seventh
    Arithmetic Test SS = 90; GE = Fifth

**The Beery-Buktenica Developmental Test of Visual-Motor Integration** (VMI)
    Developmental Age Equivalent = 11 years, 3 months; SS = 96

**Conners' Parent Rating Scale-Revised Short** (CPRS-RS)
    Oppositional TS = 43
    Cognitive Problems/Inattention TS = 71
    Hyperactivity TS = 77
    Conners' ADHD Index TS = 72

(T scores at and above 65 are clinically significant.)

Clinical Interview and Observation of Test Behavior
Interview with Guardian
Record Review
    PG County Public Schools Section 504 Accessibility Plan – 10/10/00
    PG County Public Schools Psychological Report – 5/2/00

**CLINICAL INTERVIEW AND OBSERVATION OF TEST BEHAVIOR:**
D█████ was seen by this examiner at Educational Diagnostics Institute, Inc. (EDI) on April 19, 2002. He was accompanied to EDI by his paternal grandmother and legal guardian, Marian Murphy. Testing occurred over a period of approximately three and one-half hours. Separation for testing was uneventful. D█████ was noted to be properly dressed and groomed. His fingernails, however, were badly bitten to the quick. He was also noted to have a bruise on the right side of his forehead. Gross and fine motor functioning appeared adequate. He demonstrated right-handedness.

A clinical interview was conducted with D█████ before the administration of test instruments. A functional rapport was easily established. D█████ was friendly and responsive to inquiry. On request, he gave correct identifying data. In response to inquiry, he reported that he lives with his grandmother, aunt and cousin. He likes to build things and wants to be an architect when he grows up. His best friend is George, a nine-year-old boy who lives in the neighborhood. D█████ also reported that he does not like attending Ideal Academy. He stated that other students pick on him and fight him. When asked about the bruise on his forehead, he explained that he acquired the bruise after being tripped by another student at school yesterday, causing him to fall. Thus, a fight resulted between him and the other student. Since D█████ did not start the fight, he did not get suspended. D█████ also disclosed that his favorite subject is science. His easiest subject is physical education. His hardest subject is math. He does not like music. In spite of his reporting that other students fight and pick on him at school, he indicated that he has no problems at school.

D█████ revealed that he feels "good" about himself and does not want to change anything about himself. He did not admit to any worries or concerns. He also did not admit to any problems eating/sleeping, any suicidal/homicidal ideation, or any visual/auditory hallucinations. He shared that he feels like fighting someone when he

gets "very mad or frustrated." However, he would not actually start a fight with anyone because he was angry. What makes him angry is not being able to do his schoolwork well, especially math. When asked what he would wish for if he had three wishes, he replied, "I wish for my own car, a big house, and to live a happy life." De███ speech was clear. He did not evince any loose or disassociative thought content. He was oriented to person, time and place. He gave direct eye contact.

De███ was cooperative throughout testing. He exhibited no overt signs of off-task behavior, distractibility or hyperactivity. He maintained an appropriate level of attention and motivation. It is believed that the overall results of the administered accurately reflect his cognitive functioning at the time of testing.

## ANALYSIS OF TEST RESULTS:
### Cognitive Functioning - WASI Findings

De███ was administered the WASI to obtain an estimate of his general intelligence. He attained a Verbal IQ of 93, a Performance IQ of 114 and a Full Scale IQ of 103, indicating that he functions overall in the "average" range of intelligence. However, his uneven cognitive pattern makes it difficult to summarize his overall intellectual functioning by a single score. His subtest scaled scores range from high average (13) to average (8), and the significant differential of twenty-one scaled points between the Verbal and Performance IQs, in favor of the latter, suggests that his nonverbal (visual) skills are better developed overall than his verbal (auditory) skills. In the Verbal realm, he displayed average ability on subtests measuring word knowledge (Vocabulary SS = 10), and verbal abstract reasoning and concept formation (Similarities SS = 8). In the Performance realm, high average ability was displayed on subtests measuring nonverbal fluid reasoning (Matrix Reasoning SS = 13), and nonverbal abstract reasoning and visual motor perception/ integration (Block Design SS = 12).

### Cognitive Functioning - CAS Findings

The CAS was administered to De███ to obtain a more comprehensive assessment of his cognitive abilities. This instrument goes beyond the traditional Wechsler test and concept of general intelligence by identifying specific abilities or cognitive processes that may impact on learning. On the CAS, De███ earned a Full Scale standard score of 92, which falls in the "average" range. He ranked at the 30th percentile in overall cognitive processing ability in comparison to same-aged peers. He earned scaled scores that ranged from average to low average on the four separate scales comprising the Full Scale. Due to significant variability occurring among the four PASS Scales, the Full Scale standard score of 92 is not the best representation of each PASS scale standard score. Specifically, De███ attained a Planning (PLAN) standard score of 94, a Simultaneous processing (SIM) standard score of 88, an Attention (ATT) standard score of 91, and a Successive processing (SUC) standard score of 108.

De███ performed as well as 34% of same-aged peers in the normative sample on measures of planning processing. He was required to match numbers and codes within a prescribed amount of time. In order to be successful, he had to devise a strategy (i.e., plan) to solve the problem, apply the plan, and modify the plan as needed. The "average"

ability which he displayed on the PLAN Scale (standard score = 94) reflected the generation and use of efficient and effective strategies for problem solving and self-regulation.

Successive processing ability was measured on subtests that required information to be arranged in a specific linear order where each step was related only to the previous one. Deimos displayed average skills on the SUC Scale. He performed as well as 70% of same-aged peers in the normative sample. Since the SUC Scale standard score of 108 is significantly higher than the mean of 95.3 of the four PASS standard scores, this indicates that successive processing is a relative cognitive strength for Deimos. This type of processing is important when it is necessary to keep information in its correct order. It is involved in rote memory, and in the breaking down or analyzing of information into an ordered sequence. Deimos' "average" performance on the SUC Scale suggested that he is able to hold sounds or words in sequence and follow step by step simple to complex verbal instruction well.

Attentional processing was measured on subtests that required Deimos to detect and selectively attend to particular stimuli while avoiding responding to irrelevant competing stimuli. He performed as well as 27% of same-aged peers in the normative sample on the ATT Scale (standard score = 91). On the two core subtests comprising the ATT Scale, he attained a standard score of 10 on the Expressive Attention subtest and 7 on the Number Detection subtest. On the former subtest, his task was to identify the color of ink in which certain words were printed. For example, the word "green" was printed in red ink. On the latter task, his task was to visually scan an array while underlining target numbers printed in a particular font. His overall "average" performance on the ATT Scale illustrated that he is capable of adequately sustaining his attention and avoiding distracting stimuli in the classroom.

Simultaneous processing ability was measured on subtests that required Deimos to integrate several pieces of information and comprehend them as a group or whole using both verbal and nonverbal content. This type of processing is important when it is necessary to see or comprehend things as a whole. It is seen in tasks that involve spatial skills like using blocks to build a design, seeing patterns in numbers, seeing a group of letters as a word, words as a whole, a sentence as part of a paragraph, categorizing words, and in reading comprehension. Deimos' lowest standard score was attained on the SIM Scale (SS = 88). Since he was able to perform as well as 21% of same-aged peers on subtests comprising this scale, his "low average" performance suggested that simultaneous processing is a relative weakness, but not a cognitive deficit, for him. He may have some difficulty in the classroom solving problems that demand complex integration of information as well as performing the following tasks involving simultaneous processing:
> Recognizing sight words quickly
> Interpreting sentences, or passage meaning
> Seeing the shapes of words or working with spatial tasks
> Seeing patterns in text or math problems
> Comprehending math word problems

22

COGNITIVE PSYCHOLOGICAL EVALUATION (continued):                         Page 6 of 7
William, Delmar; DOB: 4/xx/89

### Perceptual-Motor (Visuospatial) Functioning

Delmar demonstrated visual-motor perception/integration and graphomotor skills within chronological age expectancy on the VMI. He attained a developmental age equivalent of 11 years, 3 months and a standard score of 96. He ranked at the 39th percentile in comparison to same-aged peers. His task was to copy two-dimensional geometric shapes using paper and pencil. He exhibited an intermediate pencil grip and copied the designs with ease. The few errors he made were due to carelessness as opposed to sensory motor feedback problems.

### Academic Functioning

Delmar was administered the WRAT3 to obtain an estimate of his achievement in basic academic areas. He scored at eighth grade level in reading (word recognition), seventh grade level in spelling, and fifth grade level in arithmetic. These grade equivalents are commensurate with standard scores of 103, 103 and 90, and percentile ranks of 58, 58 and 27 in these academic areas, respectively. In consideration of Delmar's age and current grade placement, he is achieving below grade expectancy in basic arithmetic. His weaknesses in arithmetic are most likely related to his relative weaknesses in simultaneous processing. If one were to use the Performance IQ of 114 as a fairer estimate of Delmar's intellectual functioning than the Full Scale IQ of 103, then a severe discrepancy exists between intellectual functioning and achievement in basic arithmetic. Thus, he meets the criteria as a specific learning disabled student in accordance to Public Law 105-17 (IDEA). Delmar also reported that math is his hardest subject, and it causes him much anger and frustration.

### SUMMARY AND RECOMMENDATIONS:

Current psychometric findings indicate that Delmar has uneven cognitive skills ranging from high average to low average. He attained a VIQ of 93, a PIQ of 114 and a FSIQ of 103 on the WASI, and a Full Scale standard score of 92 on the CAS. On the four PASS Scales comprising the Full Scale of the CAS, successive processing was found to be a relative strength, and simultaneous processing a relative weakness. Specially, he attained a standard score of 94 on the PLAN Scale, 88 on the SIM Scale, 91 on the ATT Scale, and 108 on the SUC Scale. Delmar was found to have age-appropriate visual-motor perception/integration skills. On the VMI, he earned a developmental age equivalent of 11years, 3 months and a standard score of 96. With the exception of arithmetic, Delmar's basic academic skills were found to be at or above grade expectancy. He scored at the eighth grade level in reading (word recognition), seventh grade level in spelling, and fifth grade level in arithmetic.

Findings from the CPRS-RS, a parent-report questionnaire, suggested that Delmar exhibits behaviors that are consistent with an attention deficit disorder. He scored in the clinically significant range on scales of Cognitive Problems/Inattention, Hyperactivity, and Conners' ADHD Index. In October 2000, Prince George's County Public School provided him with a Section 504 Plan "to address academic concerns affected by his ADHD." His paternal grandmother and legal guardian, Marian Murphy, reported to this examiner that his current pediatrician has referred him to a psychiatrist to rule out ADHD. It is important to note that Delmar did not exhibit any overt signs of an attention

COGNITIVE PSYCHOLOGICAL EVALUATION (continued):    Page 7 of 7
William, Delante DOB: ___/89

deficit disorder during testing. In addition, he scored in the "average" range in attentional processing. Therefore, more extensive testing is needed before this examiner can rule on a clinical diagnosis of ADHD.

The overall findings from this cognitive psychological evaluation concur with the following DSM-IV multiaxial diagnosis:

| | |
|---|---|
| Axis I: | 315.1  Mathematics Disorder |
| Axis II: | V71.09 No Diagnosis on Axis II |
| Axis III: | Seasonal Allergies |
| Axis IV: | Educational problems: academic weaknesses in math, possible problems with inattention, disorganization, and difficulty completing assignments Problems with primary support group: H/O maternal and paternal drug abuse |
| Axis V: | GAF = 70 (current) |

### Recommendations:

➢ Delante should be referred to special education for placement in an appropriate school program that can address his academic needs. He requires academic remediation in math, and behavior management as needed in the classroom.

➢ Delante should receive group psychosocial counseling at school once weekly for 45 minutes to enhance his social skills and aid him in developing age-appropriate friendships.

➢ Delante should be referred for a neuropsychological or psychiatric evaluation to further investigate his reported problems with inattention.

Prepared by:    Sandra R. Saulter, Ph.D., Clinical Psychologist

*Sandra R. Saulter, Ph.D.*

Licensed/District of Columbia
Registrant/National Register of Health Service Providers in Psychology

DW-04

PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS
UPPER MARLBORO, MARYLAND   20772

CONFIDENTIAL                                              CONFIDENTIAL

DEPARTMENT OF PSYCHOLOGICAL SERVICES

PSYCHOLOGICAL REPORT

[   ] EVALUATION   [ X ] ASSESSMENT   [   ] REEVALUATION

NAME: D█████ W███████  STUDENT #:000382703  SCHOOL: Berkshire Elementary

ADDRESS: __6409 Pennsylvania Avenue # 202, Forestville, MD 20747__

DATE OF BIRTH: ███/89 AGE: 10-7   SEX: M   GRADE: _5_

PARENT/GUARDIAN: __Barbara Wilkins__

HOME PHONE:301-516-5774  WORK PHONE(s): MOTHER: 301-853-3102 FATHER: _____

DATE OF REFERRAL: 5/2/00  CURRENT ASSESS: 5/2/00  PRIOR ASSESS: __N/A__

PSYCHOLOGIST: Shannon Holmes, Psy. M.  OFFICE: OHSDC  PHONE: (301)749-4384

REASON FOR REFERRAL:
[ ] Appropriate Placement/Program
[ ] Behavioral/Emotional Concerns
[ ] Academic/Developmental Concerns
[ ] Re-evaluation
[X] Other: Attentional Concerns

TECHNIQUES UTILIZED:                PSYCHOMETRICS:
[X] Review of records               [ ] WISC-III
[ ] Observation                     [ ] WAIS-R
[ ] Interview                       [ ] WPPSI-R
    Consultation with:              [ ] S-Binet, 4th Ed.
[X] Parent                          [ ] McCarthy
[X] Teacher, Counselor, Principal   [ ] K-ABC
[ ] Other: _____              [ ] Other: _____

_____:              _____ _____       _____ _____ __ ____
[ ] Drawings         [X] ADHD            [ ] AAMD/AAMR
[ ] Rorschach        [ ] Behavior        [ ] Vineland
[ ] TAT or CAT       [ ] Self            [ ] Other:_____
[ ] Roberts          [ ] Social/Emotional
[ ] Incomplete       [ ] Other: _____  SUPPLEMENTAL TESTS:
    Sentences                           [ ] Bender
[ ] Other: _____                     [ ] VMI
                                        [ ] VADS
                                        [ ] Other: _____

STUDENT WAS EVALUATED IN HIS/HER PRIMARY LANGUAGE: [X] YES, English [ ] NO
                                                       See Narrative

THE INSTRUMENTS SELECTED ARE VALID FOR THIS STUDENT: [X] Yes [ ] No- See
                                                             Narrative

DW-04


-09

# PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS
## UPPER MARLBORO, MARYLAND   20772
## PSYCHOMETRIC SUMMARY

CONNERS' RATING SCALE - REVISED (Long Form)

| Scales | Parent | Teacher |
|---|---|---|
| Oppositional | Average | Poss. Significant |
| Cognitive Problems | Poss. Significant | Significant |
| Hyperactivity | Average | Borderline |
| Anxious-Shy | Average | Borderline |
| Perfectionism | Average | Average |
| Social Problems | Average | Average |
| Psychosomatic | Average | N/A |
| Conners' ADHD Index | Average | Significant |
| Restless-Impulsive | Average | Poss. Significant |
| Emotional Lability | Average | Average |
| Global Index - Total | Average | Borderline |
| Inattentive | Average | Significant |
| Hyperactive-Impulsive | Average | Borderline |
| DSM-IV - Total | Average | Significant |

ADDITIONAL TESTS ADMINISTERED: None

Recommendations in this report will be transmitted to the appropriate school
team for consideration regarding implementation.

PS-11  (Revised 12/99)

PSYCHOLOGICAL ASSESSMENT REPORT PART II:    NARRATIVE

Name:  D█████████ W █████████
DOB:  █████████-89
School:  Berkshire Elementary School

REASON FOR REFERRAL:

D█████████ is a ten-year-old fifth grader attending Berkshire
Elementary School.  Presently, D█████████ has been referred to the
multidisciplinary team to investigate the possibility of
attentional issues which may be negatively impacting his academic
performance.  His teacher reported that D█████████ had not completed
homework or classwork assignments making it difficult to assess
his academic progress.  Of positive note, she indicated that
D█████████ is artistic and willing to help others with physical
activities such as cleaning, running errands and moving
furniture.  She also rated his oral expression and reading
comprehension as areas of relative strength.  D█████████ mother
appeared to share many of the teacher's concerns.  She stated
that D█████████ is receiving failing grades and appears to have a
short attention span at school, although he obeys adults at home.

BACKGROUND INFORMATION:

According to the parent questionnaire completed with
D█████████ mother as the informant, D█████████ is the youngest of
three children.  He lives with his mother, stepfather and
siblings.  No serious problems were experienced during the
pregnancy or delivery and all developmental milestones were
achieved within expected timeframes.  D█████████ mother rated his
general health as *excellent*.  She described D█████████ interests
as skateboarding and cars and stated that he is a good reader.
Additionally, she endorsed the following social-behavioral
characteristics as describing D█████████:

enjoys reading; has a short attention span; has a difficult time
with paper and pencil tasks; avoids homework; is overactive;
tells lies; is easily influenced by others sometimes and is
fidgety.

RATING SCALE DATA:

Due to reports of inattention and problems with
organization, D█████████ mother and his classroom teacher were
asked to complete the Conners' Rating Scales - Revised, Long
Form, a screening tool for Attention Deficit Hyperactivity
Disorder (ADHD).  Scores indicate that the respondents differ in
their perceptions of many of Delonta's behaviors.

According to the parent rating scale, scores fell within the
Average range in all assessed areas with the exception of the
Cognitive Problems scale.  The corresponding score was described
as Possibly Significant.  The teacher form also indicated serious

W██████, D████████                                                                  4
████-89

concerns in this area with a significantly elevated score.
Cognitive problems are defined on the Conners' Rating Scale as
learning difficulties, organizational, attention and
concentration problems, and difficulty completing schoolwork.
D████████ mother endorsed the following items as being *pretty
much* or *very much true* of him:  fails to give close attention to
details or makes careless mistakes in schoolwork, work, or other
activities; has difficulty doing or completing homework; avoids,
expresses reluctance about, or has difficulties engaging in tasks
that require sustained mental effort (such as schoolwork or
homework); fails to complete assignments; has trouble
concentrating in class; and needs close supervision to get
through assignments.  Frequently, students with attention
problems also receive high scores on this scale as often
inattention negatively impacts academic performance.

In contrast, the teacher rating scale reflected serious
concerns across a number of areas including the following:
inattention, Conners' ADHD Index, and DSM-IV Total.  These
results suggest that at school, D██████ is easily distracted, has
difficulty concentrating, often appears restless, acts
impulsively and exhibits many problematic behaviors, in general.
Children with high scores on the <u>Inattention</u> scale tend to have
trouble concentrating on tasks which require sustained mental
effort.  Inattention is a central feature of ADHD.

The <u>Conners' ADHD Index</u> measures the presence of ADHD
symptoms.  D████████ classroom teacher rated the following items
as being *very much true* of D██████:  fails to finish things he
starts; is inattentive, easily distracted; only pays attention to
things he is really interested in; and distractibility or
attention span is a problem.  An elevated score on the <u>DSM-IV -
Total</u> scale indicates an unusually high correspondence to DSM-IV
criteria for combined Inattention and Hyperactive-Impulsive Type
ADHD.  In addition, D████████ teacher endorsed five of nine items
which correspond to a diagnosis of Attention Deficit
Hyperactivity Disorder, Predominantly Inattentive Type.

Potentially serious concerns were reported by D████████
classroom teacher on the <u>Restless-Impulsive</u> and <u>Oppositional</u>
scales.  The corresponding scores were described as Possibly
Significant indicating that at school, D██████ often displayed
high levels of restlessness, impulsivity and inattention and  is
likely to break rules, have problems with authority, and become
more easily annoyed and angered than other children his age.

It is not unusual to get disparate scores on some scales
from multiple respondents.  There are a number of possible
reasons for this.  The child's behavior may actually be different
from one context to the next; one respondent's tolerance level
for problem behaviors may be higher or lower than the other's; or

W█████, D█████                                                                 5
████-89

the respondents may use different behavior management
strategies with varying degrees of effectiveness. Inconsistency
of reporting could also indicate that some of D█████ problems
are exacerbated by the behavioral, academic, and/or social
demands of an academic setting. Based on his academic history
and current rating scale data, it is possible that Delonta is
experiencing some attentional difficulties which may be
negatively affecting his academic performance.

SUMMARY:

     D█████ is a ten-year-old fifth grader at Berkshire
Elementary School. Due to reports of inattention and
disorganization, a screening was conducted to rule out the
presence of Attention Deficit Hyperactivity Disorder. Results of
behavior rating scales and academic history are suggestive of the
presence of Attention Deficit Hyperactivity Disorder,
Predominantly Combined Type.

RECOMMENDATIONS:

1.    The results of this evaluation will be forwarded to the
      multidisciplinary team to determine eligibility for
      instructional modifications.

2.    D█████ mother may wish to consult with her pediatrician
      or other health professional with expertise on the diagnosis
      and treatment of Attention Deficit Hyperactivity Disorder.

3.    Teachers should provide a highly structured classroom
      environment and limit distractions. D█████ should be
      seated near the front of the room and away from the window,
      door, and other high traffic areas.

4.    Teachers should be sure they have D█████ full attention
      before giving clear, concise instructions or assigning work.
      They may find it understanding by having Delonta repeat or
      paraphrase questions. Also it may be helpful to give
      D█████ periodic reminders to stay on task.

5.    Due to D█████ inattention and distractibility, academic
      assignments may need to be modified, such as breaking larger
      tasks down into smaller, more manageable steps. Delonta's
      progress should be monitored frequently.

6.    Teachers may wish to use a timer or other incentives to
      challenge D█████ to complete more of his assignments in
      class. In addition, D█████ should be encouraged to use his
      agenda book to record homework assignments. His agenda book
      should be reviewed regularly by his teachers and parent to
      help increase task completion.


W███████, D█████████
█████-89                                                                     6

7.  Individual and/or group counseling as they are available in
    school may be useful for D███████ to help improve his
    motivation and decision-making skills.




                              Shannon Holmes  6·20·00
                              Shannon Holmes, Psy. M.   Date
                              Certified School Psychologist





*Making a Difference*

## INTERDYNAMICS, INC.
### *Evaluations and Therapy*
### Psychiatric Evaluation

**Student Name:** D█████ W█████
**Date of Birth:** █████████, 1989
**Date of Report:** July 23, 2004
**Address:** 5019-11 Street, NE
      Washington, DC 20017
**Telephone:** (H) 202-832-1048
**Examiner:** Spencer Johnson, MD
      Psychiatrist

## Presenting Problems:

D█████ was referred for a psychiatric evaluation to assess emotionality and determine appropriate treatment modes, related to academic achievement and social adjustment.

D█████ symptoms and behavioral difficulties included the following: poor academic progress, inattentiveness, self-isolation and avoidant behaviors.

The following report was reviewed as a part of this Psychiatric Evaluation: A Cognitive Psychological Evaluation dated May 6, 2002 by Dr. Sandra Saulter.

## Social History:

D█████ and his paternal grandmother, Ms. Marion Murphy, provided the historical information for this evaluation. He resides with his grandmother, aunt and younger cousin and has two older siblings who reside on their own. Ms. Murphy has had legal guardianship of D█████ since he was two years old as a result of his mother's inability to care for him. According to Ms. Murphy, when D█████ mother, Barbara Jean Wilkins, had him her parents were unwilling to help care for him. Ms. Wilkins was unable to establish a strong relationship with D█████ prior to her death of breast cancer in August 2003. Although they visited at times, Ms. Murphy states that the visits were short and when allowed to live with his mother for six month intervals, his behavior became increasingly negative. Ms. Murphy took D█████ to see his mother frequently when his mother's condition became more serious. While D█████ has a very good relationship with his immediate family, he has not established the type of bond with his father that Ms. Murphy feels is appropriate. According to Ms. Murphy, Kevin Stevenson, D█████ father, has always treated him more like a brother than a son and has not made enough effort to bond with him. Equally important is the history of substance abuse by both of D█████ parents in his early years of development. Mr. Stevenson eventually ceased the use of drugs and entered into the Navy where he has made a change in his life. Significantly, Ms. Murphy states that he now puts a little more effort into spending time with D█████

According to Ms. Murphy, D█████ was carried full term and delivered vaginally. She states that both parents were using crack cocaine during the pregnancy, which could have led to his delayed

knowledge is average. His concentration was good. He performed serial 7's with one mistake and spelled the word "world" backwards.

**Diagnosis:**

| | |
|---|---|
| Axis I | 314.0 History of Attention Deficit Hyperactivity Disorder |
| | 315.9 Learning Disability |
| | 300.4 Dysthymic Disorder |
| Axis II | Deferred |
| Axis III | Seasonal Allergies |
| Axis IV | Moderate (early separation from mother, abandonment from father, death of mother and academic difficulties in math) |
| Axis V | GAF (65) |

**Discussion and Recommendation:**

D█████ W█████ is a 14 year-old African American male who is going into the 10th grade. He arrived to this testing site with his paternal grandmother, Ms. Murphy. He lives with his grandmother, aunt and cousin. He has been living with his grandmother since he was three months old but spent some time living with his biological mother. His mother died last year of breast cancer. During the interview he didn't exhibit any signs of hyperactivity. He admits to having problems with math. He has been taking Concerta 54 mgs daily, which might improve his concentration. At this time, he doesn't exhibit any sign of inattentiveness or behavioral problems. D█████ appears to respond well to one to one interactions. His performance during this evaluation yielded greater results than reported school experiences. Reported areas of concern are consistent with characteristics of ADHD. However, medication is reported to result in limited improvement. Nonetheless, D█████ reports difficulty in attending to multisteps. He also has difficulty with initiating and completing tasks. Organization problems are also reported.

Further complications of abandonment and the death of the maternal figure in his life have further impeded D█████ emotional adjustment. D█████ histories of abandonment and significant loss have impaired his sense of self work and feelings of belonging. These feelings have incapacitated him in areas of independence, assertiveness and social savvy. He is lost in a large class and would be overwhelmed in a population of aggressive acting out youngsters. He would benefit from a very small, highly structured program with activities designed to promote a sense of belonging and a feeling of some control. He would benefit from a re-evaluation of current medication trials, individual, group and family therapy as well as specialized instruction in areas of academic deficits. D█████ program should be success oriented with externalized prompting and organization.

Sincerely,

*Spencer Johnson*
Spencer Johnson, MD
Psychiatrist





*Making a Difference*

### INTERDYNAMICS, INC.
*Evaluations and Therapy*

## Social Work Evaluation Report

**Student Name:** D█████ Wi█████    **DOB:** ████/89    **Age:** 14
**Primary Language:** English    **Grade:** 9
**Parent/Guardian:** Marian Murphy (paternal grandmother)
**Address:** 5019 11th St. NE Washington, DC 20017
**Telephone#** (202) 832-1048
**Referral Source:** Guardian
**Reason for referral:** D█████ was referred for an evaluation due to increasing concerns regarding his educational placement.

### Developmental/Medical History

D█████, was born of natural delivery at Howard University Hospital following his mother's full term pregnancy. Delivery was unremarkable, however D█████ mother and father are reported to have a history of substance abuse involving crack cocaine. At two years old, D█████ fell off a chair and was knocked unconscious for several minutes after hitting his head on the floor. He was observed overnight at Children's Hospital and released after x-rays revealed no significant damage. At twelve years old he was evaluated at the Educational Diagnostic Institute to assess his current level of cognitive functioning which revealed that D█████ was functioning in the "average" range of intelligence as compared with his peers. He did test well below grade level however in basic arithmetic leading to a diagnosis of Mathematics Disorder. Recommendations included referrals for special education services, in school psychosocial counseling and a referral for a neuropsychological evaluation. D█████ continues to take 50 mg. of Concerta daily as a treatment for ADHD and Allegra for allergies.

Ms. Murphy reports that D█████ achieved all developmental milestones on time including crawling, sitting, walking and talking.

### Family History

### Household Composition

| Name | Age | Relationship | Occupation |
|------|-----|--------------|------------|
| Marian Murphy | 57 | grandmother | day care provider |
| Tamira Murphy | 30 | aunt | |
| Tanisha Murphy | 8 | cousin | |
| Delonta Wilkins | 14 | self | |

D▮▮▮▮ lives in a four bedroom house with his grandmother, aunt and cousin where they've been for approximately nine years. With the exception of two brief periods, D▮▮▮▮ has been in the care of his grandmother since he was two months old due to his mother's inability to provide care for him. When D▮▮▮▮ was approximately eight years old he went to live with his mother after she convinced the grandmother that she was capable of taking care of him. D▮▮▮▮ returned to the grandmother's home after several months because of an investigation of the mother's house initiated by DC Child and Family Services. Additionally, D▮▮▮▮ was reportedly missing a lot of days from school during this time. At approximately twelve years old, D▮▮▮▮ went to live with his mother again and returned to the grandndmother's house after one semester due to his mother's inability to get him to school on a consistent basis. D▮▮▮▮ continued to maintain sporadic contact with his mother, staying with her occasionally overnight, until she passed away of breast cancer in August 2003 at the age of forty. There is no knowledge of her educational or work history.

D▮▮▮▮ father, Kevin Stevenson (38), lives in Lanham, Maryland and only recently began showing an interest in his well being. A reunification of sorts occurred during the funeral of D▮▮▮▮ mother. Mr. Stevenson had maintained distance between he and D▮▮▮▮ because of the circumstances under which D▮▮▮▮ was conceived. Apparently, Mr. Stevenson was involved in another relationship when he had an affair with D▮▮▮▮ mother. He continued to harbor feelings of resentment toward mother and child throughout D▮▮▮▮ young life. Mr. Stevenson has no other children and is in the process of getting married. He is a graduate of Roosevelt High School and completed three years in the Navy. He's returned to school to study electrical engineering and has a job with a construction company doing electrical work.

D▮▮▮▮ gets along well with all members of the household although he may have the best relationship with his aunt Tamira who has been sort of a big sister to him. He does chores including taking out the trash, cleaning his room and washing the family cars. He also cuts grass for some of the neighbors.

## Social/Behavior Characteristics

D▮▮▮▮ is described by Ms. Murphy as being shy and immature for his age. He doesn't have many friends and prefers playing with children who are younger than he is.

He enjoys playing video game and sports, particularly basketball.

**School History**

D█████ attended the first grade at Sacred Heart Elementary School where Ms. Murphy reports that he performed on grade level although there were frequent reports of being overactive. He attended the second grade at Nativity Catholic Academy where he was initially tested for ADHD due to ongoing reports of his inability to remain seated during class time and difficulties following instructions. D█████ attended third grade at Rudolph Elementary School during a brief stay with his mother. Ms. Murphy reports that he had poor attendance, failed to complete most of his assignments and had difficulty remaining on task. He continued to attend Rudolph Elementary through the fifth grade with much of the same problems although he returned to live with his grandmother. In the sixth grade, D█████ attended Birkshire Elementary School in Prince George's County while living with his mother, experiencing failing grades as a result of poor attendance. D█████ returned to live with his grandmother after one semester, however Birkshire allowed her to transport him their every day from Washington, DC Ms. Murphy reports that he attended the seventh and eighth grade at Backus Middle School where he began to make some progress due to special education assistance received for math and English.

**Summary**

D█████ Wilkins is a fourteen year old African-American male with a history of academic problems related to a variety of factors including, but not limited to, unstable home life, inability to remain focused, poor self control and problems with mathematics.

D█████ has experienced a great deal of trauma associated with several failed attempts to reunite with his biological mother. Her inability to provide a nurturing environment for him contributed to issues related to trust, anxiety, insecurity and lack of continuity regarding academic progress. There would have been a high degree of distractibility for him during those times due to the fragile nature of their relationship, thereby affecting his ability to concentrate in the classroom. Also, associated feelings related to her death such as sadness, anger, uncertainty and depression would have affected his progress as well. Additionally, until recently, D█████ father hadn't displayed an interest in developing a relationship with him causing further emotional damage due to issues related to abandonment.

D█████ could benefit from a small structured academic environment that has a therapeutic component to address ongoing issues related to grief and loss, developing appropriate coping skills, as well as helping with forming a bond with his father. A previous recommendation regarding individual therapy should be adhered to weather it takes place in school or at an independent site. A neuropsychological evaluation is recommended to address possible concerns related to exposure to drugs inutero or any lingering effects of a head injury suffered when he was a toddler. Additionally, although he has the overall cognitive ability to succeed, he will continue to need special assistance with overcoming significant delays with mathematics.

Finally, this is a very crucial stage in D████ development, adolescence, which will continue to present challenges regarding identity formation, peer pressure and academic achievement. All possible supports and interventions should be explored in order to assist him in becoming the most productive individual he can be.


James Thomas, MSW

8/19/04

Date

Dw-07

 **FILE**

# Law Office,
## Christopher N. Anwah, LLC
Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
   (DC, MD, NJ)
Fatmata Barrie, Esq.
   (DC, FL)
Panya Monford, Esq.
   (MD)
December 18, 2004

1003 K Street, N.W.
  Suite 500
Washington, D.C. 20001
Phone: (202) 626-0040
Fax: (202) 626-0048

**By Fax: (202) 442-5524**

Office of Mediation and Compliance
D.C. Public Schools
825 North Capitol Street, N.E.
Washington, D.C. 20002

                    RE:    D██████ W██████
                    DOB:  ██████/89

Dear Sir/Ms.:

Our office is writing to inform you that the Settlement Agreement signed on June 24, 2004 gave DCPS fifteen (15) business days of the receipt of the last independent evaluation to review and to schedule an MDT/IEP meeting. Our office on September 5, 2004 provided Mr. Jack Schreibman, Esq., Attorney Advisor, copies of the independent evaluations for DCPS's review and to schedule an MDT/IEP; however, to date, DCPS has not contacted our office to provide us with a copy of its review of the independent evaluations and to provide us with a letter of invitation with three (3) dates for our consideration to schedule an MDT/IEP meeting. Therefore, DCPS has violated the Settlement Agreement. If you have any questions, please contact the undersigned staff personnel at either (202) 626-0040 or (202) 270-9156.

Thank you for your prompt attention and cooperation regarding this matter.

Sincerely,

Annie R. Pressley, J.D.
Law Clerk for Christopher Anwah, Esq.
Attorney for D██████ W██████

cc:    Client's file

# Law Office,
# Christopher N. Anwah, LLC

Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
   (DC, MD, NJ)
Fatmata Barrie, Esq.
   (DC, FL)
Panya Monford, Esq.
   (MD)

1003 K Street, N.W.
Suite 500
Washington, D.C.  20001
Phone: (202) 626-0040
Fax: (202) 626-0048

## FACSIMILE  COVER  LETTER

DATE:
    December 18, 2004

TO:
    Office of Mediation and Compliance

COMPANY
    D.C. Public Schools

FAX NUMBER:
    (202) 442-5524

FROM:
    Christopher Anwah, Esq./Annie R. Pressley, J.D. - Law Clerk/Education Advocate

TOTAL NUMBER OF PAGES INCLUDING COVER SHEET _2_

MESSAGE: INFORMING OF VIOLATION OF SETTLEMENT AGREEMENT FOR
   D██████ W███████ - DOB:███/89

If there is any problem with this transmission, please call as soon as possible at (202) 626-0040

### *** CONFIDENTIALLY NOTE ***

The pages accompany this facsimile transmission contain information from the CHRISTOPHER ANWAH, ESQ. law offices which is confidential or privileged, or both.  The information is intended to be for the use of the individual or entity named on this cover letter.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.  If you have received this facsimile in error, please notify us by telephone immediately at (202) 626-0040 so that we can arrange for the retrieval of the original documents at no cost to you.

38

XMT REPORT

Dec. 19 2004 02:36AM

| NO. | OTHER FACSIMILE | START TIME | USAGE TIME | MODE | PAGES | RESULT |
|-----|-----------------|------------|------------|------|-------|--------|
| 01  | 202 442 5524    | Dec. 19 02:35AM | 01'12 | TX | 02 | OK |

*Unto DCPS Mediation & Complaint — Violation of Settlement Agreement signed on 6/24/04 for ▮▮▮▮▮ ▮▮▮▮▮. ap*

_Dw-08_

FILE

# Law Office,
## Christopher N. Anwah, LLC

Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
   (DC, MD, NJ)
Fatmata Barrie, Esq.
   (DC, FL)
Panya Monford, Esq.
   (DC)

Federal District Building
1010 Vermont Avenue, N.W.
 Suite 600
Washington, D.C. 20005
Phone: (202) 347-7026
Fax: (202) 347-7108
Email: Lawoffcna@aol.com

September 5, 2004

**By Fax: (202) 442-5098**

Mr. Jack L. Schreibman, Esq.
Attorney Advisor
DCPS Office of the General Counsel
825 North Capitol Street, N.E.
Washington, D.C. 20002

        RE:    D██████ W████████
        DOB:  ██████/89

Dear Mr. Schreibman:

Our office is writing to submit the independent psychiatric and social history evaluations that have been completed for D█████ W██████, per the Settlement Agreement signed between DCPS and our office on June 24, 2004. DCPS in the Settlement Agreement agreed to convene an MDT meeting within fifteen (15) business days of the receipt of the independent evaluations, and to update Delonte's IEP as warranted. Also, placement should be discussed and determined when the MDT team meet.

Therefore, we are requesting that DCPS review the independent evaluations and then contact the undersigned staff personnel to arrange for a mutual date and time for the scheduled MDT/IEP meeting for all parties concerned at either (202) 347-7026 or (202) 270-9156.

Thank you for your immediate attention and cooperation regarding this matter.

40

Sincerely,

Annie R. Pressley, J.D.
Law Clerk for Christopher Anwah, Esq.
Attorney for D██████ W██████

Attachments: (2)

cc:    Client's file

# Law Office,
# Christopher N. Anwah, LLC

Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
   (DC, MD, NJ)
Fatmata Barrie, Esq.
   (DC, FL)
Panya Monford, Esq.
   (MD)

Federal District Building
1010 Vermont Avenue, N.W.
Suite 600
Washington, D.C. 20005
Phone: (202) 347-7026
Fax: (202) 347-7108
Email: Lawoffcna@aol.com

## FACSIMILE COVER LETTER

**DATE:**
    September 5, 2004

**TO:**
    Mr. Jack Schreibman - Attorney Advisor

**COMPANY**
    DCPS Office of the General Counsel

**FAX NUMBER:**
    (202) 442-5098

**FROM:**
    Christopher Anwah, Esq./Annie R. Pressley, J.D. - Law Clerk/Education Advocate

**TOTAL NUMBER OF PAGES INCLUDING COVER SHEET __10__**

**MESSAGE: SUBMISSION OF INDEPENDENT EVALUATIONS FOR ▮▮▮▮▮▮
▮▮▮▮▮▮ - DOB: ▮▮▮/89 AND REQUEST TO SCHEDULE MDT/IEP MEETING**

If there is any problem with this transmission, please call as soon as possible at (202) 347-7026

### *** CONFIDENTIALLY NOTE ***

The pages accompany this facsimile transmission contain information from the IWEANOGE & ANWAH law offices which is confidential or privileged, or both. The information is intended to be for the use of the individual or entity named on this cover letter. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this facsimile in error, please notify us by telephone immediately at (202) 347-7026 so that we can arrange for the retrieval of the original documents at no cost to you.

2002 WED 18:21 FAX 2024425524          DCPS SPECIAL ED DEPT                    DW-09

**CONFIDENTIAL**
**HEARING OFFICER'S DETERMINATION**

**STUDENT:** D██████ W██████      **DATE OF BIRTH:** ████████, 1989

**CASE NUMBER:**    2002-1501

**ADDRESS:**    5019-11th Street, N.E., Washington, D.C. 20019

**DATE OF HEARING:**      August 20, 2002

**PRESENT SCHOOL:**      IDEAL Public Charter School

**DATE OF FORM 6:**      NA

**DATE OF MOST RECENT DCPS IEP:**    NA

**DATE OF MOST RECENT DCPS PLACEMENT NOTICE:**    NA

**PRESENT AT THE HEARING:**

**DCPS:**

Quinne Harris-Lindsey          Attorney Advisor

**Student:**

Christopher Anwah, Esq.          Counsel for the parent


**STUDENT'S REPRESENTATIVE:**      Christopher Anwah, Esq.
**ADDRESS:**          1220 L. Street, N.W., Suite 700, Washington, D.C. 20002

**SCHOOL SYSTEM'S REPRESENTATIVE:**      Quinne Harris-Lindsey, Esq.
**ADDRESS:**    825 North Capitol Street, N.E. 9th Floor, Washington, D.C. 20002

43



**IN THE MATTER OF**
D█████ W███████ (D.O.B. ██████████, 1989)

## INTRODUCTION:

A Due Process Hearing was convened on August 20, 2002 at the District of Columbia Public Schools ("DCPS"), 825 North Capitol Street, N.E. Washington, D.C. 20002, concerning D█████ W█████. The hearing was held pursuant to a hearing request dated June 26, 2002, submitted by Christopher Anwah, Esq. Mr. Anwah represented the student at the Hearing. Quinne Harris-Lindsey represented DCPS at the Hearing.

## JURISDICTION:

The Hearing was held and this decision was written pursuant to the *Individuals with Disabilities Education Act* (I.D.E.A.), P.L. 101-476, as amended by P.L. 105-17, the *Rules of the Board of Education of the District of Columbia and the DC Appropriations Act, Section 145,* effective October 21, 1998.

## DUE PROCESS RIGHTS:

Mr. Anwah waived a formal reading of the due process rights.

## DOCUMENTS:

**On Behalf of DCPS:**

DCPS-01, Disclosure Letter dated August 14, 2002

**On Behalf of the Parent:**

KW-01 through KW-08, per Disclosure Letter dated August 13, 2002

## SUMMARY OF RELEVANT EVIDENCE:

The Hearing Request contends that the parent transferred D█████ to IDEAL Public Charter School ("IDEAL") from the Thurgood Marshall Middle School in Temple Hills, Maryland. She said that she gave the Co-Principal of IDEAL a copy of D█████ transfer along with a copy of a § 504 plan. D█████ records indicated that he had received special education services. However, D█████ did not receive special education services from IDEAL.

As a result a settlement agreement entered into February 28, 2002, DCPS agreed to complete a psycho-educational evaluation, speech and language evaluation and a social history assessment by March 25, 2002 and then convene a MDT team meeting. Additionally, if DCPS failed to conduct the evaluations, then DCPS agreed that it would fund independent evaluations.

44

This is the final administrative decision in this matter. Appeals on legal grounds may be made to a court of competent jurisdiction within 30 days of the rendering of this decision.

_David R. Smith_  8-23-02

David R. Smith
Hearing Officer

Date _8/27/02_



# Law Office,
# Christopher N. Anwah, LLC

Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
   (DC, MD, NJ)
Fatmata Barrie, Esq.
   (DC, FL)

Federal District Building
1010 Vermont Avenue, N.W.
 Suite 600
Washington, D.C. 20005
Phone: (202) 347-7026
Fax: (202) 347-7108
Email: Lawoffcna@aol.com

March 26, 2004

**By Fax: (202) 541-0573**

Mr. James Ricks
Principal
Village Learning Center Public Charter School
33 Riggs Road, N.E.
Washington, D.C. 20011

                RE:   D██████ W██████
                DOB: ██████/89

Dear Mr. Ricks:

Our office represents Ms. Marian Murphy and her son, D██████ W██████ in regards to D██████ special education services. Prior to D██████ registering at your school, a due process hearing was held on August 20, 2002 and the Hearing Examiner ordered that the D.C. Public School(DCPS) complete a social history and psychiatric evaluations within thirty (30) days from the date of his order. Also, that DCPS was to convene MDT/IEP-placement meeting within ten (10) days after the last evaluation was completed. After speaking with Ms. Murphy, she has informed us that she was not certain if DCPS had complied with that order. Further, that those evaluations, once completed, were to be forwarded to our office. We have reviewed D██████ file in our office and we do not have any record that indicates that those evaluations were ever completed and forwarded to us.

Therefore, we are requesting that Village Learning Center Public Charter School ("Village") inform us as to the completion of those evaluations and to forward us copies by close of business Tuesday, March 30, 2004. In addition to those evaluations, please forward us a copy of D██████ 2003/04 IEP. If you have any questions, please contact our office law clerk, Ms. Annie R. Pressley. Ms. Pressley can be reached at either (202) 347-7026 or (202) 270-9156.

46

Thank you for your immediate attention and cooperation regarding these matters.

Sincerely,

Christopher Anwah, Esq.
Attorney for D████ W██████

cc:      Client's file

# Law Office,
# Christopher N. Anwah, LLC

Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
   (DC, MD, NJ)
Fatmata Barrie, Esq.
   (DC, FL)

Federal District Building
1010 Vermont Avenue, N.W.
 Suite 600
Washington, D.C. 20005
Phone: (202) 347-7026
Fax: (202) 347-7108
Email: Lawoffcna@aol.com

## FACSIMILE COVER LETTER

DATE:
   March 26, 2004

TO:
   Mr. James Ricks - Principal

COMPANY:
   Village Learning Center Public Charter School

FAX NUMBER:
   (202) 541-0573

FROM:
   Christopher Anwah, Esq.

TOTAL NUMBER OF PAGES INCLUDING COVER SHEET __2__

MESSAGE: Request for evaluations ordered by HOD for D██████ W██████ - DOB: ████/89

If there is any problem with this transmission, please call as soon as possible at (202) 347-7026

### *** CONFIDENTIALLY NOTE ***

The pages accompany this facsimile transmission contain information from the IWEANOGE & ANWAH law offices which is confidential or privileged, or both. The information is intended to be for the use of the individual or entity named on this cover letter. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this facsimile in error, please notify us by telephone immediately at (202) 347-7026 so that we can arrange for the retrieval of the original documents at no cost to you.

06/21/2004 12:30 FAX 202 442 5098    OFF.OF GENERAL COUNSEL
06/16/2004  10:23    2025410579    VLCPCS

DW-11

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
### WASHINGTON, D.C.
### INDIVIDUALIZED EDUCATIONAL PROGRAM

DCPS - IEP Page 1 of 4
Additional Comments: ☐

### I. IDENTIFICATION INFORMATION

Student Name: Last W____ First D____ MI A

Student ID 0038270.3  Soc. Sec. No. ____ Age: 14 Grade 9

Gender ☑M ☐F  Date of Birth __/__/89  Ethnic Group African American

Address 5019 11th Street NE

Washington DC 20017

☐ Non-attending

Attending School Village Learning Ctr. Home School Backus MS

☐ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS.

Parent Marion Murphy

Address at (if different from student): ☐ Parent ☐ Guardian ☐ Surrogate

Telephone: Home 202-823-1048  Work 202-423-8159

### II. CURRENT INFORMATION

Date of IEP Meeting: 4/22/04
Date of Last IEP Meeting: 11/7/04
Date of Most Recent Eligibility Decision: 4/22/04

Purpose of IEP Conference:
☐ Initial IEP  ☑ Review of IEP
☐ Requested Eval.  ☐ 3yr ReEval.

Indicate level of Standardized Assessment: III

(ADDENDA TO BE ATTACHED AS NEEDED)
Check the appropriate box(es)
☐ BEHAVIOR  ☐ TRANSPORTATION
☐ ESY  ☐ TRANSITION

### III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements | |
|---|---|---|---|---|---|
| Student | English | English | English | Native Lang | Oral |
| Parent | English | English | English | Native Lang | Reg./Written |
| Home | English | English | English | Native Lang | |

### IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY !

| SERVICES | SETTING | FREQUENCY Hr. Min O/W/M | PROVIDER | BEGINNING DATE | DURATION |
|---|---|---|---|---|---|
| Specialized Instruction | | 6h W | Special Education Teacher | 4/22/2004 | 10 mos |
| Psychological Counseling | | 5M W | Psychologist | 4/22/2004 | 10 mos |

TOTAL 6.5 Hours Per Week

### V. Disability(ies)

Learning Disability

LD  ☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services: ☑ 0-20% ☐ 21-60% ☐ 61-100%

Percent of time NOT in a Regular Education Setting

### VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below.

SPED Man sped teacher

Keesha Blythe DCPS Placement Specialist
Marion Murphy Parent
DeMyra N. Gallo English teacher

I AGREE with the contents of this IEP...

Parent/Guardian Signature Marion Murphy Date 4/22/04

49

Student Name ~~Derrick Williams~~    Managing School **Village Learning Ctr**    | DCPS - IEP |
| Page 2 of 4 |

Student ID Number **00382703**    008 ~~___~~ **89**    Attending School

| VII. Present Educational Performance Levels in Areas Affected by the Disability | Additional Comments: |

**Academic Areas: (Evaluator)** Jennifer Penn

Score(s) When Available **WIAT  9/17/02**

Math Strengths:

~~Derrick~~ is able to add & subtract

Math Cal. SS **79**

Math Res. ___

See goal page: ___

Impact of disability on educational performance in general education curriculum:

Weaknesses in math impact his ability to participate in mainstream courses

Date: ___

Rdg. Com ___

Reading Strengths:

Rdg. Basic SS = 98

Written Ex. SS = 91

See goal page: ___

Impact of disability on educational performance in general education curriculum:

Date: ___

**Communication (Speech & Language) (Evaluator)**

Score(s) When Available

Exp.Lang. ___

Strengths:

Rec. Lang. ___

Artic ___

Voice ___

Impact of disability on educational performance in general education curriculum:

Fluency ___

Exp. Voc. ___

Rec. Voc. ___

See goal page: ___

Date: ___

**Motor/Health (Evaluator)**

Score(s) /Results When Available

Strengths:

___
___
___

Impact of disability on educational performance in general education curriculum:

See goal page: ___

Date: ___

**Social Emotional Behavioral Areas: (Evaluator)** Jennifer Penn

Score(s) When Available

Strengths:

Via    93

~~Derrick~~ is able to follow directions

PIа    114

TSа    103

Impact of disability on educational performance in general education curriculum:

See goal page: ___

Poor attending and social-relatedness impact peer relation

Date: 5/6/02

**Cognitive/Adaptive Behavior: (Evaluator)**

Score(s) When Available

Strengths:

___
___

Impact of disability on educational performance in general education curriculum:

See goal page: ___

Date: ___

**Prevocational Skills: (Evaluator)**

Score(s) When Available

Strengths:

___

Impact of disability on educational performance in general education curriculum:

See goal page: ___

Date: ___

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 2 of 4

50

OFF. OF GENERAL COUNSEL
VLCPCS

25410579

☑006
PAGE 07

| | Managing School | | | DCPS - IEP |
| DCS | 89 | Attending School | VLCPCS | Page 3 of 4 |

itional Comments:    Math

rea addressed by goal:    Math    Goal Number:

nonstrate (years progress in applied
n oving him from grade level to grade
h Mastery of the following short

Ed and SPED Teacher

an. degree and evaluation.

| JECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| t by 2 digits — Multiply 2 digits with and with out Regrouping accuracy | | Monthly |
| 2, 3, digit divisor with and Remainder with 80% | | Monthly |
| sle word problems involving operation with 80% accuracy | | Monthly |
| fract, like, and unlike fraction lo accuracy / Fractional computations with vacy | | Monthly |
| he place value of a number o accuracy | | Monthly |
| ill complete fractional computations o accuracy | | Monthly |

EVALUATION PROCEDURE(S)

n  Test  Documented Observation  Report  Other

hools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 3 of 4

51

08/21/2004 12:32 FAX 202 442 5098          OFF. OF GENERAL COUNSEL                    ☑ 007
    06/16/2004   10:23     2025410579          VLCPCS                                 PAGE  08

| Student Name | ~~Declaude~~ W~~itt~~ | | Managing School | | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number | 000382733 | DOB | Attending School | VLCPCS | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: | | Goal Number: |
|---|---|---|---|
| | Area addressed by goal: | SOCIAL-EMOTIONAL | |

**ANNUAL GOAL:** (including mastery criteria.)

D~~eclaude~~ will develop appropriate attending and social relatedness skills

Provider(s): School counselor

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Attend to tasks without becoming frustrated | | |
| Sit still during group activities | | |
| Attempt tasks before responding "I can't" or "I don't know how" | | |
| Attend to work time tasks until they are completed before moving on to another task | | |
| Participate in group activities Demonstrating continuing growth in social interactions | | |
| Accept the give and take of interactions with peers and adults | | |

**EVALUATION PROCEDURE(S)**

(Portfolio)  (Log)  Chart  Test  Documented Observation  Report  Other _____

District of Columbia Public Schools     07-02-2001     Division of Special Education     Appendix - A     IEP Page 3 of 4

52

06/21/2004 12:32 FAX 202 442 5098          OFF. OF GENERAL COUNSEL          ☑008
06/16/2004  10:23    2025410579                VLCPCS                          PAGE 09

| Student Name | ~~Delonta Wilson~~ | Managing School | VLCPCS | DCPS - 15 |
|---|---|---|---|---|
| Student ID Number | 00782703 | DOB: ~~89~~ | Attending School | Page 4 of 4 |

**Additional Comments:**

**IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION
SERVICE ALTERNATIVES**

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in regular education?     Yes     No

Explanation for removal out of regular education classroom.

> ~~Delonta~~ is unable to be academically successful in the general education classroom without proper support

**X. Supplementary Aids and Services**

| Classroom Needs (Do not name products or companies.) | SETTING | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyy) |
|---|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total | Hr/ Min | D/W/M. | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for testing:     None needed

Timing/Scheduling: Extended time

Setting: Small group

Presentation: Repeat and Rephrase direction (list of directions)

Response:

Equipment: Calculator, ruler

**XI. STATE AND DISTRICT ASSESSMENTS:**

Level I    Tested with non-disabled peers under standard conditions without accommodations.

Level II   (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations.

Level III  (Describe accommodations for level III) Tested under standard conditions with special accommodations.

Level IV   (Describe the alternative assessment)

Level V   Portfolio:

**XII. Areas Requiring Specialized Instruction and Related Services:**     Modifications:

| Reading | Physical/Sensory | Transition | Language Arts/English |
|---|---|---|---|
| Mathematics | Social Emotional | Vocations | Social Sciences |
| Written Expression | Physical Development | Independent Living | Biological & Physical Science |
| Other: | | Speech/Language | Fine Arts |
| None | | | |

Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

**XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION**

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| Maximum Inclusion → Combination General Education | Accept | None |
| General Education | reject | School failure |
| Out of General Education | reject | not LRE |

Modifications/Accommodation(s) to address the harmful effects:

Specialized Instruction & Psychological Counseling

Location for Services

06/21/2004 12:33 FAX 202 442 5098          OFF.OF GENERAL COUNSEL                    ☒009
    06/16/2004  10:23     2025410579                 VLCPCS                          PAGE  10

*[signature: Marian Murphy]*

Received a

Copy of "The Caring For Our Students with Disabilities", a procedural Manual for Parents

Delivered at the Village Learning Center on _4/22/04_

From

*[signature]*

**NAME**

*April 22, 04*

**DATE**

*[signature: Marian Murphy]*

**Parent / Recipient**

*[signature]*

**Delivered by**

06/21/2004 12:33 FAX 202 442 5098    OFF.OF GENERAL COUNSEL    ☒010
06/16/2004  10:23    2025410579    VLCPCS    PAGE 04

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

INDIVIDUALIZED EDUCATION PROGRAM
(IEP)
MEETING NOTES

STUDENT ~~D____ W____~~    SCHOOL Villiag Learning    DATE: 4/22/04
                                            Ctr

| PARTICIPANTS: | PARTICIPANTS: (Sign Name) | DISCIPLINE |
|---|---|---|
| E.B Men | E.B Men | SPED Teacher |
| Keesha Blythe | Keesha Blythe | DCPS Placement Specialist |
| Marian Murphy | Mary Murphy | Parent |
| DeMyra N. Gallo | DiMyra N. Gallo | English Teacher |

The MDT agrees that D____ continues
to be eligible for special education services
as a child with a Learning Disability

→Services    Specialized Instruction 16hrs/W
            Psychological Counseling .5 min/W

→Combination General Education
→ Level III
→Accomodations: extended time, small group
       repeat and rephrase directions, calculator,
       ruler

42 5098
'5410579

OFF. OF GENERAL COUNSEL
VLCPCS

☑2011
PAGE  02

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES

| MDT |

MEETING DATE: 4/22/04

W~~illiam~~

SCHOOL: Villiage Learning Ctr

PARTICIPANTS: (Sign Name)

E. Bonen

POSITION

Dir to SPED / SPED teacher

Tuesha ~~Bhuttp~~            DCPS Placement Specialist
Marie ~~Murphy~~            Parent - Legal Guardian
C. Myra N ~~Gail~~          English Teacher

of Today's meeting is to discuss
ogress and review IEP.
~~pare~~nt was introduced
was provided a copy of the procedural

arandmother is concerned with
g able to formulating sentences.
ous IEP, D█████ spelling & reading scores
he expected range.
reports that D█████ reads very

(T)  IS NOT PRESENT  AT THE MEETING

ssessments, IT IS DETERMINED THAT  D████  W████

GIBLE  FOR SPECIAL EDUCATION

d SPECIAL EDUCATION

56

06/21/2004 12:34 FAX 202 442 5098     OFF.OF GENERAL COUNSEL          @012
06/16/2004  10:23   2025410579              VLCPCS                        PAGE  03

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

MDT REFERRAL DATE: _____    MULTIDISCIPLINARY TEAM (MDT)          Page: ____ of ___
                                CONTINUATION MEETING NOTES
                                MEETING TYPE: MDT
STUDENT: ████ W████    SCHOOL: Village Learning Ctr  DATE: 4/22/04

well.  D████ has difficulties with his writing
D████ is capable of doing the work.
When you sit with him to do the work,
D████ is able to perform the task
████████████████  D████ would
benefit from ~~████████~~ repeated/listed directions.
                          help D████
To become more organized, he could use
an assignment notebook to list daily
tasks ~~and~~ to be reviewed by classroom
teacher daily.  D████ is also diagnosed w/
ADHD and ~~takes~~ Concerta 54mg daily
The MDT agrees that D████ continues to be
eligible for Special Education Services
as a child with a Learning Disability

DW-12

**District of Columbia Public
Schools Division of Special
Education Washington, D.C.**

**NEW ADDENDUM MEETING PAGE**
Attach to the IEP and check the box on page one.

Student Name ~~Dexter Watkins~~    DOB ~~___~~ 89    DATE 5/25/05

Student ID Number 00382703    School High Road Academy

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | DISCIPLINE |
|---|---|---|
| Meghan Riordan | Meg Riordan | social work |
| Marian Murphy | Marian Murphy | Grandmother |
| Debora Wilkins | Debora Wilkins | Student |
| Annie R Pressler | Annie R Pressler | Edu Advocate |
| Shanon Redman | S. Redman | Director |

**INSTRUCTIONS:** Use this addendum, in an IEP/MDT meeting, when changing levels of services on an IEP section or part.
Discipline service providers must participate in the meeting. Attach addendum to the IEP and check the appropriate box on page one.

**Purpose of this meeting is to:**

assess within the 30 day review period the appropriateness of placement and IEP.

**SERVICES TO BE ADDED TO THE IEP**

| SERVICES | SETTING GenEd | SpEd | Total | FREQUENCY Hr./ Min | D/W/M. | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # wks/mos | DATE ADDED mm/dd/yyyy |
|---|---|---|---|---|---|---|---|---|---|
| psychological counseling | | 1.5 | 1.5 | hrs | w. | social worker | 5/25/2005 | 10 | 5/25/2005 |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| TOTAL | | 1.5 | 1.5 | Hours Per Week | | | | | |

CURRENT IEP : Percent of time in Special Services
0-20%    21-60%    61-100%

THIS ADDENDUM : Percent of time in Special Services
0-20%    21-60%    61-100%

**Describe:**
psychological counseling increased to include necessary group therapy participation.

PARENT SIGNATURE FOR ADDITION(S) APPROVAL: Marian Murphy    DATE: 5/25/05

DISTRICT OF COLUMBIA PUBLIC SCHOOLS    07-02-2001    DIVISION OF SPECIAL EDUCATION    APPENDIX-A

58

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

INDIVIDUALIZED EDUCATION PROGRAM
(IEP)
MEETING NOTES

_____ W_____    SCHOOL High Road Academy DATE: 5/25/05

| PARTICIPANTS: (Sign Name) | | DISCIPLINE |
|---|---|---|
| Riordan | Meghan Riordan | social worker |
| n Murphy | Marian Murphy | Grandmother |
| Wilkins | Bluto Wilkins | Student |
| R. Pressley | Annie R Pressley | Edu. Advocate |
| Redman | S. Redman | Director |

:ctions made.
of IEP and evals provided to educational
ate and grandmother.

30 Ms. Harrison is attempted to be
cted multiple times by Ms. Redman.
unavailable. Mtg continues.
day review continues without her.
d on information MDT team feels/
ermined to be appropriate placement

for ~~Dentata~~ for current school year, ESY services as well as the academic year 2005-2006.

Student and guardian are in agreement c̄ summer school and placement.

<u>Comp ed</u>

Advocate requests tracker forms from 2002 — present. Students placement at High Road including all related services for the comp ed issues satisfaction.

<u>Additionally team request</u>

psychoeducational testing to be updated as it is expired (5/6/09) to be done within 30 days to assess additional needs possibility.

Further requested that psychological counseling be increased to 1.5 hours in order to participate in group counseling as well as individual counseling per the High Road Model.

It is noted that ~~Dentata~~ is behind in Math + Reading and is hoped to be an academic focus.

~~Dentata~~ reports doing well at this time. All are happy with High Road as a placement.
                              Mtg adjourned.

60

DW-13

📁 **FILE**

# Law Offices,
## Christopher N. Anwah, PLLC
**Attorneys and Counselors at Law**

Christopher N. Anwah, Esq.
    (DC, MD, NJ)
Fatmata Barrie, Esq.
    (DC, FL)
Panya Monford, Esq.
    (MD)

**Carpenter's Building**
1003 K Street, N.W.
  Suite 565
Washington, D.C.  20001
Phone: (202) 626-0040
Fax: (202) 626-0048
Email:chrisanwahfirm@chrisanwahfirm.com

June 19, 2005

**By Fax: (202) 396-8229**

Mr. Wallace R. Henry III
Special Education Coordinator
Friendship-Edison Collegiate Academy
4095 Minnesota Avenue, N.E.
Washington, D.C. 20019

          RE:    D████ W█████
          DOB:  █████/89

Dear Mr. Henry:

Our office is writing to request that Friendship-Edison Collegiate Academy ("FE") provide us with tracker forms for all specialized instructions and related services that D█████ was entitled while attending FE and until he transferred out of FE. We are requesting that FE provide us this information no later than **Thursday, June 23, 2005 by close of business**. If you have any questions, you may contact the undersigned staff personnel at either (202) 626-0040 or (202) 270-9156.

Thank you for your prompt attention and cooperation regarding this matter.

Sincerely,

Annie R. Pressley, J.D.
Education Advocate for Christopher Anwah, Esq.
Attorney for D█████ W█████

cc:    Client's file

# Law Offices,
## Christopher N. Anwah, PLLC
Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
   (DC, MD, NJ)
Fatmata Barrie, Esq.
   (DC, FL)
Panya Monford, Esq.
   (MD)

Carpenter's Building
1003 K Street, N.W.
Suite 565
Washington, D.C. 20001
Phone: (202) 626-0040
Fax: (202) 626-0048
Email: chrisanwahfirm@chrisanwahfirm.com

## FACSIMILE COVER LETTER

DATE:
      June 19, 2005

TO:
      Mr. Wallace R. Henry III OR Designated Agent

COMPANY
      Friendship/Edison Collegiate Academy

FAX NUMBER:
      (202) 396-8229

FROM:
      Christopher Anwah, Esq./Annie R. Pressley, J.D. - Education Advocate

TOTAL NUMBER OF PAGES INCLUDING COVER SHEET  2

MESSAGE: DOCUMENT REQUEST RE: TRACKER FORMS FOR D███████ W██████
  DOB: █████/89

If there is any problem with this transmission, please call as soon as possible at (202) 626-0040

### *** CONFIDENTIALLY NOTE ***

The pages accompany this facsimile transmission contain information from the CHRISTOPHER ANWAH, ESQ. law offices which is confidential or privileged, or both. The information is intended to be for the use of the individual or entity named on this cover letter. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this facsimile in error, please notify us by telephone immediately at (202) 626-0040 so that we can arrange for the retrieval of the original documents at no cost to you.

Mar. 1. 2005  4:38PM    Dalton, Dalton,& Houston                    No. 8193   P. 8/  DD-14

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.
INDIVIDUALIZED EDUCATIONAL PROGRAM

DCPS - IEP Page 1 of 4
Additional Comments ☐

## I. IDENTIFICATION INFORMATION

Student Name: Last _____ First _____ MI. __

Student ID 00382903  Soc. Sec. No. _____  Age: 14  Grade 9

Gender ☑ M ☐ F  Date of Birth _____  Ethnic Group African American

Address 5019  18th Street NE
Washington, DC 20017

☐ Non-attending

Attending School S.E.C.A.  Home School Coolidge SHS

☐ Elem. ☐ MS/JHS ☑ SHS ☐ CW1 /

Parent Marion Murphy

Address (if different from student)  ☑ Parent ☐ Guardian ☐ Surrogate

Telephone: Home 2/823-0488  Work 2/423-8155

## II. CURRENT INFORMATION

Date of IEP Meeting: 9/7/04
Date of Last IEP Meeting: 4/22/04
Date of Most Recent Eligibility Decision: 9/7/04

Purpose of IEP Conference:
☐ Initial IEP  ☑ Review of IEP
☐ Requested Eval.  ☐ 3yr Reeval

☑ MAJOR      ☐ TRANSPORTATION
   ESY        ☑ TRANSITION

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

## III. LANGUAGE

| III. LANGUAGE | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements | To be completed by Office of Bilingual Education |
|---|---|---|---|---|---|
| Student | English | English | French | ✓ | Oral |
| Parent | English | English | English | | Adj./Written |
| Home | English | English | | | Instrument / Date |

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING Gen/Out Res/Therl | FREQUENCY Hr/ Day  Dr/Wk | PROVIDER By Position | BEGINNING DATE mm/dd/yyyy | DURATION @ Wks/mos |
|---|---|---|---|---|---|
| Specialized Instruction | R/Spes | hr. w | Special Ed. Teacher | 9/20/04 | 10 mos |
| Psychological Counseling | 5 | .5 m w | | 9/20/04 | 10 mos |
| | | | | | |
| | | | | | |
| | | | | | |
| TOTAL |  | Hours Per Week | | | |

## V. Disability(ies)

LD

Continuing disabled

Percent of time in Specialized Instruction and Related Services
☐ 0-20%  ☑ 21-60%  ☐ 61-100%

☐ (Check if solely in general Ed.)  Percent of time NOT in a Regular Education Setting 42%

## VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below.

Marion Murphy  Parent  Marion Murphy
Charles M.  Speci. Coordinator  Charles Blunn
_____  Psychologist
_____  Principal  _____
Barbara Frazier  General Ed Teacher  Barbara Frazier
_____  Sp. Education

☑ I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in this IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature  Marion Murphy  Date 9-17-04

District of Columbia Public Schools   07-02 2001   Division of Special Education   Appendix - A   IEP Page 1 of 4

63

Mar. 1. 2005  4:39PM   Dalton, Dalton,& Houston              No.8193   P. 9/23

| Student Name | ~~Deshawn Walk~~ | Managing School | Friendship-Edison College | DCPS - Nor |
| Student ID Number | 00282703 | DOB | ~~89~~ | Attending School | Edison | Page 2 of 4 |

**VII. Present Educational Performance Levels in Areas Affected by the Disability**    Additional Comments: ☐

Academic Areas: (Evaluator)    C. Williams
Math Strength:
                                                                        Score(s) When Available
~~Deshawn~~ calculation is on 6.7 grade level                           Math Cal 9-58/6.7
                                                                        Math Rea._____
Impact of disability on educational performance in general education curriculum:    See goal page:
Calculation problems above 7th grade may                                Date: 9/12/04
be quite difficult for him                                              Rdg. Comp 8 = 92/7.6
Reading Strength:                                                       Written St = 138/1.7
Passive fluency is a strength at 9.1 grade lev                          See goal page:
Impact of disability on educational performance in general education curriculum:    Date: 9/12/03
Passage comprehension is limited at 5th grade level

Communication (Speech & Language) (Evaluator)                           Score(s) When Available
Strengths:                                                              Exp.Lang._____
                                                                        Rec.Lang._____
                                                                        Artic _____
                                                                        Voice _____
Impact of disability on educational performance in general education curriculum:    Fluency _____
                                                                        Exp. Voc._____
                                                                        Rec. Voc._____
                                                                        See goal page:
                                                                        Date:_____

Motor/Health (Evaluator)                                                Score(s) Results
Strengths:                                                              When Available
                                                                        _____
Impact of disability on educational performance in general education curriculum:    _____
                                                                        See goal page:
                                                                        Date:_____

Social Emotional Behaviors Areas (Evaluator)                            Score(s) When Available
Strengths:                                                              _____
                                                                        _____
Impact of disability on educational performance in general education curriculum:    _____
                                                                        See goal page:
                                                                        Date:_____

Cognitive/Adaptive Behavior (Evaluator)                                 Score(s) When Available
Strengths:                                                              _____
                                                                        _____
Impact of disability on educational performance in general education curriculum:    _____
                                                                        See goal page:
                                                                        Date:_____

Prevocational Skills: (Evaluator)                                       Score(s) When Available
Strengths:                                                              _____
                                                                        _____
Impact of disability on educational performance in general education curriculum:    _____
                                                                        See goal page:
                                                                        Date:_____

64

Mar. 1. 2005  4:39PM  Dalton, Dalton,& Houston                    No. 8193   P. 10/23

| Student Name | Managing School | DCPS - IEP Page 3 of 4 |
|---|---|---|
| Student ID Number 080 382 723   DOB | Attending School  VLCPCS | Goal Number |

| VII. SPECIALIZED SERVICES | Additional Comments: | |
| | Area addressed by goal:  SOCIAL - EMOTIONAL | |

ANNUAL GOAL: (include mastery criteria)

D_____ will develop appropriate attending and
social relatedness skills

Provider(s):  School counselor

Consider cognition, behavior, sensation, degree and evaluation

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Attend to tasks without becoming frustrated | | |
| Sit still during group activities | | |
| Attempt tasks before responding "I can't" or "I don't know how" | | |
| Attend to work time tasks until they are completed before moving on to another task | | |
| Participate in group activities | | |
| Demonstrating continuing growth in social interactions | | |
| Accept the give and take of interactions with peers and adults | | |

EVALUATION PROCEDURE(S)

(Portfolio)  (Log)  Chart  Test  Documented Observation  Report  Other _____

Mar. 1. 2005  4:39PM    Dalton, Dalton,& Houston          No.8193   P. 11/23

| Student Name: [redacted] Williams | Meeting Since: | | DCPS - IEP Page 3 of 4 |
|---|---|---|---|
| Student Number: 109382703 | DOB: [redacted] | Attending School: N/PES | |
| MR. SPECIALIZED SERVICES | Additional Comments: | | Goal Number: |

Area addressed by goal: **Math**

ANNUAL GOAL: (include mastery criteria)

[redacted] will demonstrate 1 years progress in applied
math skills moving him from grade level to grade
level through Mastery of the following short
term goals

Provider(s): General Ed and SPED teacher

Consider: softness, behavior, condition, degree and application.

| SHORT TERM OBJECTIVES (in short mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Multiply 1 digit by 2 digits — Multiply 2 digits by 3 digits with and without Regrouping with 70% accuracy | Monthly |
| Divide by a 2,3, digit divisor with and without a Remainder with 80% accuracy | Monthly |
| Solve simple word problems involving 1, 2, 3 step operation with 80% accuracy | Monthly |
| Add, substract, like, and unlike fraction with 70% accuracy | Monthly |
| complete Fractional computations with 70% accuracy | |
| Identify the place value of a number with 80% accuracy | Monthly |
| Student will complete Fractional computations with 70% accuracy | Monthly |

EVALUATION PROCEDURES

(Portfolio)    Log    Chart    (Test)    (Documented Observation)    Record    Other _____

District of Columbia Public Schools    7-03-200?    Division of Special Education    Appendix - A    IEP Page 3 of 4

66

Mar. 1. 2005 4:40PM  Dalton, Dalton,& Houston          No.8193   P. 12/23

| Student Name | | Managing School | VLCPCS | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number 00782703 | DOB | Attending School | | Page 4 of 4 |

**Additional Comments:**

**IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION SERVICE ALTERNATIVES**

Can curricular modification, accommodations and or Supplemental aids and services be used for a LRE setting in regular education?   Yes   No

Explanation for remove out of regular education placement.

_____ is unable to be academically Successful in the general education Classroom without proper support

**X. Supplementary Aids and Services**

| Classroom Needs (do not enter product(s) or brands(s)) | Gen Ed | SETTING Sep Ed | Total | FREQUENCY Hr/ Mo | FREQUENCY Or/Wk | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or program settings, for setting:   None needed

Timing/Scheduling  Extended time
Setting  Small group
Presentation  Repeat and Rephrase direction (list of direction)
Response
Equipment  Calculator, ruler

**XI. STATE AND DISTRICT ASSESSMENTS:**

Level I  Tested with non-disabled peers under standard conditions without accommodations

Level II  Tested under standard conditions with accommodations

Level III  Standard assessment conditions for level III. Tested under alternative conditions of a permissible accommodations

Level IV  Student not assessed

Level V  Portfolio

**XII. Areas Requiring Specialized Instruction and Related Services:**       Modifications:

| | | |
|---|---|---|
| Reading | Preventicative ed | Transition | Language Arts/English |
| Mathematics | Social Emotion | Vocational | Social Sciences |
| Written Expression | Prevocat Development | Independent Living | Biological & Physical Sciences |
| Other: | | Second Language | Fine Arts |

None   Apply annual goal(s), objectives and/or modifications to sources, barriers in each area checked above.

**XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION**

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| Maximum Inclusion & (Combination) General Education | Accept | None |
| General Education | reject | School failure |
| Out of General Education | reject | not LRE |

Modifications/Accommodations to address the harmful effects

Specialized Instruction & Psychological Counseling

Location for Services

District of Columbia Public Schools   07-02-2001   Division of Special Education   Appendix - A   IEP Page 4 of 4

67

DW-15

**Dr. George Rutherford III**

**Principal**

**Ideal       Academy, Public**

**Charter School**

**  100 Peabody St. N.W.**

**Washington,      DC 20011**

Marian Murphy
5019 11th Street N>E>
Washington DC 20017
May 7, 2002

Mr. Rutherford:

In September 2001, the beginning of the school year, I came to you with the transfer for D̶e̶n̶t̶e̶ W̶i̶l̶s̶o̶n̶, along with his 504 plan for his learning disability from his previous school and his Psychological report. I discussed a plan with you for a review and a plan for educational assistance for ADHD. ADHD was diagnosed before he came to Ideal. He has recently been retested and the diagnosis remains the same. I was told by you a plan would be put into effect and he would be retested by your school. This never happened, to this date you have never mentioned testing nor implemented any type of special help. He never received any help for ADHD fro Ideal School. According to my manual for the District Government, it states private or public schools are in Violation of State and Federal law if provisions are not made for persons, with learning disabilities. Mr Tundi, Earth Science, Mr Akelle Social Studies, and Ms. Marina –Spanish, have all told me There is nothing wrong with him as far as having a disability, yet on all of their progress reports, Is stated by the teachers, he is working below his ability, he is distracted, his attention span is short. These are all symptoms of ADHD.

After I went to the Advocates for Justice, Attorney Chike Ijeabuonwu, mental and now physical, Harassment has happened to him at your school. On April 10,2002 , after half the school year Has passed , without any misconduct from him, he is accused of using profanity in Spanish class And threatened suspension by Mr. Kenan, Assistant Principle, yet no adult , teacher nor guest Could point him out as using profanity. This caused him a lot of mental anguish thinking he was Going to be suspended for something he did not do. He was under a doctors care, from April 11, Thru April 15,2002, a doctor's statement was sent to your school. After returning to Ideal on April 15th, he was again attacked, physically this time. Mr. David McCoy, attacked him for no Reason that he can understand. On April 18, after seeing his face, when I picked him up, I Attempted to come on the school grounds to see you and I was prevented by Mr. David McCoy Himself. Mr. McCoy told me Mr. Rutherford is off the school premises.

Because of his attack he is under medical care, and psychiatric care. I called you on April 19, And spoke to Ms. Gainor in the office, I left a message for you to call me, I have not received A call from you or any officials at your school.

The Fourth District Police, have been in touch with you .According to the detective, I spoke to On May 3,2002 he is waiting for a list of the students who witness the attack or who was in The class as the time and to speak to Mr. Jason, Physical Ed. Teacher who had knowledge Of the attack. I understand Mr. Jason, made you aware of the attack on D̶e̶n̶t̶e̶. The Officer states each time he has been there Mr. Jason has been unavailable. I would like to Know what action has been taken against Mr.McCoy, and what can be done to safely permit D̶e̶n̶t̶e̶ to complete his time at your school this year or can some other method of completing This term be put into effect as soon as possible.

68

● Page 2                                                May 7, 2002

Medical reports, pictures of injury are available.

Sincerely,

Mrs. Marian Murphy

cc:

Ms. Linda Mckay
DC Public Chartered School Board

Mr. Justin Blum,
Washington Post

NAACP Northwest Branch

Congresswoman, Elenore Norton Holmes

Attorney Chike Ijeabuonwu
Advocate for Justice

Advocate For Justice Child Abuse unit

Kevin Chavous,Councilmember

Dw 16

# PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS

## SECTION 504 SUMMARY OF MEETING

To the Parents/Guardians of: ~~D███ W███~~            Date of Meeting: 4-24-01

Student Number: 000 382 703            Date of Birth: ~~███~~-89

School: Berkshire Elementary School            Grade 6

I.     Purpose of the Meeting:

Review Section 504 Plan

II.     The Following Determinations Were Made:

· Communication regarding assignments between parent/grandmother and team of teachers.

· Parent/grandparent will review homework at home.

· Ask for help with work if needed.

· Student will turn in completed assignments.

III.     Results:

Plan was revised for the next school year. The plan will be reviewed in September 2001.

IV.     Suggested Follow-Up: (e.g. referral for follow-up care, special transportation, referral to other agencies, refer for Special Education Screening).

1. _____            By: _____

2. _____            By: _____

3. _____            By: _____

V.     Members Present:

| Name (Signatures) | Title |
|---|---|
| Heather M. Hanna | RRT |
| Isoke J. Mims | Classroom teacher |
| Rhonda G. Tenenbaum | Counselor |
| Anecia H. Sparden | SCP |
| Sandra Collins | Comer SDP Facilitator |
| Joanne Temlin | Reading Specialist |

78-163G (2/99)
PGIN 7540-3080

White:  Parent/Guardian            Canary: Cumulative Folder

Marian Muurkir-Grandmother

70

**PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS**
## Section 504 Accessibility Plan

| Student # | School Berkshire Elem. | Disability Condition ADHD | Meeting Date 4/24/01 |
|---|---|---|---|
| 000 382 703 | | Check One: ___ Initial Plan ✓ Review Plan | Date To Be Reviewed Sept. 2001 |

| | Accommodations/Services | Responsible Person | Time Line |
|---|---|---|---|
| and ~~inments~~ | Communication regarding assignments between parent/grandmother and team of teachers (communication via homework planner, Phone, Internet (if available) | Teachers Mother/Grand-Mother | Daily |
| | Check with teachers if help is needed. Ask Grandmother to check work. Write assignments in notebook. Turn in completed assignments | D█████ W█████ | Daily |
| | | | |

| Title | Review Result | Comments: |
|---|---|---|
| ___ Counselor | ___ Successful/Continue | |
| ✓ Reading Specialist | ___ Revise (see new plan) | |
| ___ Comer SDP Facilitator | ___ Refer for Special Education | |
| = Speech Lang (thdgist) | | |
| ✓ RRT | | |
| ___ Grandmother | | |

Page __1__ of __1__

White Copy: Student Cumulative Folder     Canary Copy: Parent/Guardian     Pink Copy: Teacher

71

# PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS
## Section 504 Accessibility Plan

| Student | | School | Berkshire Elem. | Disability Condition | Meeting Date |
|---|---|---|---|---|---|
| Date of Birth | Grade 6 | Student # 000 382 703 | Check One: | ADHD | 9/24/01 |
| | | | __ Initial Plan | | Date To Be Reviewed |
| | | | __ Review Plan | | Sept. 2001 |

| Problems Identified | Accommodations/Services | Responsible Person | Time Line |
|---|---|---|---|
| Does not complete and turn in classwork and homework assignments | Communication regarding assignments between parent/grandmother and team of teachers. Communication via homework planner, Phone, Internet (if available) | Teachers Mother/Grand-mother | Daily |
| | Check with teachers if help is needed. Ask Grandmother to check work. Write assignments in notebook. Turn in completed assignments | William | Daily |

**Team Members:**

| Name | Title |
|---|---|
| Rhonia Tenenbaum | Counselor |
| _[signature]_ | Coordinator Specialist |
| Linda Collins | Lenox SDF Facilitator |
| _[signature]_ | Back side Facilitator |
| _[signature]_ | |
| _[signature]_ | |

**Review Result**

__ Successful/Continue
__ Revise (see new plan)
__ Refer for Special Education

**Comment:**

PS-163B (2/99)
PGIN 7540-3080

White Copy: Student Cumulative Folder     Canary Copy: Parent/Guardian     Pink Copy: Teacher

Page 1 of 1

72

Prince George's County Public Schools
Upper Marlboro, Maryland 20772

# Parental Permission for Psychological Services

☑ I hereby give my consent for my son/daughter, _D̶e̶l̶a̶n̶d̶a̶ W̶i̶l̶k̶i̶n̶s̶_

Birth Date _____ - 89 at Berkshire ES
School to receive the below indicated psychological services.

☐ Individual Psychological Counseling          ☐ Group Psychological Counseling

☑ Other (Specify) _attentional screening_

_____

☐ Psychological Evaluation which may include one or all of the following:

● An intelligence test, individually administered, to assess general current level of intellectual functioning.
● Perceptual test(s), individually administered, to assess general maturational level of perceptual
● An achievement test, individually administered, to assess grade level of school achievement.
● Projective tests(s), individually administered, to assess general current level of emotional functioning.
● A diagnostic interview conducted to further assess general level of functioning.
● Additional diagnostic instruments as may be indicated by the specific problems presented.

   When an evaluation has been completed, an interpretive conference with parents and professional staff relative to results and recommendations will be conducted. The Psychological Evaluation Report will be maintained in a Limited Access Folder available for review as prescribed by Board of Education Record Policy and Procedures (Number 5125).

   I have been given the opportunity to ask any questions pertaining to the above items and have received necessary information relative to my questions.

| | |
|---|---|
| **Shannon Holmes Psy. M.** | _X̶ B̶a̶r̶b̶a̶r̶a̶ R̶ W̶i̶l̶_ |
| Certified School Psychologist | Signature of Parent/Guardian |
| **Oxon Hill Staff Dev. Center** | 6409 Penn. Ave #202 |
| Office | Address |
| **(301) 749-4384** | Forestville MD. 20747 |
| Phone | |
| May 2, 2000 | (301)576-5779 (H) (301) 853-3102 (W) |
| Date | Phone |
| | 5-2-00 |
| | Date |

PS-33 Rev. 9-85

73

03/16/2005  10:03   2024425556          STUDENT HEARINGS OFF                    PA␣ DW-17

# District of Columbia Public Schools
## *State Enforcement and Investigation Division*
### *confidential*

H. St. Clair, Esq., Due Process Hearing Officer
825 North Capitol Street, NE  8th Floor
Washington, D.C. 20002
Facsimile: (202) 442-5556

| | |
|---|---|
| In the Matter of )<br><br>D▓▓▓▓ W▓▓▓▓ student )<br>Date of Birth: S▓▓▓▓, 1989 )<br><br>    Petitioner, )<br><br>    versus )<br><br>Friendship-Edison Pub. Charter School )<br><br>    and )<br><br>The District of Columbia Public Schools, )<br>Home School: Not listed, )<br>Attending: Friendship-Edison Pub. C. S., )<br><br>    Respondent. )<br> ) | **IMPARTIAL**<br>**DUE PROCESS HEARING**<br><br><br>**DECISION AND ORDER**<br><br>Request Date:  February 3, 2005<br>Hearing Date:  March 8, 2005<br><br><br>Held at:  825 North Capitol Street, NE<br>Eighth Floor, Hearing Room 2<br>Washington, D.C. 20002 |

**Parent:**                                  Marian Murphy
                                            5019 11th Street, NE
                                            Washington, D.C. 20017


**Counsel for the Parent/Student:**          Fatmata Barrie, Esq.
                                            Christopher N. Anwah, P.A.
                                            1010 Vermont Avenue, NW, Suite 600
                                            Washington, D.C. 20005

i

74

03/16/2005  10:03    2024425556              STUDENT HEARINGS OFF              PAGE  03/07

**Counsel for Friendship-Edison PCS:**     Paul S. Dalton, Esq.
**Dalton, Dalton & Houston, P.C.**
1008 Pendleton Street
Alexandria, Virginia 22314-1837


**District of Columbia Public Schools:**     Michael Levy, Esq., Attorney-Advisor
**Office of the General Counsel, DCPS**
825 North Capitol Street, NE  9th Floor
Washington, D.C. 20002


An <u>INDEX of NAMES</u> is attached hereto for the benefit of the parties.  The index will permit the parties to identify specific witnesses and other relevant witnesses.  The index will be detached before release of this <u>DECISION & ORDER</u> as a public record.

ii

75

03/16/2005  10:03    2024425556          STUDENT HEARINGS OFF                    PAGE  04/07

# INDEX of NAMES for Dequan Williams

**Hearing Date:** March 8, 2005

Appearing on behalf of DCPS:  None.

Appearing on behalf of the parent/student: None.

No testimony was received.

iii

## INTRODUCTION

On February 3, 2005, Counsel for the Parent filed the herein Request for Mediation/ Hearing on behalf of the parent and student complaining the District of Columbia Public Schools (DCPS) and Friendship-Edison Public Charter School (FEPSC) denied a Free Appropriate Public Education (FAPE) to the student. Specifically, Counsel for the Parent complained of violation of the SETTLEMENT AGREEMENT entered into by the parties on June 24, 2005.

The Student Hearing Office, DCPS, scheduled a hearing in this matter for 11:00 A.M., Tuesday, March 8, 2005 at DCPS Headquarters, Hearing Room 2, 825 North Capitol Street, NE 8th Floor, Washington, D.C. 20002. The hearing convened as scheduled.

## JURISDICTION

The hearing convened under Public Law 105-17, The Individuals with Disabilities Education Act Amendments of 1997, 20 United States Code 1400 et. seq.; Title 34 of the Code of Federal Regulations, Part 300; and Title V of the District of Columbia Municipal Regulations.

## SUMMARY of the EVIDENCE  and   FINDINGS of FACT

By facsimile dated March 1, 2005, DCPS disclosed 6 witnesses along with a Motion to Join Party and a Motion to Compel a Specific Witness; the Motions were also dated March 1, 2005.

By facsimiles dated February 16th, March 1st and 7th, 2005, the parent disclosed 6 witnesses and 12 documents.

By facsimile dated February 16, 2005, FEPCS disclosed 7 witnesses and 2 documents.

The documents were placed into the record and are referenced/footnoted herein where relevant.

On March 2, 2005, Counsel for FEPCS filed a Motion for Dismissal against FEPCS that was GRANTED on March 7, 2005.

As a preliminary matter, DCPS moved that the March 7, 2005 ORDER dismissing FEPCS as a party be set aside representing that issues in the Request for Mediation/Hearing concerned FEPCS; that DCPS expected the three Motions to be ruled upon at the instant hearing.

Here, the hearing officer GRANTED the Motion to Set Aside the March 7, 2005 ORDER dismissing FEPCS as a party as it related to issues of compensatory education from the date of matriculation of the student to FEPCS to the date of this DECISION & ORDER.

The hearing officer ordered the hearing forward of the issue of breach of the June 24, 2004 SETTLEMENT AGREEMENT, Parent Document No 2.

Counsel for the Parent represented that on June 24, 2004 the parent and DCPS agreed to independent evaluations and an MDT meeting; that the parent forwarded the independent evaluations to DCPS, requested an MDT meeting both from the previous Attorney-Advisor and the Office of Compliance, DCPS, and that, to date, DCPS had done nothing to convene the agreed upon MDT meeting.

1 of 3 pages

77

DCPS did not controvert.

The hearing officer directed a **Finding for the Parent: Denial of FAPE, failure to perform as agreed in the June 24, 2004 SETTLEMENT AGREEMENT** and ordered the hearing forward on the issue of educational benefit at the High Road Academy of Washington, D.C.

DCPS stipulated to educational benefit for the student at the High Road Academy of Washington D.C.

In consideration of the foregoing, the hearing officer made the following

# ORDER

1. On an interim basis with transportation for the balance of the 2004-05 School Year, DCPS shall place and fund the student at the High Road Academy of Washington, D.C.

2. Within 30 days of matriculation of the student at the High Road Academy of Washington, D.C., DCPS will convene an MDT/IEP/Placement meeting during which evaluations will be reviewed, the IEP reviewed and revised as appropriate and placement discussed and determined. If a DCPS placement is recommended, a Notice of Placement will be issued within 5 schooldays of the said meeting; if a non-public placement is recommended, a Notice of Placement will be issued within 30 days of the said meeting.

3. At the said MDT/IEP/Placement meeting, the form, amount and delivery of compensatory education up to the date the student matriculated to FEPCS, if any, will be discussed and determined. For disputes under this paragraph, DCPS or the parent may request a hearing.

4. For the said MDT/IEP/Placement meeting, scheduling is to be through and notices are to be sent to Counsel for the Guardian Parent except that, for everyday of unavailability of parent/educational advocate/Counsel for the Guardian Parent, the deadline herein will be extended one day. For

2 of 3 pages

78

03/16/2005  10:03  2024425556                STUDENT HEARINGS OFF                    PAGE  07/07

disputes under this paragraph, with the burden of
proof on DCPS, documentation of the parties will be
relied upon to determine the good faith of each party.

4.  Issues concerning compensatory education from
the date of matriculation of the student at FEPCS to
the date hereof are reserved to the parties,
respectively.

**This is THE FINAL ADMINISTRATIVE DECISION. Appeal can be made to a court of
competent jurisdiction within thirty (30) days of the issue date of this decision.**

Date: _MARCH 15, 2005_

H. St. Clair, Esq., Hearing Officer

Issued: _3-16-05_
Student Hearing Office, DCPS

3 of 3 pages

DW-18

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**WASHINGTON, D.C.**
**INDIVIDUALIZED EDUCATIONAL PROGRAM**

| DCPS - IEP   Page 1 of 4 |
| Additional Comments: ☐ |

## I. IDENTIFICATION INFORMATION

Student Name: Last William                    First Deborah                    MI

Student ID 00382703    Soc. Sec. No. _____    Age: 16    Grade 10

Gender ☒ M ☐ F    Date of Birth ___89    Ethnic Group African-American

Address 5019 11th Str. NE
House No.    Street Name    Quadrant    Apartment #
Washington, DC 20017
City    State    Zip Code

☐ Non-attending

Attending School High Road Academy    Home School _____

☐ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS /

Parent Marion Murphy

Address of (if different from student):    ☐ Parent ☐ Guardian ☐ Surrogate

House No.    Street Name    Quad.    Apt. No.    City    State    Zip Code
Telephone: Home 2/823-1046    Work

### II. CURRENT INFORMATION

Date of IEP Meeting: 10/11/05
Date of Last IEP Meeting: 4/22/04
Date of Most Recent Eligibility Decision: 9/17/04

Purpose of IEP Conference:
☐ Initial IEP    ☒ Review of IEP
☐ Requested Eval.    ☐ 3yr ReEval.

Indicate Level of Standerdized Assessment:

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| BEHAVIOR | | ☒ TRANSPORTATION |
| ESY | | ☒ TRANSITION |

### III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements |
|---|---|---|---|---|
| Student | English | N/A | English | Native |
| Parent | English | N/A | | Language |
| Home | English | N/A | | |

To be completed by Office of Bilingual Education
English and Math Proficiency Assessment
Oral
Rdg./ Written
Instrument:
Date:

### IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd SpEd Total | FREQUENCY Hr./ Min    D/W/M. | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION #    wks./mos |
|---|---|---|---|---|---|
| Specialized Instruction | 26.0 | HR    W | Special Education T | 10/11/05 | 10    mis |
| Psycho social ounseling | 1.5 | HR    W | Social Worker | 10/11/05 | 10    mos |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| TOTAL | 27.5 | Hours Per Week | | | |

### V. Disability(ies)

Learning Disabled

☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☐ 0-20% ☐ 21-60% ☐ 61-100%

Percent of time NOT in a Regular Education Setting  100%

### VI. IEP TEAM (Participants in the development of the IEP)    Print and sign your name below.

*[signatures]* Sledman
Marian Murphy
Annie R Henley
Michael Williams
Caryl Banks

*[signatures]* Sharon Redman

Michael Williams
Caryl Banks

*I AGREE* with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.
Parent/Guardian Signature    Date

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 1 of 4

80

| Student Name | Delmore Williams | Managing School | High Road Academy | DCPS - IEP |
| Student ID Number | 00382703 | DOB | 89 | Attending School | High Road Academy | Page 2 of 4 |

| VII. Present Educational Performance Levels in Areas Affected by the Disability | Additional Comments: ☐ |

**Academic Areas: (Evaluator)** Special Educator

Score(s) When Available

Math Strengths:

see attached

Math Cal. _____ _____

Math Rea. _____ _____

Impact of disability on educational performance in general education curriculum:

see attached

See goal page: _____ _____

Date: _____

Reading Strengths:

see attached

Rdg. Com _____ _____

Rdg. Basic _____ _____

Impact of disability on educational performance in general education curriculum:

see attached

Written Ex. _____ _____

See goal page: _____

Date: _____

**Communication (Speech & Language) (Evaluator)**

Score(s) When Available

Strengths:

Exp.Lang. _____ _____

Rec- Lang. _____ _____

Artic _____ _____

Voice _____ _____

Impact of disability on educational performance in general education curriculum:

Fluency _____ _____

Exp. Voc. _____ _____

Rec. Voc. _____ _____

See goal page: _____

Date: _____

**Motor/Health (Evaluator)**

Score(s) /Results When Available

Strengths:

_____ _____

_____ _____

Impact of disability on educational performance in general education curriculum:

_____ _____

See goal page: _____

Date: _____

**Social Emotional Behavioral Areas: (Evaluator)** Special Educator

Score(s) When Available

Strengths:

see Attached

_____ _____

_____ _____

Impact of disability on educational performance in general education curriculum:

see attached

_____ _____

See goal page: _____

Date: _____

**Cognitive/Adaptive Behavior: (Evaluator)**

Score(s) When Available

Strengths:

_____ _____

_____ _____

Impact of disability on educational performance in general education curriculum:

_____ _____

See goal page: _____

Date: _____

**Prevocational Skills: (Evaluator)**

Score(s) When Available

Strengths:

_____ _____

_____ _____

Impact of disability on educational performance in general education curriculum:

_____ _____

See goal page: _____

Date: _____

81

| Student Name | D█████ W█████ | | Managing School | High Road Academy | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number | 382703 | DOB ████/1989 | Attending School | High Road Academy | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ | Goal Number: ☐ |
|---|---|---|

Area addressed by goal:  English(Reading Comprehension)

**ANNUAL GOAL:** (including mastery criteria.)

D█████ will produce written and or verbal analysis of various literary materials achieving 85% mastery through the following short term objectives.

Provider(s): Special Education Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| D█████ will contrasts periods in American literature. | | quarterly. |
| D█████ will describe the major themes in American literature. | | quarterly |
| D█████ will extend general and specialized vocabularies for reading and writing. | | quarterly |
| D█████ will identify poetical elements and techniques. | | quarterly |
| D█████ will compare and contrast the works of contemporary and past American poets. | | quarterly |
| D█████ will read and follow direction to complete an application for college admission, a scholarship, or for employment. | | quarterly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☐ Documented Observation  ☐ Report  ☐ Other _____

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 3 of 4

82

| Student Name De_____ Wil_____ | Managing School High Road Academy | DCPS - IEP |
|---|---|---|
| Student ID Number 382703    DOB ____/1989 | Attending School High Road Academy | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**    Additional Comments: ☐    Goal Number: ☐

Area addressed by goal: English(Written Language)

**ANNUAL GOAL: (including mastery criteria.)**

De_____ will increase written communication skills achieving 85% mastery through the following short term objectives.

Provider(s): Special Education Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| De_____ will revise writing for accuracy and depth of information. | | quarterly |
| De_____ will edit final copies of written work for correct use of language, spelling, punctuation and capitalization. | | quarterly |
| De_____ will present written information in a logical manner. | | quarterly |
| De_____ will revise writing for clarity. | | quarterly |
| | | quarterly |
| | | quarterly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio   ☐ Log   ☐ Chart   ☐ Test   ☐ Documented Observation   ☐ Report   ☐ Other _____

| Student Name  Delano Williams | Managing School  High Road Academy | DCPS - IEP |
|---|---|---|
| Student ID Number 382703     DOB ██████1989 | Attending School  High Road Academy | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**    Additional Comments: ☐    Goal Number: ☐

Area addressed by goal:  Math

**ANNUAL GOAL: (including mastery criteria.)**

Delano will increase computation skills with 85% mastery through the following short term objectives.

Provider(s): Special Education Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Delano will solve problems involving complimentary, supplementary, and congruent angles. | | quarterly |
| Delano will solve problems involving right triangles by using the Pythagorean Theorem. | | quarterly |
| Delano will use measures of interior and exterior angles of polygons to solve problems. | | quarterly |
| Delano will use formulas for surface area and volume of three-dimensional objects to solve problems. | | quarterly |
| Delano will use angle relationships between angles to determine if two lines are parallel. | | quarterly |
| | | quarterly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☐ Documented Observation  ☐ Report  ☐ Other _____

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 3 of 4

84

Student Name: D████ W████
Student ID Number: 20382703   IX9R ████/R9

Managing School:  The High Road Academy of Washington DC
Attending School:  The High Road Academy of Washington DC

DCPS –IEP
Page 3 of 4

**VIII. SPECIALIZED SERVICES**

Additional Comments:

Area Addressed by goal: **Social Emotional**

Goal Number:

**ANNUAL GOAL:** (Including mastery criteria.)

In a structured setting, with 80% accuracy, D████ will identify and address a full range of emotions  including anger, and sadness, through the following short term goals:

Provider(s): Social Worker/Therapist

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| D████ will express anger through appropriate verbalization and healthy physical outlets. | | Monthly |
| D████ will employ self correcting/self monitoring techniques (time outs, etc) when feeling stress | | Monthly |
| D████ will increase participation ingroup activities. | | Monthly |
| D████ will seek out appropriate staff when in need of help with emotional issues. | | Monthly |
| D████ will use problem solving skills to generate solutions to difficulties with peers in classroom. | | Monthly |

**EVALUATION PROCEDURE (S)**

*Portfolio*    Log    Chart    Test    Documented Observation    Report    Other _____

District of Columbia Public Schools   07-02-2001   Division of Special Education   Appendix – A   IEP Page 3 of 4

85

| Student Name: Delinia William | Managing School: The High Road Academy of Washington DC | DCPS –IEP |
|---|---|---|
| Student ID Number: 20382703  DOB ████789 | Attending School: The High Road Academy of Washington DC | Page 3 of 4 |

Goal Number: ☐

| VIII. SPECIALIZED SERVICES |
|---|

Additional Comments:

Area Addressed by goal: <u>Social Emotional</u>

ANNUAL GOAL: (Including mastery criteria.)

In a structured setting with 80% accuracy D█████will demonstrate an increased effort to participate in group activities.

Provider(s): <u>Social Worker/Therapist</u>

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (Include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| D█████will strive to maintain honesty in peer and staff relationships | | Monthly |
| D█████will listen to peers and give appropriate feedback. | | Monthly |
| D█████will speak clearly, and audibly when interacting with peers and staff. | | Monthly |
| D█████ will not initiate "joning (teasing/provoking)" other students, and will resist the temptation to join in. | | Monthly |
| D█████will initiate topics of discussion in group setting and listen to peer feedback | | Monthly |

EVALUATION PROCEDURE (S)

Portfolio    Log    Chart    Test    Documented Observation    Report    Other _____

District of Columbia Public Schools   07-02-2001    Division of Special Education    Appendix – A   IEP Page 3 of 4

86

| Student Name: D█████ W█████ | Managing School: The High Road Academy of Washington DC | DCPS –IEP |
|---|---|---|
| Student ID Number: 20382703    DOB █████RQ | Attending School: The High Road Academy of Washington DC | Page 3 of 4 |

Goal Number: ☐

| VIII. SPECIALIZED SERVICES |
|---|

Additional Comments:

Area Addressed by goal: Social Emotional

**ANNUAL GOAL:** (Including mastery criteria.)

In a structured setting with 80% accuracy D█████ will use individual therapy sessions to explore emotions and how they are connected to decision making,

Provider(s): Social Worker/Therapist

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (Include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| D█████ will attend individual session and seek out therapist for needed intervention when appropriate | | Monthly |
| D█████ will identify personal interests and skills that make him an unique and special person | | Monthly |
| D█████ will how good choices are made and reflect on past choices | | Monthly |
| D█████ will increase the number of positive statements made about himself | | Monthly |
| D█████ will identify sources of anger, hurt or grief and begin to deal with them directly. | | Monthly |
| D█████ will identify situations or relationships that have contributed to low self-esteem. | | Monthly |

| EVALUATION PROCEDURE (S) |
|---|

Portfolio    Log    Chart    Test    Documented Observation    Report    Other _____

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix – A    IEP Page 3 of 4

| Student Name | Delonte William | Managing School | HRA of Washington, D.C. | DCPS - TRANSITION SERVICES PLAN PAGE 1 OF 2 |
|---|---|---|---|---|
| Student ID Number | | DOB | Attending School   HRA of Washington, D.C. | |

Date Developed: _____

# DCPS TRANSITION SERVICES PLAN

**Note:** The MDT determines if the IEP must include a statement of transition service needs which focuses on the Courses of study if the student will turn 14 during the implementation of the IEP. Furthermore, the MDT must include a detailed transition plan for a student who will turn 16 during the implementation of the IEP.

**I.  Record student's post-secondary goals and interests.**

Employment:   Interested in mechanical engineering

Community Participation:   Needs to work on his community hours

Post-Secondary Education and Training:   college

Independent Living:   n/a

**II.  Courses of study leading to student's post-high school goals.**

| Grade or School Year | Courses of Study |
|---|---|
| 2005-2006 | English, Math, Science, History , Electives |
| | |
| | |
| | |
| | |

**III.  Transition Services Needed.**
Evaluate the student's present level of performance in the following areas: Academic, Career Courses, Community-based Training, Supported or Competitive Employment, Communication, Independent Living Skills, Community Travel, Transportation, Employability Skills, Social Skills,  Community Resources, Educational, Financial, Career Training, Community-Based Instruction, Skill Trade Training, Vocational, or Social Relationships.

| Transition Services | Coordinated Activities and Strategies | Agency Responsible |
|---|---|---|
| Employment<br><br>If service is not needed, provide explanation. | Student will learn job related skills, will have opportunity to participate in career exploration. Student will learn job related skills by way of the classroom. | HRA of DC<br>Home<br>Student |
| Community Participation<br><br>If service is not needed, provide explanation. | Explore places to complete community service hours. | Home<br>Student<br>HRA of WDC |
| Post - Secondary Education and Training<br>If service is not needed, provide explanation. | Student will explore career field and the education preparation needed for career, with field trips,college fairs. | HRA of WDC<br>Student |
| Independent and Adult Living<br><br>If service is not needed, provide explanation. | Banking and Budgeting | HRA<br>Student<br>Home |

| Student Name: Dajuan William | Managing School: The HRA of Washington DC | DCPS –IEP |
|---|---|---|
| Student ID Number: _____ DOB: | Attending School: The HRA of Washington DC | Page 3 of 4 |

Goal Number: ☐

| VIII. SPECIALIZED SERVICES | Additional Comments: |
|---|---|

Area Addressed by goal: ____**Transition**____

**ANNUAL GOAL:** (Including mastery criteria.)

Dajuan will demonstrate life skills by completing the steps necessary to achieve these goals with 80% accuracy

**Provider(s):** Transition Coordinator, Special Education Teacher, and Special Education Teacher Assistant

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Dajuan will learn and identify his own skills and abilities and strengthen marketable work skills. | | Monthly |
| Dajuan will research admission requirements for 3 different post-secondary placements. | | Monthly |
| Dajuan will research qualifications and requirements of 3 different occupations | | Monthly |
| Dajuan will be able to research different services that are available in his community and other job/school related information available on internet, yellow pages, newspaper, online, etc. | | Monthly |
| Dajuan will take post secondary standardized testing (SAT, ACT) | | Monthly |
| Dajuan will write a essay for a scholarship | | Monthly |
| Dajuan will be participate in a job-shadowing opportunity and write an essay about his experience | | Monthly |

| EVALUATION PROCEDURE (S) |
|---|
| _X Portfolio_   Log   Chart   Test   Documented Observation   Report   _X Other applications_ |

District of Columbia Public Schools   07-02-2001   Division of Special Education   Appendix – A   IEP Page 3 of 4

89

| Student Name | ~~Deborah Williams~~ | | Managing School | HRA of Washington, D.C. | DCPS - TRANSITION SERVICES PLAN PAGE 2 OF 2 |
| Student ID Number | | DOB | Attending School | HRA of Washington, D.C. | |

Date Developed: _

| Transition Services | Coordinated Activities and Strategies | Agency Responsible |
|---|---|---|
| **Daily Living Skills** If service is not needed, provide explanation. | | |
| **Functional Vocational Evaluation** If service is not needed, provide explanation. | e-choices | HRA of WDC |
| **Other** | Volunteering | Home |

**IV.**

| Projected Exit Category *(check one)* | | High School Diploma Status | | Projected Exit Date (M/D/Y) |
|---|---|---|---|---|
| | DC High School Diploma | # Credits Earned toward graduation | | |
| | High School Certificate at age 21 | | | |
| | High School Certificate *prior* to age 21 | # Community Service Hours Completed | | |

| State Test Requirements | Area | Date Taken / Score Received |
|---|---|---|
| | | |
| | | |
| | | |

**V.** *Identify any other agencies likely to be responsible for providing or paying for specific transition services.*

> Examples of Agency Linkages Needed for Transition
> - Rehabilitation Services Administration (RSA)
> - Mental Retardation and Developmental Disabilities Administration (MRDDA)
> - Commission on Mental Health Services (CMES)
> - UDC or other higher education institutions

| Agency | Agency Representative/ Telephone Number | Purpose of Contact | Date |
|---|---|---|---|
| RSA | Toni Cowins Telephone No.: | referral | 10/12/05 |
| | Telephone No.: | | |
| | Telephone No.: | | |
| | Telephone No.: | | |

| Student Name | De█████ W█████ | Managing School | High Road Academy | DCPS - IEP |
| Student ID Number 00382703 | DOB ██/██/89 | Attending School | High Road Academy | Page 4 of 4 |

**Additional Comments:** ☐

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in regular education? ☐ Yes ☑ No

Explanation for removal out of regular education classroom.

> D█████ requires a 100% special education program to meet his academic needs.

## X. Supplementary Aids and Services

| Classroom Needs (Do not name products or companies.) | SETTING | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total | Hr./ Min | D/W/M. | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for testing: ☐ None needed

| | |
|---|---|
| Timing/Scheduling: | Extra time, breaks in between test, tast given at best time for student |
| Setting: | Small group setting & preferential seating |
| Presentation: | directions re-read for clarity, verbal & visual cues, repetition of important information |
| Response: | use of a tape recorder, if needed |
| Equipment: | Calculators, mechanic speller, word processor, if needed |

## XI. STATE AND DISTRICT ASSESSMENTS:

☐ Level I  Tested with non-disabled peers under standard conditions without accommodations.

☑ Level III (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations

☐ Level V Portfolio: _____

☐ Level II  (Describe accommodations for level II) Tested under standard conditions with special accommodations.

☐ Level IV  (Describe the alternative assessment)

## XII. Areas Requiring Specialized Instruction and Related Services:        Modifications:

☑ Reading    ☐ Physical/Sensory    ☑ Transition    ☑ Language Arts/English

☑ Mathematics    ☑ Social Emotional    ☐ Vocational    ☑ Social Sciences

☑ Written Expression    ☐ Physical Development    ☐ Independent Living    ☑ Biological & Physical Sciences

☐ Other: _____    ☐ Speech/Language    ☑ Fine Arts

☐ None    Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| General Education | Reject | D█████ needs a small group setting to achieve academic success |
| Out of General Education(Nonpublic) | Accept | |
| | | |
| | | |

Modification(s)/Accommodation(s) to address the harmful effects:

Listed above

Location for Services | HRA

## DOCUMENTED LEVEL OF SERVICE (PERM)
### Complete and attach to MDT/IEP meeting notes

School _High Road Academy of NE_ Principal _Sharon Redman_  Special Education Coordinator _S. Redman_

Date _10/18/05_ Case Manager _____  Technical Support Supervisor _____

Student _Deborah Williams_  DOB _██ 89_ Age _16_ Grade _10_ ID# _00382703_ SSN# _____

Parent _Marion Murphy_  Telephone (H) _____ (W) _____

Address: _5019 11th Str. NE_ _____ _Washington, DC 20017_
         Street #   Street            Quad  Apt. No.   City    State   Zip Code

REFERRAL SOURCE: (Check)  [X] 120 Day  [ ] Reeval.  [ ] HOD  [ ] SA  [ ] MA

[X] Nonpublic  [ ] Residential  [ ] Citywide  [ ] Courts  [ ] Local School  [ ] Other: _____

Previous least restrictive environment (LRE Setting):

## JUSTIFICATION FOR SETTING CONSIDERATION
### (Submit TAT/MDT Documentation)
### SUPPORTIVE DATA/DOCUMENTATION

| 2. ACCOMMODATIONS/ MODIFICATIONS | 3. DATA REQUIREMENTS | | | | |
|---|---|---|---|---|---|
| | Current IEP | Yes | [ ] | No | [ ] |
| | Signatures of required participants (MDT notes) | Yes | [ ] | | |
| | Intervention Behavior Plan | Yes | [ ] | | |
| | Copies of current class work and homework assignments | Yes | [ ] | | |
| | Medical Reports: | Yes | [ ] | No | [ ] |
| | Clinical Reports: | Yes | [ ] | No | [ ] |
| | Psychiatric Reports | Yes | [ ] | No | [ ] |
| | Medications: | Yes | [ ] | No | [ ] |
| | Attendance Record | Yes | [ ] | | |
| | Copies of most recent evaluation(s) | Yes | [ ] | | |
| 4. Results of all interventions: (TAT, MDT, etc. and attach meeting notes.) | 5. Resources needed for program implementation | | | | |

## 6. CURRENT SETTING CONSIDERATIONS

| ROW | SETTING in neighborhood school (Determined through the IEP team.) | SERVICE PROVIDER (Based on documented need) | LEVEL OF SERVICE (Based on documented need) |
|---|---|---|---|
| 1 | [ ] in general education classroom setting | [ ] general educators with consultation from special education staff | [ ] between 0% and 20% of service time |
| 2 | [ ] combination general education and resource classroom | [ ] combination of general educators, special educators and related service providers | [ ] between 21 % and 60% of service time |
| 3 | [ ] *out of general education classroom | [ ] special educators and related service providers | [ ] between 61 % and 100% of service time |

*In providing or arranging for the provision of nonacademic and extracurricular service and activities, including meals, recess period, and the services and activities, each public agency shall ensure that each child with a disability participates with non-disabled children in those services and activities (300.306) to the maximum extent appropriate to the needs of that child. (300.553) Nonacademic settings.

### Check the level of need as indicated:
### DIRECTIONS:

| If two or three boxes are checked in the Row 1, check LOW. If two or three boxes are checked in the Row 2, check MODERATE. If two or three boxes are checked in the Row 3, check HIGH. | If one box is checked in each row, check either MODERATE or HIGH, depending on the need of the student. |
|---|---|

## 7. LEVEL OF NEED

| [ ] LOW | [ ] MODERATE | [ ] HIGH |
|---|---|---|

07-02-2001                                Attention: Technical Support Supervisor / PERM Compliance Team

92

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

INDIVIDUALIZED EDUCATION PROGRAM
(IEP)
MEETING NOTES

STUDENT ~~D—— W———~~                    SCHOOL High Road Academy DATE: 10/11/05

| PARTICIPANTS: | PARTICIPANTS: (Sign Name) | DISCIPLINE |
|---|---|---|
| S. Redman | S Redman | Director |
| Caryl Banks | Caryl Banks | social worker LGSW |
| Michael Williams | Michael Williams | Teacher |
| Annie R. Pressley | Annie R Pressley | Edu Advocate |
| Marian Murphy | Marian Murphy | gen ed math |

Parent was given Procedural Rights + Safeguards. Introduction of all parties present were completed. The meeting begins by attempting to call B. Harrison LEA/DCPS. DCPS was notified twice about the I.E.P meeting via email. ~~DCPS se~~ Through the 9/27/05 HOD DCPS was responsible to initiate/contact to Friendship Edison to participate in the meeting. Friendship Edison nor DCPS was present. At this meeting Comp Ed was on agenda through the HOD. Parent and Advocate was prepared to move forward but DCPS nor Friendship Edison was present. Parent Advocate are requesting 400hrs of

Comp. Ed. for related services + specialized instruction per 9/27/05 HOD. Advocate is proposing one on one tutoring in Math + SE English with tutors to be provided by DCPS within 7 school days - if not Parent will obtain outside tutoring funded by DCPS.

Parent

Requested more homework from teacher, teacher provided extra work. Teacher explains that missed work was given. Another parent concern was work not challenging enough. Teacher explains that student is proficient by not achieving mastery.

Advocate is requesting progress reports.

Teacher reviewed proposed Academic IEP goals. Parent and Advocate agreed with proposed goals.

Social worker reviewed proposed social emotional IEP goals.

Parent and social worker will work to obtain formal documentation of ADHD diagnosis.

Clinical will be updated with current diagnosis. Psychological will be sent to Dr. Taylor-Davis at DCPS for review to determine impact on academics and added as a disability under OHI on the IEP. Advocate requesting Dr. Taylor-Davis review within two weeks.

Although counseling was increased to 1.5 hours of service

94

was not present.

Proposed social emotional goals were agreed upon by Parent and Adovacte. Goals will be ammended after ADHD diagnosis is added.

# FACSIMILE COVER LETTER

DATE: 02/06/07

TO: SHO

COMPANY: SHO

FAX NUMBER: (202) 442-5556

FROM:  Allen Mohuber, Esq

RE:  DUE PROCESS COMPLAINT NOTICE FOR D████ W█████ (DOB:██/██/89)

TOTAL NUMBER OF PAGES INCLUDING COVER SHEET:_____7_____

MESSAGE:

If there is any problem with this transmission, please call as soon as possible at (202) 626-0040

***CONFIDENTIALITY NOTICE***

The pages that accompany this facsimile transmission contain information from CHRISTOPHER N. ANWAH, PLLC, which is confidential or privileged, or both. The information is needed to be for the use of the individual or entity named on this cover letter.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.  If you have received this facsimile in error, please notify us by telephone immediately at 202-626-0040 so that we can arrange for the retrieval of the original documents at no cost to you.

TRANSMISSION VERIFICATION REPORT

TIME    : 02/06/2007 16:54
NAME    : CHRISTOPHER ANWAH PL
FAX     : 2026260040
TEL     : 2026260040
SER.#   : BROF5J290083

DATE,TIME       02/06  16:52
FAX NO./NAME    2024425556
DURATION        00:02:12
PAGE(S)         07
RESULT          OK
MODE            STANDARD
                ECM

**HP Officejet 6210**
Personal Printer/Fax/Copier/Scanner

Log for
Dr. Annie Pressley
2026260048
Nov 16 2005 7:52PM

**Last Transaction**

| Date | Time | Type | Identification | Duration | Pages | Result |
|------|------|------|----------------|----------|-------|--------|
| Nov 16 | 7:51PM | Fax Sent | 3326155 | 1:06 | 2 | OK |

# Law Offices,
## Christopher N. Anwah, PLLC
### Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
    (DC, MD, NJ)
Fatmata Barrie, Esq.
    (DC, FL)
Georgina A. Oladokun, Esq.
    (MD)
Tamika Jones, Esq.
    (DC)

Carpenter's Building
1003 K Street, N.W.
Suite 565
Washington, D.C. 20001
Phone: (202) 626-0040
Fax: (202) 626-0048
Email: chrisanwahfirm@chrisanwahfirm.com

## FACSIMILE COVER LETTER

DATE:
    February 11, 2006

TO:
    Ms. Paula Travers - LEA

COMPANY
    D.C. Public Schools Nonpublic Day Placement Office

FAX NUMBER:
    (202) 442-5517

FROM:
    Annie R. Pressley, J.D. - Education Advocate

TOTAL NUMBER OF PAGES INCLUDING COVER SHEET 18

MESSAGE SUBMISSION OF INDEP EVALS FOR D██████ W█████ - DOB: ███/89

If there is any problem with this transmission, please call as soon as possible at (202) 626-0040

### *** CONFIDENTIALLY NOTE ***

The pages accompany this facsimile transmission contain information from the CHRISTOPHER ANWAH, ESQ. law offices which is confidential or privileged, or both. The information is intended to be for the use of the individual or entity named on this cover letter. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this facsimile in error, please notify us by telephone immediately at (202) 626-0040 so that we can arrange for the retrieval of the original documents at no cost to you.

98

# FACSIMILE COVER LETTER

**DATE:** 04/03/07

**TO:** OGC

**COMPANY:** OGC

**FAX NUMBER:** 202-442-5098/97

**FROM:** Fatmata Barrie, Esq.

**RE: 5-day for [redacted]**

**TOTAL NUMBER OF PAGES INCLUDING COVER SHEET** 92

Part I = DW-01 to DW-18

**MESSAGE:**

***CONFIDENTIALITY NOTICE***

The pages accompany this facsimile transmission contain information from the Law Offices of Christopher N Anwah, PLLC which is confidential or privileged, or both. The information is intended to be for the use of the individual or entity named on this cover letter. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this facsimile in error, please notify us by telephone immediately at (202) 625-0040 so that we can arrange for the retrieval of the original documents at no cost to you.

TRANSMISSION VERIFICATION REPORT

TIME : 04/05/2007 19:51
NAME : CHRISTOPHER ANWAH PL
FAX : 2026250048
TEL : 2026250040
SER.# : BROF5J290883

| | |
|---|---|
| DATE,TIME | 04/05 19:24 |
| FAX NO./NAME | 4425097 |
| DURATION | 00:27:19 |
| PAGE(S) | 95 |
| RESULT | OK |
| MODE | STANDARD ECM |

# LAW OFFICES OF
# CHRISTOPHER N. ANWAH, PLLC

Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
  (DC, MD, NJ)
Fatmata Barrie, Esq.
  (DC, FL)
Georgina A. Oladokun, Esq.
  (DC, MD)
Allen Mohaber, Esq.
  (MD)

Carpenter's Building
1003 K Street, N.W.
Suite 565
Washington, D.C. 20001
Phone: (202) 626-0040
Fax: (202) 626-0048
Email: chrisanwahfirm@chrisanwahfirm.com

## FACSIMILE COVER LETTER

**DATE:** 04/03/07

**TO:** OGC

**COMPANY:** OGC

**FAX NUMBER:** 202-442-5098/97

**FROM:** Fatmata Barrie, Esq.

**RE:** 5-day for ~~Dakmata Williams~~

**TOTAL NUMBER OF PAGES INCLUDING COVER SHEET** 92

**MESSAGE:** *Part I = DW-01 to DW-18*

### ***CONFIDENTIALITY NOTICE***

The pages accompany this facsimile transmission contain information from the Law Offices of Christopher N. Anwah, PLLC which is confidential or privileged, or both. The information is intended to be for the use of the individual or entity named on this cover letter. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this facsimile in error, please notify us by telephone immediately at (202) 626-0040 so that we can arrange for the retrieval of the original documents at no cost to you.



DW-19

**interdynamics, inc.**

Evaluations and Therapy

## NEUROPSYCHOLOGICAL EVALUATION
### *Confidential Report*

**Name:** De██████ A. Wi██████    **Date of Birth:** ████████ 1989
**Current School:** High Road Academy    **Age:** 16 years
**Primary Language:** English    **Grade:** 11
**Date of Evaluation:** December 29, 2005    **Date of Report:** January 5, 2006

### Reason for Referral:
De██████ A. Wi██████ was referred for a Neuropsychological Evaluation for treatment and planning.

### General Observations:
De██████ and his grandmother provided information for this report, and were considered to be reliable informants. De██████ was appropriately dressed and groomed. He had no difficulty separating from his grandmother. He related well to the examiner, and was cooperative. There were no abnormalities of posture and gait. There were signs of inattentiveness during the evaluation. However, De██████ was easily redirected to task, and responded well to positive reinforcement.

### Relevant Background Information:
De██████ has been diagnosed with Attention Deficit Hyperactivity Disorder since the 2nd grade. He was placed on *Concerta* at approximately eleven-years of age, according to his grandmother, Ms. Murphy. Ms. Murphy stated that she has taken care of De██████ since he was two-years of age. Reportedly, De██████ has one brother and a sister in their early twenties. On one occasion, De██████ biological mother took him away from his grandmother for a short period of time. However, he was returned after a few days, and his grandmother subsequently officially gained custody of him. De██████ biological mother deceased in 2003. Ms. Murphy stated that De██████ had approximately six-months of grief counseling. De██████ biological father is known to the criminal justice system. However, he has been out of jail for approximately two years, and is somewhat involved in his son's life.

De██████ was born of natural delivery at Howard University Hospital following his mother's full-term pregnancy. Delivery was basically unremarkable, according to Ms. Murphy. However, De██████ mother and father have a history of substance abuse involving crack cocaine. At the age of two, De██████ fell off a chair and was knocked unconscious for several minutes after hitting his head on the floor. He was observed overnight at Children's Hospital and released after x-rays revealed no significant damage. De██████ achieved all developmental milestones on time, including sitting, walking, and talking.

10001 Derekwood Lane, Suite #120, Lanham, Maryland 20706   Phone: 301.306.4590   Fax: 301.306.4591   Web: www.interdynamicsinc.com

*Neuropsychological Evaluation – D████ A. W█████*
*January 5, 2006*

Previous psychoeducational testing revealed that D████ is functioning in the Average Range of intelligence. His academic skills are commensurate with his cognitive potential, with the exception in the area of mathematics. Recommendations were made for D████ to receive psychological counseling in order to enhance social skills, management over negative behaviors, and interpersonal skill development. Additionally, a recommendation was made for D████ to continue his involvement with medication to address attentional problems. D████ grandmother stated that he started having problems in the 2nd grade with inattention, retaining information, and keeping still in the classroom. On one occasion in school, D████ was threatened with retention in that his grades were regressing. Ms. Murphy stated that she is concerned about D████ short attention span, inability to remember all steps in verbal instructions, and social immaturity. Ms. Murphy indicated that D████ prefers to play with younger children, and does not fight back when his peers beat-up on him at school.

**Methods of Assessment:**
Clinical Observation and Interview with D████
Interview with Grandmother, Ms. Murphy
Review of Records
Delis-Kaplan Executive Function System (D-KEFS)
Wechsler Memory Scale – Third Edition

**Neuropsychological Test Results:**
D████ was administered the Delis-Kaplan Executive Function System (D-KEFS), which is a comprehensive test battery that assesses higher level cognitive functioning. D████ performance on the various tests varied from the Deficient to the Above Average Ranges. D████ was noted to frequently forget the instructions on the various tasks, particularly when these involved multiple-step instruction. The wide range of scores is partly explained by the significant difficulty that he had understanding the directions. D████ test results on the D-KEFS are noted to be lower than expected when considering his performance on the last cognitive evaluation.

| Subtests | Scaled Scores |
|---|---|
| *Trail Making Test:* | |
|     Visual Scanning: | 7 |
|     Number Sequencing: | 8 |
|     Letter Sequencing: | 7 |
|     Number-Letter Switching: | 6 |
|     Motor Speed: | 10 |

*Neuropsychological Evaluation – D████ A. W█████,*
*January 5, 2006*

| Subtests | Scaled Scores |
|---|---|
| **_Verbal Fluency Test:_** | |
| Letter Fluency: | 6 |
| Category Fluency: | 13 |
| Category Switching: | 6 |
| Category Switching Accuracy: | 6 |
| | |
| **_Design Fluency Test:_** | |
| Filled Dots: | 7 |
| Empty Dots Only: | 2 |
| Switching: | 5 |
| | |
| **_Color-Word Interference Test:_** | |
| Color Naming: | 2 |
| Word Reading: | 3 |
| Inhibition: | 8 |
| Inhibition/Switching: | 3 |
| | |
| **_Sorting Test:_** | |
| Free Sorting: | 1 |
| Free Sorting Description: | 2 |
| Sort Recognition: | 1 |

On the Trail Making Test, D████ demonstrated Borderline to Low Average ability in visual scanning of letters and numbers. He demonstrated average motor speed in completing the tasks. However, D████ tended to make several mistakes as his speed improved. This seemingly suggests that D████ may need extra time to complete tasks accurately. In addition, his performance on the Number-Letter Switching task suggested some difficulty with cognitive flexibility. D████ demonstrated poor ability to be spontaneous and flexible in order to generate alternative responses to certain tasks.

On the Verbal Fluency Test, D████ performed within the Above Average Range for a task that required him to name animals and boys' names. However, similar to his performance on the Trail Making Test, his performance seemed to worsen on the Category Switching task, in which had to use some level of cognitive flexibility.

On the Design Fluency Test, D████ performed within the Deficient to the Borderline Range. He was seemingly unable to recall the instructions to the test. Although the instructions were available to him for review, D████ continued to make mistakes without referring to the instructions. His performance on the "Empty Dot" section demonstrated poor memory for the tasks, due to forgetting the rules.

*Neuropsychological Evaluation – D█████ A. W██████*
*January 5, 2006*

On the Color Word Inference Test, which places demands on cognitive flexibility by requiring shifting of perceptual set in accordance with changing external demands, D█████ exhibited set shifting deficits. His performance also suggested that some attentional difficulties may influence his scores.

On the Sorting Test, which emphasizes novel problem solving, the ability to generate alternative sorting categories, and the ability to monitor feedback while testing those alternatives, D█████ performance was significantly impaired. Again, D█████ had problems understanding the instructions. It appeared that he needed single-step instructions in order to comprehend. His low scores may be affected by a weak working memory that interferes with his encoding ability when attempting to sort material for short-term memory and immediate use.

|  | Wechsler Memory Scale Index Score | Percentile |
|---|---|---|
| Auditory Immediate | 80 | 9 |
| Visual Immediate | 84 | 14 |
| Immediate Memory | 78 | 7 |
| Auditory Delayed | 89 | 23 |
| Visual Delayed | 75 | 5 |
| General Memory | 73 | 4 |
| Working Memory | 69 | 2 |

The Wechsler Memory Scale was administered to D█████ to determine whether there are any significant memory problems impacting his overall functioning. His performance varied from Deficient to Low Average Range. His working memory was considered poorly developed, and interferes with his ability to hold information in his head, while performing mental operations. At times, D█████ was observed attempting to remind himself to concentrate and focus on tasks in order to understand and complete them. It is likely that his working memory problems, and poor attention account for his weak understanding of multi-level instruction. D█████ had difficulty remembering one set of directions, and the more instructions were added, the harder it became for him. He is likely to have difficulty comprehending and correctly completing certain tasks because of his inability to record and process the information adequately. He is required to exert a lot of energy in order to be able to concentration and focus his attention at times. In school, he may not be able to maintain such effort for long periods of time. As a result, he is likely to fail to attend to a lot of instructions, and thus fall behind in his academic work. D█████ appears to process information at the same level whether information is presented to him auditorally or visually. Overall, his scores on the memory evaluation were not a good as expected considering his last cognitive evaluation, as well as his reported academic abilities.

*Neuropsychological Evaluation – D████ A. W█████*
*January 5, 2006*

## Summary:

D████ A. W█████ is a sixteen-year-old African American male referred for a Neuropsychological Evaluation for treatment and planning. D████ is reported to require special remediation due to a mathematics disorder, and a diagnosis of Attention Deficit Hyperactivity Disorder. He is currently on *50mgs of Concerta*. According to his grandmother, Ms. Murphy, D████ hails from an unstable home environment in that his mother and father abused crack cocaine in the past. D████ mother has been deceased since 2003. His grandmother has had custody of him since the age of two. Reportedly, D████ met developmental milestones within normal limits. However, Ms. Murphy reported that D████ was a "little slow" in walking and talking. He did well in kindergarten and 1st grade, but started to have problems in the 2nd grade with inattention, retaining information, and keeping still in the classroom. D████ was given a 504 plan to address academic concerns affected by ADHD. His plan consisted of asking for help when he needed it, seeing a guidance counselor before and after school to check assignments, and his parents checking his notebook and reviewing his homework at home. D████ receives special seating arrangements in the classroom under this plan. The results of the current evaluation suggest that D████ has deficits in working memory and attention, which significantly affect his ability to learn. These results suggest that once D████ is able to initially attend to information, he is then capable of encoding that information at a level commensurate with his intellectual ability. He is then able to retrieve that information in short-term memory by using both recall and recognition techniques. Due to D████ varying level of attention, it is difficult for him to initially attend to information that is being presented to him, particularly when that information becomes more complex. D████ generally processes the information the same way whether the information is presented visually or auditorally.

## Recommendations:

- D████ needs to be involved in a learning environment in which efforts are made to break-up information into smaller chunks to help him process it. He needs additional time to complete certain assignments. If possible, critical bits of information should be highlighted or noted in the margins so that it is more readily available when the end of the passage is reached, and that information must be used. D████ should be taught various memory strategies in order to help increase his retention of information.

- D████ should be given a psychoeducational evaluation to determine his current cognitive level.

- D████ needs to be involved in individual counseling to address self-esteem and confidence issues.

5

105

*Neuropsychological Evaluation – D████ A. W█████*
*January 5, 2006*

- D████ needs to be involved in group counseling to assist with interpersonal skill development.

- D████ needs to continue his involvement with medication due to ADHD.

**Diagnostic Impressions DSM-IV:**

Axis I:  294.9  Cognitive Disorder, NOS
         314.01 Attention Deficit Hyperactivity Disorder, Combined Type
         315.9  Learning Disorder, NOS

Axis II:  V71.09 None Known

Axis III:  Severe Ear Infections, Exposure to Drugs in Utero, and Hit Head on Floor at Age 5

Axis IV:  Psychosocial Stressors:  Primary Support Group Problems, Attentional Problems, Educational Problems, Peer Relational Problems, and Environmental Problems.

Axis V:  Global Function (GAF): 55 (Severe Symptoms)


Belton Wilder, Ph.D.
Examiner

James Moses Ballard II, Ph.D.  1/16/2006
Chief Psychologist
D.C. License # 354
Maryland License # 1160

6



DW-20

**interdynamics, inc.**

Evaluations and Therapy

## PSYCHOEDUCATIONAL EVALUATION
### Confidential Report

| | | | |
|---|---|---|---|
| **Name:** | D████ W█████ | **Date of Report:** | January 13, 2006 |
| **Date of Birth:** | █████████, 1989 | **Examiner:** | Carolyn B. Hoffman, Psy.D. |
| **Age at Evaluation:** | 16 years, 3 months | | Psychology Associate |
| **Dates of Evaluation:** | December 29, 2005 | **Supervisor:** | James Moses Ballard II, Ph.D |
| | | | Licensed Clinical Psychologist |
| | | | MD: 1160; DC: 354 |

### REASON FOR REFERRAL

D████ was referred for a psychoeducational evaluation by his Educational Advocate, Christopher Anwah, Esq., to assess his current level of cognitive, academic, and social emotional functioning. D████ is currently in the 11th grade at High Roads Academy in Washington, DC. His grandmother, and legal guardian, has expressed concern about the appropriateness of his placement at High Roads. Results from this evaluation will be used to assist the multidisciplinary team in determining the most appropriate educational program for D████.

### TESTS & TECHNIQUES ADMINISTERED

Clinical Interview with D████
Interview with Ms. Marian Murphy, D█████ maternal grandmother
Interview with Mr. Michael Williams, High Road Academy Teacher
Mental Status Examination
Beery-Buktenica Developmental Test of Visual-Motor Integration (VMI)
Wechsler Intelligence Scale for Children – Fourth Edition (WISC-IV)
Wechsler Individual Achievement Test – Second Edition (WIAT-II)
Behavior Assessment System for Children, Second Edition (BASC-2)
     Self Report - Adolescent
     Parent Rating Scales – Adolescent
     Structured Developmental History (SDH) with Ms. Murphy

### RELEVANT BACKGROUND INFORMATION

D████ is a 16 year-old African American male. He lives in Washington, D.C. with his paternal grandmother, Ms. Murphy, his aunt, and his ten year-old cousin, Tanisha. Ms. Murphy has had custody

10001 Derekwood Lane, Suite #120, Lanham, Maryland 20706   Phone: 301.306.4590   Fax: 301.306.4591   Web: www.interdynamicsinc.com

107

of Da████ since he was approximately three months old, and became his legal guardian when he was five or six. Ms. Barbara Wilkins, Da██████ biological mother, struggled with drug addiction, and reunification attempts were unsuccessful. Da████ did maintain occasional contact with his mother and sometimes visited overnight, until she passed away of breast cancer in August 2003 at the age of forty. Da██████ father, Mr. Kevin Stevenson, lives in Lanham, Maryland. There are contradictory reports about the reasons for Mr. Stevenson's estrangement from Da████. A previous report maintains that Da████was the unanticipated result of an affair between Mr. Stevenson and Ms. Wilkins and that Mr. Stevenson maintained distance because of continuing feelings of resentment toward Ms. Wilkins. Ms. Murphy indicated during this evaluation that her son, Mr. Stevenson, had been incarcerated because of a drug charge and, after his release, left the area because a woman was trying to "have him killed." He has since returned to Virginia, has been clean for approximately 18 months, and is slowly re-establishing with Da████.

Da████was exposed to crack cocaine in-vitro; it was reported that both his mother and father were using drugs at the time of his conception and that his mother smoked cigarettes throughout the pregnancy. Da████was born without complication at Howard University Hospital and Ms. Murphy recalled that he and his mother were released after three days. Ms. Murphy reported that Da████ cried frequently as a baby, suffered from colic, and experienced problems with motor skills (specifically with learning to walk, ride a bike, and throw and catch balls). When he was four years old, Ms. Murphy remembered that Da████ fell off a table and lost consciousness for approximately ten minutes. He was observed at Children's Hospital overnight and released after x-rays revealed no significant damage. There is no history of seizures or major hospitalization. Da████continues to have seasonal allergies and takes Claritin for symptom relief. Da████ has also taken 54 mg. of Concerta a day since being diagnosed with ADHD in 2000.

Da████ academic history was reported by Ms. Murphy and augmented with detail from a Cognitive Evaluation report dated May 6, 2002. Mr. Williams, Da██████ teacher at High Roads Academy, was also interviewed. According to Ms. Murphy, Da████ performed well until the second grade, when he began experiencing difficulty with paying attention, retaining information, and remaining still in his classroom seat. Though Da████ has not been retained in any grades, Ms. Murphy reported that he has always had difficulty with reading and math. He started middle school at Ideal, but was transferred to Village Middle School after allegations that he was struck by a Teacher's Aide. Also, according to a report written by Sandra R. Saulter, Ph.D., who conducted a Cognitive Evaluation with Da████, "Ms. Murphy indicated that Da████ is not getting any special accommodations at Ideal and this is a violation of his Section 504 Plan. His teachers at Ideal do not think that he has a problem or needs special accommodations. Ms. Murphy stated that she is extremely dissatisfied with Ideal. She feels that Da████ is not getting what he needs academically, and she alluded to his physical safety being in jeopardy." Da████had been evaluated when he was twelve years old, and it was determined that he was functioning in the Average range of intelligence but tested below grade level in basic arithmetic. This led to a diagnosis of Mathematics Disorder. Recommendations at that time included referrals for Special Education Services and in-school psychosocial counseling. At that time, Ms. Murphy also expressed concern over Da██████ "social immaturity," which she described as his preferring to play with younger children and not fighting back when kids beat up on him at school. Da████was transferred to Village Middle School. He was moved from Village to Backus Middle School so that he could receive instruction in a Special Education setting. Da████started High School at Friendship Edison, but did not receive Special Education Services. He was then transferred to High Roads Academy, where he is currently in the eleventh grade. Historically, Da████ grades have been poor. He acknowledged that he had trouble keeping pace with his classmates in many of the schools he attended, and he hesitated to ask his teachers for help "like I was supposed to." He could understand

assignments once they were explained to him more clearly, but often still had questions. Mr. Williams, D███████ teacher, indicated that when D██████ first arrived at High Roads he was quiet, passive, and showed little initiative to join class activities. Now, D█████ has become what Mr. Williams described as a role model. He can consistently be relied on to set both a positive behavioral model and to help other students when they need assistance with their work. D█████ no longer hesitates to ask for help with his work—a tendency that even D█████ himself acknowledged hindered his previous academic progress—and invariably takes a leadership role in class when requested to do so. He has earned the respect and friendship of many of his peers, and D█████ currently has a 3.5 grade point average, which Mr. Williams explained is one of the highest averages in his class.

In May of 2002, Andre completed a WISC-III, on which he earned a Verbal IQ of 93, a Performance IQ of 114, and a Full Scale IQ of 103. This indicated that his cognitive abilities fell squarely in the average range, and that he performed better on tasks that utilize nonverbal abilities than on verbal tasks. He completed a WIAT-II on September 17, 2002. Interestingly, on that test he earned Standard Scores of 79 on Math Calculation, 98 on Reading Basic, and 91 for Written Expression. This is a reversal in performance, with Andre earning higher scores on his verbal tasks. The examiner who administered both of those tests noted that Andre's "weaknesses in math impact his ability to participate in mainstream courses," and that "poor attending and social-relatedness impact peer relations."

## BEHAVIORAL OBSERVATIONS

This evaluation was conducted in one, three-hour session in a quiet, private office designed for the purpose. D█████ arrived promptly, escorted by his grandmother. He is a tall young man with an athletic build who appears his chronological age. He was appropriately dressed in casual, neat clothes. No abnormalities in gait or movement were observed. His affect was very slightly blunted but within normal range; this may be a medication effect (Concerta). He was well groomed and rapport was quickly established. D█████ conversed easily with this examiner, maintained eye contact, sat quietly in his chair throughout the assessment, and focused appropriately on the tasks. His speech was clear and he did not exhibit any loose or dissociative thought content. He was very cooperative and appeared interested throughout the testing session. D█████ indicated that although he had weak vision in one eye when he was younger, his sight has improved with age and he does not wear or need glasses. He reported that his hearing was unimpaired as assessed during his most recent school physical. D█████ exerted good effort on all of the measures completed, and these results are believed to be an accurate representation of his current level of functioning.

## TEST RESULTS AND INTERPRETATION

## COGNITIVE FUNCTIONING

### WISC-IV Scores Snapshot

| WISC-IV Composite | Score |
|---|---|
| Verbal Comprehension Index (VCI) | 104 |
| Perceptual Reasoning Index (PRI) | 102 |
| Working Memory Index (WMI) | 113 |
| Processing Speed Index (PSI) | 83 |
| Full Scale IQ (FSIQ) | 102 |

109

 D█████ W█████          Confidential PsychoEducational Evaluation                    Page 4 of 10

In order to obtain D█████ current level of cognitive functioning, he was administered the Wechsler Intelligence Scale for Children—Fourth Edition (WISC-IV), a standardized test that is divided into subtest. Ten core subtests comprise four indices that contribute equally to the FSIQ score. The four indices are the Verbal comprehension Index (VCI), the Perceptual Reasoning Index (PRI), the Working Memory Index (WMI), and the Processing Speed Index (PSI). The VCI is composed of subtests measuring verbal abilities utilizing reasoning, comprehension, and conceptualization. The PRI is composed of subtests that measure perceptual reasoning and organization. The WMI includes subtests that measure attention, concentration, and working memory. The PSI is composed of subtests measuring the speed of mental and graphomotor processing. On any of the subtests that comprise the indices, a scaled score of 10 is considered Average. A scaled score of 13 to 15 indicates Above Average functioning in that domain, while 5 to 7 indicates Below Average functioning. Scores of 16 and higher are described as Superior, a 4 is considered Borderline, and scores 3 and below are considered deficient.

**WISC-IV Composite Scores Summary**

| Scale | Sum of Scaled Scores | Composite Score | Percentile Rank | Confidence Interval | Qualitative Description |
|---|---|---|---|---|---|
| Verbal Comprehension (VCI) | 33 | 104 | 61 | 97-111 | Average |
| Perceptual Reasoning (PRI) | 31 | 102 | 55 | 94-109 | Average |
| Working Memory (WMI) | 25 | 113 | 81 | 104-120 | High Average |
| Processing Speed (PSI) | 14 | 83 | 13 | 76-94 | Low Average |
| Full Scale (FSIQ) | 103 | 102 | 55 | 97-107 | Average |

The Full-Scale IQ (FSIQ) is considered the most representative estimate of global intellectual functioning. D█████ FSIQ places his overall level of cognitive functioning squarely in the Average range (FSIQ = 102, 95% Confidence Interval = 97-107). His overall thinking and reasoning abilities exceed those of approximately 55% of children his age. There is no significant difference between D█████ Verbal and Performance Index scores, indicating that his skills are fairly evenly developed and that his Full Scale IQ can be interpreted as a clear representation of his cognitive abilities

**Verbal Comprehension Index – Subtest Scores Summary**

| Subtests | Scaled Score | Test Age Equiv. | Percentile Rank |
|---|---|---|---|
| Similarities | 13 | >16:10 | 84 |
| Vocabulary | 9 | 14:6 | 37 |
| Comprehension | 11 | >16:10 | 63 |

D█████ composite score of 104 on the Verbal Comprehension Index, which measures his verbal reasoning, verbal concept formation, and knowledge acquired from his/her environment, indicated that his verbal abilities, as represented by his performance on the WISC-IV, are in the Average range. His performance on the subtests contributing to the VCI is somewhat variable, although it is not significantly unusual. D█████ earned his highest score on the Similarities subtest (SS = 13), which is designed to measure verbal reasoning and concept formation. It also involves auditory comprehension, memory, and ability to distinguish between nonessential and essential features. D█████ performed similarly on the Comprehension subtest (SS = 11), which also measures verbal reasoning and conceptualization. It also assesses the child's ability to evaluate and use past experience, knowledge of conventional standards of behavior, social judgment and maturity, and common sense. D█████ scored

110

slightly lower on the Vocabulary Subtest (SS = 9). Vocabulary is designed to measure a child's word knowledge and verbal concept formation. It also measures a child's auditory perception and comprehension, long-term memory, degree of language development, and verbal expression. Dabasia performance on this index suggests that he has well-developed verbal reasoning abilities and verbal conceptualization skills which, academically, help him follow and contribute appropriately to classroom discussions. His lower score on the Vocabulary subtest may reflect Dabasia struggles with learning in his previous schools; scores on this task are influenced by the student's accumulated fund of knowledge that would have, largely, been acquired and built on in the educational setting.

### Perceptual Reasoning Index - Subtest Scores Summary

| Subtests | Scaled Score | Test Age Equiv. | Percentile Rank |
|---|---|---|---|
| Block Design | 9 | 14:10 | 37 |
| Picture Concepts | 11 | >16:10 | 63 |
| Matrix Reasoning | 14 | >16:10 | 63 |
| (Picture Completion) | 14 | >16:10 | 91 |

Dabasia earned a score of 102 on the Perceptual Reasoning Index (PRI), which classified his nonverbal skills in the Average range. The PRI is designed to measure fluid reasoning with tasks that assess nonverbal concept formation, visual perception and organization, simultaneous processing, visual-motor coordination, learning, and the ability to separate figure and ground in the visual stimuli. Dabasia performed comparably on the subtests that contribute to the PRI, suggesting that his visual-spatial reasoning and perceptual-organizational skills are fairly evenly developed. However, he earned a lower score on the Block Design task (SS = 9), which required him to view a pictured model in a stimulus book and use blocks to recreate the design within a specified time limit. It is the only subtest in the PRI that includes time constraint. It also involves the integration of visual and motor processes, assessing the child's hand-eye abilities.

### Working Memory Index - Subtest Scores Summary

| Subtests | Scaled Score | Test Age Equiv. | Percentile Rank |
|---|---|---|---|
| Digit Span | 10 | 15:10 | 50 |
| Letter-Number Sequencing | 15 | >16:10 | 95 |

Dabasia score of 113 on the Working Memory Index (WMI) shows his ability to sustain attention, concentration, and exert mental control. The tasks required him to briefly hold information so that manipulations or calculations could be performed. Dabasia scored much better on the Letter-Number Sequencing subtest (SS = 15) than on the Digit Span subtest (SS = 10). A direct assessment of Dabasia short-term auditory memory, performance on these subtests requires attention, concentration, and mental control. Mental control is the ability to attend to and hold information in short-term memory while performing some operation or manipulation with it and then to correctly produce the transformed information. Though both of these subtests tap several of the same abilities, only the Digit Span task requires the child to shift mid-test from the child repeating numbers in the same order as read aloud by the examiner to repeating them in reverse order. This reversal requires cognitive flexibility, and it is likely that this flexibility presented a challenge for Dabasia.

Confidential PsychoEducational Evaluation

## peed Index - Subtest Scores Summary

|  | Scaled Score | Test Age Equiv. | Percentile Rank |
|---|---|---|---|
|  | 4 | 10:2 | 2 |
| ch | 10 | 15:10 | 50 |

by the Processing Speed Index (PSI), D........ ability to process simple or routine visual
out making errors is in the Low Average range. He performed significantly better on
ch (SS = 10), than he did on Coding (SS = 4). Discrepancies between these two subtests
t, occurring in only 2.2% of the overall population of test-takers. Performance on the PSI
rmation about the accuracy with which D....... can mentally process simple or routine
under time pressure. These tasks are also sensitive to neurological conditions such as
Symbol Search task primarily measures speed of *mental* processing, while Coding is
sure of psychomotor speed. D....... depressed score on this task correlates with his
n the Block Design task, which also taps motor processes. D....... inability to process
s quickly as many of his peers is likely a strong component of his academic difficulty.
inued participation in an educational setting that is sensitive to D....... challenges, his
nic performance, his newly-found confidence, and his motivation to excel would likely

nta achieved his best performance among the verbal reasoning tasks on the Similarities
west score on the Vocabulary subtest. His performance across these areas differs
nd suggests that these are the areas of most pronounced strength and weakness,
n his verbal reasoning abilities. D....... performed much better than most of his age-
Similarities subtest, which suggests that his ability to abstract meaningful concepts and
from verbally presented material is strong.

## FUNCTIONING

### res Summary

| OMPOSITE | SCORE |
|---|---|
|  | 111 |
|  | 83 |

## WIAT-II Subtest Scores

| ESTS | STANDARD SCORE | PERCENTILE RANK | AGE EQUIV. | GRADE EQUIV. |
|---|---|---|---|---|
| g | 100 | 50 | 16:0 | 10:2 |
| prehension | 126 | 96 | >19:11 | >12:9 |
| Decoding | 105 | 63 | 17:0-19:11 | 10:4 |
| erations | 79 | 8 | 11:8 | 6:5 |
| ng | 90 | 25 | 13:4 | 8:2 |
|  | 96 | 39 | 15:0 | 8:8 |
| mprehension | 94 | 34 | 14:0 | 8:8 |

Delmaa was administered the Wechsler Individual Achievement Test—Second Edition (WIAT-II). The WIAT-II is a standardized measure that gathers information about an individual's current academic skills and problem-solving abilities. Delmaa performance in several categories is compared to grade peers using a standard score, percentile rank, age equivalent, and grade equivalent. For each subtest and composite, standard scores range from 40 to 160. The average score is 100.

**Reading.** A child's overall reading abilities are usually indicated by Reading Composite score. However, in Delmaa case, his very skills are not most accurately represented by this number because his abilities vary so significantly. Delmaa presented very different capabilities on different aspects of reading. He performed much better on tasks that assessed his ability to read paragraphs and answer questions about what was read (Reading Comprehension SS = 126), than on tasks that required him to correctly read a series of printed words or correctly apply phonetic decoding rules (Pseudoword Decoding SS = 105). His Reading Comprehension performance was better than approximately 96% of his peers, placing these skills in the Superior range. The Word Reading Subtest assesses reading (phonological awareness), word recognition and decoding skillsby requiring the child to read words aloud from a written list. Word reading accuracy is scored and word reading automaticity and self-corrections are qualitatively analyzed. Delmaa earned a standard score of 100 on the this subtest, which is squarely in the Average range.

**Mathematics.** Delmaa math skills were much lower than his reading abilities, but comparable to each other. In overall mathematics skills, Delmaa performed in the Low Average range, as indicated by his Mathematics Composite standard score (83). His skills in this area exceed that of only approximately 13% of students his age. Delmaa performance on tasks that required him to add, subtract, multiply, and divide one- to three-digit numbers, fractions, and decimals; and solve simple linear equations (Numerical Operations standard score = 79) was similar to his performance on tasks that required him to understand number, applied math concepts, geometric measurement, basic graphs, and solve word problems (Math Reasoning standard score = 90).

**Oral Language.** Delmaa oral language abilities were assessed at the Average range. On a task that required him to listen for detail and identify the picture that best represented the description given, his performance exceeded that of 42% of students his age (Listening Comprehension standard score = 94).

**Written Language/Spelling.** Delmaa performed a task that required him to correctly spell verbally-presented words in the Average range (Spelling standard score = 96). Similar to the Vocabulary subtest on the WISC-IV, this task relies on skills and information that the child learned and built on from their early school environment, which was before Delmaa started taking Concerta. His skills assessed by this test currently exceed those of only approximately 39% of students his age.

## PERCEPTUAL MOTOR FUNCTIONING

Delmaa was administered the Beery-Buktenica Developmental Test of Visual Motor Integration. This instrument consists of a sequence of geometric forms to be copied with paper and pencil. These tasks are of increasingly complex design, thus, evaluating both fine-motor control and motor planning skills. Delmaa written replications were scored for precision and accuracy. He obtained a Standard Score of 72, which is in the 3rd percentile of functioning. His performance was in the Low range of functioning, with 83% of students his age achieving a higher level. His performance on this task correlates with those of motor performance on the WISC-IV (Block Design and Coding). The question lingers about Delmaa visuo-motor capability. Some errors are expected in older children and are simply a sign of

copying a presented design because they were easily within his grasp. Often, the children perform better when they pay more attention to the increasingly difficult patterns. The fact that D█████ had difficulty with consecutive designs raises the question of his having properly developed grapho-motor or visual-motor abilities.

## SOCIAL EMOTIONAL SCREENING

D█████ completed the Behavior Assessment System for Children, Second Edition, (Self – Report – Adolescent) which is a pencil-and paper self report questionnaire that asks the rater to describe how they think, feel, or act. Responses are quantified to obtain scaled scores. Scores in the Clinically Significant range suggest a high level of maladjustment. Scores in the At-Risk range may identify the developing of a problem that needs monitoring.

According to his self-report, D█████ is experiencing no behavioral problems at the At-Risk or Clinically Significant level. He indicated a greatest difficulty with Attention Problems, though this score was still in an acceptable range. D█████ did endorse the following Critical Items:

| | |
|---|---|
| I feel like my life is getting worse and worse. | **Sometimes** |
| No one understands me. | **Sometimes** |
| I hate school. | **Sometimes** |

Ms. Murphy was also asked to rate D█████ behaviors using the BASC-2 (Parent Rating Scales Form). She perceived the following areas to be at the At-Risk level: **Anxiety, Atypicality, Adaptability, and Social Skills.** Ms. Murphy endorsed that D█████ is "Almost Always" nervous and says 'I get nervous during tests' or 'tests make me nervous.' The Atypicality Scale measures the child's tendency to behave in ways that are considered odd or strange. On this scale Ms. Murphy indicated "Sometimes" to the following items: Seems unaware of others, Stares blankly, Babbles to self, seems out of touch with reality, and Acts strangely. Items on the Adaptability scale assess the ability to adjust to changes in routine or assignment, and to shift from one task to another. Here, Ms. Murphy indicated D█████ difficulty with flexibly shifting from one task to another, which was also revealed by his performance on the Digit Span subtest on the WISC-IV.

Ms. Murphy believes that D█████ functioning in the following areas are at the Clinically Significant level: **Attention Problems, Leadership, Activities of Daily Living, Functional Communication.** Ms. Murphy indicated that D█████ Almost Always 'has a short attention span' and 'is easily distracted,' that he 'never' joins clubs or social groups and is 'never' chosen as a leader. She also endorsed items that indicate that D█████ never makes friends easily, almost always refuses to join group activities, and sometimes avoids other adolescents.

She endorsed the following Critical Items:

| | |
|---|---|
| Has eye problems | **Sometimes** |
| Eats too little | **Sometimes** |
| Is easily annoyed by others | **Sometimes** |

Mr. Williams, D█████ teacher at High Road, described D█████ as a role model. Though D█████ was withdrawn and hesitant to join class activities when he first arrived, Mr. Williams indicated that now he can always rely on D█████ to set both a positive behavioral model and to help other students when they need assistance with their work. He no longer hesitates to ask for help with his work, and takes a

leadership role in class when requested to do so. Deﬁme has also made many new friends, and has earned the respect of many of his peers.

## SUMMARY

Deﬁme is a 16 year, 3 month old African American boy who is currently enrolled in the 11th grade at High Roads Academy. He was referred for a psychoeducational evaluation to assess his current level of intellectual and academic abilities. His paternal grandmother and legal guardian, Ms. Marian Murphy, has also expressed her belief that Deﬁme may be understimulated at High Roads and that she would like to see him have more work to complete at home. Deﬁme was prenatally exposed to crack cocaine. His biological mother used crack cocaine and smoked cigarettes throughout her pregnancy; she passed away in August 2003 from breast cancer at the age of 40. He has never had a consistent relationship with his father. Deﬁme has a history of social withdrawal and poor academic performance, though he earned a 3.5 grade point average during his first term at High Roads. Deﬁme has been taking 45 mg. of Concerta daily since 2000 after being diagnosed with ADHD.

Andre completed a WISC-III in May of 2002, on which he earned a Verbal IQ of 93, a Performance IQ of 114, and a Full Scale IQ of 103. This indicated that his cognitive abilities were in the average range, and that he performed better on tasks that utilize nonverbal abilities than on verbal tasks. He completed a WIAT-II on September 17, 2002. Interestingly, on that test he earned Standard Scores of 79 on Math Calculation, 98 on Reading Basic, and 91 for Written Expression. This is a reversal in performance, with Andre earning higher scores on his verbal tasks. The examiner who administered both of those tests noted that Andre's "weaknesses in math impact his ability to participate in mainstream courses," and that "poor attending and social-relatedness impact peer relations."

During this evaluation, Deﬁme completed the WISC-IV, a standardized test of intellectual ability. According to the WISC-IV, Deﬁme is currently functioning in the Average range of intelligence. He achieved a Full-Scale IQ score of 102, a Nonverbal IQ score of 102, and a Verbal IQ score of 104. Deﬁme earned his highest verbal score on the Similarities subtest, which measures verbal reasoning and concept formation. It also involves auditory comprehension, memory, and ability to distinguish between nonessential and essential features from verbally presented information (Similarities SS = 13) His performance on the nonverbal subtests suggests that his visual-spatial reasoning and perceptual-organizational skills are evenly developed. However, potential weaknesses were identified in Deﬁme ability to function within specified time limits and his visual-motor processes (Block Design SS = 9). He earned his lowest score on the WISC-IV on a different task that measures psycho-motor speed (Coding = 4). His inability to process information as quickly as many of his peers is likely a strong component of his academic difficulty.

On the WIAT-II, a standardized test of academic functioning, Deﬁme obtained the following standard scores: Word Reading = 100, Reading Comprehension = 126, Pseudoword Decoding = 105, Numerical Operations = 79, Mathematics Reasoning = 90, Spelling = 96, and Listening Comprehension = 94. As these scores indicate, Deﬁme presented very different capabilities on different aspects of reading. He performed much better on tasks that assessed his ability to read paragraphs and answer questions about what was read (a task that correlates with the WISC-IV Similarities subtest, on which Deﬁme earned his highest score), than he did on tasks that required him to read a series of words out of context. Deﬁme overall Math skills were lower than his verbal abilities, but still within the Average range of functioning. Deﬁme oral and written language abilities were also assessed to currently be in the Average range.

115

D██████ performance on the Beery-Buktenica Developmental Test of Visual Motor Integration pointed to additional problems with visual-motor capability. D██████ obtained a Standard Score of 72. His performance was in the Low range, with 83% of students his age achieving a higher level. D██████ drawings showed difficulty with several designs in patterns that suggest underdeveloped grapho-motor or visual-motor abilities.

D██████ and his grandmother completed the BASC-2 Self- and Parent-Report forms. Socially and emotionally, D██████ reports that he is currently experiencing no behavioral, anxiety, or depressive problems. He indicated slightly elevated Attention Problems, but he does not perceive these to be at an At-Risk level. Ms. Murphy believes that D██████ functioning in the following areas are at the At-Risk Level: Anxiety, Atypicality, Adaptability, and Social Skills. She believes his functioning in the following areas are Clinically Significant: Attention Problems, Leadership, Activities of Daily Living, and Functional Communication. Mr. Williams, D██████ teacher at High Roads Academy, described D██████ as a boy who arrived at the school exhibiting social withdrawal and academic uncertainty and who has since bloomed into an accomplished student who can consistently be counted on to set behavioral and academic examples for the his peers.

## RECOMMENDATIONS

The following recommendations are offered:

1.  There are various elements that seem to be affecting D██████ functioning. Among them may be social and emotional factors. Additionally, in-vitro exposure to cocaine is frequently known to have effects on cognitive ability. There has been no report of the possible specific effects that this cocaine exposure may have had on D██████. Therefore, a clinical assessment is recommended to clarify emotional contributors to D██████ difficulties. Subsequent to those findings, a neuropsychological assessment should be conducted.

2.  Overall, D██████ functioning seems to have improved in a structured and supportive learning environment. Though he has become much more confident in his abilities, without continued participation in an educational setting that is sensitive to D██████ challenges, his strong academic performance and newly-found belief in himself would likely diminish. It is strongly recommended that he remain in a school that features individualized instruction and attention in a small-group setting.

Carolyn B. Hoffman, Psy.D.
Psychology Associate

James Moses Ballard II, Ph.D.  1/15/2006
Licensed Clinical Psychologist
MD 1160; DC 354

DW21

 **FILE**

# Law Office,
## Christopher N. Anwah, LLC
**Attorneys and Counselors at Law**

Christopher N. Anwah, Esq.
   (DC, MD, NJ)
Fatmata Barrie, Esq.
   (DC, FL)
Georgina A. Oladokun, Esq.
   (MD)
Tamika Jones, Esq.
   (DC)

**Carpenter's Building**
1003 K Street, N.W.
 Suite 565
Washington, D.C. 20001
Phone: (202) 626-0040
Fax: (202) 626-0048
Email: chrisanwahfirm@chrisanwahfirm.com

November 15, 2005

**By Fax: (202) 442-5517**

Ms. Breana Harrison - LEA
D.C. Public Schools Nonpublic Day Placement Office
825 North Capitol Street, N.E.
Washington, D.C. 20002

          RE:    De▬▬ W▬▬
          DOB:  ▬▬/89

Dear Ms. Blake:

Our office is writing to request copies of the ordered evaluations, that is, a psycho-ed and neuropsychological, per the HOD issued September 1, 2005. The timeline for DCPS to complete the evaluations has expired. We are requesting that DCPS provide us copies of the evaluations no later than **Thursday, November 17, 2005 by close of business**. If we do not receive the evaluations by that time, we will assume that they have not been completed and the parent will exercise her rights in the HOD to obtain independent evaluations. Once the timeline requested for DCPS to provide us copies of the evaluations has expired, DCPS should not go forward with any referrals to have the evaluations completed. If you have any questions, you may contact the undersigned staff personnel at either (202) 270-9156 or (202) 626-0040.

Thank you for your prompt attention and cooperation regarding this matter.

Sincerely,

Annie R. Pressley, J.D.
Education Advocate for D▬▬ W▬▬

cc:    High Road Academy
       Client's file

117

# Law Offices,
## Christopher N. Anwah, PLLC
Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
   (DC, MD, NJ)
Fatmata Barrie, Esq.
   (DC, FL)
Georgina A. Oladokun, Esq.
   (MD)
Tamika Jones, Esq.
   (DC)

Carpenter's Building
1003 K Street, N.W.
Suite 565
Washington, D.C. 20001
Phone: (202) 626-0040
Fax: (202) 626-0048
Email: chrisanwahfirm@chrisanwahfirm.com

## FACSIMILE  COVER  LETTER

DATE:
    November 15, 2005
TO:
    Ms. S. Redman - Director
COMPANY
    High Road Academy
FAX NUMBER:
    (202) 332-6155
FROM:
    Annie R. Pressley, J.D. - Education Advocate

TOTAL NUMBER OF PAGES INCLUDING COVER SHEET   2

MESSAGE REQUEST FOR EVALS ORDERED FOR D██████ W██████ - IF YOU HAVE
 COPIES OF THESE EVALS - PLEASE FORWARD TO ADVOCATE

If there is any problem with this transmission, please call as soon as possible at (202) 626-0040

### *** CONFIDENTIALLY NOTE ***

The pages accompany this facsimile transmission contain information from the CHRISTOPHER ANWAH, ESQ. law offices which is confidential or privileged, or both. The information is intended to be for the use of the individual or entity named on this cover letter. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this facsimile in error, please notify us by telephone immediately at (202) 626-0040 so that we can arrange for the retrieval of the original documents at no cost to you.

118



# Law Office,
## Christopher N. Anwah, LLC
**Attorneys and Counselors at Law**

Christopher N. Anwah, Esq.
    (DC, MD, NJ)
Fatmata Barrie, Esq.
    (DC, FL)
Georgina A. Oladokun, Esq.
    (MD)
Tamika Jones, Esq.
    (DC)

**Carpenter's Building**
1003 K Street, N.W.
 Suite 565
Washington, D.C.  20001
Phone: (202) 626-0040
Fax: (202) 626-0048
Email: chrisanwahfirm@chrisanwahfirm.com

February 11, 2006

**By Fax: (202) 442-5517**

Mrs. Paula Travers - LEA
D.C. Public Schools Nonpublic Day Placement Office
D.C. Public School Special Education Division
825 North Capitol Street, N.E.
Washington, D.C. 20002

          RE:   D████ W█████
          DOB:  ████/89

Dear Mrs. Travers:

I am writing to submit copies of D█████ independent evaluations, per HOD issued on September 1, 2005, that is, a neuro-psychological and psycho-education evaluations. Therefore, please provide me with a copy of DCPS' review of D█████ independent evaluations prior to scheduling an MDT/IEP meeting no later than **Tuesday, February 21, 2006 by close of business**. If you have any questions, you may contact the undersigned staff personnel at either (202) 270-9156 or  (202) 626-0040.

Thank you for your prompt attention and cooperation regarding this matter.

Sincerely,

Annie R. Pressley, J.D.
Education Advocate for D█████ W█████

Attachments: (2)

cc: High Road Academy

**HP Officejet 6210**
Personal  Printer/Fax/Copier/Scanner

**Log for**
Dr. Annie  Pressley
2026260048
Feb  11  2006  11:03PM

---

**Last Transaction**

| Date | Time | Type | Identification | Duration | Pages | Result |
|------|------|------|----------------|----------|-------|--------|
| Feb  11 | 10:56PM | Fax  Sent | 4425517 | 7:31 | 18 | OK |

120

HP Officejet 6210
Personal Printer/Fax/Copier/Scanner

Log for
Dr. Annie Pressley
2026260048
Feb 11 2006 11:14PM

**Last Transaction**

| Date | Time | Type | Identification | Duration | Pages | Result |
|------|------|------|----------------|----------|-------|--------|
| Feb 11 | 11:05PM | Fax Sent | 3326155 | 9:25 | 18 | OK |

DW-23

🗀 **FILE**

# Law Office,
## Christopher N. Anwah, LLC
**Attorneys and Counselors at Law**

Christopher N. Anwah, Esq.
   (DC, MD, NJ)
Fatmata Barrie, Esq.
   (DC, FL)
Georgina A. Oladokun, Esq.
   (MD)
Tamika Jones, Esq.
   (DC)

Carpenter's Building
1003 K Street, N.W.
 Suite 565
Washington, D.C. 20001
Phone: (202) 626-0040
Fax: (202) 626-0048
Email: chrisanwahfirm@chrisanwahfirm.com

November 15, 2005

**By Fax: (202) 442-5517**

Ms. Breana Harrison - LEA
D.C. Public Schools Nonpublic Day Placement Office
825 North Capitol Street, N.E.
Washington, D.C. 20002

            RE:   D███████ W█████
            DOB:  ██████/89

Dear Ms. Blake:

Our office is writing to request copies of the ordered evaluations, that is, a psycho-ed and neuropsychological, per the HOD issued September 1, 2005. The timeline for DCPS to complete the evaluations has expired. We are requesting that DCPS provide us copies of the evaluations no later than **Thursday, November 17, 2005 by close of business.** If we do not receive the evaluations by that time, we will assume that they have not been completed and the parent will exercise her rights in the HOD to obtain independent evaluations. Once the timeline requested for DCPS to provide us copies of the evaluations has expired, DCPS should not go forward with any referrals to have the evaluations completed. If you have any questions, you may contact the undersigned staff personnel at either (202) 270-9156 or (202) 626-0040.

Thank you for your prompt attention and cooperation regarding this matter.

Sincerely,

*Annie R. Pressley*
Annie R. Pressley, J.D.
Education Advocate for D███████ W█████

cc:    High Road Academy
       Client's file

122

# Law Offices,
## Christopher N. Anwah, PLLC
Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
(DC, MD, NJ)
Fatmata Barrie, Esq.
(DC, FL)
Georgina A. Oladokun, Esq.
(MD)
Tamika Jones, Esq.
(DC)

**Carpenter's Building**
1003 K Street, N.W.
Suite 565
Washington, D.C. 20001
Phone: (202) 626-0040
Fax: (202) 626-0048
Email: chrisanwahfirm@chrisanwahfirm.com

## FACSIMILE COVER LETTER

DATE:
November 15, 2005
TO:
Ms. Breana Harrison - LEA
COMPANY
DCPS Nonpublic Day Placement Office
FAX NUMBER:
(202) 442-5517/18
FROM:
Annie R. Pressley, J.D. - Education Advocate

TOTAL NUMBER OF PAGES INCLUDING COVER SHEET  2

MESSAGE REQUEST FOR EVALS ORDERED FOR D████ W████

If there is any problem with this transmission, please call as soon as possible at (202) 626-0040

### *** CONFIDENTIALLY NOTE ***

The pages accompany this facsimile transmission contain information from the CHRISTOPHER ANWAH, ESQ. law offices which is confidential or privileged, or both. The information is intended to be for the use of the individual or entity named on this cover letter. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this facsimile in error, please notify us by telephone immediately at (202) 626-0040 so that we can arrange for the retrieval of the original documents at no cost to you.

123

HP Officejet 6210
Personal Printer/Fax/Copier/Scanner

Log for
Dr. Annie Pressley
2026260048
Nov 15 2005 10:19PM

**Last Transaction**

| Date | Time | Type | Identification | Duration | Pages | Result |
|------|------|------|----------------|----------|-------|--------|
| Nov 15 | 10:18PM | Fax Sent | 4425517 | 0:51 | 2 | OK |

124

09/01/2005 15:00    2024425556    STUDENT HEARINGS OFF    PAGE

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## *State Enforcement and Investigative Division*
## CONFIDENTIAL

### Charles R. Jones, Esq., Due Process Hearing Officer
825 North Capitol Street, N.E. 8th Floor
Washington, D.C. 20002
Facsimile: (202) 442-5556

| | | |
|---|---|---|
| In the Matter of | ) | **IMPARTIAL DUE PROCESS** |
| | ) | |
| D▒▒▒▒ W▒▒▒▒, Student, | ) | **HEARING OFFICER'S DECISION** |
| Date of Birth: ▒▒▒▒-89 | ) | |
| | ) | |
| Petitioner, | ) | Hearing Date: August 18, 2005 |
| | ) | |
| vs. | ) | |
| | ) | Held at:  825 North Capitol Street, NE |
| The District of Columbia Public Schools, | ) | Eighth Floor |
| High Road Academy School | ) | Washington, D.C. 20002 |
| Respondent. | ) | |

## DECISION AND ORDER

| | |
|---|---|
| **Parent(s):** | Marion Murphy |
| | 5019 11th Street, N.E. |
| | Washington, D.C. 20017 |
| | |
| **Counsel for Parent:** | Fatamata Barrie, Esq. |
| | Law Offices of Christopher Anwah, PLLC |
| | 1003 K Street, NW. |
| | Suite 500 |
| | Washington, D.C. 20001 |
| | |
| **Counsel for School:** | Michael Levy, Attorney- Advisor |
| | Office of the General Counsel, DCPS |
| | 825 North Capitol Street, N.E., 9th Floor |
| | Washington, D.C. 20002 |

09/01/2005  15:00    2024425556          STUDENT HEARINGS OFF                    PAGE  03/11

# HEARING OFFICER'S DECISION

### DISTRICT OF COLUMBIA PUBLIC SCHOOLS
### State Enforcement and Investigative Division

### Special Education Due Process Hearing

## I.  INTRODUCTION

On July 20, 2005, a Request for a Due Process Hearing filed with the Student Hearing Office, by counsel for the parent, Fatmata Barrie, Esq. The request alleges DCPS failed to provide appropriate special education services to D████ W████

A Due Process Hearing was reconvened on August 18, 2005, at the District of Columbia Public Schools, ("DCPS"), 825 North Capitol Street, N.E., 8ᵗʰ Floor, Washington, D.C. 20002.  Michael Levy, Esq., Attorney-Advisor, represented DCPS. Fatmata Barrie, Esq., represented the parent.  Five Day Disclosure Letters were entered into the record, without any objection by either party. On behalf of the parent: Disclosure Letter dated August 11, 2005: DW-1 through DW-17.  On behalf of DCPS: Disclosure Letter dated August 10, 2005.  Parent's counsel waived a formal reading of the Due Process Rights.  Witnesses for the parent: Marian Murphy.  Witnesses for DCPS: no witnesses were available to render testimony.

## II.  JURISDICTION

The Due Process Hearing was convened, and this decision was written pursuant to Public Law 105-17, The Individuals with Disabilities Education Act of 1997, 20 United States Code 1400 et. Seq.; Title 34 of the Code of Federal Regulations, part 300; Title 5 of the District of Columbia Municipal Regulations and Section 145 of the D.C. Appropriations Act, effective October 21, 1998.

## III.  ISSUES

Whether DCPS denied the student FAPE by failing to provide appropriate special education and related services?

2.

### IV.    SUMMARY OF RELEVANT EVIDENCE

At the commencement of the Hearing, the parent's counsel entered a Motion for directed verdict, as DCPS did not have any witnesses to sustain its burden of proof. The Motion was granted. The grandparent testified that the student did not receive any special education services

### V.    FINDINGS OF FACT

The Hearing Officer makes the following findings of fact:

1.    D███████ W██████ is a fifteen- (15) year old student who is a resident of the District of Columbia and a student presently enrolled at the High Road Academy.

2.    DCPS failed to comply with a HOD dated and issued on March 16, 2005.

3.    DCPS failed to provided any encounter tracking forms, which verify the performance of related services.

4.    Marion Murphy concluded that D█████ did not receive any special education services. D█████ was involved in all regular education classes. This fact was not disputed by DCPS.

### VI.    DECISION AND CONCLUSION OF LAW

In this case, DCPS has failed to sustain its burden of proof. DCPS did not have any witnesses to verify the performance of related services. In light of the foregoing, a directed verdict was granted.

3.

127

**Based upon the foregoing, IT IS HEREBY ORDERED:**

1) DCPS shall, within thirty- (30) calendar days of the issuance of the HOD, conduct a Psycho-Educational Evaluation and a Neuro-Psychological Evaluation. In the event DCPS fails to timely perform the aforementioned evaluations, the parent is authorized to obtain these evaluations at DCPS expense pursuant to the Superintendent's Directive on outside consultant fees.

2) DCPS shall, within fifteen- (15) school days of receipt of evaluations to include independent evaluations, convene a MDT/IEP meeting to review all current evaluations, review and revise the student's IEP and discuss and determine an appropriate educational placement for the 2005-2006 school years.

3) In the event the appropriate placement is to a public school, DCPS shall issue a notice of placement within five- (5) schools days of the MDT/IEP team meeting. If the appropriate placement is to a non-public facility, DCPS shall issue a notice of placement within thirty- (30) calendar days of the MDT/IEP team meeting.

4) DCPS shall provide two- (2) years of Compensatory Education for Delmata Williams for missed services to include one-on one tutoring services and develop a Compensatory Education Plan including the form, hours and format for compensatory educational relief.

5) All communications and notices shall be sent through the parent's counsel. Parent's counsel shall provide DCPS with copies of independent evaluations at least seventy-two- (72) hours prior to convening a MDT/IEP meeting. In the event DCPS provides a written report concerning independent evaluations, DCPS shall provide the report to parent's counsel at least forty-eight- (48) prior to convening a meeting.

4.

6) Any delay in the above time frames caused by the student or student's counsel shall result in an extension of one day for each day of delay.


## VI.    APPEAL PROCESS


This is the FINAL ADMINISTRATIVE DECISION.  Appeals may be made to a court of competent jurisdiction within thirty- (30) days from the date this decision was issued.

_____        Date Filed: 09-01-05
Charles R. Jones, Esq., Hearing Officer


Date Issued: _____


5.

DW-25

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
WASHINGTON, D.C.

**INDIVIDUALIZED EDUCATION PROGRAM**
**(IEP)**
MEETING NOTES

STUDENT ~~Delonte William~~                SCHOOL High Road Academy          DATE: 1/30/07

| PARTICIPANTS: | PARTICIPANTS: (Sign Name) | DISCIPLINE |
|---|---|---|
| MARY A RINDER | Mrs ___ | Social Worker LGSW |
| Marian Murphy | Marion Murph | Greenbmiller |
| Delonte ~~William~~ | ~~Delonte William~~ | Student |
| Annie R Pressley | Annie R Pressley | Edu Advocate |
| Stephanie Arne | Steph | Special Ed Coord |

Meeting starts with a telephone call to Keisha McKelly, LEA, DCPS. She was unavailable by phone due to an incorrect phone number. Meeting was not able to happen and meeting needs rescheduling. Ms Pressley, advocate, states that parent would like an updated IEP and states that psychological eval has not been renewed from last MDT meeting. Ms Pressley states that Dr. Taylor Dunn of DCPS was supposed to review evaluation from 10/11/05. Additionally, Ms. Pressley adds that the amount of hours for tutoring, 400 hrs from MDT notes was not given to student based on the request from 9/27/05 on HOD. Since tutoring was not granted from DCPS ~~within~~ within 7 school days, Parent will then obtain outside tutoring funded by DCPS.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

MULTIDISCIPLINARY TEAM (MDT)               Page: ____ of ____
CONTINUATION MEETING NOTES
MEETING TYPE: _____

STUDENT: ███████ w/███    DATE OF BIRTH: _____

SCHOOL: _____    DATE: _____

Since Meeting did not occur the MDT was not able to
move forward to develop the 2006 - 2007 school year IEP.
Ms. Pressley requests a new psychological educational evaluation.
Ms. Pressley also requests additional Comp Edu: due
to the fact that student's last IEP is outdated and
DCPS was unable to be available. Ms. Pressley also requests
a Vocational testing - due to upcoming ext from High Road Academy
Meeting is adjourned.

DW-26

**CAPITOL HILL MEDICAL CLINIC, P.C.**
**ELKE HARRIS, M.D.**
INFANT, CHILDREN, ADOLESCENT & ADULT CARE

**201 8TH STREET N.E.**
**WASHINGTON, DC 20002**
**2909 GEORGIA AVENUE, N.W.**
**WASHINGTON, DC 20010**
**1930 MILK JR. AVENUE, S.E.**
**WASHINGTON, DC 20020**
DEA # _BH5267822_

(202)546-7696

NAME _____  AGE _7y_

ADDRESS _____  DATE _1/19/7_

**Rx ILLEGAL IF NOT SAFETY BLUE BACKGROUND**

**R**

Concerta 54 mg

Sig: ÷ PO q am

disp. # 30

Refill _____ times

_____
(Signature)

To ensure brand name dispensing, prescriber must write 'Brand
Necessary' on the prescription.

6HPE0064176

132

DW-27

# CURRICULUM VITAE

Sharon L. Millis
11666 Cygnet Drive
Waldorf, Maryland 20601
(301) 870-6474

## AREAS OF EXPERTISE

Special Education Advocacy

Expert Testimony in Special Education Court and School Hearings

Expert testimony on observation/comparison/determination of student placement

Mediation of Special Education issues

Parent support, education and training on Special Education issues

Individualized Education Plan (IEP) Training, Writing and Implementation

School and Student Observation

Public, Private and Residential Special Education Compliance Monitoring for IDEA.

Public, Private and Residential Monitoring for State Standards (DC, MD and VA)

Public, Private and Residential Special Education Program Evaluation

Collection, Organization and Analysis of Special Education Program Data to Determine Degree
of Program Compliance and/or Student Progress

Educational Record Review

Special Education Curriculum Development

Administrative, Teacher and Related Service Provider Technical Assistance/Instructional Support

Special Education Workshop Development and Presentation

School-Based Classroom Instruction

Seriously Emotionally Disturbed Classroom Instruction

Learning Disabilities Classroom Instruction

Administrative Debriefing

State and Local Special Education Policy and Procedure Development

Inclusion Consultation

Special Education Teacher Mentoring

Special Education Teacher Training

Dissemination, Follow-up and Corrective Action Responses to Data Collected from Special Education Programs

Administrative Training for Compliance Monitoring

Volunteer Training for Compliance Monitoring

Parent Training for Compliance Monitoring

Child Count Monitoring

## EMPLOYMENT HISTORY

1998 - Present    Independent Special Education Advocate/Expert for District of Columbia Special Education Attorneys

1997 - 1998    Acting Assistant Principal, Moten Elementary School/Director, P.A.C.E./Moten Special Education Program for ED students requiring Level IV/V intensity

1986 - 1997    LEA/SEA Special Education Compliance Monitor and Program Evaluator, Office Of Corporate and Community Relations, DC Public Schools, Washington, DC

1992 - 1993    Educational Assessor, Therapeutic Counselor and Early Childhood Language Facilitator, Chapter I Summer Enrichment Program, Department of Human Services, District of Columbia Government, Washington, DC

1981 - 1986    Middle School/High School/Elementary School Teacher of the Seriously Emotionally Disturbed, Gibbs/PACE Program/Bundy Program, DC Public Schools, Washington, DC

1973 - 1981    School-Based/Learning Center Teacher, Watkins Elementary School, DC Public Schools, Washington, DC

1972 - 1973   Special Education Mobile Crisis Team Member, Special Education Division,
DC Public Schools, Washington, DC

1970 - 1972   Mathematics, Science, Social Studies and Remedial Reading Teacher, Northwood
Elementary School, Baltimore City Schools, Baltimore, Maryland


## EDUCATION

1970   B.S. Elementary Education, DePaul University (Cum Laude) Chicago, Illinois

1972   M.Ed Special Education of the Seriously Emotionally Disturbed (Cum Laude) Loyola
College, Baltimore, Maryland

1997   Completion of NASSP assessment process

1997   Completion of LEAD emerging leaders program

# Resume

**Arvette D. Page**
**6204 Gothic Lane**
**Bowie, MD 20720**
**(202) 491-3451**
**(301) 464-0676**
**adpage@verizonmail.com**

**Objective:** To obtain a challenging position in an organization where I can grow as an employee and utilize my skills and work experience.

## JOB EXPERIENCE

**October 2004 to Present**

**Special Education Coordinator, (Rock Creek Academy), Washington, DC:** Works collaboratively with DCPS, Attorneys, Educational Advocates, teachers and clinical staff by coordinating and facilitating meetings to assess student's performance, both educationally and socially according to their Individual Education Plan (IEP) for grades K-12. Assist in maintaining accurate and confidential records of all students, as well as use data to articulate the results of performance base assessment to determine educational appropriateness in the classroom setting. Provides information, support, and communication w/parents and families; provides referral information to community agencies to address students needs. Develop and maintain open lines of communication with student representation, parents and DCPS-LEA Monitor. Assist teachers and clinicians with the usage of e-IEPPro and maintain equipment and supplies used for IEP meetings.

**October 2004 to May 2004**

**Educational Consultant, (Educational Diagnostic Institute, Inc.) Washington, DC:** Coordinated meetings with attorneys and educational advocates to describe services EDI could provide for their clients to help fulfill the orders of HOD's in obtaining independent testing. Also submitted written bid proposals to charter schools to provide diagnostic services.

**May 2004 to June 2003**

**Special Education Teacher, (Rock Creek Academy), Washington, DC:** Provided instruction to 6th & 8th grade students in the areas of reading, written language and mathematics, monitor tracking progress for related services and implement behavior modification plan, as well as evaluate educational needs to devise goals & objectives for annual IEP meetings. Also helped assist in creating school-wide goals and school activities for the summer.

**June 2003 to August 2001**

**Special Education Coordinator, Edison Friendship Public Charter School (Chamberlain Campus), Washington, DC:** Implemented federal guidelines bided by IDEA (Individual Disability Education Act), monitor tracking progress for related services provider who rendered speech, OT/PT, and counseling to students. Conducted educational evaluations on students being identified for special education. Facilitated educational workshops on responsible inclusion, to ensure staff intensified and tailored curriculum for students with disabilities, as well as inform parents of Due Process Rights, chair eligibility determination

136

Vitae

- Provide leadership to staff and help them understand the nature and needs of the special education population.
- Help devise concrete intervention strategies
- Provide technical support including assisting schools in compiling data charts on students in the special education program.
- Act as a liaison between DCPS, Parents and Attorneys/Educational Advocates to ensure effective communication transpires.
- Administer and interpret educational evaluation, supervised, trained, and evaluated multidisciplinary team meetings.
- Consulted and advised parents, attorneys, and related service providers as to whether the child has been denied a free and appropriate education.
- Attended and testified at hearings.
- Devised IEP goals and objectives, tailored curriculum and teaching style to ensure the students Individualized Education Plan was being fully implemented and in compliance with the law.

APR  4,2007  23:21

*** TRANSMISSION ERROR REPORT ***

Model # Lexmark 7100 Series                                3016221566

| START TIME | SENT TO | PAGES | RESULT |
|------------|---------|-------|--------|
| 11:20P | 2024425097 | 0 | NO ANSWER |

138

```
                         *** TRANSMISSION ERROR REPORT ***
APR  4,2007  23:03          Model #  Lexmark 7100 Series
START TIME      SENT TO                                          3016221566
----------     -------          PAGES              RESULT
                                -----              ------
11:02P        2024425097                           NO ANSWER
                                   0
```

*** TRANSMISSION ERROR REPORT ***

APR  4,2007  22:56

Model #  Lexmark 7100 Series

3016221566

| START TIME | SENT TO | PAGES | RESULT |
|------------|---------|-------|--------|
| 10:56P | 2024425097 | 0 | BUSY |

```
                              *** TRANSMISSION ERROR REPORT ***
APR  4,2007  22:45
                              Model #  Lexmark 7100 Series
START TIME                                                                    3016221566
----------      SENT TO
                -------              PAGES                RESULT
                                     -----                ------
10:44P          2024425097
                                       0                  BUSY
```

APR  4,2007  22:39

*** TRANSMISSION ERROR REPORT ***

Model #  Lexmark 7100 Series

3016221566

| START TIME | SENT TO | PAGES | RESULT |
|------------|---------|-------|--------|
| 10:38P | 2024425097 | 2 | ERROR |

142

APR  5,2007  07:29

*** TRANSMISSION ERROR REPORT ***

Model # Lexmark 7100 Series

3016221566

| START TIME | SENT TO | PAGES | RESULT |
|------------|---------|-------|--------|
| 07:28A | 2024425097 | 0 | NO ANSWER |

# LAW OFFICES OF
# CHRISTOPHER N. ANWAH, PLLC

**Attorneys and Counselors at Law**

Christopher N. Anwah, Esq.
   (DC, MD, NJ)
Fatmata Barrie, Esq.
   (DC, FL)
Georgina A. Oladokun, Esq.
   (DC, MD)
Allen Mohaber, Esq.
   (MD)

Carpenter's Building
1003 K Street, N.W.
Suite 565
Washington, D.C. 20001
Phone: (202) 626-0040
Fax: (202) 626-0048
Email: chrisanwahfirm@chrisanwhafirm.com

## FACSIMILE COVER LETTER

**DATE:** 04/03/07

**TO:** OGC

**COMPANY:** OGC

**FAX NUMBER:** 202-442-5098/97

**FROM:** Fatmata Barrie, Esq.

**RE:** ~~Delante Williams~~' 5-day

**TOTAL NUMBER OF PAGES INCLUDING COVER SHEET** _92_ — Part I =
DW-01 to DW-18

**MESSAGE:** Including the many attempts to send it
Part II - DW-19 to DW-27 = 47 pgs.
I spoke to Dianne-Lindsey

If there is any problem with this transmission, please call as soon as possible at 202-626-0040

### ***CONFIDENTIALITY NOTICE***

The pages that accompany this facsimile transmission contain information from LAW OFFICE OF CHRISTOPHER N. ANWAH, PLLC, which is confidential or privileged, or both. The information is intended to be for the use of the individual or entity named on this cover letter. If you are not the recipient, be aware that any disclosure, copying distribution or use of the contents of this information is prohibited. If you received this facsimile in error, please notify us by telephone at 202-626-0040 so that we can arrange for th retrieval of the original at no cost to you.

144

**DATE:** 04/03/07

**TO:** OGC

**COMPANY:** OGC

**FAX NUMBER:** 202-442-5098/97

**FROM:** Fatmata Barrie, Esq.

**RE:** Delonte Williams' 5-day

**TOTAL NUMBER OF PAGES INCLUDING COVER SHEET** 92 Part I=

**MESSAGE:** including the DW-01 to DW-18
many attempts to send it
Part II- DW-19 to DW-27 = 47
I spoke to Dunne-Lindsey Pgs.

If there is any problem with this transmission, please call as soon as possible at 202-626-0040

### ***CONFIDENTIALITY NOTICE***

The pages that accompany this facsimile transmission contain information from LAW OFFICE OF CHRISTOPHER N. ANWAH, PLLC, which is confidential or privileged, or both. The information is intended to be for the use of the individual or entity named on this cover letter. If you are not the recipient, be aware that any disclosure, copying distribution or use of the contents of this information is prohibited. If you received this facsimile in error, please notify us by telephone at 202-626-0040 so that we can arrange for th retrieval of the original at no cost to you.

TRANSMISSION VERIFICATION REPORT

TIME     : 04/05/2007 20:05
NAME     : CHRISTOPHER ANWAH PL
FAX      : 2026260048
TEL      : 2026260040
SER.#    : BROF5J290803

DATE,TIME          04/05 19:52
FAX NO./NAME       4425097
DURATION           00:12:50
PAGE(S)            46
RESULT             OK
MODE               STANDARD
                   ECM

**DATE:** 04/03/07

**TO:** OGC

**COMPANY:** OGC

**FAX NUMBER:** 202-442-5098/97

**FROM:** Fatmata Barrie, Esq.

**RE:** D̶e̶a̶n̶n̶e̶ W̶i̶l̶l̶i̶a̶m̶s̶' 5-day

**TOTAL NUMBER OF PAGES INCLUDING COVER SHEET** 92 — Part I =

**MESSAGE:**  Including the DW-01 to DW-18
many attempts to send it
Part II = DW-19 to DW-27 = 47
Pgs.
I spoke to Quinne-Lindsey

If there is any problem with this transmission, please call as soon as possible at 202-626-0040

### ***CONFIDENTIALITY NOTICE***

The pages that accompany this facsimile transmission contain information from LAW OFFICE OF CHRISTOPHER N. ANWAH, PLLC, which is confidential or privileged, or both. The information is intended to be for the use of the individual or entity named on this cover letter. If you are not the recipient, be aware that any disclosure, copying distribution or use of the contents of this information is prohibited. If you received this facsimile in error, please notify us by telephone at 202-626-0040 so that we can arrange for th retrieval of the original at no cost to you.

NG: POOR LINE CONDITION

| | |
|---|---|
| MODE | ECM |
| RESULT | STANDARD |
| PAGE(S) | NG |
| DURATION | 32 |
| FAX NO./NAME | 00:10:47 |
| DATE,TIME | 4425097 |
| | 04/05 17:25 |

TRANSMISSION VERIFICATION REPORT

| | |
|---|---|
| TIME | : 04/05/2007 17:36 |
| NAME | : CHRISTOPHER ANWAH PL |
| FAX | : 2026260048 |
| TEL | : 2026260040 |
| SER.# | : BROF5J290803 |

146

# Law Offices,
## Christopher N. Anwah, PLLC
### Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
    (DC, MD, NJ)
Fatmata Barrie, Esq.
    (DC, FL)
Georgina A. Oladokun, Esq.
    (MD)
Tamika Jones, Esq.
    (DC)

**Carpenter's Building**
1003 K Street, N.W.
Suite 565
Washington, D.C. 20001
Phone: (202) 626-0040
Fax: (202) 626-0048
**Email: chrisanwahfirm@chrisanwahfirm.com**

## FACSIMILE COVER LETTER

DATE:
    February 11, 2006

TO:
    Ms. S. Redman - Director

COMPANY
    High Road Academy

FAX NUMBER:
    (202) 332-6155

FROM:
    Annie R. Pressley, J.D. - Education Advocate

TOTAL NUMBER OF PAGES INCLUDING COVER SHEET____

MESSAGE SUBMISSION OF INDEP EVALS FOR D███████ W██████ - DOB: ██████89

If there is any problem with this transmission, please call as soon as possible at (202) 626-0040

### *** CONFIDENTIALLY NOTE ***

The pages accompany this facsimile transmission contain information from the CHRISTOPHER ANWAH, ESQ. law offices which is confidential or privileged, or both. The information is intended to be for the use of the individual or entity named on this cover letter. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this facsimile in error, please notify us by telephone immediately at (202) 626-0040 so that we can arrange for the retrieval of the original documents at no cost to you.

147

```
┌─────────────────────────────────────┐
│   TRANSMISSION VERIFICATION REPORT   │
└─────────────────────────────────────┘
                                      TIME   : 03/27/2007 11:32
                                      NAME   :
                                      FAX    :
                                      TEL    :
                                      SER.# : BROE6J471573

┌──────────────────────────────────────────────────────────────────┐
│    DATE,TIME              03/27  11:31                              │
│    FAX NO./NAME           96260048                                  │
│    DURATION               00:00:26                                 │
│    PAGE(S)                01                                        │
│    RESULT                 OK                                        │
│    MODE                   STANDARD                                  │
│                           ECM                                      │
└──────────────────────────────────────────────────────────────────┘
```

# District of Columbia Public Schools
### *State Enforcement & Investigation Division*
## STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



### HEARING NOTICE

| MEMORANDUM VIA: [ ] FACSIMILE [ ] MAIL [ ] HAND DELIVERY |

TO:   Parent (or Representative): **F. BARRIE**          Fax No.: **626.0048**

LEA Legal Counsel: **DBC**

RE:   W_____, D_____  and (LEA) DOB: ____/89
           Student's Name

FROM:   **SHARON NEWSOME**
            Special Education Student Hearing Office Coordinator

DATE SENT: **3/27/07**

•••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
**2/6/07** . Please be advised that the hearing has been scheduled for:

DATE: **4/10/07**

TIME: **9:00 & 11:00AM**

148

Complaint Intake Unit
825 North Capitol Street, NE- 8th Fl.
Washington, DC 20002
(202) 724-6556

DISTRICT OF COLUMBIA PUCLIC SCHOOLS
State Enforcement & Investigation Division
For Special Education Programs

# Fax



# Time Sensitive Materials Attached

**Prompt Attention: Attorney:Fatmata Barrie, Esq.**
**Parent: Marian Murphy**

Telephone Number: **(202) 626-0040**
Fax Number: **(202) 626-0048**

Pages: **3**
Date: **February 6, 2007**

**Please find attached a copy of a Scheduling Memorandum regarding:**

Student: **Delonte Wilkins**
School: **Attending High Road Academy**

The Complaint Intake Unit is responsible for providing parties with
information notice that a Due Process Complaint has been filed with the
Student Hearing Office. If you have questions about the attached Notice,
please contact the Complaint Intake Unit at (202) 724-6556. Otherwise, if
you have questions about the content of the compliant you should contact
your legal counsel for further advice.

**Thank You**
**Marica Brown**

The document(s) accompanying this telecopy transmission contains confidential information that Is legally
privileged. The information is intended only for use of the individual or entity named Above, if you are not the
intended recipient you are hereby notified that any disclosure, copying, Distribution or the taking of any action in
reliance of the contents of this copied information is Strictly prohibited. If you receive this telecopy in error, please
immediately notify us by telephone For return of the original document to us.

# STATE EDUCATION AGENCY
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS

| | | |
|---|---|---|
| In the Matter of: | ) | BEFORE A SPECIAL EDUCATION |
| | ) | |
| W██████, D.  Petitioner | ) | |
| | ) | HEARING OFFICER |
| Vs. | ) | |
| | ) | |
| DCPS | ) | |
| **Attending High Road Academy** | | |
| | ) | DISTRICT OF COLUMBIA |
| | | |
| Respondent | ) | PUBLIC SCHOOLS |

# **SCHEDULING MEMORANDUM**

1.   A due process complaint notice and request for due process hearing has been received by the Student Hearing Office in the State Enforcement & Investigation Division. Pursuant to 20 U.S.C. § 1415(f)(1)(B), prior to the opportunity for an impartial due process hearing, the Local Educational Agency shall convene a resolution meeting with the parent(s) and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint <u>within 15 calendar days of receiving notice of the parents' complaint</u>. The meeting shall include a representative of the Local Educational Agency who has decision-making authority. The Local Education Agency is responsible for scheduling the resolution meeting in consultation with the parent. **The Student Hearing Office does not schedule or participate in resolution meetings**.

2.   The complaint notice was filed on **February 6, 2007**

3.   The deadline for the resolution meeting is **February 21, 2007** unless the parent and Local Educational Agency agree in writing to waive such meeting, or agree to refer the case to a mediator for mediation.

## **RESPONSE TO THE COMPLAINT**

A.   ***Prior Written Notice Not Issued by the Local Educational Agency***.   If the Local Educational Agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice, the Local Educational Agency shall, <u>within 10 days of receiving the complaint</u>, send to the parent a response that shall include:

1.   An explanation why the Local Educational Agency proposed or refused to take action raised in the complaint;

2.   A description of other options that the IEP Team considered and the reasons why those options were rejected;

3.   A description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and

Rev'd. 7/6/05

150

4.    A description of the factors that is relevant to the agency's proposal or refusal.

B.    Prior written notice, if not already provided to the parent, must be sent by the Local Educational Agency to the complaining party no later than **February 16, 2007**.

C.    ***Deficiency Notice***.  A complaint notice shall be deemed sufficient unless the party receiving the notice notifies the Student Hearing Office and the complaining party in writing, <u>within 15 days of receiving the notice of the complaint</u>, that the complaint does not satisfy the notice requirements specified in 20 U.S.C. 1415(b)(7)(A).

The deadline for filing a deficiency notice is **February 21, 2007**.

## DUE PROCESS HEARING

Pursuant to 20 U.S.C. § 1415(f)(1)(B)(ii) if the Local Educational Agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all applicable time lines for scheduling a due process hearing will commence.  A final hearing officer's decision must be issued within 45 days from the expiration of the 30-day resolution period.

## QUESTIONS AND INFORMATION

The staff with the Student Hearing Office does not provide legal advice.  The parties should consult with legal counsel or other representative to answer any legal questions about your rights, duties, and responsibilities under the law.  The school or the Local Education Agency responsible for scheduling the meeting will provide information about the time, date, and location of the resolution meeting.

Rev'd. 7/6/05

*State Education Agency for the District of Columbia*
*State Enforcement and Investigation Division (SEID)*
*Special Education Programs*



# Due Process Complaint Notice

- The form is used to give notice of a due process complaint to the District of Columbia Public Schools, District of Columbia Public Charter Schools (DCPS or LEA) and/or parents with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a free appropriate public education to that child. **A party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of the Individuals with Disabilities Education Improvement Act (IDEIA).**

- The due process complaint must describe an alleged violation that occurred not more than two (2) years before the date that the parent or school system knew or should have known about the alleged action that is the basis of the complaint.

- Notice must be provided to the Student Hearing Office of the DC Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, DC 20002; fax number 202/442-5556.

- Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice. Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting (called a "Resolution Session") with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. The Student Hearing Office does NOT schedule resolution meetings.

- Mediation is also available to all parties as an alternative to a resolution meeting or a Due Process Hearing.

## A.  INFORMATION ABOUT THE STUDENT:

Student Name: E_____ W_____          Birth Date: ____/89

Address:      5019 11th STREET, NE, WASHINGTON, DC 20017

Home School: _____ UNKNOWN _____

Present School of Attendance:  HIGH ROAD ACADEMY SCHOOL

Is this a charter school? __NO__          (If yes, you must also provide a copy of this notice to the charter school principal or director)

Parent/Guardian of the Student:  MS. MARIAN MURPHY

Address (if different from the student's above): _____

1

SEID DPCN Rev'd. 7/1/05                                          Detained Within ____/89

Phone/Contact Number: 202-832-1048      Fax Number (if applicable): _____

## B. Individual Making the Complaint/Request for Due Process Hearing:

Name:   MS. MARIAN MURPHY

Complete Address:  5019 11th STREET, NE, WASHINGTON, DC 20017

Phone: (h)  202-832-1048      (W) _____      (Fax) _____      (e-mail) _____

Relationship to the Student:

| | | |
|---|---|---|
| X  Parent | ☐  Legal Guardian | ☐  Parent Surrogate |
| ☐  Self/Student | ☐  Local Education Agency (LEA) | ☐  Parent Advocate |
| ☐  Court Appointed Educational Advocate | | |

## C. Legal Representative/Attorney (if applicable):

Name:   Fatmata Barrie, Esq. (Law Offices of Christopher N. Anwah, PLLC)

Address:  1003 K St. NW #565 Washington, DC  20001

Phone: (w)  202-626-0040      (Fax) 202-626-0048      (e-mail) _____

Will attorney / legal representative attend the resolution session?    X Yes        ☐ No

## D. Complaint Made Against (check all that apply):

X DCPS school ( name of the school if different from page one) _____
☐ Charter school (name of the charter school if different from page one) _____
☐ Non-public school or residential treatment facility (name) _____
☐ Parent

## E. Resolution Session Meeting Between Parent and LEA:

I understand that it is my right to have a resolution meeting to resolve this complaint.  I also understand that I may voluntarily waive this right if I choose.  (Note:  All parties must agree to waive the resolution meeting to avoid having this meeting.)

☐ I wish to waive the Resolution Session Meeting

2

**F.    Mediation Process:**

IDEIA requires that any time a party requests a due process hearing mediation should be offered at no cost to the parent. Both parties can request mediation as an alternative to the Resolution Session Meeting or as an alternative to a Due Process Hearing. Please check all that apply:

☐    I am requesting mediation as an alternative to the resolution session meeting.

☐    I am requesting mediation and a due process hearing.

☐    I am requesting mediation only at this time.

**G.    Facts and Reasons for the Complaint:**

In accordance with the Individuals with Disabilities Education Improvement Act (IDEIA), please complete the following questions. Provide complete details about all the facts supporting your claims. (You may attach additional pages if needed):

1.    What is the nature of the problem, including the facts relating to the problem that will need to be addressed at a Resolution Session meeting, a Mediation Conference, and/or a Due Process Hearing?

A.    DCPS has violated the 09/01/05 HOD because they failed to timely convene and complete an MDT/IEP meeting for Delmonte. DCPS was ordered to convene an MDT/IEP meeting 15 days after receiving Delmonte's independent evaluations. Delmonte's evaluations were sent to DCPS on February 11, 2006, and DCPS failed to timely convene the MDT/IEP meeting until 01/30/07. In fact, that meeting did not occur because DCPS failed to attend in person or by teleconference. Further, DCPS violated the HOD because they were ordered to develop Delmonte's IEP and discuss compensatory education, which did not occur. DCPS egregious conduct has left Delmonte without any appropriate special education services and the MDT/IEP has not been re-scheduled. Therefore, DCPS has violated the 09/01/05 HOD and denied Delmonte FAPE.

B.    DCPS has failed to update Delmonte's triennials because it has been over 3 years since they completed his psychological. DCPS is federally mandated to update all evaluations of special education children every 3 years. Delmonte's psychological has not been completed for over 3 years and DCPS has failed to complete it. Therefore, DCPS has denied Delmonte FAPE.

C.    DCPS has failed to provide Delmonte with an appropriate IEP for the 2004-05SY at FE, and for the 2005-06SY, and 2006-07SY at High Road Academy because Delmonte's IEP is expired and DCPS has failed to complete it since 10/11/2005. In fact, Delmonte had an MDT/IEP meeting on 1/30/07 and DCPS failed to attend the meeting did not go forward. DCPS has failed to include Delmonte's ADHD for his disabilities. This was recommended at his October 2005 MDT/IEP meeting, but DCPS failed to do it. Further, Delmonte's goals and objectives from his previous IEPs are similar, and not helped him improve. Therefore, DCPS has denied him FAPE.

D.    DCPS has failed to complete the following evaluation, which is a comprehensive psychological because no documentation exists to the contrary. Delmonte's psychological has not been completed for over 3 years and he requires a new to determine his services and needs. Without it, Delmonte's IEP, services, and education will not be reflective of his needs and services. Therefore, DCPS has denied him FAPE.

E.    DCPS has failed to provide Delmonte with appropriate special education and related services and all his special education and related services for the 2004-05SY at FE, and for the 2005-06SY, and 2006-07SY at High Road Academy because they are not reflective of his needs and services. Delmonte's services were developed with expired evaluations and IEPs. In fact Delmonte did not receive any of his services, because the 09/01/05 HOD stated that DCPS shall provide 2 years of Compensatory Education (See Paragraph G) for missed services. Without an updated IEP, Delmonte will not receive all of his related services and without updated triennials they will not be reflective of his needs and wants, i.e. specialized instruction, counseling, tutoring. Therefore, DCPS has denied him FAPE.

3

Delmonte Williams 09/08/89

F. DCPS has failed to provide Delmma transition services for the 2004-05SY at FE, and for the 2005-06SY, and 2006-07SY at High Road Academy because he has not received a vocational assessment. Upon a student reaching his or her 16th birthday DCPS is federally mandated to provide transition services. The first part is a vocational assessment. Delmma has not received a vocational assessment since turning 16 during the 2004-05SY. Therefore, DCPS has denied him FAPE.

G. DCPS has failed to provide Delmma with the needed compensatory education for the denial of FAPE for the 2004-05SY at FE, and for the 2005-06SY, and 2006-07SY at High Road Academy for the past and present denial of FAPE for not providing Delmma appropriate placement, IEPs, related services, and evaluations, in the form of independent tutoring and counseling. In fact, the 09/01/05 HOD stated that DCPS shall provide 2 years of Compensatory Education for missed services. Yet, DCPS has failed to provide or fund Delmma any in the form of independent one-on-one tutoring or counseling. Therefore, DCPS has denied Delmma FAPE.

2.     To the extent known to you at this time, how can this problem be resolved?

A. DCPS to continue funding placement at High Road Academy

B. DCPS to develop an appropriate IEP.

C. DCPS to fund independent evaluation which is a comprehensive psychological and fund any evaluations recommended by it.

D. DCPS to fund an independent vocational assessment for Delmma transition services.

E. DCPS to provide transition services.

F. DCPS to provide all educational and related services to Delmma.

G. DCPS to fund the needed compensatory education for the denial of FAPE for the 2004-05SY at FE, and for the 2005-06SY, and 2006-07SY at High Road Academy for the past and present denial of FAPE for not providing Delmma appropriate placement, IEPs, related services, and evaluations, in the form of independent one-on-one tutoring and counseling.

H. DCPS to pay all reasonable attorneys fees.

3.     Issues presented:

A. Whether DCPS denied Delmma a Free Appropriate Public Education (FAPE) when they violated the 09/01/05 HOD?

B. Whether DCPS denied Delmma FAPE when they failed to update his triennials for over 3 years?

C. Whether DCPS denied Delmma FAPE when they failed to develop an appropriate IEP for the 2004-05SY at FE, and for the 2005-06SY, and 2006-07SY at High Road Academy?

D. Whether DCPS denied Delmma FAPE when they failed to fund a comprehensive psychological evaluation?

E. Whether DCPS denied Delmma FAPE when they failed to provide him with appropriate special education and related services and all his related and special education services for the 2004-05SY at FE, and for the 2005-06SY, and 2006-07SY at High Road Academy?

F. Whether DCPS denied Delmma FAPE when they failed to provide him with appropriate transition services for the 2004-05SY at FE, and for the 2005-06SY, and 2006-07SY at High Road Academy?

4

G. Whether DCPS denied Delonta FAPE when they failed to fund an independent vocational assessment for the 2004-05SY at FE, and for the 2005-06SY, and 2006-07SY at High Road Academy

H. Whether DCPS denied Delonta FAPE when they failed to fund the needed compensatory education for the denial of FAPE for the 2004-05SY at FE, and for the 2005-06SY, and 2006-07SY at High Road Academy for the past and present denial of FAPE for not providing Delonta appropriate placement, IEPs, related services, and evaluations, in the form of independent one-on-one tutoring and counseling.

**H.     Estimated amount of time needed for the hearing:**          4 Hours

Note:  In the absence of a specified amount of time, the SHO schedules hearings in two hour blocks of time and will allocate two hours to conduct the hearing.  Please indicate if you believe more than two hours will be needed.

**I.     Accommodations and Assistance Needed:**

Please list any special accommodations you may require for a Resolution Session Meeting/Mediation Conference/Due Process Hearing.

- Interpreter (please specify the type) _____
- Special Communication (please describe the type) _____
- Special Accommodations for Disability (please be specific) _____
- Other _____

**J.     Waiver of Procedural Safeguards:**

☐ I (parent/guardian) waive receiving a copy of the procedural safeguards at this time.

**K.     Parent Signature and Affirmation:**

I affirm that the information provided on this form is true and correct.

_____          _____
Signature of Parent or Guardian                                        Date

**L.     Signature of Attorney/ Legal Representative:**

                                                                              02/06/07
_____          _____
Legal Representative / Advocate                                        Date

**M.     Signature of LEA Representative (if hearing requested by LEA):**

5

Representative o LEA _____     Date _____

**Mail, fax or deliver this complaint notice to:**
**State Enforcement and Investigation Division**
**For Special Education Programs (SEID)**
**Student Hearing Office (SHO)**
**825 North Capitol Street, NE, 8th Floor**
**Washington, DC 20002**
**Fax number: 202/442-5556**

6

# LAW OFFICES,
# CHRISTOPHER N. ANWAH, PLLC

Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
  (DC, MD, NJ)
Parmara Barrie, Esq.
  (DC, FL)
Georgina A. Oladokin, Esq.
  (MD)
Allen Mohaber, Esq.
  (MD)
Jani Tillery, Esq.
  (DC)

Carpenter's Building
1003 K Street, N.W.
Suite 565
Washington, D.C. 20001
Phone: (202) 626-0040
Fax: (202) 626-0048
Email: chrisanwahfirm@chrisanwahfirm.com

## FACSIMILE COVER LETTER

DATE: 02/06/07

TO: SHO

COMPANY: SHO

FAX NUMBER: (202) 442-5556

FROM: Allen Mohaber, Esq

RE: DUE PROCESS COMPLAINT NOTICE FOR D██████, W██████ (DOB:██/██/89)

TOTAL NUMBER OF PAGES INCLUDING COVER SHEET: _____ 7

MESSAGE:
If there is any problem with this transmission, please call as soon as possible at (202) 626-0040

### ***CONFIDENTIALITY NOTICE***

The pages that accompany this facsimile transmission contain information from CHRISTOPHER N. ANWAH, PLLC, which is confidential or privileged, or both. The information is needed to be for the use of the individual or entity named on this cover letter. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this facsimile in error, please notify us by telephone immediately at 202-626-0040 so that we can arrange for the retrieval of the original documents at no cost to you.

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## *State Enforcement and Investigative Division*
### <u>CONFIDENTIAL</u>
### Charles R. Jones, Esq., Due Process Hearing Officer
825 North Capitol Street, N.E.  8th Floor
Washington, D.C.  20002
Facsimile:  (202) 442-5556

| | | |
|---|---|---|
| In the Matter of | ) | **IMPARTIAL DUE PROCESS** |
| | ) | |
| D▮▮▮▮ W▮▮▮▮▮,     Student, | ) | **HEARING OFFICER'S DECISION** |
| Date of Birth: ▮▮▮▮-89 | ) | |
| | ) | |
| Petitioner, | ) | Hearing Date: September 13, 2005 |
| | ) | |
| vs. | ) | |
| | ) | Held at:  825 North Capitol Street, NE |
| The District of Columbia Public Schools, | ) | Eighth Floor |
| Friendship Edison PCS | ) | |
| Respondent | ) | |

## <u>DECISION AND ORDER</u>

| | |
|---|---|
| **Parent(s):** | Marian Murphy |
| | 5019 11th Street, N.E. |
| | Washington, D.C. 20017 |
| | |
| **Counsel for Parent:** | Fatmata Barrie, Esq |
| | 1008 K. Street, N.W. |
| | Suite 500 |
| | Washington, DC 20001 |
| | |
| **Counsel for LEA:** | Dalton, Dalton, Esq. |
| | Dalton, Dalton & Houston |
| | 1008 Pendleton Street |
| | Alexandria, VA   22314 |
| | |
| **Counsel for SEA:** | Stephanie R. Moore, Attorney-Advisor |
| | Office of the General Counsel, DCPS |
| | 825 North Capitol Street, N.E., 9th Floor |
| | Washington, D.C.  20002 |

159

# HEARING OFFICER'S DECISION

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
### State Enforcement and Investigative Division

### Special Education Due Process Hearing

## I.  INTRODUCTION

On August 23, 2005, a Motion for a Continuance was granted to counsel for F.E. PCS. The initial Due Process Hearing was filed with the Student Hearing Office, by counsel for the parent, Fatmata Barrie, Esq. The request alleges DCPS failed to provide appropriate special education services to the student, as required by D W's IEP.

A Due Process Hearing was reconvened on September 13, 2005, at the District of Columbia Public Schools, ("DCPS"), 825 North Capitol Street, N.E., 8th Floor, Washington, D.C. 20002. Stephanie R. Moore, Esq., Attorney-Advisor represented DCPS. Paul S. Dalton, Esq., represented the LEA (F.E.PCS). Fatmata Barrie, Esq., represented the parent. Five- Day Disclosure Letters were entered into the record without objection of either party. On behalf of the LEA (F.E.PCS): Disclosure Letter dated September 7, 2005: Edison-01 through Edison-04. On behalf of the parent: Disclosure Letter dated August 11, 2005: DW-1 through DW-17. DCPS did not introduce a Disclosure Letter. Parent's counsel waived a formal reading of the Due Process Rights. Witnesses for DCPS- None. Witnesses for the parent: D███████ Wi█████ and Marian Murphy. Witnesses for the LEA (F.E.PCS): Charlene Glymph.

## II.  JURISDICTION

The Due Process Hearing was convened, and this decision was written pursuant to Public Law 105-17, The Individuals with Disabilities Education Act of 1997, 20 United States Code 1400 et. Seq.; Title 34 of the Code of Federal Regulations, part 300; the Individuals with Disabilities Education Improvement Act of 2004, Public Law 108-446; Title 5 of the District of Columbia Municipal Regulations and Section 145 of the D.C. Appropriations Act, effective October 21, 1998.

## III.  ISSUES

Whether DCPS denied the student FAPE by failing to provide appropriate services for the student, as required by the student's IEP?

2.

## IV.    SUMMARY OF RELEVANT EVIDENCE

This case involves allegations by parent's counsel that the LEA (Friendship Edison Public Charter School hereinafter "F.E.PCS) failed to provide warranted special education services required by D.W.'s IEP. According to parent's counsel, D.W.'s IEP required specific amounts of specialized instructions and psychological counseling. It is alleged F.E.PCS did not provide these special education services to DW for the 2004-2005 school years. F.E.PCS asserts and alleges that specialized instructions and related services were, in fact, provided to the student. It is further alleged that F.E.PCS offered an after-school tutoring program, which was also available to D.W.

At the commencement of the Due Process Hearing, DCPS, the SEA in this matter, entered a Motion to be dismissed, as DCPS had been a party to a previous Due Process Hearing concerning D. W. DCPS had settled all its outstanding issues. Parent's counsel did not object to the Motion. Counsel for F.E.PCS objected to the Motion stating that DCPS is a real party in interest. The Motion for Dismissal was granted. DCPS had resolved all of its outstanding issues at a Hearing on or about August 23, 2005. Counsel for F.E.PCS requested and was granted a continuance from the August 23, 2005 hearing date, which resulted in this present hearing. Additionally, the student was enrolled at F.E.PCS during the relevant period of time.

## V.    FINDINGS OF FACT

The Hearing Officer makes the following findings of fact:

1.      D.W. is a sixteen- (16) old District of Columbia resident and a student who attended the F.E.PCS during the 2004-2005 school years.

2.      D.W. is eligible for special education and related services. His most recent IEP dated April 22, 2004 indicates that his disability classification is learning disabled (LD).

3.      D.W.'s IEP recommended and required six- (6) hours of specialized instructions and thirty- (30) minutes of psychological counseling. DW was to receive these services in a combination setting of general education and special education classes.

3.

4.     Charlene Glymph, Director of Special Education at F. E. PCS, testified and concluded that F.E.PCS did provide appropriate amounts of specialized instructions and related services to D.W. She had not observed the performance of the services.

5.     F.E.PCS did not have any encounter tracking forms to verify that the related services had been performed.

6.     Charlene Glymph explained that an outside consultant/contactor was the service provider who performed the related services. The contractor was terminated and the encounter tracking forms were not provided to F.E. PCS. However, prior to the dismissal, Ms. Glymph further explained that F.E.PCS had faxed a copy of the encounter tracking forms to the office of parent's counsel. Parent's counsel denied the receipt of a facsimile that included encounter tracking forms.

7.     The Special Education Director at F.E.PCS indicated that specialized instructions were provided within an inclusion setting to D.W. The service provider did not testify.

8.     D.W. testified and concluded that he did not receive any specialized instructions or related services at F.E.PCS. D.W. testified that he only received special education services once or twice. The student was a very credible witness.

## VI.     DECISION AND CONCLUSION OF LAW

In this case, the local education agency (LEA) F.E.PCS did not sustain its burden of proof. The fundamental issue in this matter is whether F.E.PCS provided D.W. with appropriate amounts of specialized instructions and related services. A preponderance of the evidence supports the parent's contention that F.E.PCS failed to provide warranted special education services. Of telling significance in this matter is the absence of encounter tracking forms, which verify the performance of related services and the best evidence to support the performance of services. Here, in this instance, the LEA official explained that an outside contractor performed the services, but the contractor failed to leave encounter tracking forms after being dismissed by the LEA.

4.

162

To support this position, it is alleged that a copy of the encounter tracking forms had been provided to parent's counsel via a facsimile, but a copy of the form had not been retained by F.E.PCS. Parent's counsel denied receiving a copy of any encounter tracking forms via facsimile. Notwithstanding this set of events, the testimony of the petitioner, D.W., was clear, credible and probative. The student unequivocally declared he had only received special education services once or twice at F.E. PCS since his enrollment. Under this set of circumstances, the LEA has failed to provide a free appropriate public education (FAPE).

**Based upon the foregoing, IT IS HEREBY ORDERED:**

1) **Petitioner's request for relief is GRANTED.**

2) **Petitioner is the prevailing party.**

3) **The LEA shall, within fifteen- (15) school days of the issuance of the HOD, convene a MDT meeting to develop an appropriate compensatory education plan for D. W. to compensate for missed services for a period of seven months including specialized instructions and related services. Parent's counsel shall submit a Plan to the team.**

4) **In the event an agreed upon Plan cannot be developed. Parent's counsel and F.E.PCS counsel shall submit a Plan to the Hearing Officer and a determination shall be made on the appropriate amount of hours, form and format.**

5) **All communications and notices shall be sent through the parent's counsel.**

6) **Any delay in the above time frames caused by the parent or parent's counsel shall result in an extension of one day for each day of delay.**

VII.    APPEAL PROCESS

This is the FINAL ADMINISTRATIVE DECISION.  Appeals may be made to a court of competent jurisdiction within thirty- (30) days from the date this decision was issued.

_____    Date Filed: _09-28-05_

**Charles R. Jones, Esq., Hearing Officer**

Date Issued: _9/28/05_

6.

## ATTENDANCE SHEET

| STUDENT'S NAME: | ~~D_____~~ ~~W_____~~ (HR 3) | |
|---|---|---|
| HEARING DATE: | SEPT. 13, 2005 (9:00) | |
| PRINTED NAME | ON BEHALF OF DCPS OR STUDENT | TITLE |
| Stephanie Ramjohn Moore | DCPS | Attorney advisoR |
| ~~Fatmata~~ Barrie | Student | Attorney |
| Marian Murphy | Student | Grandmother |
| D____ Wilkins | Student | Self |
| Tamina Jor, | student | Attorney |
| PAUL DALTON | F.K.P.C.S | ATTORNEY |
| CHANLENE GLYNDA | F.R.P.C.S | Dir OF SP. ed. |
| Jessica Smith | FRPCS | |

Impartial Hearing Officer

165

Sep. 7. 2005  4:38PM    Dalton. Dalton.& Houston                    No.4961   P. 1

## FAX TRANSMISSION COVER SHEET
### Dalton, Dalton & Houston P.C.
### Attorneys at Law
### 1008 Pendleton Street
### Alexandria, Virginia 22314
### (703) 739-4300
### FAX (703) 739-2323

DATE:        September 7, 2005

TO:          Sharon Newsome

AT FAX:      202-442-5556

FROM:        Paul S. Dalton, Esq.

RE:          D███ W█████ 5-day

NUMBER OF PAGES INCLUDING THIS PAGE:        29

ADDITIONAL INFORMATION:

_____

  **PLEASE DELIVER ASAP.**
  **********************************************************

**THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.**

**IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECI-
PIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS
STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNI-
CATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELE-
PHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE
ABOVE ADDRESS.**
  **********************************************************

166

Sep. 7. 2005  4:38PM    Dalton, Dalton,& Houston                    No.4961   P. 2

Law Offices
### DALTON, DALTON & HOUSTON, P.C.

1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703)-739-4300
Facsimile:  (703)-739-2323
E-MAIL: DCSPEDLAW@AOL.COM

Paul S. Dalton*
Ellen Douglass Dalton*
William E. Houston+
Talib Abdus Shahid+
Laura E. Duos~
*ALSO ADMITTED IN D.C. & W.VA
+ ADMITTED IN D.C & PA
~ADMITTED IN MD

Washington DC. Office:
601 Pennsylvania Avenue, N.W.
South Building,  Suite 900
Washington, DC 20004
Telephone: (202)-393-0060
Facsimile: (202)-393-1555

September 7, 2005

**VIA FACSIMILE ONLY:** 202-626-0048

Ms. Fatmata Barrie, Esq.
Carpenter's Building
1003 K Street, NW
Washington, DC 20001

RE:   D̶e̶l̶o̶n̶t̶a̶ W̶i̶l̶l̶i̶a̶m̶s̶
DOB: ▆▆▆/89

Dear Ms.  Barrie:

A Due Process Hearing has been scheduled for D̶e̶l̶o̶n̶t̶a̶ W̶i̶l̶l̶i̶a̶m̶s̶ on ▆▆▆▆▆▆▆ 13ᵗʰ ̶p̶u̶r̶s̶u̶a̶n̶t̶ ̶t̶o̶ 34 C.F.R. 300.509(b)(1).  The purpose of this letter is to provide you with the following list of witnesses and documents we may rely on in the hearing.  This document is being submitted on September 7ᵗʰ after you agreed to give Edison a one - day extension.

### WITNESSES:

1.   Mr. Michael Cordell, Principal Upper School F.E. CG Woodson Sen. Aca.
2.   Mr. Wallace Henry, Academy Director, F.E.P.C.S.
3.   Ms. Carlynn Ross, Special Education Coordinator, F.E.P.C.S.
4.   Kia Lewis, school psychologist
5.   Ms. Pimentel, regular education teacher
6.   Barbara Frazier, regular education teacher
7.   Mr. Smith, Transition teacher
8.   Ms. Charlene Glymph, Director of Special Education, Friendship Schools

**Some of the above witnesses may testify by telephone or use a designee.**

### DOCUMENTS

Edison 01 –  IEP from Village Learning Center dated            04/02/04

167

Edison 02 –   Educational Evaluation                    08/31/04

Edison 03 –   IEP dated                                 09/17/04

Edison 04 –   Fax to Annie Pressly re: counseling notes  06/22/05


\* We reserve the right to examine any witnesses disclosed by DCPS or the PARENT as if they were witnesses for our client and the right to rely on all other documents in the possession or previously filed or filed in a 5 Day Disclosure filed by the District of Columbia Public Schools (DCPS) or the PARENT or presented at the DPH.




                              Sincerely,

                              Paul S. Dalton, Esq.

cc: Student Hearing Office
      Mr. Michael Levy, DCPS Attorney-Advisor

168

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON. D.C.
INDIVIDUALIZED EDUCATIONAL PROGRAM

**I. IDENTIFICATION INFORMATION**

Student Name: Last ▓▓▓▓  First ▓▓▓▓  MI __A__

Student ID: 0038-27-03  Soc. Sec. No. ▓▓▓▓  Age 14  Grade 9

Gender ☑ M ☐ F  Date of Birth ▓▓/89  African American

Address: 5019 11th Street NE

Washington DC  20017

☐ Nonresident

Attending School: Village Learning Ctr  Home School: Backus M.S.

☐ Elem.  ☐ Middle  ☐ SHS  ☐ WHS

Parent: Marion Murphy

Address of (if different from student): ☑ Parent ☐ Guardian ☐ Surrogate

Telephone: Home 202-823-1048  Work 202-423-8155

**III. LANGUAGE**

| | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirement |
|---|---|---|---|---|
| Student | English | English | English | Native Lang |
| Parent | English | English | English | Native Lang |
| Home | English | English | English | Native Lang |

**IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY**

| SERVICES | SETTING | FREQUENCY Hrs Min D/W/M | PROVIDER by discipline | BEGINNING DATE | DURATION # of mos |
|---|---|---|---|---|---|
| Specialized Instruction | | 5h  W | Special Education Teacher | 4/20/04 | 16 mos |
| Psychological Counseling | | 5M  W | Psychologist? | 4/20/2004 | 10 mos |

TOTAL  6 E  Hours Per Week

**V. Disability(ies):**  Learning Disability

LD  "Check if setting is general Ed."

☑ 0-20%  ☐ 21-60%  ☐ 61-100%

Percent of time in a Regular Education Setting

**VI. IEP TEAM (Participants in the development of the IEP)**

EB Mon  sped Teacher

Keisha Blythe / Keisha Blythe  DCPS Placement Specialist

Marion Murphy  Marion Murphy  Parent

Dr Myra N. Gallo  Dr My. N. Gallo  English Teacher

Marion Murphy  4/22/04

District of Columbia Public Schools  Division of Special Education  IEP Page 1 of 4

EDISON – 01

169

Sec. 7. 2005  4:38PM  Dalton, Dalton,& Houston                No.4961  P. 5

| Student Name: D████ L ██████ | Managing School: Village Learning Ctr | DCPS - IEP Page 2 of 4 |
| Student ID Number: D038-2903 | DOB ██████ 55 Attending School | |

**VII. Present** Educational Performance Levels in Areas Affected by the Disability

**Academic Areas:** (Evaluator) JENNIFER PENN
**Math Strengths:** D████ is able to add & subtract

**Impact of disability on educational performance in general education curriculum:**
Weaknesses in math impact his ability to participate in mainstream courses

**Reading Strengths:**

**Impact of disability on educational performance in general education curriculum:**

**Communication (Speech & Language) (Evaluator)**
**Strengths:**

**Impact of disability on educational performance in general education curriculum:**

**Motor/Health (Evaluator)**
**Strengths:**

**Impact of disability on educational performance in general education curriculum:**

**Social Emotional Behavioral Areas:** (Evaluator) JENNIFER PENN
**Strengths:** D████ is able to follow directions

**Impact of disability on education performance in general education curriculum:**
Poor attending and social-relatedness impact peer relation

**Cognitive/Adaptive Behavior (Evaluator)**
**Strengths:**

**Impact of disability on educational performance in general education curriculum:**

**Prevocational Skills (Evaluator)**
**Strengths:**

**Impact of disability on educational performance in general education curriculum:**

Additional Comments:

Score(s) When Available  WIAT  9/17/02
Main Cal.  SS  79
Math Req.
See Goal page:
Date:
Rdg. Com
Rdg. Basic  SS = 95
Written Ex.  SS = 51
See goal page:
Date:

Score(s) When Available
Exp. Lang.
Rec. Lang.
Artic
Voice
Fluency
Exp. Voc.
Rec. Voc.
See goal page:
Date:

Score(s) /Results When Available

See goal page:
Date:

Score(s) When Available
Via  93
Fla  44
TSa  103
See goal page:
Date:  5/6/02

Score(s) When Available

See goal page:
Date:

Score(s) When Available

See goal page:
Date:

Sep. 7. 2005. 4:39PM  Dalton, Dalton, & Houston          No.4961   P. 6

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.
INDIVIDUALIZED EDUCATIONAL PROGRAM

### IDENTIFICATION INFORMATION

**IV. CURRENT INFORMATION**

Date of IEP Meeting: 4/22/04
Date of Last IEP Meeting: 1/9/04
Date of Most Recent Eligibility Decision: 4/22/04

Student Name: Last __U____  First __D____  MI __A__
Student ID: 0038703   Soc. Sec. No.: _____  Age: 14   Grade: 9
Gender: ☑M ☐F   Date of Birth: ___/89   Race: African American
Address: 5619 11th Street NE
Washington DC 20017

Purpose of IEP Conference:
☐ Initial IEP   ☑ Review of IEP
☐ Requested Eval   ☐ 3yr ReEval

Attending School: Village Learning Ctr   Home School: Backus R.S.

☐ Elem  ☐ Middle  ☐ JHS  ☐ HS

Parent: Marion Murphy

☑ Parents  ☐ Guardian  ☐ Surrogate

Telephone: Home 202-523-1648   Work 202-423-8159

### III. LANGUAGE

| | Languages | Language Used for Evaluation | Language Used in Conference | |
|---|---|---|---|---|
| Student | English | English | English | Native Lang |
| Parent | English | English | English | Native Lang |
| Home | English | English | English | Native Lang |

### IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| Service | Setting | Frequency Hrs Min D/W/M | Provider | IEP Initial Date Begin/End | Duration |
|---|---|---|---|---|---|
| Specialized Instruction | | 6 h  W | Special Education Teacher | 4/22/2004 | 10 mos |
| Psychological Counseling | | 5 M  W | Psychologist | 4/22/2004 | 10 mos |

TOTAL  6  Hours Per Week

### V. Disability(ies): Learning Disability

LD

Percent time in Special Education and Related Services:
☑ 0-20%   ☐ 21-60%   ☐ 61-100%

### VI. IEP TEAM Participants in the development of the IEP:

EP/Mon   Spec Teacher

Keesha Blythe / Keesha Blythe  IEP Placement Specialist
Marion Murphy  Marion Murphy  Parent
DeMyra N. Gallo  DeMyra Gallo  English Teacher

Marion Murphy                    4/22/04

_Marian Murphy_

Received a

Copy of "The Caring For Our Students with Disabilities", a procedural Manual for Parents

Delivered at the Village Learning Center on 4/22/04

From _E B Meen_

NAME

Akit 22,04

DATE

_Marian Murphy_

Parent / Recipient

_E B Meen_

Delivered by

172

Sep. 7. 2005. 4:39PM    Dalton, Dalton, & Houston    No.4961    P. 8

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON D.C.

INDIVIDUALIZED EDUCATION PROGRAM
(IEP)
MEETING NOTES

STUDENT ~~Dennille Wilkins~~    SCHOOL Village Learning    DATE: 4/22/04
Ctr

| PARTICIPANTS: | PARTICIPANTS: (Sign Name) | DISCIPLINE |
|---|---|---|
| EB Men | EB Men | SPED Teacher |
| Keesha Blythe | Keesha Blythe | DCPS Placement Special |
| Marian Murphy | Mary Murphy | Parent |
| DeMyra N. Gallo | DeMyra N. Gallo | English Teacher |

The MDT agrees that D~~ennille~~ continues
to be eligible for special education services
as a child with a Learning Disability

→ Services        Specialized Instruction 16hrs/W
                  Psychological Counseling .5 min/W

→ Combination General Education
→ Level III
→ Accommodations: extended time, small group
        repeat and rephrase directions, calculator,



DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

MDT REFERRAL DATE: _____   MULTIDISCIPLINARY TEAM (MDT)   Page: ___ of ___
CONTINUATION MEETING NOTES
MEETING TYPE: MDT

STUDENT: ▓▓▓▓▓ ▓▓▓▓▓   SCHOOL: Village Learning   DATE: 4/22/04

Well ▓▓▓▓ has difficulties with his writing
D▓▓▓▓ is capable of doing the work.
When you sit with him to do the work,
D▓▓▓▓ is able to perform the task
~~▓▓▓▓▓▓▓▓▓▓▓▓▓~~ D▓▓▓▓ would
benefit from ~~▓▓▓▓▓▓▓▓~~ repeated/listed directions.
help Delonta
To become more organized, he could use
an assignment notebook to list daily
tasks ~~and need~~ to be reviewed by classroom
teacher daily. D▓▓▓▓ is also diagnosed w/
ADHD and ~~takes~~ Concerta 54mg daily
The MDT agrees that D▓▓▓▓ continues to be
eligible for Special Education Services
as a child with a Learning Disability

174

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON D.C

MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES

MDT

MDT REFERRAL DATE: _____          MEETING DATE  4/27/04

STUDENT _____ Will____          SCHOOL  Villiage Leaning  Gr

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| EBMen | EBMen | Dir of SPED / SPED Teacher |
| Keesha Blythe | Keesha Blythe | DCPS Placement Specialist |
| Marian Murphy | Marian Murphy | Parent - Legal Guardian |
| DeMyra N. Gallo | DeMyra N. Gallo | English Teacher |

The purpose of today's meeting is to discuss
current progress and review IEP.
Everyone present was introduced.
The parent was provided a copy of the procedural
safeguards.
Ms Murphy, grandmother is concerned with
D_____ being able to formulating sentences.
In his previous IEP, D_____ spelling & reading scores
are within the expected range.
Ms Gallo reports that D_____ reads very

THE PARENT  (IS PRESENT)   IS NOT PRESENT  AT THE MEETING   D_____ W_____

AFTER A REVIEW OF THE ASSESSMENTS, IT IS DETERMINED THAT _____

CONTINUES TO BE ELIGIBLE FOR SPECIAL EDUCATION

IS TO BE EXITED FROM SPECIAL EDUCATION

175

### EDUCATIONAL EVALUATION

Name: Delente, William                        School: F.E.C.A
Date of Birth: ____/1989                      Grade: 10.0
Age: 14 years, 11 months
Sex: Male
Date of Testing: 08/31/2004

## TESTS ADMINISTERED

*WJ III Tests of Achievement*

These tests provide measures of William academic achievement. A description of each ability is provided. His performance in each broad category is compared to grade peers using a standard score range. William proficiency is described categorically, ranging from limited to average; his test performance can be generalized to similar, non-test, grade-level tasks. Additional interpretation of academic task performance is provided.

## ACHIEVEMENT

When compared to others in his grade, William academic achievement is in the average range in Reading Comprehension (reading vocabulary and the ability to comprehend connected discourse while reading).

Broad Written Language includes production of written text, including spelling ability, writing fluency, and quality of written expression. Although William overall written language standard score is within the average range, his performance varied on two different types of tasks measuring effective expression in written language. William performance is advanced on tasks requiring the ability to convey ideas in writing. His performance is limited on tasks requiring the ability to write rapidly with ease (automaticity), requiring minimal analytic attention or problem-solving.

Written Expression measures William fluency of production and quality of expression in writing. Although William overall written expression standard score is within the average range, he performed differently on two types of writing fluency tasks. William performance is advanced on tasks requiring the production and organization of ideas in writing. His performance is limited on tasks requiring the ability to write rapidly with ease (automaticity), requiring minimal analytic attention or problem-solving.

Broad Reading includes reading decoding, reading speed, and the ability to comprehend connected discourse while reading. William reading standard score is within the low average to average range (percentile rank range of 20 to 27; standard score range of 87 to 91) for his grade. His overall reading ability is limited; reading tasks above the grade 8.7 level will be quite difficult for him.

Math Calculation Skills measures William computational skills and automaticity with basic math facts. William mathematics calculation skills standard score is within the low average range (percentile rank range of 9 to 19; standard score range of 80 to 87) for his grade. His mathematics calculation skills are limited to average; math calculation tasks above the grade 9.0 level will be quite difficult for him.

Broad Math includes mathematics reasoning and problem solving, number facility, and automaticity. William mathematics standard score is within the low average range (percentile rank range of 9 to 17; standard score range of 80 to 86) for his grade. His overall mathematics ability is limited; math tasks above the grade 8.4 level will be quite difficult for him.

EDISON – 02  176

Educational Evaluation                                              Page 2
D██████, W███████
August 31, 2004

Academic Processing

W███████ academic skills are limited to average.  Specifically, his spelling is average.  His sight reading
ability is limited to average.  W███████ math calculation skill is limited.

The fluency with which W██████ performs academic tasks is limited.  For example, his fluency with
mathematics problems is limited to average.  His writing fluency is limited.  W███████ fluency with reading
tasks is very limited.

Academic Applications.  W███████ writing ability is advanced.  His passage comprehension ability is
limited to average.  His quantitative reasoning is limited.

TEST SESSION OBSERVATIONS

W███████ conversational proficiency seemed very advanced for his grade level.  He was exceptionally
cooperative throughout the examination; his activity level seemed typical for his grade.  He appeared
confident, self-assured, and attentive to the tasks throughout the examination.  He responded promptly,
but carefully, to test questions, generally persisting with difficult tasks.

SUMMARY

When compared to others at his grade level, W███████ overall level of achievement is average.  His
fluency with academic tasks is low average.  His academic skills and his ability to apply those skills are
both within the average range.

When compared to others at his grade level, W███████ performance is average in reading comprehension,
written language, and written expression; and low average in broad reading, mathematics, and math
calculation skills.

Educational Evaluation                                                    Page 3
Delante, Willies
August 31, 2004

TABLE OF SCORES: *Woodcock-Johnson III Tests of Achievement*
Report Writer for the WJ III, Version 1.1
Norms based on grade 10.0

| CLUSTER/Test | Raw | GE | EASY to DIFF | | RPI | PR | SS(68% BAND) | | AE |
|---|---|---|---|---|---|---|---|---|---|
| TOTAL ACHIEVEMENT | - | 7.3 | 5.6 | 9.5 | 71/90 | 27 | 91 | (90-92) | 12-9 |
| BROAD READING | - | 7.2 | 5.8 | 8.7 | 56/90 | 23 | 89 | (87-91) | 12-7 |
| BROAD MATH | - | 6.3 | 4.8 | 8.4 | 62/90 | 12 | 83 | (80-86) | 11-10 |
| BROAD WRITTEN LANG | - | 9.1 | 6.4 | 13.0 | 88/90 | 43 | 97 | (94-101) | 14-10 |
| READING COMP | - | 7.6 | 5.1 | 10.8 | 79/90 | 30 | 92 | (89-95) | 12-10 |
| MATH CALC SKILLS | - | 6.5 | 4.7 | 9.0 | 68/90 | 13 | 93 | (80-87) | 12-0 |
| WRITTEN EXPRESSION | - | 8.7 | 5.9 | 13.0 | 86/90 | 40 | 96 | (92-101) | 14-1 |
| ACADEMIC SKILLS | - | 8.0 | 6.2 | 10.7 | 79/90 | 29 | 92 | (89-95) | 13-9 |
| ACADEMIC FLUENCY | - | 6.5 | 5.2 | 8.0 | 44/90 | 15 | 85 | (83-86) | 11-10 |
| ACADEMIC APPS | - | 7.9 | 5.4 | 12.2 | 83/90 | 32 | 93 | (89-97) | 13-1 |

Form A of the following achievement tests was administered:

| | Raw | GE | EASY to DIFF | | RPI | PR | SS(68% BAND) | | AE |
|---|---|---|---|---|---|---|---|---|---|
| Letter-Word Identification | 62 | 8.0 | 6.4 | 10.1 | 76/90 | 37 | 95 | (92-98) | 13-6 |
| Reading Fluency | 54 | 7.1 | 6.2 | 8.1 | 21/90 | 22 | 88 | (86-90) | 12-6 |
| Calculation | 22 | 6.7 | 5.2 | 8.9 | 66/90 | 21 | 88 | (83-93) | 12-4 |
| Math Fluency | 75 | 6.1 | 3.8 | 9.0 | 70/90 | 12 | 82 | (80-84) | 11-6 |
| Spelling | 43 | 9.9 | 7.1 | 12.9 | 90/90 | 49 | 100 | (96 104) | 15 10 |
| Writing Fluency | 18 | 5.7 | 4.5 | 7.2 | 44/90 | 14 | 84 | (80-88) | 11-2 |
| Passage Comprehension | 32 | 5.8 | 3.9 | 9.1 | 70/90 | 22 | 88 | (83-93) | 10-11 |
| Applied Problems | 38 | 6.0 | 4.9 | 7.6 | 50/90 | 19 | 87 | (83-90) | 11-7 |
| Writing Samples | 20-E | >18.0 | 16.2 | >18.0 | 98/90 | 99 | 138 | (125-150) | >23 |
| Reading Vocabulary | - | 9.1 | 6.6 | 12.4 | 86/90 | 43 | 97 | (94-101) | 14-7 |

Educational Evaluation                                                    Page 4
D████, W█████
August 31, 2004

### Descriptions of WJ III Tests Administered

*Letter-Word Identification* measured W██████ ability to identify letters and words  He was not required to know the meaning of any word.

*Reading Fluency* measured W███████ ability to quickly read simple sentences, decide if the statement is true, and then circle Yes or No.  He was asked to complete as many items as possible within a 3-minute time limit.

*Calculation* measured W███████ ability to perform mathematical computations.  The items required him to perform addition  subtraction, multiplication, division, and combinations of these basic operations.

*Math Fluency* measured W███████ ability to solve simple addition, subtraction, and multiplication facts quickly.  He was presented with a series of simple arithmetic problems to complete in a 3-minute time limit.

*Spelling* measured W███████ ability to write orally presented words correctly.

*Writing Fluency* measured W███████ skill in formulating and writing simple sentences quickly.  He was required to write sentences relating to a given stimulus picture that includes a set of three words.  This test had a 7-minute time limit.

*Passage Comprehension* measured W███████ ability to understand what is being read during the process of reading.  Test items required W█████ to read a short passage and identify a missing key word that makes sense in the context of the passage.

*Applied Problems* measured W███████ ability to analyze and solve math problems.  To solve the problems, he was required to listen to the problem, recognize the procedure to be followed, and then perform relatively simple calculations.  Because many of the problems included extraneous information, W███████ needed to decide not only the appropriate mathematical operations to use but also what information to include in the calculation

*Writing Samples* measured W███████ skill in writing responses to a variety of demands.  He was asked to produce written sentences that were evaluated with respect to the quality of expression.  W██████ was not penalized for any errors in basic writing skills, such as spelling or punctuation.

*Reading Vocabulary* measured W███████ skill in reading words and supplying appropriate meanings.  He was administered three subtests: Synonyms, Antonyms, and Analogies.  The first subtest required W██████ to read words and provide synonyms.  The second subtest required him to read words and then provide antonyms.  The third subtest required W█████ to read three words of an analogy and then provide the fourth word to complete the analogy.

Sep. 7. 2005  4:40PM   Dalton, Dalton,& Houston                    No.4961   P. 15

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**WASHINGTON, D.C.**
**INDIVIDUALIZED EDUCATIONAL PROGRAM**

DCPS - IEP Page 1 of 4

Additional Comments: ☐

## I. IDENTIFICATION INFORMATION

Student Name: Last ~~W____~~  First ~~Albert Jr~~ MI A

Student ID 00383923  Soc. Sec. No. ~~_____~~  Age: 14  Grade 9

Gender ☒M ☐F  Date of Birth ~~_____~~  Ethnic Group African American

Address 5019 11th Street NE
Washington, DC 20017

☐ Non-standing
Attending School I.E.C.A.  Home School Coolidge SHS

☐ Elem. ☐Mid/JHS ☒SHS ☐CWS /

Parent Marion Murphy

Address of (if different from student): ☐ Parent ☒ Guardian ☐ Surrogate

Telephone: Home 2/823-048   Work 2/423-8157

## II. CURRENT INFORMATION

Date of IEP Meeting: 9/17/04
Date of Last IEP Meeting: 4/22/04
Date of Most Recent Eligibility Decision: 9/17/04

Purpose of IEP Conference:
☐ Initial IEP   ☒ Review of IEP
☐ Requested Eval.   ☐ 3yr ReEval

Indicate Level of Standardized Assessment: ___

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| BEHAVIOR | | TRANSPORTATION |
| CSV | ☒ | TRANSITION |

## III. LANGUAGE

| | Language | Language Used for Evaluation | Language in Conference | Communication Requirements |
|---|---|---|---|---|
| Student | English | English | English | |
| Parent | English | English | English | |
| Home | English | English | | |

To be completed by Office of Bilingual Education
English and Math Proficiency Assessment
Oral
Rdg./ Written
Instrument
Date:

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING Gen.Ed Spel Ed Total | FREQUENCY Hr./ Min  D/W/M. | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # wks./mos |
|---|---|---|---|---|---|
| Specialized Instruction | 15 15 | hr. w | Special Ed Teacher | 9/20/04 | 10 mos |
| Psychological Counseling | .5 .5 | m w | | 9/20/04 | 10 mos |
| | | | | | |
| TOTAL | 15 15 | Hours Per Week | | | |

## V. Disability(ies)

LD    Learning Disabled

☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☐ 0-20%  ☒ 21-60%  ☐ 61-100%

Percent of time NOT in a Regular Education Setting ___%

## VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below.

Tamira Murphy  Parent   Tamira Murphy
Charlie M E  Spec. Coordinator  Charlene Blym
         Psychologist
Rick Hill   Principal
Barbara Frazier  General Ed Teacher  Barbara Frazier
S. Parent  Sp. Education

☒ I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature Tamira Murphy    Date 9-17-04

District of Columbia Public Schools   07-02-2001   Division of Special Education   Appendix - A   IEP Page 1 of 4

EDISON- 03

180

| Student Name | Dekisha Wilkins | Managing School | Hamilton-Sidwell-City | DCPS - Item Page 2 of 4 |
| Student ID Number | NO 382703 | DOB | - 89 | Attending School | EBLA |

---

**VII. Present Educational Performance Levels in Areas Affected by the Disability**   Additional Comments: ☐

Academic Areas: (Evaluator)   C. Williams

Math Strengths:

Dekularkin is on 6.7 grade level

Impact of disability on educational performance in general education curriculum:

Calculation problems about 7th grade may be quite difficult for him

Reading Strengths:

Reading fluency is a strength at 7th grade level

Impact of disability on educational performance in general education curriculum:

comprehension is limited at 5th grade level

tion (Speech & Language) (Evaluator)

sability on educational performance in general education curriculum:

alth (Evaluator)
s:

Impact of disability on educational performance in general education curriculum:

Social Emotional Behavioral Areas: (Evaluator)
Strengths:

Impact of disability on educational performance in general education curriculum:

Cognitive/Adaptive Behavior: (Evaluator)
Strengths:

Impact of disability on educational performance in general education curriculum:

Prevocational Skills: (Evaluator)
Strengths:

Impact of disability on educational performance in general education curriculum:

Scores When Available
WJ-III

Math Cal  8-58/6.7
Math Rea _____
See goal page:
Date:  9/17/07
Rdg. Comp  8-97/7.6
Rdg. Basic
Written Ex  85=138/18.0 7
See goal page:
Date:  9/17/07

Score(s) When Available
Exp.Lang. _____
Rec. Lang. _____
Artic _____
Voice _____
Fluency _____
Exp. Voc. _____
Rec. Voc. _____
See goal page:
Date:

Score(s) /Results
When Available
_____
_____
See goal page:
Date:

Score(s) When Available
_____
_____
See goal page:
Date:

Score(s) When Available
_____
_____
See goal page:
Date:

Score(s) When Available
_____
_____
See goal page:
Date:

Sep. 7. 2005 4:40PM    Dalton, Dalton,& Houston

No.4961   P. 17

| Student Name | | | Managing School | |
| Student ID Number: 0D0382733 | DOB | | Attending School VLCPCS | |

VII. SPECIALIZED SERVICES    Additional Comments

DCPS IEP
Page 3 of 4

Goal Number:

Area addressed by goal:   SOCIAL-EMOTIONAl

ANNUAL GOAL: (including mastery criteria):

D_____ will develop appropriate attending and
Social Relatedness skills

Provider(s):   School counselor

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
| --- | --- | --- |
| Attend to tasks with out becoming Frustrated | | |
| Sit still during group activities | | |
| Attempt tasks before responding "I can't" or "I don't Know how" | | |
| Attend to work time tasks until they are completed before moving on to another task | | |
| Participate in group activities Demonstrating continuing growth in social interactions | | |
| Accept the give and take of interactions with peers and adults | | |

EVALUATION PROCEDURE(S)

Portfolio  Log   Chart   Test   Documented Observation    Report    Other _____

District of Columbia Public Schools    07-00-2004    Division of Special Education    Appendix - A    IEP Page 3 of 4

182

Sep. 7. 2005  4:40PM    Dalton, Dalton,& Houston                    No.4961   P. 18

| Student Name | [redacted] | | Meeting Date | | DCPS - SP |
|---|---|---|---|---|---|
| Student ID Number | 000 38 2703 | DOB | [redacted] 89 | Attending School | H∘PC ∘ | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES** | Additional Information:

Area addressed by goal: **Math**

Goal Number:

ANNUAL GOAL (including mastery criteria):

[redacted] will demonstrate 1 years progress In applied Math skills moving him From grade level to grade level through Mastery of the Following short term Goals

Provider(s): General Ed and SPED Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Data Measured | Evaluation Schedule |
|---|---|---|
| Multiply 1 digit by 2 digits  Multiply 2 digits by 3 digits with and with out Regrouping With 70 % accuracy | | Monthly |
| Divide by a 2,3, digit divisor with and without a Remainder with 80% accuracy | | Monthly |
| Solve simple word problems involving 1, 2, 3 step operation with 80% accuracy | | Monthly |
| Add, substract, like, and unlike fraction with 70% accuracy  complete Fractional computations with 70% accuracy | | Monthly |
| Identify the place value of a number With 80% accuracy | | Monthly |
| student will complete fractional computations with 70 % accuracy | | Monthly |

EVALUATION PROCEDURE(S):

Portfolio    Log    Chart    (Test)    (Documented Observation)    Record    Other

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 3 of 4

183

| Student Name | | Managing School | VLPCS | | DCPS Use |
| Student ID Number | D0382703 | Assisting School | | | Page 4 of 4 |

**Additional Comments:**

**IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION**
**SERVICE ALTERNATIVES**

Can curricular modification, accommodations and or supplemental aids and services be used for a LRE setting in regular education?    Yes    No

Explanation for removal but of regular education placement:

_____ is unable to be academically successful
in the general education classroom without
proper support

**X. Supplementary Aids and Services**

| Classroom Needs (Do not name provider of consultant) | SETTING | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yy) |
| | Genral | SpEd | Total | Hrs/min | D/W/M | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for testing:    None needed

Timing/Scheduling: Extended time
Setting: Small group
Presentation: Repeat and Rephrase direction written list of direction
Response: 
Equipment: Calculator, ruler

**XI. STATE AND DISTRICT ASSESSMENTS:**

Level I  Tested with non-standard test under standard conditions without accommodations.    Level III  Describe listed modifications for level III. Tested under standard conditions with special accommodations.

Level II  Describe non-uniform conditions for level III. Tested under standard conditions with permissible accommodations.    Level IV  Describe the alternate assessment.

Level V  Promoted

**XII. Areas Requiring Specialized Instruction and Related Services:**    Modifications:

| | | | |
| Reading | Physical/Sensory | Transition | Language Arts/English |
| Mathematics | Social Emotional | Vocational | Social Sciences |
| Written Expression | Physical Development | Independent Living | Biological & Physical Sciences |
| Other | | Spoken Language | Fine Arts |
| None    Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above. | | | |

**XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION**

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
| --- | --- | --- |
| Maximum Inclusion → (Combination) General Education | Accept | None |
| General Education Out of General Education | reject reject | school failure not LRE |

Modifications/Accommodations to address the harmful effects:
Specialized Instruction & Psychological Counseling

Location for Services:

184




_Marian D Murphy_

Received a

Copy of "The Caring For Our Students with Disabilities", a procedural Manual for Parents

Delivered at the Village Learning Center on  4/22/04

From  _E B Neu_

NAME

_April 22, 04_

DATE

_Marian Murphy_
Parent / Recipient

_E B Neu_
Delivered by

185

Student Name: [redacted] White    Managing Agency: VLcPCS    DCPS 154 Page 4 of 4
Student ID Number: 00382203    DOB: [redacted] 89    Attending Agency:

**Additional Comments:**

IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION
SERVICE ALTERNATIVES

Can curriculum modification, accommodation and/or supplemental aids and services be used for a LRE setting in *regular education*?    Yes    No

Explanation for removal out of regular education classroom:

D[redacted] is unable to be academically successful in the general education classroom without proper support

X. Supplementary Aids and Services
Classroom Needs
(Do not name products or companies.)

| | SETTING | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yy) |
|---|---|---|---|---|---|---|---|
| | Gen'Ed | SpEd | Total | Hr/Min | D/W/M. | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for testing:    None needed

Timing/Scheduling: Extended time
Setting: Small group
Presentation: Repeat and Rephrase direction, list of directions
Response:
Equipment: Calculator, ruler

XI. STATE AND DISTRICT ASSESSMENTS:
Level I  Tested with non-disabled peers under same conditions without accommodations.
Level II  Testee under standard conditions with special accommodations.
Level III  Describe non-uniform conditions for level II:
Testee under non-standard conditions with permissible accommodations.
Level IV  Describe the alternative assessment:
Level V  Portfolio:

XII. Areas Requiring Specialized Instruction and Related Services:    Modifications:

Reading                Physical/Sensory        Transition              Language Arts/English
(Mathematics)          (Social Emotional)      Vocational              Social Sciences
Written Expression     Physical Development    Independent Living      Biological & Physical Sciences
Other:                                         Speech/Language         Fine Arts
NONE    Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| Maximum Exclusion - Combination General Education | Accept | None |
| General Education Out of General Education | reject reject | School failure not LRE |

Modification(s)/Accommodation(s) to address the harmful effect:
Specialized Instruction & Psychological Counseling

Location for Services

186



Friendship Edison Collegiate
Public Charter School  Community Vision... World Class Education
Carter G. Woodson Campus
4095 Minnesota Avenue, NE
Washington, DC 20019

## INDIVIDUALIZED EDUCATION PROGRAM
### (IEP)
#### MEETING NOTES

STUDENT _D_____ W_____  SCHOOL _F. E. C. A_          DATE _9/17/04_

| PARTICIPANT | PARTICIPANTS (Sign Name) | DISCIPLINE |
|---|---|---|
| Tamika Murphy | Tamika Murphy | parent |
| Georgia Visser | S. Gisei | Sp. Ed. Teacher |
| Charter | Charlena Obryant | Gen Ed Teacher |
| Brian Beck | Brian Beck | Principal |
| Kysa E. Lewis | Kysa E. Lewis | Psychologist |
| Barbara Frazier | Barbara Frazier | Teacher (Gen) |

This meeting was convened following
the I. E.P. meeting where D_____ W_____
was found eligible for Special Education
services as a Learning Disabled Student.

The previous I.E.P. did not include transition
services. D_____ I.E.P. was instructional hrs
were increased to accommodate his educational
and transitions needs from 6.5 to 13.5 hours

**Edison-Friendship College Academy**
*Carter G. Woodson Campus*
4095 Minnesota Avenue, N.E.
Washington, D.C 20019



**Edison**
Schools

### IEP CONTINUATION PAGE

Student Name _____ DOB _____ /89 Date 9/17/04

Student ID Number 382703 School J.E.C.A

INSTRUCTIONS: Use this addendum when additional space is needed on an IEP section or part. Enter the *section/part, page number or addendum to identify each item being continued. Attach this addendum to the form.

*Section/Part I.E.P Notes cont Page 2 of 2 or Addendum _____ (Repeat for each section or part.)

His educational goals will be carried over until they are mastered by the student.

188

Sep. 7. 2005  4:41PM    Dalton, Dalton,& Houston                    No.4961   P. 24

**Friendship Edison**
Collegiate Academy
Carter G. Woodson Campus
4095 Minnesota Ave., NE
Washington, DC 20019

MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES

MDT

MDT REFERRAL DATE: _____    MEETING DATE: 9/17/04

STUDENT: ~~_____~~    SCHOOL: F.E.C.A

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| Skamba Giree | _____ | Sp. Ed. |
| Tamira Murphy | Tamira Murphy | Parent |
| Regina Bell | _____ | ~~Sp. Ed. Teacher~~  Princip |
| Barbara Frazier | Barbara Frazier | Teacher (Reg.) |
| Lya E. Lewis | Lya Lewis | Psychologist FECA |

Procedural safeguards were explained
and given to the parent and a
receipt was signed for. This is a 30
day review.
Guardian representative (Ms. Murphy aunt)
Grandmother is the legal guardian.
The aunt is present in her place.
Concerns ~~_____~~ is in Geometry and

THE PARENT [✓] IS PRESENT [ ] IS NOT PRESENT AT THE MEETING ~~_____~~

AFTER A REVIEW OF THE ASSESSMENTS, IT IS DETERMINED THAT ~~_____~~

[✓] CONTINUES TO BE ELIGIBLE FOR SPECIAL EDUCATION

[ ] IS TO BE EXITED FROM SPECIAL EDUCATION

189

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

MULTIDISCIPLINARY TEAM (MDT)
CONTINUATION MEETING NOTES
MEETING TYPE:

Page: 3 of ___

STUDENT: ~~Robert Wilkins~~            DATE OF BIRTH: ~~_____~~

SCHOOL: ~~S.E.C.A~~            DATE: 9/17/04

he has never mastered Basic Math
and Algebra. ~~_____~~ is shy and structured
he does not seek

Special Education Teacher: ~~_____~~
was given the WJ III during the first
weeks of school. his academic levels
were

190

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

MULTIDISCIPLINARY TEAM (MDT)                    Page: *2* of ___
CONTINUATION MEETING NOTES
MEETING TYPE:

STUDENT: D██████ W███████         DATE OF BIRTH: ██/██/89
SCHOOL: F.E.C.A.                  DATE: 9/17/04

*Psychologist* D██████ will benefit from counseling services in the classroom setting.

The team has decided to
- Alter D████████ schedule from Geometry to Algebra I
- Guided Notes
- Tutoring after-school to remediate his skills in tutoring.
- D██████ does not have a transition plan Meet w/ transition coordinator.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS    02-12-02    DIVISION OF SPECIAL EDUCATION – NON PUBLIC    MDT MEETING NOTES    APPENDIX A



Friendship-Edison Collegiate Academy
Carter G. Woodson Campus
4095 Minnesota Avenue, NE
Washington, DC 20019
Phone: (202) 396-5500

# FAX COVER

Date: __6/22__ Time: _____ # of Pages (including cover): __16__

To: __ANNIE PRESSLEY__    From: _____

Fax: __626-0048__

---

**COMMENTS:**

Re: D██████ W███████

as requested

---

EDISON – 04
192

Sep. 7. 2005  4:42PM    Dalton, Dalton,& Houston                No.4961   P. 28

HP Fax Series 900
Plain Paper Fax/Copier

Fax History Report for

Jun 22 2005 11:54am

Last Fax

| Date | Time | Type | Identification | Duration | Pages | Result |
|------|------|------|----------------|----------|-------|--------|
| Jun 22 | 11:48am | Sent | 6260048 | 5:59 | 16 | OK |

Result:
  OK - black and white fax

193

Sep. 7. 2005  4:42PM   Dalton, Dalton,& Houston                No.4961   P. 29

Jun 19 05 03:51p    Dr Annie Pressley                2026260048                    p.2

# Law Offices,
## Christopher N. Anwah, PLLC
**Attorneys and Counselors at Law**

Christopher N. Anwah, Esq.
   (DC, MD, NJ)
Fatmata Barrie, Esq.
   (DC, FL)
Panya Monford, Esq.
   (MD)

Carpenter's Building
1003 K Street, N.W.
 Suite 565
Washington, D.C. 20001
Phone: (202) 626-0040
Fax: (202) 626-0048
Email: chrisanwahfirm@chrisanwahfirm.com

June 19, 2005

**By Fax: (202) 396-8229**

Mr. Wallace R. Henry III
Special Education Coordinator
Friendship-Edison Collegiate Academy
4095 Minnesota Avenue, N.E.
Washington, D.C. 20019

        RE:   De█████ W███████
        DOB:  ██████89

Dear Mr. Henry:

Our office is writing to request that Friendship-Edison Collegiate Academy ("FE") provide us with tracker forms for all specialized instructions and related services that De█████ was entitled while attending FE and until he transferred out of FE. We are requesting that FE provide us this information no later than **Thursday, June 23, 2005 by close of business**. If you have any questions, you may contact the undersigned staff personnel at either (202) 626-0040 or (202) 270-9156.

Thank you for your prompt attention and cooperation regarding this matter.

Sincerely,

Annie R. Pressley, J.D.
Education Advocate for Christopher Anwah, Esq.
Attorney for De█████ W███████

cc:    Client's file

```
┌─────────────────────────────────────────┐
│   TRANSMISSION VERIFICATION REPORT        │
└─────────────────────────────────────────┘
```

```
                              TIME : 08/25/2005 07:41
                              NAME : STUDENT HEARINGS OFF
                              FAX  : 2024425556
                              TEL  : 2024425432
                              SER.# : BROH3J608601
```

```
┌──────────────────────────────────────────────────────────────┐
│                                                                │
│   DATE,TIME              08/25  07:41                          │
│   FAX NO./NAME           96260048                              │
│   DURATION               00:00:29                              │
│   PAGE(S)                01                                    │
│   RESULT                 OK                                    │
│   MODE                   STANDARD                              │
│                          ECM                                   │
│                                                                │
└──────────────────────────────────────────────────────────────┘
```

# District of Columbia Public Schools
## *Office of Compliance*
## STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556

X REVISED COPY



**HEARING NOTICE**

| MEMORANDUM VIA: [X] FACSIMILE [ ] MAIL [ ] HAND DELIVERY |

TO:   Parent (or Representative): E. BARRIE / P. DALTON   Fax No.: 626-0048

LEA Legal Counsel:   K. HERBERT

RE:   W_____, D_____   and (LEA) DOB: _____/89
          Student's Name

FROM:   **SHARON NEWSOME**
          Special Education Student Hearing Office Coordinator

DATE SENT:   8/24/05

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
_____. Please be advised that the hearing has been scheduled for:

DATE:   9/13/05                          Con't f

TIME:   9:00 Am                          8/18/05        195

AT:   825 North Capitol Street, N.E. Washington, DC

```
TRANSMISSION VERIFICATION REPORT
```

```
                              TIME  : 08/25/2005 07:42
                              NAME  : STUDENT HEARINGS OFF
                              FAX   : 2024425556
                              TEL   : 2024425432
                              SER.# : BROH3J608601
```

```
DATE,TIME              08/25  07:42
FAX NO./NAME           97037392323
DURATION               00:00:19
PAGE(S)                01
RESULT                 OK
MODE                   STANDARD
                       ECM
```

# District of Columbia Public Schools
## *Office of Compliance*
### STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



X REVISED COPY

#### HEARING NOTICE

MEMORANDUM VIA: [X] FACSIMILE [ ] MAIL [ ] HAND DELIVERY

TO:    Parent (or Representative): F. BARRIE /P. DALTON  Fax No.: 626-0048

LEA Legal Counsel:  K. HERBERT

RE:    W~~_____~~, D~~_____~~  and (LEA) DOB: ~~__~~/89
       Student's Name

FROM:   SHARON NEWSOME
        Special Education Student Hearing Office Coordinator

DATE SENT:   8/24/05

........................................................................

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
_____. Please be advised that the hearing has been scheduled for:

        DATE:   9/13/05                          Con't f
        TIME:   9:00 Am                          8/18/05        196

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS

In the Matter of:                    )        BEFORE A SPECIAL EDUCATION
D█████ W██████                       )
_____                      )        INDEPENDENT HEARING OFFICER
        Petitioner                   )
        Vs.                          )
F R I E N D S H I P - E D I S O N    )        STATE EDUCATION AGENCY
_____                      )
        Respondent

## INTERIM ORDER

ON THIS DAY came on to be heard _RESPONDENT_'s Motion For Continuance in the above styled cause. After hearing the evidence and argument of counsel, the Motion For Continuance is:

_____ DENIED.

___✓___ GRANTED. The hearing is reset for __9__ (A.M. / P.M. on __9-13-05__ ,

The Hearing Officer finds there is good cause to grant the continuance because:

_____ The parties have agreed to this continuance and the parent has waived the right to receive a final decision within 45 days;

_____ Petitioner's legal representative is unavailable. Diligent efforts have / have not been made to avoid or eliminate the scheduling conflict;

_____ Assigned DCPS attorney-advisor unavailable. DCPS has / has not made diligent efforts to have an attorney-advisor available;

_____ Witness unavailable. The party has / has not made diligent efforts to secure the witness;

_____ Parent or student unavailable;

_____ Conflict in the schedule of the assigned hearing officer. The Student Hearing Office has / has not made diligent effort to secure a replacement and no other hearing officer is available;

_____ Insufficient time allotted for the hearing. The time that was allotted is less than / equal to ( or more than) the time requested by the parent;

_____ No hearing room available. The Student Hearing Office has / has not made diligent efforts to secure a hearing room;

___✓___ Movant did not receive prior notice of the hearing;
_____ Other: THIS IS A TENTATIVE DATE & TIME FOR SCHEDULING PURPOSES PLEASE PROVIDE THE SHO WITH ALTERNAT DATES IF THE ABOVE WILL NOT WORK

The hearing request was filed on _____. The 45-day deadline for issuance of a final Hearing Officer's Determination is extended for the specific number of days granted by the continuance. The new deadline for issuance of the final decision is _____.

SIGNED this date __8-23-05__ ,

__8/24/2005__                        _____
Issue Date                           Independent Special Education Hearing Officer

Original to SHO – Student's File
Copy To:   Parent - C/O: __Fatmata Barrie__
           DCPS - C/O:
           Charter School - C/O: __Paul Dalton, Esq__

197

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
STUDENT HEARING OFFICE

IN THE MATTER OF D███████ W████████

HEARING DATE: SEPTEMBER 13, 2005

TRANSCRIBED BY
LEGAL PERSONNEL, INC.

<u>APPEARANCES</u>

HEARING OFFICER:          CHARLES JONES

DCPS:                     STEPHANIE RAMJOHN-MOORE

ATTORNEY FOR PARENT:      MS. FAMATA BARRIE & TAMIKA JONES

FRIENDSHIP EDISON
PUBLIC CHARTER SCHOOLS:   PAUL DALTON &  JESSICA SMITH

1        HEARING OFFICER:  All right, we're on the record.  It is

2   now 9:20 on September 13th, 2005.  My name is Charles Jones and

3   I'm a Hearing Officer and I am convening an Administrative Due

4   Process on the path of D██████ W██████.  This Hearing is being

5   conducted in accordance with guidelines and rights established

6   by IDEA, the rules of the Board for Education of the District of

7   Columbia and the D.C. Appropriations Act.  The Hearing is to

8   determine whether or not the D.C. Public Schools have acted in

9   accordance with the applicable special education regulations.

10  Now for the purposes of the record, I'd like everyone to

11  introduce themselves. Counselor for DCPS:

12      MS. RAMJOHN-MOORE: Stephanie Ramjohn-Moore, Training

13  Advisor, District of Columbia Public Schools.

14      MS. SMITH: Jessica Smith (Inaudible)

15      MR. DALTON: Paul Dalton on behalf of Friendship Edison

16  Public Charter Schools and Charlene Glen for record of Special

17  Education for Friendship Edison Public Charter Schools is also

18  present

19      MS. BARRIE: Ms. F. Barrie, attorney for the Grandmother.

20      MS. MURPHY: Marion Murphy, Grandmother for D██████ W██████

21  and legal guardian

22      MR. WILKEN: I'm D██████ W██████, the Student.

23      MS. JONES: Tamika Jones, Attorney for the Student

1    HEARING OFFICER: All right Ms. Barrie do you waive the

2    formal reading of the Due Process Rights?

3    MS. BARRIE: Yes sir.

4    HEARING OFFICER: At the conclusion of this Hearing within

5    ten calendar days within the 45-day limit, I will prepare an

6    Order. That Order is appealable by either party to a court of

7    law.  Now mind the fact that is continuous, that was requested

8    by counsel for Friendship Edison.  I'm assuming there are no new

9    disclosures, Mr. Dalton.

10    MR. DALTON: I have the same assumption sir.

11    HEARING OFFICER: Do you have any new disclosures?

12    MS. BARRIE: I didn't turn in any new disclosures.

13    HEARING OFFICER: You didn't turn in any new disclosures.

14    All right let the record reflect that the disclosures have been

15    introduced into the record are also employed for this Hearing.

16    As I understand that counselor for DCPS has a preliminary

17    matter. What is that preliminary matter Ms. Moore?

18    MS. MOORE: Mr. Jones (inaudible) DCPS respectfully request

19    that we dismissed from this matter as it is my understanding

20    that we previously settled the matter with Ms. Barrie.

21    HEARING OFFICER: Ms. Barrie do you have any problem with

22    her?

23    MS. BARRIE: No sir.

1      MR. DALTON: I have a great deal of problem with that.  I'm

2   not a party to that Settlement Agreement.  I filed a Motion to

3   Dismiss in this matter, previous to the last Hearing Officer's

4   determination in which the Hearing Officer required DCPS to do

5   independent evaluations and consider the issue of compensatory

6   ed.  My client is only on the hook supposedly for comp ed.  That

7   matter is still has been resolved, my motion back then was

8   valid, he it even more valid now, because we've had since March

9   till now and they still haven't done it.

10      HEARING OFFICER: Haven't done what?

11      MR. DALTON: Haven't done what they were supposed to do,

12   either pursuant to the HOD or I don't know what pursuant to this

13   new Settlement Agreement or the previous Settlement Agreement of

14   2004.

15      HEARING OFFICER: Have you a copy of the last HOD?

16      MR. DALTON: Yes I do.

17      HEARING OFFICER: Have you read it?

18      MR. DALTON: Yes I have sir.

19      HEARING OFFICER: So counsel for DCPS?

20      MS. MOORE: May I be excused?

21      HEARING OFFICER: No, we're still - there's still - he is

22   opposing your motion.

23      MS. MOORE: It is my understanding the issues with the

1  District of Columbia Public Schools have been resolved and in

2  accordance with your last HOD (inaudible) that was submitted as

3  I told you earlier, I am filling in for one of my colleagues who

4  had a resolution meeting. I have no knowledge of the Agreement

5  or the Order that was issued.

6      HEARING OFFICER: Ms. Barrie, what's the issue relative to

7  Friendship Edison?

8      MS. BARRIE: Okay. The issue relative to Friendship Edison

9  was denial of services from September 2004 until his

10 matriculation or at High Road, and April of 2005.

11     HEARING OFFICER: The student is presently enrolled.

12     MS. BARRIE: Is now at High Road.

13     HEARING OFFICER: So you're seeking comp ed from --.

14     MS. BARRIE: For Friendship Edison because according to my

15 client, he wasn't receiving services while at Friendship Edison

16 Public Charter School from September 2004 until he left in April

17 of 2005.

18     HEARING OFFICER: So the narrow is whether or not the

19 student was receiving related services in special education

20 instruction Friendship Edison --.

21     MS. BARRIE: Precisely.

22     HEARING OFFICER: At what period of time?

23     MS. BARRIE: September of 2004 until he left in April of

1    2005. Now at the last Hearing we addressed DCPS's issues as far

2    as compensatory education and the Order was directed towards DC

3    Public Schools.  And as a result, my allegations now are against

4    Friendship Edison Public Charter Schools as far as my client.

5        HEARING OFFICER: What is the last HOD, you were granted

6    placement at High Roads?

7        MS. BARRIE: Before you HOD.

8        HEARING OFFICER: Right.

9        MS. BARRIE: Correct.

10       HEARING OFFICER: And what did you receive in the last HOD?

11   Did you receive comp ed services?

12       MS. BARRIE: From you?

13       HEARING OFFICER: From DCPS?

14       MS. BARRIE: They were supposed to convene to meeting to

15   address that issue and they never did, and that's why we came

16   back.

17       HEARING OFFICER:  Okay.

18       MS. BARRIE: And we were able to get the comp ed that they

19   never took care of initially from the --.

20       HEARING OFFICER:  Okay.

21       MS. BARRIE: Or the previous Settlement Agreement.

22       HEARING OFFICER:  These are not overlapping dates?

23       MS. BARRIE: No sir.

1          HEARING OFFICER:   These are --.

2          MS. BARRIE: Separate and apart.

3          HEARING OFFICER:   All right. So I'll grant your motion.

4          MR. DALTON: Just note my objection for the record, please.

5          HEARING OFFICER:   Certainly.   Let the record reflect that

6     counsel for Friendship Edison opposes the dismissal.   Now, in

7     light of the fact that we have a narrow issue here, that is that

8     you're alleging that the student did not receive special

9     instruction or related services during the period of September

10    2004 through April 2005, correct?

11         MS. BARRIE: Correct.

12         HEARING OFFICER: That is the narrow issue. So.

13         MS. DALTON: We're prepared to offer testimony on that, but

14    my problem is that supposedly under Reid, the D.C. Circuit case—

15    MS. BARRIE:

16         HEARING OFFICER:   HmmmHmmm.

17         MR. DALTON:   There are supposed to be guidelines for the -

18    the equitable relief of compensatory ed, that Judge Tallot, the

19    Court of Appeal Judge who wrote the opinion in Reid, and before

20    I was arguing my case a couple a days ago reminded me because in

21    that case I was actually representing parent on the issue of

22    comp ed in which the Court awarded four year of comp ed for the

23    four years that the child was there. Basically chided Judge

1  Kessler for giving one-to-one, because you're not supposed to do

2  that after Reid.

3  MS. BARRIE:

4      HEARING OFFICER:  In the Reid, and I agree with you, the

5  Reid case simply indicated that we should look at placing the

6  student in a position in which would have but for the lack of

7  services.

8      MR. DALTON: Right.

9      HEARING OFFICER:  Now that is a determination I have to

10  make.

11     MR. DALTON: Yes sir, but - but my ability to defend my

12  client was comprised when you dismissed DCPS because there is

13  now no way of knowing that taking a child from a inclusion

14  program and putting them in a full time private program didn't

15  in and of itself compensate the child to the degree to that the

16  child needed to be compensated.

17     HEARING OFFICER:  I understand your argument, but I

18  disagree in light in the fact that I have the ability, if that's

19  what your position is, that the placement of the student at High

20  Roads, would in fact place him in a position in which he would

21  have been and that's your argument. I'll have to make the

22  determination.

23     MR. DALTON: That is only part of my argument.

1        HEARING OFFICER:  Okay.

2        MR. DALTON: The other part of my argument is that my

3    disclosure specifically shows that we faxed to Ms. Barrie's

4    office and there is a fax confirmation the notes of the services

5    that we provided.  Okay and she alleges --.

6        HEARING OFFICER: The counter tracking forms?

7        MR. DALTON: Yes.

8        HEARING OFFICER:  And is that a part of the record?

9        MR. DALTON: Yes it is sir.

10        HEARING OFFICER:  Direct me to that.

11        MR. DALTON: I don't have my glasses, but let me see I can-.

12    It's 4.

13        HEARING OFFICER: Of your disclosure?

14        MR. DALTON: Yes sir.

15        HEARING OFFICER: All right. Why don't you give me the

16    benefit of the document you're looking at so that I don't have

17    go through all of this.

18        MR. DALTON:  Here's the fax confirmation sheet.

19        HEARING OFFICER: Ms. Barrie, counselor for Friendship

20    Edison has indicated that they have provided you with the

21    counter tracking forms that show that the services that were

22    warranted that were provided by the school. Have you received

23    such documentation?

207

1 MS. BARRIE: No.  As I indicated prior to Friendship - to

2 Mr. Dalton, I knew nothing of the documents and I saw a fax

3 cover page that indicates --.

4 HEARING OFFICER: Where are the tracking forms at Mr.

5 Dalton?

6 MS. BARRIE: They are not in the - .

7 HEARING OFFICER: Dalton.

8 MS. BARRIE: Oh, I'm sorry.

9 MR. DALTON: The problem is the person who had possession of

10 these documents, no longer works for us.

11 HEARING OFFICER: The counter tracking forms?

12 MR. DALTON: That's correct. So we don't --- these are

13 private contractors.  There's supposed to leave the forms in the

14 file. They often take them with them when they leave.

15 HEARING OFFICER: Well that's --.

16 MR. DALTON: We still have testimony on top of this, but

17 there is evidence that this was faxed and a confirmation. Now is

18 in real time.

19 HEARING OFFICER: Wait a minute.  What was faxed?

20 MR. DALTON: The counter tracking forms --.

21 HEARING OFFICER: Then why don't you have a copy of them

22 then?

23 MR. DALTON: Because I just explained.

1      HEARING OFFICER: So you can't ask me to make such a leap

2  Mr. Dalton.

3      MR. DALTON: Now, wait a minute, that's not true. Because

4  there is a lot of case law that says when you've made the

5  documentation in time, not in preparation for a hearing, and

6  subsequently the documents are lost, evidence of the

7  transmission of those documents in directly response to the

8  question of those documents is evidence that the documents were

9  sent.  Especially when you have a confirmation that those

10  documents were received.

11      HEARING OFFICER: I understand your position, but it would

12  seem to me that in the ordinary course of business, you would

13  keep a copy of any encounter tracking forms --.

14      MR. DALTON: If we had control of the employee, your honor.

15  They were not an employee.

16      HEARING OFFICER: So, when these documents were allegedly

17  faxed to Ms. Barrie, the subcontractor employee did it, is that

18  - what you're saying?

19      MR. DALTON: I don't know. I don't know the answer to that.

20      HEARING OFFICER:  Well, let's go on the record.  I mean

21  let's get into the actual evidence and I'll make a

22  determination.  Who's your first witness?

23      MS. DALTON: My first witness is Charlene Glymph, Director

1    of Special Ed.

2          HEARING OFFICER:  Charlene?

3          MR. DALTON: Glymph, number 8.   G-L-Y-M-P-H.

4          HEARING OFFICER: Okay, Ms. Glymph, you want to raise your

5    right hand?  Do you swear to tell the truth, the whole truth and

6    nothing but the truth so help you God?

7          MS. GLYMPH: Yes.

8          HEARING OFFICER: Please state for the record, your full

9    name and your position with Friendship Edison?

10         MS. GLYMPH: My name is Charlene Glymph and I am the

11   Director of Special Education at Friendship Public Charter

12   Schools.

13         HEARING OFFICER: All right go forward with your

14   examination.

15         MR. DALTON: How is that you know the student D███████

16   W███████?

17         MS. GLYMPH:  He was a student (inaudible).

18         MR. DALTON: All right, and did you have any discussions

19   with either teachers or service providers with regard to

20   services and classes that D███████ was taking?

21         MS. GLYMPH:  Yes.

22         MR. DALTON: And what were those discussions.

23         MS. GLYMPH:  The initial time with D███████ was the 30-day

                                                                    210

1   review (inaudible) of the student's raw score.  So when he

2   walked in the door, I did not assessments in place from I think

3   - (inaudible). So what we did was to give him a Woodcott Johnson

4   re-assessment to ascertain what his academic levels were and

5   then to determine if we wanted to continue with the IEP that he

6   had in (inaudible) or if we wanted to review it and you know and

7   change his goals and objectives (inaudible). At that meeting,

8   his aunt attended because (inaudible) by the notes.  So what we

9   did he was over 14 or at the age of 14, and (inaudible) planned,

10  so we put on into place and increased his hours and then he was

11  placed in a transition class with Mr. Smith. In addition to that

12  he had like six and half hours and at the back of the pages, IEP

13  having reviewed all the documents, it was recommended that

14  Delonte be maximally be included into the school. This is the

15  recommendation of Village. His performance levels at the time he

16  came into the door were not of such to put him into what our

17  resource classes were.  So we included, we changed his schedule,

18  I think it was geometry.  And I think that was like too much of

19  (inaudible), we placed him in an Algebra IB class and then an

20  inclusion teacher was faced with that teacher's plan.  An

21  inclusion teacher at that time was Ms. (inaudible).

22      MR. DALTON: To the best of your knowledge were all of the

23  services provided pursuant to his IEP?

211

1    MS. GLYMPH:  They were, including his counseling, which was

2    done in the classroom setting through his transition program.

3    We trying to infuse things, a lot of the students in the high

4    school study, don't liked to pulled out of class to come down to

5    a special education suite.

6    MS. BARRIE: On that subjection only on the basis, I

7    understand.

8    MR. DALTON: Is this a cross-examination?

9    MS. BARRIE: No. I'm objecting.  I'm objecting.

10    HEARING OFFICER: Objecting to his question, objecting to

11    what?

12    MR. DALTON: The answer, what?  Well, that's the subject for

13    cross -exam --.

14    HEARING OFFICER: Wait a minute, Mr.--.  Let me handle this.

15    She's got an objection, I'll hear the objection and I'll let you

16    respond.  What is it you're objecting to?

17    MS. BARRIE: She's giving an account of what may or may not

18    have in a classroom, that she was not in.

19    MS. GLYMPH: Well you can cross-examine her and get that

20    information out of her.

21    MS. BARRIE: All right.

22    HEARING OFFICER: I'll overrule that objection.

23    MR. DALTON: Go ahead and explain.

1        MS. GLYMPH: I do enter the classroom, I'm an observer and I

2    have to take in all the lesson plans, and I have copies of their

3    lesson plans in a binder.  I keep --. So I am aware that Ms.

4    Mathews went into class.  Also our speech pathologist goes into

5    that particular transitions class.  We have a lot of special

6    needs students there, so they would rotate out or choose dates

7    to go in and work with our transition specialist, which is Mr.

8    Smith and that was D███████ teacher.  That's our transitions

9    coordinator. He did have those objections so we wanted to cover

10   them.  When D██████ came to us he only like 6 hours of

11   specialized instruction.  So, and they were including him at his

12   previous school, and so we were trying to see if that setting

13   was an appropriate one for him.  And initially at the beginning

14   of the school year, he was doing moderately successfully in that

15   endeavor.  And because I had tried to get his attendance, I just

16   remembered there was a breakdown at the beginning of January.

17   Because I noticed that I had seen before and the lady here, I

18   can't remember the relationship.  I'm sorry. And I've seen him

19   and I know that there was some form of a breakdown, and I don't

20   know why my instincts say, because I cannot pull it yet.  I

21   think there was a breakdown in some of his attendance or some

22   issue that happened after January.  But in the beginning the

23   year, that was not the most appropriate placement for D███████

213

1    based on his performance and (inaudible) three, with teachers

2    going in and giving the appropriate accommodations, making sure

3    he has a calculator, making sure he has the tools to be

4    successful.  All of our general education teachers are aware of

5    our special need students, they are given a snapshot with an IEP

6    at a glance, so that they immediately know what our performance

7    levels of our kids are before they come into the class.  So they

8    know to make the necessary accommodations and then we provide

9    them, in addition to that, core services at school on Tuesday

10   and Thursdays and he was apart (inaudible) and he was invited to

11   attend those sessions also. And as counsel stated she asked why

12   would I know this. That's whats my job, to make sure that

13   related service people were in the environment that were

14   supposed to be and scheduled to be in. This was one of my new

15   babies for that school year.  Because we started noticing that a

16   lot of our students don't like to come to our suite for

17   counseling and they don't like to come for speech and language

18   services and we're trying to get out of suite and start going

19   more into the classroom and implementing strategies that they

20   would been beneficial for their academic performance in the

21   learning environment, rather than pulling them aside and then

22   doing things that were not sufficient.

23        HEARING OFFICER: Any more questions Mr. Dalton?

214

1       HEARING OFFICER: Do you want to cross-examine?

2       MS. BARRIE: Please.  Okay.  Do you know who his teachers

3   were?

4       MS. GLYMPH:   HmmmHmmm.

5       MS. BARRIE: Who were his teachers?

6       MS. GLYMPH:  Who are his teachers now?

7       MR. BARRIE: No.

8       MS. GLYMPH: His math teacher at the time, it wasn't

9   (inaudible) tell, Ms. Israel is his case manager, Mr. Smith is

10  his transitions teacher, now his science --  Oh shoot. His

11  social sciences --.

12      MR. BARRIE: Okay, that's fine.

13      MS. GLYMPH: And if he was (inaudible) house, then his

14  literature teacher would have been Mrs.

15      MR. BARRIE: That's okay.  That's fine.

16      MS. GLYMPH:   (inaudible).

17      MR. BARRIE: I understand that's fine.  So Ms. Frazier, Ms.

18  Penmentel sp? was two of his teachers.

19      MS. GLYMPH: That is correct.  Are you certified in special

20  education?

21      MR. DALTON: Objection. Objection.  Relevancy.

22      MS. BARRIE: Oh, okay.

23      Mr. DALTON?  The issue here is whether or not we provided

215

1   we provided the services, not whether not teachers were

2   certified and under D.C. law and federal law, it's not a

3   relevant question anyway because charter schools are exempt from

4   that requirement.  You know we're just getting into tangent upon

5   tangent.

6       MS. BARRIE: If witness is indicating that he was receiving

7   his special ed services, people who provide special ed services

8   are special ed teachers - and as a result I think it is very

9   relevant.

10      HEARING OFFICER: All right. I'll overrule the objection.

11  Can you answer the question?

12      MS. GLYMPH: Those teachers were his general education

13  teachers, Mr. Israel was his person for inclusion hours and he

14  wasn't provided special education.

15      MS. BARRIE: And he was his case manager correct?

16      MS. GLYMPH:  Case manager and math inclusion teacher.

17      MR. BARRIE: So your testimony is that Mr. Israel taught him

18  math?

19      MS. GLYMPH:  (Inaudible) He was in the classroom with Ms.

20  Pendleton. He was assigned there. And he was the person

21  responsible to make sure.  We don't do pullouts where we sit

22  with a kid.  We plan for their instruction and provide support

23  in that environment. And Mr. Israel provided support in that

216

1   environment.

2       MS. BARRIE: What I'm asking is simply this, did Mr. Israel

3   teach D█████ special education math?

4       MR. DALTON: Objection, the question has already been

5   answered, this is an --. (Whispering) For the purposes of this I

6   want to object.  What counsel is now trying to do is go to

7   methodology.  Methodology is strictly prohibited under virtually

8   every case that I ever examined. You cannot dictate to a school

9   system how they are going to provide that service.

10      HEARING OFFICER: I thought her question did Mr. Israel

11  teach, that's a yes or no.

12      MR. DALTON:  No, it's not quite a yes or no. I believe the

13  answer is yes.  But on principal I want to object to the

14  question because.

15      HEARING OFFICER: What is your response to the objection?

16      MS. BARRIE: Simply this (chuckle).  It's not a methodology

17  question; it's a simple question.  Either he taught the student

18  or did not teach the student.

19      HEARING OFFICER: I'll overrule the objection; answer the

20  question if you can?

21      MS. GLYMPH: Yes, he (inaudible) in teaching in the student.

22  But it was a collaborate effort.

23      HEARING OFFICER: That's a fine answer.

217

1    MR. DALTON: It's a principal issue, it's a principal issue,

2    it's not a legal issue.

3    HEARING OFFICER: Any other question?

4    MS. BARRIE: HmmmHmmm.  Yes there is. All right.  You

5    indicated that it is your job to know what going on with the

6    teachers and the students.  Who taught him English?

7    MS. GLYMPH: Peoples.  I knew it was going to come to me.

8    MS. DALTON: I think we are bordering on badgering. First of

9    all --.

10    MS. BARRIE: Badgering?

11    MR. DALTON: Yeah.  First of all she names three of his

12    teachers, then she says I don't need anymore.  Then she comes

13    back later with another question on another teacher and now she

14    does remember, how many do we have to give, all of them?

15    HEARING OFFICER: I think it is appropriate that counsel can

16    ask those questions, Mr. Dalton. Counsel and your client is

17    answering them so, there is not a problem.

18    MR. DALTON: I just don't like my witnesses badgered, that's

19    all.

20    HEARING OFFICER: If she's badgered, I'll make sure she's

21    not.  Go forward.

22    MS. BARRIE: Okay. So Ms. Glymph, So Ms. Pimento Frazier and

23    Peoples taught him throughout the school year?

218

1       MS. GLYMPH: HmmmHmmm.

2       MS. BARRIE:  Ms. Frazier put down she is the regular

3   education teacher, is that correct? Okay. Ms. Pimento is also

4   regular ed teacher is that correct?

5       MS. GLYMPH: That's correct.

6       MR. BARRIE: Ms. Peoples, what was she.

7       MS. GLYMPH: She is a regular education teacher.

8       MS. BARRIE: Okay.  All right, do remember who his

9   psychologist was?

10      MS. GLYMPH:  Kia Matthews.

11      MS. BARRIE: It's not Kia Lewis, It's Kia Mathews.

12      MS. GLYMPH:  Oh she's married, I'm sorry.  It's Kia Lewis

13  Mathews.

14      MR. BARRIE: Okay.  Do you know who sent me the records?

15      MS. GLYMPH:   I do not because I was the achievement

16  coordinator of special education. It was title given to me

17  because my focus was the student success in the academic

18  environment, so I don't know who took care that part or sent it

19  to you because that was not responsibility for compliance. My

20  responsibility was to make sure that services were being

21  provided and students were getting the right support, that they

22  were into access tutoring, if they needed assistance on

23  computers, and they needed assistance in technology, or they

219

1   needed assistance with reader, whatever their needs were, those

2   were my responsibilities.

3       MS.BARRIE: And you are saying that D⬛⬛⬛ needed tutoring?

4       MS. GLYMPH: We offered all of our students tutoring. Any

5   time there is a deficit.

6       MS. BARRIE: You offered him tutoring.

7       MS.GLYMPH: We offer all special education students

8   tutoring.

9       MS. BARRIE: Okay. Is there any particular reason if they

10  thought he needed tutoring, the tutoring that he did not get

11  more areas of services, is there any reason, if he needed extra

12  help as a special needs student?

13      MS. GLYMPH: A lot of our students have come from

14  environments where they were not expected to achieve, and so

15  they been given grades, (inaudible) history and they have not

16  taken part in classes, so we try to encourage them as far self-

17  advocating.

18      MS. BARRIE: HmmmHmmm.

19      MS. GLYMPH: We try to encourage them to reach out and ask

20  questions and D⬛⬛⬛ is very inverted.  He is like a very quiet

21  student and he kind of like blend into the scene.  So anytime we

22  try to bond with them and offer them assistance, we're doing

23  homework. A lot of time a lot of kids don't have anyone at home

220

1  to say, parent's like they are in high school, they can do the

2  homework on their own.  So what we do is to extend ourselves the

3  opportunity here, we'll do homework with you.  Our tutoring

4  sessions were on Tuesdays and Thursdays, and in addition to

5  that, on Saturdays we would have the school open and available

6  to special needs students. But that's not just for D███████,

7  that's for any student. If they have a project, understanding

8  that a special education student whose coming into a high school

9  where it's very academic and it becomes challenging.  They may

10  need assistance projects and things like that, we have the

11  access, we have computers, we have everything that they need

12  there.  So it's like, come on it. Do you homework, get support,

13  get what you need and start making that transition.  And my

14  focus last year was watching the start of year (inaudible) they

15  can before.  And D███████ was one of our school students who

16  had a lot of skills. (inaudible)—and then it all came, he has a

17  lot of skills, he has a potential, he has great abilities, he

18  just needs the right support and (inaudible).

19      HEARING OFFICER: Any redirect?

20      MR. DALTON: Nope.

21      HEARING OFFICER: Let me ask you a couple of questions. You

22  monitor specialized instructions and related services.

23      MS. GLYMPH:  No I don't monitor.  I do monitor related

221

1  services.  But I have to make sure that the class were being

2  conducted.  But I monitor instruction. All of the teachers, any

3  questions that need to be answered, any (inaudible).

4      HEARING OFFICER: Now the individuals who provided the

5  direct related services, were contractors?

6      MS. GLYMPH: HmmmHmmm.

7      HEARING OFFICER: Now who were the contractors who provided

8  D████ W████?

9      MS. GLYMPH: He doesn't have speech, so – I mean.  Ms.

10  Mathews is his only related service provider.

11     HEARING OFFICER: And she is a teacher at Friendship?

12     MS. GLYMPH: She was a psychologist.  Our teacher was Mr.

13  Israel and he has parted with us and that always becomes an

14  issue.

15     HEARING OFFICER: So your testimony here today is that

16  D████ W████ was provided specialized instruction and related

17  services for that period of time.

18     MS. GLYMPH: And support after school.

19     HEARING OFFICER: And when you're saying support, you're

20  talking about tutoring?

21     MS. GLYMPH: I do mail-outs as well as when he comes to our

22  meetings, it is told to the parent, I've even sent out

23  newsletter to let them know that these are start-ins, and there

222

1    for every special education student that's in our academy.

2        HEARING OFFICER: All right.  Any other witnesses?  All

3    right, your witness, your case.

4        MS. BARRIE: Let's let D▆▆▆▆ go first.

5        HEARING OFFICER: Okay, D▆▆▆▆ raise your right hand. Do

6    you swear to tell the truth, the whole and nothing but the truth

7    so help you God?

8        MR. W▆▆▆▆: Yes sir.

9        HEARING OFFICER:  Please state for the record your full

10   name and your residence.

11       MR. W▆▆▆▆:  D▆▆▆▆ (Inaudible).

12       HEARING OFFICER: Speak up just a little louder.

13       MR. W▆▆▆▆: My name is D▆▆▆▆ --.

14       HEARING OFFICER: Put the microphone so its --.

15       MR. W▆▆▆▆: I live with my grandmother at 5019 11th Street,

16   North East.

17       HEARING OFFICER: Okay. Go forward with your examination.

18       MS. BARRIE: D▆▆▆▆ when you were at Friendship Edison, how

19   many students were in your classroom?

20       MR. W▆▆▆▆: About 15 to 20.

21       MS. BARRIE:  Okay, 15 to 20 students. And in that

22   classroom, do remember receiving any special education services?

23        D▆▆▆ W▆▆▆▆:  No, not really. It was very rare.  In my

223

1    math class, Mr. Israel he'll come in there, he'll copy down math

2    problems and go check around and ask anybody if they need help,

3    then he is usually gone and then come back.

4          MS. BARRIE:  So he wasn't in the classroom?

5          D██████ W███████:  No much.

6          MS. BARRIE:  Your English class was taught by Ms. Peoples?

7          D██████ W██████:  Yes.

8          MS. BARRIE:  Okay.  Do you remember receiving any special

9    ed in that class?

10         D████████ W███████:  No.

11         MS. BARRIE:  How about with Ms. Frazier?

12         D█████ W██████:  No.

13         MS. BARRIE:  And Ms. Pimento?

14         D███████ W██████:  As I said, Mr. Israel he just came in

15   there--.

16         HEARING OFFICER: Speak up a little bit.  Speak up a little

17   louder.

18         D██████ W██████:  As I said Mr. Israel he just came in and

19   supplied with things we needed, copy down the math problems just

20   was on the board, just for the morning warm-up then, he's out of

21   there.

22         MS. BARRIE:  How about Ms. Mathews?  Did you get counseling

23   from Ms. Mathews?

224

1      D██████ W███████:  Towards April when I was transferring to

2  - over to High Roads.  That's when I start seeing her.

3      MS. BARRIE:  Okay.

4      HEARING OFFICER: Cross-examination?

5      MR. DALTON: Yes.  Delonte did you see Ms. Mathews in your

6  transition class?

7      D██████ W███████:  She came - I only seen her once or twice.

8      MS. DALTON: Was she in the class?

9      D██████ W██████:  Yes, she stayed in there once or twice,

10  one or two days.  That's all the times I saw him. She spoke to

11  me.

12      MR. DALTON: Did she speak to other students?

13      D██████ W██████:  She pulled, I mean I seen when she come

14  in for when they had speech late, and she in there and pulled

15  them out and they went downstairs.

16      MR. DALTON:  So unless she pulled you out of class, you

17  didn't feel like you were getting your counseling is that your

18  testimony?

19      D██████ W██████: No, she didn't have to pull me out of

20  class, because she only spoke to me once or twice.  And other

21  than that, I didn't have nothing else.

22      MR. DALTON: When Mr. Israel asked if anybody needed help,

23  did you tell him you needed help?

1       D██████ W████████:  I raised my hand and I even called him

2    other there, he just supplied me with calculator and pencil.  He

3    copied down the math problem. I told him, yes I needed help, but

4    most of the time when he does that he gets sidetracked by

5    another kid and he goes straight then, and just forget that I

6    still needed the help.

7    MR. DALTON: Did he ever change the lesson plans?

8        D███████ W███████:  No.

9    MR. DALTON: Never?

10    D██████ W██████:  Not that I know of because I mean he came

11  in there, he copied down the math problems and just left.

12    MR. DALTON: Okay. Nothing further.

13    HEARING OFFICER: Any redirect?

14    MS. BARRIE:  No sir.

15    HEARING OFFICER: D███████, do you know what specialized

16  instructions are?

17    D███████ W██████:  No.

18    HEARING OFFICER: Would you know if you received them or

19  would receive them?

20    D██████ W██████:  I getting an idea that specialized

21  instruction is that he come in there and help me out in a

22  certain subject or something like that.

23    HEARING OFFICER: How are you doing at High Roads?

1       D▆▆▆ W▆▆▆▆:  I'm doing good.

2       HEARING OFFICER: All right. Any other witnesses?

3       MS. BARRIE: I have the grandmother, Ms. Murphy.

4       HEARING OFFICER: Ms. Murphy, you want to raise your right

5  hand?

6       MS. MURPHY: Yes.

7       HEARING OFFICER: Do you swear to tell the truth, the whole

8  truth and nothing but the truth so help you God?

9       MS. MURPHY: Yes I do.

10       HEARING OFFICER: All right, please state for the record,

11  your full name and your address?

12       MS. MURPHY:  Marian Murphy, 5019 11th Street, North East.

13       HEARING OFFICER: All right, go forward with your

14  examination.

15       MS. BARRIE:  Ms. Murphy did you speak to anyone at

16  Friendship Edison in reference to services for Delonte?

17       MS. MURPHY:  Yes.

18       HEARING OFFICER: What kind of services?

19       MS. BARRIE:  Special education services, if he was

20  receiving special education services?

21       MS. MURPHY:  Yes.

22       MS. BARRIE:  Okay, who did you speak to?

23       MS. MURPHY:  I spoke to Mr. Israel.

1      MS. BARRIE:  Okay. And in your conversations with Mr.

2  Israel, did you address the issue as to whether he was receiving

3  his special education services?

4      MS. MURPHY:  Yes I did.

5      MS. BARRIE:  And his response was what?

6      MS. MURPHY:  I talked to Mr. Israel because at first when

7  he placed into geometry, I knew he wasn't really ready for

8  geometry because he was still having a lot of problems, other

9  problems with fractions and multiplication and things like that.

10      MS. BARRIE:  HmmmHmmm.

11      MS. MURPHY:  So when I talked to Mr. Israel, I told him

12  that was too much for him.

13      MS. BARRIE:  HmmmHmmm.

14      MS. MURPHY:  I asked him if he could move back to another

15  to another - you know a lower math class and he said he would be

16  moved back and I asked him about special ed.  And he told me

17  that that wasn't really recommended for him at this time. That

18  he would be in a regular classroom and he would receive

19  assistance.

20      MS. BARRIE:  Do you talk to any of his teachers?

21      MS. MURPHY:  Yes, I did. I remember talking to Ms. Peoples.

22      MS. BARRIE:  Okay. And what was the discussion with Ms.

23  Peoples?

1  MS. MURPHY:  I was letting her know that as far as the

2 English was concerned, that he wasn't receiving the services

3 that he needed because he couldn't keep with you know with the

4 class and work that he was given.  And she told me he would need

5 to come back to evenings to get special services, but that they

6 had tutoring on Tuesdays I think and Thursdays.  And he could go

7 there from 3 to 4.

8  MS. BARRIE:  Okay.  What did she say about him getting

9 special ed during the day.

10  MS. MURPHY:  She said if he needed help, he could come to

11 the desk and ask for special help if needed help.

12  MS. BARRIE:  Okay.  The - you heard that they did an IEP

13 for him when he first got there because of his old IEP was not

14 up to par.

15  MS. MURPHY:  Yes.  Yes.

16  MS. BARRIE:  To your knowledge do you know if he was

17 getting the 12½ hours of specialized instruction of special

18 education services?

19  MS. MURPHY:  No special education.

20  MS. BARRIE:  To your knowledge do you know if was getting

21 30 minutes of counseling a week, to your knowledge do you know?

22  MS. MURPHY:  No.  Because I asked him about the counseling,

23 and he wasn't getting it.

229

1    MS. BARRIE:  No more questions.

2    HEARING OFFICER: Cross exam?

3    MR. DALTON: Ms. Murphy is - in your mind is special ed

4    specialized instruction, does it have to be given in a separate

5    resource room.

6    MS. MURPHY: I would think it would be given in a classroom

7    with kids that's on the same level with so that they could

8    explain it to him and bring him up and he wouldn't feel isolated

9    by being in a regular classroom where the kids were, you were

10   past what he was doing.

11   MR. DALTON: Okay.  No further question.

12   HEARING OFFICER: All right.  Any other witnesses?

13   MS. BARRIE: No sir.

14   HEARING OFFICER: All right, want to do the summary?  Want

15   to do the summary?

16   MS. DALTON: My witness basically established our burden of

17   proof. I think Ms. Murphy is like a lot of parents. I mean - the

18   difference between an inclusion program and a separate classroom

19   is hard to distinguish and a lot of people have in their mind if

20   they are not in resource room, they are not getting special ed,

21   but they were.  And I can understand why she thought he wasn't

22   getting services, because they weren't delivered in a regular

23   classroom.  And that is not her definition of special ed. But

1   that is not the legal definition.

2       HEARING OFFICER: Okay.

3       MS. BARRIE: There has not been evidence presented by

4   Friendship Edison that the student was receiving the services.

5   They have presented any counter tracking forms, and Friendship

6   Edison has been on notice that that was the main issue.  There

7   has not been any related service providers to testify that

8   services were provided.  They have not been any teachers to

9   testify that they provided the services to the student.  As the

10  student indicated, he is told if he needs help to come up the

11  desk, and we'll help you. He is in a class with 15 to 20. He

12  supposed to be according to his IEP, that Friendship Edison

13  themselves admitted they did.  He is supposed to be at least 12½

14  hours out --.

15      HEARING OFFICER: What IEP are you reading from and what is

16  the date?

17      MS. BARRIE: It's September 17, 2004; Its DW14 and also

18  Friendship Edison document number 3.

19      HEARING OFFICER: Okay.

20      MS. BARRIE: September 17, 2004 IEP in which he was supposed

21  to receive 12½  of specialized instruction and 30 minutes of

22  counseling a week. And according to that IEP, he supposed to be

23  40% out of regular education setting. But it sounds he has

231

1    always been in a regular ed classroom. He never left. He didn't

2    go to a resource classroom.

3         MR. DALTON: (Inaudible – mumbling). Background talking.

4         MS. BARRIE: And I hear testimony that they don't do

5    resource classrooms or that they didn't do it for him, let's put

6    it that way.  They didn't do for him.

7         MR. DALTON: (Inaudible) background talking.

8         HEARING OFFICER: Can we have a little bit of decorum.  I

9    don't allow her talking while you were doing this Mr. Dalton.

10   This is really disrespectful.

11        MR. DALTON: I apologize.

12        HEARING OFFICER: You and your client have to have some

13   decorum in this process.

14        MR. DALTON: I understand, my apologies.

15        HEARING OFFICER: Go ahead.

16        MS. BARRIE: According to testimony, he was not 40% out of

17   regular education setting. He was in a regular education setting

18   the entire time.  There has not been any testimony here

19   presented by anyone from Friendship Edison Public Charter School

20   to indicate that the student received any of his services.  The

21   student is clear, he is eloquent, he did not stutter, he did not

22   say I don't know anything. He indicated exactly what he was

23   getting. Mr. Israel the one person who may have been certified

1  in special ed or who could provide special education services

2  came in, gave a piece of paper and walked out.  That's not

3  providing services. Anyone can do that.  We have a little girl

4  go get him a piece of paper and say do this and leave.  That is

5  not providing services.  So therefore, we maintain that the - as

6  the grandmother testified, as D██████ testified he was not

7  receiving his services; the grandmother testified that she was

8  told by the teacher he has to come after school to get any kind

9  of special services. That he can't get it in classroom. If he

10  needs help he can up to the desk and say I need help. But that

11  doesn't happen for a student who needs 40% of special ed -

12  special education services. So therefore, in fact the team

13  indicated at the meeting that he needed tutoring, and if they

14  are telling him he needs tutoring, then why didn't they give him

15  the services.  They didn't. And as a result, Friendship Edison

16  has not made its burden in this case.  Friendship Edison had

17  denied him a clear focal public education for seven out of the

18  nine months of the school year, which is almost the entire

19  school year. And we all know that in the student's life, a

20  school is year is way more than just a year.  Especially a

21  student who is in need of special education services.  Therefore

22  we are asking the Hearing Officer to find the Friendship Edison

23  denied FAPE and owes him compensatory education for that denial

1  of FAPE.

2      HEARING OFFICER: All right, thank you very much.

3      MR. DALTON: I have the burden, I believe I am entitled to

4  (inaudible).

5      HEARING OFFICER: Yes you are.

6      MR. DALTON: Thank you.  I'm offended by counsel's

7  arguments.  The reason I am offended is because I think the

8  Hearing Officer noted that my client was pretty elegant in her

9  testimony.  She says there was not testimony before you that he

10  received the services and yet, this person. Now we can't help

11  the employee doesn't work for us. We can't compel an employee

12  Mr. Israel to come here. We can't get someone who no longer

13  works for us to come here.  She wants to ignore that the time,

14  not in preparation for the Hearing, at the time sent the fax and

15  we have a confirmation. And she wants you to completely ignore

16  that.  We have the testimony of Ms. Glymph saying that she was

17  responsible for making sure that services were provided.  And

18  they were.  I mean there is a lot of evidence not only did we

19  meet our burden, but we actually excelled in regard to this

20  student.  We didn't take the IEP like most schools do and just

21  follow it.  We examined it and realized it was undervalued and

22  increased it.  Then we made sure that since we knew that this

23  child needed more services that we assisted in getting him into

234

1  a full time placement. We did all of that into a very short

2  period of time, six months.  So, saying we did not service this

3  child is really an insult.

4      HEARING OFFICER:  All right thank you very much the Hearing

5  is adjourned.

6

7

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## *State Enforcement and Investigative Division*
## <u>CONFIDENTIAL</u>

### Charles R. Jones, Esq., Due Process Hearing Officer
825 North Capitol Street, N.E.  8th Floor
Washington, D.C.  20002
Facsimile:  (202) 442-5556

| | | |
|---|---|---|
| **In the Matter of** | ) | **IMPARTIAL DUE PROCESS** |
| | ) | |
| D█████ W██████,   **Student,** | ) | **HEARING OFFICER'S DECISION** |
| Date of Birth: █████-89 | ) | |
| | ) | |
| **Petitioner,** | ) | **Hearing Date: August 18, 2005** |
| | ) | |
| **vs.** | ) | |
| | ) | Held at:  825 North Capitol Street, NE |
| **The District of Columbia Public Schools,** | ) | Eighth Floor |
| **High Road Academy School** | ) | Washington, D.C. 20002 |
| **Respondent.** | ) | |

## <u>DECISION AND ORDER</u>

| | |
|---|---|
| **Parent(s):** | Marion Murphy<br>5019 11th Street, N.E.<br>Washington, D.C.  20017 |
| **Counsel for Parent:** | Fatamata Barrie, Esq.<br>Law Offices of Christopher Anwah, PLLC<br>1003 K Street, NW.<br>Suite 500<br>Washington, D.C.  20001 |
| **Counsel for School:** | Michael Levy, Attorney- Advisor<br>Office of the General Counsel, DCPS<br>825 North Capitol Street, N.E., 9th Floor<br>Washington, D.C. 20002 |

236

# HEARING OFFICER'S DECISION

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
### State Enforcement and Investigative Division

### Special Education Due Process Hearing

## I. INTRODUCTION

On July 20, 2005, a Request for a Due Process Hearing filed with the Student Hearing Office, by counsel for the parent, Fatmata Barrie, Esq. The request alleges DCPS failed to provide appropriate special education services to D██████ W██████

A Due Process Hearing was reconvened on August 18, 2005, at the District of Columbia Public Schools, ("DCPS"), 825 North Capitol Street, N.E., 8th Floor, Washington, D.C. 20002.  Michael Levy, Esq., Attorney-Advisor, represented DCPS. Fatmata Barrie, Esq., represented the parent.  Five Day Disclosure Letters were entered into the record, without any objection by either party. On behalf of the parent: Disclosure Letter dated August 11, 2005: DW-1 through DW-17.  On behalf of DCPS: Disclosure Letter dated August 10, 2005.  Parent's counsel waived a formal reading of the Due Process Rights.  Witnesses for the parent: Marian Murphy.  Witnesses for DCPS: no witnesses were available to render testimony.

## II. JURISDICTION

The Due Process Hearing was convened, and this decision was written pursuant to Public Law 105-17, The Individuals with Disabilities Education Act of 1997, 20 United States Code 1400 et. Seq.; Title 34 of the Code of Federal Regulations, part 300; Title 5 of the District of Columbia Municipal Regulations and Section 145 of the D.C. Appropriations Act, effective October 21, 1998.

## III. ISSUES

Whether DCPS denied the student FAPE by failing to provide appropriate special education and related services?

2.

237

IV.    **SUMMARY OF RELEVANT EVIDENCE**

At the commencement of the Hearing, the parent's counsel entered a Motion for directed verdict, as DCPS did not have any witnesses to sustain its burden of proof. The Motion was granted. The grandparent testified that the student did not receive any special education services

V.    **FINDINGS OF FACT**

The Hearing Officer makes the following findings of fact:

1.    D██████ W██████ is a fifteen- (15) year old student who is a resident of the District of Columbia and a student presently enrolled at the High Road Academy.

2.    DCPS failed to comply with a HOD dated and issued on March 16, 2005.

3.    DCPS failed to provided any encounter tracking forms, which verify the performance of related services.

4.    Marion Murphy concluded that Delonta did not receive any special education services. Delonta was involved in all regular education classes. This fact was not disputed by DCPS.

VI.    **DECISION AND CONCLUSION OF LAW**

In this case, DCPS has failed to sustain its burden of proof. DCPS did not have any witnesses to verify the performance of related services. In light of the foregoing, a directed verdict was granted.

3.

**Based upon the foregoing, IT IS HEREBY ORDERED:**

1) DCPS shall, within thirty- (30) calendar days of the issuance of the HOD, conduct a Psycho-Educational Evaluation and a Neuro-Psychological Evaluation. In the event DCPS fails to timely perform the aforementioned evaluations, the parent is authorized to obtain these evaluations at DCPS expense pursuant to the Superintendent's Directive on outside consultant fees.

2) DCPS shall, within fifteen- (15) school days of receipt of evaluations to include independent evaluations, convene a MDT/IEP meeting to review all current evaluations, review and revise the student's IEP and discuss and determine an appropriate educational placement for the 2005-2006 school years.

3) In the event the appropriate placement is to a public school, DCPS shall issue a notice of placement within five- (5) schools days of the MDT/IEP team meeting. If the appropriate placement is to a non-public facility, DCPS shall issue a notice of placement within thirty- (30) calendar days of the MDT/IEP team meeting.

4) DCPS shall provide two- (2) years of Compensatory Education for Delonta Wilkins for missed services to include one-on one tutoring services and develop a Compensatory Education Plan including the form, hours and format for compensatory educational relief.

5) All communications and notices shall be sent through the parent's counsel. Parent's counsel shall provide DCPS with copies of independent evaluations at least seventy-two- (72) hours prior to convening a MDT/IEP meeting. In the event DCPS provides a written report concerning independent evaluations, DCPS shall provide the report to parent's counsel at least forty-eight- (48) prior to convening a meeting.

4.

239

6) Any delay in the above time frames caused by the student or student's counsel shall result in an extension of one day for each day of delay.

## VI.    APPEAL PROCESS

This is the FINAL ADMINISTRATIVE DECISION. Appeals may be made to a court of competent jurisdiction within thirty- (30) days from the date this decision was issued.

_____    Date Filed: 09-01-05

Charles R. Jones, Esq., Hearing Officer

Date Issued: _____

5.

## ATTENDANCE SHEET

| STUDENT'S NAME: | ████████ W████ (S.00) | |
| HEARING DATE: | AUGUST 18, 2005 (HR-1) | |

| PRINTED NAME | ON BEHALF OF DCPS OR STUDENT | TITLE |
|---|---|---|
| MICHAEL LEVY | DCPS | Atty. Advisor |
| Fatmah Barrie | Student | Atty. |
| Tamika Jones | Student | Atty. |
| Marian Murphy | Student | Grandmother (via Phone) |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Impartial Hearing Officer

241

Aug. 22. 2005 12:23PM    Dalton, Dalton & Houston    No. 4439    P. 1/1

Law Offices
## DALTON, DALTON & HOUSTON, P.C.

1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703)-739-4300
Facsimile: (703)-739-2323
E-MAIL: DCSPEDLAW@AOL.COM

Washington DC. Office:
601 Pennsylvania Avenue, N.W.
South Building,  Suite 900
Washington, DC 20004
Telephone: (202)-393-0060
Facsimile: (202)-393-1555

Paul S. Dalton*
Ellen Douglass Dalton*
William E. Houston+
Talib Abdus Shahid+
Laura E. Duos~
*ALSO ADMITTED IN D.C. & W.VA
+ ADMITTED IN D.C. & PA
~ADMITTED IN MD

## MOTION FOR CONTINUANCE OF DUE PROCESS HEARING

### August 12, 2005

By Mail    ____
By Fax    __X__

Student Hearing Office
ATTN: Ms. Sharon Newsome
825 North Capitol Street, N.E.8th Floor
Washington, DC  20002

RE: D█████ W██████  DOB: ██████/89

Dear Ms. Newsome:

On behalf of Friendship Edison Public Charter School, I respectfully request that the Due Process Hearing set for August 18, 2005 at 9:00 am, be continued.  I will be unavailable because I will be out of town.

Given that I will be unavailable for this hearing. Please contact my office to schedule a new date.

Sincerely,

Paul S. Dalton, Esq.

cc: Fatmata Barrie, Esq.

G.15
@9

242

# LAW OFFICES,
## CHRISTOPHER N. ANWAH, PLLC

Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
  (DC, MD, NJ)
Fatmata Barrie, Esq.
  (DC, FL)
Georgina A. Oladokun, Esq.
  (MD)

Carpenter's Building
1003 K Street, N.W.
Suite 565
Washington, D.C. 20001
Phone: (202) 626-0040
Fax: (202) 626-0048
Email: chrisanwahfirm@chrisanwahfirm.com

August 11, 2005

W. Dexter, Esq.
Ideal Academy Public Charter School
100 Peabody Street
Washington, DC  20011

**Via Facsimile: 202-399-4387**

RE: D██████ W██████
DOB: ██████/89

### Disclosure of Witnesses and Documents

Dear W. Dexter:

Pursuant to the five-day rule set forth in 34.C.F.R. 509 (a) (3), attached is a list of witnesses and documents, which we intend to rely on for the upcoming Due Process Hearing scheduled for August 18, 2005 at 9am.

### Witnesses*

1. Marian Murphy – Parent
2. D██████ W██████ – Student
3. Educational Advocate and/or her designee
4. High Road School Representative
5. Sharon Millis and/or designee – Expert and/or Knowledgeable Person in Special Educational
6. Social Worker and/or designee

*Witnesses may testify by telephone*

243

## Documents

DW-01   06/30/05 Hearing Request
DW-02   06/22/04 Settlement Agreement
DW-03   05/06/02 Cognitive Psychological Evaluation
DW-04   05/20/00 Psychological Report
DW-05   07/23/04 Psychiatric
DW-06   08/19/04 Social Work Evaluation
DW-07   12/18/04 Letter to Office of Compliance
DW-08   09/05/04 Letter to DCPS Counsel
DW-09   08/23/02 HOD
DW-10   03/26/04 Letter to Village Learning Center
DW-11   04/22/04 IEP
DW-12   05/25/05 New Addendum Meeting Page and Notes
DW-13   Letters to FEPC Re: Encounter Tracker Forms
DW-14   09/17/04 IEP
DW-15   05/07/02 Letter to Ideal PCS
DW-16   04/24/01 §504 Summary Meeting and Plan
DW-17   03/16/05 HOD

We reserve the right to disclose additional documents as they become available, the right to rely on Ideal's witnesses and evidence as if disclosed by parent and the right to rely on documents previously disclosed to counsel for any prior hearings or procedures. We also reserve the right to produce rebuttal witnesses and to object to expert witnesses without curriculum vitae. Should you have any questions or need additional information, please do not hesitate to contact me.

Sincerely,

Fatmata Barrie, Esq.

cc: SHO

244

1 – D█████ W█████ (DOB: ██/██/89)

## STUDENT HEARING OFFICE OF THE DISTRICT OF COLUMBIA
### EXPEDITED REQUEST FOR MEDIATION/HEARING

➤ **This form shall be used to give notice to the District of Columbia Public Schools and/or a District of Columbia Public Charter School of parental disagreement with the identification, evaluation or educational placement of their child with a disability, or the timely provision of a free appropriate public education to that child, and to request a hearing and/or mediation regarding the same.**
➤ **This form must be sent to the Student Hearing Office of the District of Columbia, 825 North Capitol Street, N.E., 8th Floor, Washington, D.C. 20002.  Fax number 202-442-5556**

---

Federal law requires that when a parent or representative requests mediation, it shall be offered at no cost to the parent.  Mediation may be beneficial in your case.  Please indicate your decision:

___ I REQUEST MEDIATION  ___ I REQUEST MEDIATION AND A HEARING  _X_ I REQUEST A HEARING

---

### STUDENT FOR WHOM MEDIATION/DUE PROCESS HEARING IS REQUESTED

Student Name:  D█████ W█████                           DOB:  ████/89

Address:  5019-11TH STREET, N.E., WASHINGTON, D.C.  20017
Present School of Attendance: HIGH ROAD ACADEMY  Home School: UNKNOWN
(Neighborhood school where child is registered)
**COMPLAINT IS MADE AGAINST:**  **DCPS, IDEAL PCS, and FEPC**
**DCPS and/or D.C. Public Charter School (specify)**

### INDIVIDUAL REQUESTING MEDIATION/DUE PROCESS HEARING

Name:  MS. MARION MURPHY

Address:  5019-11TH STREET, N.E., ASHINGTON, D.C.  20017

Phone:  (H)  (202) 832-1048          (W) _____  (Fax) _____

Relationship to Student:  __ Parent  ___ Self  _X_ Legal Guardian  ___ Parent Surrogate  __ Public Agency

### PARENT REPRESENTATIVE/ATTORNEY/ADVOCATE (if applicable):

**Name:  Fatmata Barrie, Esq.  (Christopher Anwah's Law Office)  Phone:  (W) (202) 626-0040**

Address:  1003 K Street, N.W., Suite 500, Washington, D.C.  20001  Fax: (202) 626-0048

---

Form 101

2 – D████ W█████ (DOB:██████/89)

1. You must indicate three (3) dates when you and your representative (if you have one) are available within the next twenty (20) days for mediation (if you are requesting mediation) and/or three (3) dates within the next 35 days (or 30 days if you represent a student enrolled at ETS or Rock Creek Academy) when you, your representative, and witnesses will be available to appear for a hearing (if you are requesting a hearing). Please indicate whether you are available in the AM, PM, or both on the identified dates.

Hearings:   July 25, 2005 _____  July 26, 2005 _____  July 27, 2005 _____
Mediation: _____

**FOR ALL DCPS STUDENTS, IF YOU PROPOSE DATES MORE THAN 35 DAYS FROM THE DATE OF YOUR REQUEST, YOUR SIGNATURE BELOW WILL INDICATE YOUR WAIVER OF YOUR RIGHT TO A HEARING OFFICER DETERMINATION WITH 45 DAYS OF THIS REQUEST. IN THE CASE OF A WAIVER, THE STUDENT HEARING OFFICE WILL CONTINUE TO USE BEST EFFORTS TO ISSUE A HEARING OFFICER DETERMINATION WITHIN 45 DAYS OF YOUR REQUEST (OR AS CLOSE TO 45 DAYS AS IS POSSIBLE).**

**FOR STUDENTS ATTENDING ETS OR ROCK CREEK ACADEMY, IF YOU PROPOSE DATES BEYOND THE 30-DAY PERIOD, YOUR SIGNATURE BELOW WILL INDICATE YOUR WAIVER OF YOUR RIGHT TO A HEARING WITHIN THAT PERIOD.**

Every effort will be made to accommodate your requested dates. Please be aware that proposed hearing dates which fall fewer than 21 days from the date of your request are difficult to accommodate. Your dates are most likely to be available if you propose hearing dates between 21 and 35 (or 30, for students enrolled at ETS or Rock Creek Academy) days from the date your request is received and docketed by the Student Hearing Office.

If none of your proposed dates are available, or if you fail to specify any dates, the Student Hearing Office will schedule your hearing for the first available date. Upon receipt of a Hearing Notice confirming the date of your hearing, you will have an opportunity to file a Motion for Continuance, if necessary, by using the form Motion attached to your Hearing Notice. *Please do not contact the Hearing Office by phone to request a continuance. Only the Hearing Officer assigned to your case is authorized to grant requests for continuances.*

Unless you receive notice that the Hearing Officer has granted your request for a continuance, you must appear for the hearing as scheduled. Failure to report for the hearing may result in dismissal of this case, or in a default decision against you. Disclosure of evidence and witnesses to the opposing party is required at least five business days prior to the hearing, with copies to the Special Education Student Hearing Office.

2. Special Accommodation Requests for Mediation/Due Process Hearing (please be specific):

Interpreter
___ Foreign Language _____
___ Sign Language _____

| Form 101 |
| --- |

3 – D██████ W██████ (DOB: ███/89)

Other _____
Special Communications _____
Special Accommodation for Disability _____
Other _____

3.  In accordance with the Individuals with Disabilities Education Act (IDEA), please answer below:
    (You may attach additional pages to provide more information if needed.)

**Describe the nature of the problem**: Counsel for parent and student incorporates all previous IDEA violations in prior HODs, Settlement Agreements, Disciplinary Hearings, and Parent/Teacher Conferences.

**DCPS, IDEAL PCS & Friendship/Edison have failed to provide FAPE because it:**
1.  Failed to provide student's triennials in a timely manner.
2.  Failed to comply with the 03/16/05 HOD and to evaluate in all areas of suspected disabilities as recommended by the psychiatric evaluation. ie neuropsychological
3.  Failed to provide the requested encounter tracker forms for all related services to determine compensatory education award owed to student.
4.  Failed to complete initial evaluations and convene an MDT/IEP meeting to determine eligibility in a timely manner even though the grandmother has been requesting that DCPS provide her grandson with the services he needed since he was in the second grade when he started indicating signs of inattention.
5.  Failed to provide special education services even though the grandmother provided evaluations to IDEAL PCS and the information from Maryland which indicated that he needed services.
6.  Failed to develop an appropriate IEP because he has never received the full time intensive services he so desperately needed and his current IEP does not include the recommendations from his current evaluations and it is not yet a full time IEP.
7.  Failed to provide all appropriate personnel at the last MDT/IEP as mandated by the IDEA.
8.  Failed to provide D██████ with the appropriate educational services, related services, and placement from the second grade until his matriculation to High Road because although it was evident that D██████ had academic difficulties DCPS, Ideal PCS and FEPC did nothing to provide him with the intensive services that he needed.
9.  Failed to provide compensatory education for the present and past denial of FAPE because problems 1 to 8 and for not convening a placement meeting when the Village Learning Center closed after the 2003-2004 SY.

**Describe issues to be addressed at the mediation and/or hearing, with specificity**:
**Did DCPS,  IDEAL PCS & Friendship/Edison fail to provide D██████ FAPE when it:**
1.  Failed to provide student's triennials in a timely manner.?
2.  Failed to comply with the 03/16/05 HOD and to evaluate in all areas of suspected disabilities as recommended by the psychiatric evaluation. ie neuropsychological?
3.  Failed to provide the requested encounter tracker forms for all related services to determine compensatory education award owed to student?
4.  Failed to complete initial evaluations and convene an MDT/IEP meeting to determine eligibility in a timely manner even though the grandmother has been requesting that DCPS

Form 101

4 – D██████ W██████ (DOB: ██████/89)

provide her grandson with the services he needed since he was in the second grade when he started indicating signs of inattention?

5. Failed to develop an appropriate IEP because he has never received the full time intensive services he so desperately needed and his current IEP does not include the recommendations from his current evaluations and it is not yet a full time IEP?

6. Failed to develop an appropriate IEP because he has never received the full time intensive services he so desperately needed and his current IEP does not include the recommendations from his current evaluations and it is not yet a full time IEP?

7. Failed to provide special education services even though the grandmother provided evaluations to IDEAL PCS and the information from Maryland which indicated that he needed services?

8. Failed to provide D██████ with the appropriate educational services, related services, and placement from the second grade until his matriculation to High Road because although it was evident that D██████ had academic difficulties DCPS, Ideal PCS and FEPC did nothing to provide him with the intensive services that he needed?

9. Failed to provide compensatory education for the present and past denial of FAPE because of issues 1 to 8 and for not convening a placement meeting when the Village Learning Center closed after the 2003-2004 SY?

**Describe relevant facts relating to the problem:**

Since the 2nd grade D██████ has had problems with inattention, retaining information and fidgeting in the classroom setting. He attended Rudolph Elementary school and had his academics were poor. In 2000 a psychological evaluation was conducted and it found that D██████ needed a "highly structured classroom environment with limited distractions." He attended school in MD briefly but upon his move back to DC, D██████ attended Backus MS for the 7th and 8th grades and IDEAL PCS and his grandmother provided the evaluation and documentation that he was in need to specialized services. However, the school did not provide those services nor did they convene a meeting to determine appropriate services. Therefore, he was denied FAPE and as a result, he is owed compensatory education.

Additionally, although he has been diagnosed with ADHD, the schools have not provided him with services to address that disability. In fact, none of his IEPs has accommodations for ADHD but it was discussed in the meeting notes. During his attendance at Village Learning Center the school knew that he needed someone to sit with him for him to complete his work. However, that issue was never addressed in his IEP. When Village Learning Center closed, DCPS did not convene a meeting to determine an appropriate placement. Instead, the grandmother had to look for a school. Although she identified FEPC, it was not the right environment for D██████ because he was not progressing and FEPC was not providing him with the intensity of services that he needed. Therefore, he was denied FAPE and as a result, he is owed compensatory education.

On 06/24/04, DCPS and parent's counsel entered into a settlement agreement in which DCPS was to fund independent evaluations and convene a meeting. Although parent's counsel completed the evaluations, forwarded them to DCPS, DCPS did not convene the meeting within the time frame required. As a result, parent's counsel notified DCPS office of compliance of the violation but again, no response from DCPS. A hearing was finally filed and an HOD issued on 03/16/05 in which DCPS

Form 101

5 – D██████ W█████ (DOB: ██/██/89)

was ordered to place and fund D█████ at High Road and convene a meeting within 30 days of his attendance at High Road. DCPS did not convene the meeting within the time frame required.

On 05/25/05, the parent's advocate attended an MDT meeting that was previously confirmed. However, DCPS' LEA representative did not attend but informed High Road Academy personnel to go forward with the meeting without her. The MDT/IEP meeting was to develop his IEP, discuss placement, and to discuss compensatory education, per HOD. Since the LEA was not present, DCPS did not issue a prior notice of placement, per the HOD or discuss compensatory education because Friendship/Edison and DCPS have failed to provide the advocate with the encounter tracker forms for all related services that were requested prior to D█████ being placed at High Road Academy. Also, the psychologist and psychiatrist were not present at the MDT meeting to discuss and to interpret the psychological evaluation and the psychiatric evaluation. The decision was made that D█████ needed a psycho-ed re-evaluation because it was expired. The team agreed that it was to be done within 30 days. However, that evaluation was not completed.

Although the grandmother has been trying to have services for D█████, there have been other settlement agreements and HODs, including some from 2002 that DCPS has violated. Therefore, the grandmother is bringing forth this complaint to induce DCPS, IDEAL and FEPC to comply with IDEA, the HOD and provide D█████ with an appropriate IEP and compensatory education for the past and present denial of FAPE.

**State how you would like to see the problem corrected**: Ms. Murphy is seeking the following relief: (1) DCPS, IDEAL and Friendship/Edison to fund an independent comprehensive evaluations for all suspected disabilities; (2) to convene the MDT/IEP meeting within five (5) days of receipt of the independent evaluations; (3) to develop an appropriate IEP; (4) to provide all appropriate related and transition services, including transportation; (5) to provide Advocate copies of all tracker forms for all related services to determine the amount of compensatory education owed to student; (6) to honor the "stay put" provision of the IDEA for D█████ to remain at High Road Academy until all issues have been resolved; and, (6) DCPS to provide compensatory education for the past and present denial of FAPE.

_____                                __June 30, 2005__
Signature of Applicant/Parent (Required)                    Date (Required)

**MAIL, FAX, OR DELIVER APPLICATION TO:**
**Student Hearing Office of the District of Columbia**
**825 North Capitol Street, NE, 8th Floor**
**Washington, DC 20002 FAX: (202) 442-5556**

*FOR OFFICE USE ONLY:*
Case Number: _____
Student ID#: _____

Form 101                                          Revised 02/01/2003

Form 101

249

DW-02



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

*Office of the Superintendent*
**Office of the General Counsel**
*825 North Capitol Street, N.E., 9ᵗʰ Floor*
202-442-5000 Fax # 20 2-442-5098
*www.k12.dc.us*

June 22, 2004

Christopher Anwah, Esq.
Attorneys and Counselors at Law
Federal District Building
1010 Vermont Avenue, N.W.
Suite 600
Washington, D.C. 20005

**PROPOSED SETTLEMENT**

**VIA FACSIMILE 202-347-7108**

Subject: Due Process Hearing for D██████ W███████
DOB:    ██████89

Attending School: The Village Learning Center Public Charter School
Home School:

Dear Mr. Anwah:

In lieu of the formal Due Process Hearing in the above-referenced matter, scheduled for Monday, June 28, at 11:00 a.m., the parties to this action, District of Columbia Public Schools (hereinafter DCPS), and parent's representative agree to resolve this matter pursuant to the following terms and conditions:

1. Parent/Counsel verifies that the student is a resident of the District of Columbia, has established residency, and has registered as attending or non-attending at their local school. If DCPS becomes aware subsequently to the executions of this settlement agreement that residency and/or registration has not been completed and/or established then any DCPS obligations under this agreement will not be completed until proof of registration and/or residency is provided to DCPS.

2. The Parent/Counsel verifies that the student's date of birth is September 20, 1989 that the attending school is The Village Learning Center Public Charter School.

3. Parent/Counsel agrees to cooperate fully with DCPS in the implementation of the terms of this settlement agreement. Any delay caused by the unavailability of the student, parent, or advocate as it pertains to testing, meeting dates, or compliance with the terms of this agreement will toll any deadlines herein by one day for each day of delay.

*Children First*

250

06/23/2004 10:01 FAX 202 442 5098    OFF.OF GENERAL COUNSEL    ☑003/004

DCPS Office of the General Counsel
Page 2

4. DCPS agrees to a fund independent evaluations, consistent with DCPS guidelines. Parent/counsel agrees that DCPS' liability is limited to costs not to exceed those specified in the Superintendent Directive Number 530.6, dated March 20, 2002. The evaluations DCPS agrees to fund are a psychiatric evaluation and a social history evaluation.

5. DCPS agrees to conduct a MDT meeting within 15 business days of the receipt of the independent evaluation. DCPS agrees to update the student's IEP as warranted. Placement will be also be discussed and determined. For a public placement, a Prior Notice of Placement will be issued within 5 school days of the MDT meeting and for a private placement a PNOP will be issued within 30 calendar days of the MDT meeting. DCPS also agrees to discuss compensatory education, and if warranted a plan will be developed. Parent reserves the right to bring a hearing if the parent disagrees with the compensatory education plan developed.

6. All meetings/conferences/evaluations shall be scheduled through counsel for the parent, via facsimile, at 202-347-7108.

7. Both parties agree that execution of this agreement will occur when the signature of both parties has been affixed below and counsel of DCPS has received transmittal of the signed agreement.

8. If for some reason DCPS is unable to comply with this agreement as of result of unforeseen circumstances beyond its control, DCPS will request that Parent/Counsel agree to extend the deadlines or negotiate new timelines, whichever appropriate. Parent/Counsel will not unreasonably deny any such request for extension/renegotiation.

9. Parent/Counsel agrees to contact DCPS Office of Mediation & Compliance personnel when there has been a failure to comply with the terms incorporated in this agreement in order to bring the case into compliance prior to filing a hearing request alleging DCPS' failure to comply.

10. This agreement is in full satisfaction and settlement of all the claims contained in the pending hearing request, and including all claims that the parent now asserts or could have asserted as of the date of this agreement in relation to special education issues.

11. Parent/Counsel agrees to accept reasonable attorney fees not to exceed Four Thousand ($4,000.00) Dollars, as full and final payment of the attorney fees and related costs incurred in this matter. Payment of the specified amount is contingent upon the submission of a certified, itemized invoice conforming to the DCPS attorney fee guidelines.

12. Parent/Counsel agrees that the hearing request that is subject of this Agreement will be immediately withdrawn and the written evidence of such withdrawal is required before any invoices will be processed.

Sincerely,

Jack L. Schreibman
Attorney Advisor

---

*Children First*

251

06/25/2004 08:30 FAX 202 442 5098     OFF.OF GENERAL COUNSEL     ☒003
06/23/2004 10:01 FAX 202 442 5098     OFF.OF GENERAL COUNSEL     ☒004/004

DCPS Office of the General Counsel
Page 3

Agreed to: _____     Date: 6/24/04
Christopher Anwah, Esq.
Counsel for Parent

Agreed to: _____     Date: 6/24/04
Jack Schreibman, Esq.
Attorney Advisor

*Children First*

# EDI, Inc.

| | |
|---|---|
| Educational Diagnostics Institute, Inc.<br>1401 New York Ave., NW, Suite 700<br>Washington, DC 20005  (202) 347-9101 | Sandra R. Sauter, Ph.D.<br>Licensed Clinical Psychologist |

## COGNITIVE PSYCHOLOGICAL EVALUATION

**Name:** W█████, D██████        **School:** Academy for Ideal Education
**Date of Birth:** ████/1989        **Grade:** Seventh
**Date of Evaluation:** 04/19/02        **Date of Report:** 05/06/02
**Chronological Age:** 12 years, 6 months

### REASON FOR REFERRAL AND BACKGROUND INFORMATION:

D██████ is a 12-year-old African-American male, who was referred for a psychological evaluation to determine his current level of cognitive functioning. He resides in Northeast Washington, D.C. with his legal guardian and paternal grandmother, Marian Murphy. An aunt and cousin also reside in the home. D██████ is a seventh grader at Academy for Ideal Education in Washington, D.C. The record reflects that he attended Berkshire Elementary School in Prince George's County prior to attending Ideal. A Section 504 Plan was developed for him at Berkshire "to address academic concerns affected by ADHD." The plan included his asking for help when needed, seeing the guidance counselor before and after school to check assignments, and his parents checking his homework assignment notebook and reviewing his homework at home. The plan also included his being accommodated in the classroom with "special seating and an additional support person."

*Interview with Guardian* - Ms. Marian Murphy was interviewed by this examiner at Educational Diagnostics Institute, Inc. (EDI) on April 19, 2002. Ms. Murphy reported that she has had legal custody of D██████ since he was five or six years old. However, he has been living with her since he was about three months old. He stayed with his mother briefly when he was in the second grade, and half of the fifth and sixth grades. Ms. Murphy indicated that D██████ has seasonal allergies and takes Claritin. His birth was without complications, but he was exposed in the uterus to crack cocaine. In addition, both mother and father were using crack cocaine at the time of his conception. Ms. Murphy also reported that D██████ was a "little slow" at walking and talking. He did well in kindergarten and first grade. He started to have problems in the second grade with inattention, retaining information, and keeping still in the classroom. He attended Berkshire Elementary School in Forestville, Maryland in the sixth grade. There, "they" threatened to retain him, but Ms. Murphy took him back from his mother, worked with him, and he managed to "pull up" his grades. Although he resided with Ms. Murphy in Washington, D.C. for the remainder of the sixth grade, the administration at Berkshire allowed him to remain there (in Maryland) until the school year was completed.

Ms. Murphy indicated that D██████ is not getting any special accommodations at Ideal, and this is a violation of his Section 504 Plan. His teachers at Ideal do not think that he

COGNITIVE PSYCHOLOGICAL EVALUATION (continued):                        Page 2 of 7
W█████, D█████, DOB:███/89

has a problem or needs special accommodations. Ms. Murphy stated that she is
"extremely" dissatisfied with Ideal. She feels that D█████ is not getting what he needs
academically, and she alluded to his physical safety being in jeopardy at Ideal. She
shared that D█████ has been physically injured more than once at Ideal, and she was not
informed immediately of his injuries. Ms. Murphy also expressed that she is concerned
about D█████ "short attention span, inability to remember all steps in verbal
instruction, and social immaturity." In regard to the latter, she explained that he prefers
to play with younger children, and he does not fight back when kids beat up on him at
school. Ms. Murphy also indicated that D█████ is "an inward person;" it is hard for him
to talk about what is bothering him.

Ms. Murphy was administered the CPRS-RS, a parent-report questionnaire, as a means of
obtaining more precise information regarding D█████ behavior. He scored in the
clinical range on scales assessing inattention, hyperactivity, and symptoms of ADHD per
se. Specially, he attained T scores of 43 on the Oppositional Scale, 71 on the Cognitive
Problems/Inattention Scale, 77 on the Hyperactivity Scale, and 72 on the Conners'
ADHD Index Scale. T scores at and above 65 are considered clinically significant.
Ms. Murphy reported that D█████ has a short attention span, and is easily frustrated and
distractible. He has problems organizing his work, completing tasks or schoolwork, and
concentrating in class and on tasks that require sustained mental effort. He also fidgets
with his hands and feet, and is disorganized at school. Ms. Murphy also disclosed that
D█████ bites his fingernails. His pediatrician has referred him to a psychiatrist to
determine if he is "ADHD."

**TESTS ADMINISTERED AND DATA SOURCES:**
**Wechsler Abbreviated Scale of Intelligence** (WASI)
**Verbal Subtests**
      Vocabulary TS = 49; SS = 10
      Similarities TS = 42; SS = 8
**Performance Subtests**
      Block Design TS = 57; SS = 12
      Matrix Reasoning TS = 60; SS = 13
**Verbal IQ 93** (average); **Performance IQ = 114** (high average); **Full Scale IQ = 103** (average)
**Cognitive Assessment System** (CAS)
**Planning (PLAN) Processing Scale Subtests**
      Matching Numbers SS = 10
      Planned Codes SS = 8
**Simultaneous (SIM) Processing Scale Subtests**
      Nonverbal Matrices SS = 8
      Verbal-Spatial Relations SS = 8
**Attention (ATT) Processing Scale Subtests**
      Expressive Attention SS = 10
      Number Detection SS = 7
**Successive (SUC) Processing Scale Subtests**
      Word Series SS = 11
      Sentence Repetition SS = 10
**PLAN SS = 94** (average); **SIM SS = 88** (low average); **ATT SS = 91** (average);
**SUC SS = 108** (average); **FS SS = 92** (average)

COGNITIVE PSYCHOLOGICAL EVALUATION (continued).    Page 3 of 7
W██████, D██████; DOB:██████/89

(Standard scores for the Scales and Full Scale are set at a mean of 100 and standard deviation of 15.)

### Wide Range Achievement Test-Revision 3 (WRAT3)

Reading (word recognition) Test SS = 103; GE = Eighth
Spelling Test SS = 103; GE = Seventh
Arithmetic Test SS = 90; GE = Fifth

### The Beery-Buktenica Developmental Test of Visual-Motor Integration (VMI)

Developmental Age Equivalent = 11 years, 3 months; SS = 96

### Conners' Parent Rating Scale-Revised Short (CPRS-RS)

Oppositional TS = 43
Cognitive Problems/Inattention TS = 71
Hyperactivity TS = 77
Conners' ADHD Index TS = 72

(T scores at and above 65 are clinically significant.)

Clinical Interview and Observation of Test Behavior
Interview with Guardian
Record Review
PG County Public Schools Section 504 Accessibility Plan – 10/10/00
PG County Public Schools Psychological Report – 5/2/00

## CLINICAL INTERVIEW AND OBSERVATION OF TEST BEHAVIOR:

D█████ was seen by this examiner at Educational Diagnostics Institute, Inc. (EDI) on April 19, 2002. He was accompanied to EDI by his paternal grandmother and legal guardian, Marian Murphy. Testing occurred over a period of approximately three and one-half hours. Separation for testing was uneventful. D█████ was noted to be properly dressed and groomed. His fingernails, however, were badly bitten to the quick. He was also noted to have a bruise on the right side of his forehead. Gross and fine motor functioning appeared adequate. He demonstrated right-handedness.

A clinical interview was conducted with D█████ before the administration of test instruments. A functional rapport was easily established. D█████ was friendly and responsive to inquiry. On request, he gave correct identifying data. In response to inquiry, he reported that he lives with his grandmother, aunt and cousin. He likes to build things and wants to be an architect when he grows up. His best friend is George, a nine-year-old boy who lives in the neighborhood. D█████ also reported that he does not like attending Ideal Academy. He stated that other students pick on him and fight him. When asked about the bruise on his forehead, he explained that he acquired the bruise after being tripped by another student at school yesterday, causing him to fall. Thus, a fight resulted between him and the other student. Since D█████ did not start the fight, he did not get suspended. D█████ also disclosed that his favorite subject is science. His easiest subject is physical education. His hardest subject is math. He does not like music. In spite of his reporting that other students fight and pick on him at school, he indicated that he has no problems at school.

D█████ revealed that he feels "good" about himself and does not want to change anything about himself. He did not admit to any worries or concerns. He also did not admit to any problems eating/sleeping, any suicidal/homicidal ideation, or any visual/auditory hallucinations. He shared that he feels like fighting someone when he

gets "very mad or frustrated." However, he would not actually start a fight with anyone because he was angry. What makes him angry is not being able to do his schoolwork well, especially math. When asked what he would wish for if he had three wishes, he replied, "I wish for my own car, a big house, and to live a happy life." D█████ speech was clear. He did not evince any loose or disassociative thought content. He was oriented to person, time and place. He gave direct eye contact.

D█████ was cooperative throughout testing. He exhibited no overt signs of off-task behavior, distractibility or hyperactivity. He maintained an appropriate level of attention and motivation. It is believed that the overall results of the administered accurately reflect his cognitive functioning at the time of testing.

## ANALYSIS OF TEST RESULTS:
### Cognitive Functioning -WASI Findings

D█████ was administered the WASI to obtain an estimate of his general intelligence. He attained a Verbal IQ of 93, a Performance IQ of 114 and a Full Scale IQ of 103, indicating that he functions overall in the "average" range of intelligence. However, his uneven cognitive pattern makes it difficult to summarize his overall intellectual functioning by a single score. His subtest scaled scores range from high average (13) to average (8), and the significant differential of twenty-one scaled points between the Verbal and Performance IQs, in favor of the latter, suggests that his nonverbal (visual skills) are better developed overall than his verbal (auditory) skills. In the Verbal realm, he displayed average ability on subtests measuring word knowledge (Vocabulary SS = 10), and verbal abstract reasoning and concept formation (Similarities SS = 8). In the Performance realm, high average ability was displayed on subtests measuring nonverbal fluid reasoning (Matrix Reasoning SS = 13), and nonverbal abstract reasoning and visual motor perception/ integration (Block Design SS = 12).

### Cognitive Functioning - CAS Findings

The CAS was administered to D█████ to obtain a more comprehensive assessment of his cognitive abilities. This instrument goes beyond the traditional Wechsler test and concept of general intelligence by identifying specific abilities or cognitive processes that may impact on learning. On the CAS, D█████ earned a Full Scale standard score of 92, which falls in the "average" range. He ranked at the 30th percentile in overall cognitive processing ability in comparison to same-aged peers. He earned scaled scores that ranged from average to low average on the four separate scales comprising the Full Scale. Due to significant variability occurring among the four PASS Scales, the Full Scale standard score of 92 is not the best representation of each PASS scale standard score. Specifically, D█████ attained a Planning (PLAN) standard score of 94, a Simultaneous processing (SIM) standard score of 88, an Attention (ATT) standard score of 91, and a Successive processing (SUC) standard score of 108.

D█████ performed as well as 34% of same-aged peers in the normative sample on measures of planning processing. He was required to match numbers and codes within a prescribed amount of time. In order to be successful, he had to devise a strategy (i.e., plan) to solve the problem, apply the plan, and modify the plan as needed. The "average"

ability which he displayed on the PLAN Scale (standard score = 94) reflected the generation and use of efficient and effective strategies for problem solving and self-regulation.

Successive processing ability was measured on subtests that required information to be arranged in a specific linear order where each step was related only to the previous one. D█████ displayed average skills on the SUC Scale. He performed as well as 70% of same-aged peers in the normative sample. Since the SUC Scale standard score of 108 is significantly higher than the mean of 95.3 of the four PASS standard scores, this indicates that successive processing is a relative cognitive strength for D█████. This type of processing is important when it is necessary to keep information in its correct order. It is involved in rote memory, and in the breaking down or analyzing of information into an ordered sequence. D█████ "average" performance on the SUC Scale suggested that he is able to hold sounds or words in sequence and follow step by step simple to complex verbal instruction well.

Attentional processing was measured on subtests that required D█████ to detect and selectively attend to particular stimuli while avoiding responding to irrelevant competing stimuli. He performed as well as 27% of same-aged peers in the normative sample on the ATT Scale (standard score = 91). On the two core subtests comprising the ATT Scale, he attained a standard score of 10 on the Expressive Attention subtest and 7 on the Number Detection subtest. On the former subtest, his task was to identify the color of ink in which certain words were printed. For example, the word "green" was printed in red ink. On the latter task, his task was to visually scan an array while underlining target numbers printed in a particular font. His overall "average" performance on the ATT Scale illustrated that he is capable of adequately sustaining his attention and avoiding distracting stimuli in the classroom.

Simultaneous processing ability was measured on subtests that required D█████ to integrate several pieces of information and comprehend them as a group or whole using both verbal and nonverbal content. This type of processing is important when it is necessary to see or comprehend things as a whole. It is seen in tasks that involve spatial skills like using blocks to build a design, seeing patterns in numbers, seeing a group of letters as a word, words as a whole, a sentence as part of a paragraph, categorizing words, and in reading comprehension. D█████ lowest standard score was attained on the SIM Scale (SS = 88). Since he was able to perform as well as 21% of same-aged peers on subtests comprising this scale, his "low average" performance suggested that simultaneous processing is a relative weakness, but not a cognitive deficit, for him. He may have some difficulty in the classroom solving problems that demand complex integration of information as well as performing the following tasks involving simultaneous processing:
  ➢ Recognizing sight words quickly
  ➢ Interpreting sentences, or passage meaning
  ➢ Seeing the shapes of words or working with spatial tasks
  ➢ Seeing patterns in text or math problems
  ➢ Comprehending math word problems

### Perceptual-Motor (Visuospatial) Functioning

D█████ demonstrated visual-motor perception/integration and graphomotor skills within chronological age expectancy on the VMI. He attained a developmental age equivalent of 11 years, 3 months and a standard score of 96. He ranked at the 39th percentile in comparison to same-aged peers. His task was to copy two-dimensional geometric shapes using paper and pencil. He exhibited an intermediate pencil grip and copied the designs with ease. The few errors he made were due to carelessness as opposed to sensory motor feedback problems.

### Academic Functioning

D█████ was administered the WRAT3 to obtain an estimate of his achievement in basic academic areas. He scored at eighth grade level in reading (word recognition), seventh grade level in spelling, and fifth grade level in arithmetic. These grade equivalents are commensurate with standard scores of 103, 103 and 90, and percentile ranks of 58, 58 and 27 in these academic areas, respectively. In consideration of D█████ age and current grade placement, he is achieving below grade expectancy in basic arithmetic. His weaknesses in arithmetic are most likely related to his relative weaknesses in simultaneous processing. If one were to use the Performance IQ of 114 as a fairer estimate of D█████ intellectual functioning than the Full Scale IQ of 103, then a severe discrepancy exists between intellectual functioning and achievement in basic arithmetic. Thus, he meets the criteria as a specific learning disabled student in accordance to Public Law 105-17 (IDEA). D█████ also reported that math is his hardest subject, and it causes him much anger and frustration.

### SUMMARY AND RECOMMENDATIONS:

Current psychometric findings indicate that D█████ has uneven cognitive skills ranging from high average to low average. He attained a VIQ of 93, a PIQ of 114 and a FSIQ of 103 on the WASI, and a Full Scale standard score of 92 on the CAS. On the four PASS Scales comprising the Full Scale of the CAS, successive processing was found to be a relative strength, and simultaneous processing a relative weakness. Specially, he attained a standard score of 94 on the PLAN Scale, 88 on the SIM Scale, 91 on the ATT Scale, and 108 on the SUC Scale. D█████ was found to have age-appropriate visual-motor perception/integration skills. On the VMI, he earned a developmental age equivalent of 11 years, 3 months and a standard score of 96. With the exception of arithmetic, D█████ basic academic skills were found to be at or above grade expectancy. He scored at the eighth grade level in reading (word recognition), seventh grade level in spelling, and fifth grade level in arithmetic.

Findings from the CPRS-RS, a parent-report questionnaire, suggested that D█████ exhibits behaviors that are consistent with an attention deficit disorder. He scored in the clinically significant range on scales of Cognitive Problems/Inattention, Hyperactivity, and Conners' ADHD Index. In October 2000, Prince George's County Public School provided him with a Section 504 Plan "to address academic concerns affected by his ADHD." His paternal grandmother and legal guardian, Marian Murphy, reported to this examiner that his current pediatrician has referred him to a psychiatrist to rule out ADHD. It is important to note that D█████ did not exhibit any overt signs of an attention

COGNITIVE PSYCHOLOGICAL EVALUATION (continued):                    Page 7 of 7
W███, De███, DOB: ███/89

deficit disorder during testing. In addition, he scored in the "average" range in attentional
processing. Therefore, more extensive testing is needed before this examiner can rule on
a clinical diagnosis of ADHD.

The overall findings from this cognitive psychological evaluation concur with the
following DSM-IV multiaxial diagnosis:

Axis I:        315.1   Mathematics Disorder
Axis II:       V71.09 No Diagnosis on Axis II
Axis III:      Seasonal Allergies
Axis IV:       Educational problems: academic weaknesses in math, possible problems
               with inattention, disorganization, and difficulty completing assignments
               Problems with primary support group: H/O maternal and paternal drug
               abuse
Axis V:        GAF = 70 (current)

**Recommendations:**

➤ De███ should be referred to special education for placement in an appropriate
   school program that can address his academic needs. He requires academic
   remediation in math, and behavior management as needed in the classroom.

➤ De███ should receive group psychosocial counseling at school once weekly for
   45 minutes to enhance his social skills and aid him in developing age-appropriate
   friendships.

➤ De███ should be referred for a neuropsychological or psychiatric evaluation to
   further investigate his reported problems with inattention.

Prepared by:   Sandra R. Saulter, Ph.D., Clinical Psychologist

*Sandra R. Saulter, Ph.D.*
Licensed/District of Columbia
Registrant/National Register of Health Service Providers in Psychology

259

DW-04

**PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS**
**UPPER MARLBORO, MARYLAND   20772**

CONFIDENTIAL                                                        CONFIDENTIAL

**DEPARTMENT OF PSYCHOLOGICAL SERVICES**

PSYCHOLOGICAL REPORT

[  ] EVALUATION    [ X ] ASSESSMENT  [  ] REEVALUATION

NAME: D_____ W_____ STUDENT #:000282703  SCHOOL: Berkshire Elementary

ADDRESS: ___6403 Pennsylvania Avenue # 202, Forestville, MD  20747___

DATE OF BIRTH: ____/89  AGE: 10-7   SEX: M    GRADE: 5

PARENT/GUARDIAN: ___Barbara Wilkins_____

HOME PHONE:301-516-5774  WORK PHONE(s): MOTHER: 301-853-3102 FATHER: _____

DATE OF REFERRAL: 5/2/00  CURRENT ASSESS: 5/2/00  PRIOR ASSESS: ___N/A___

PSYCHOLOGIST: Shannon Holmes, Psy. M.  OFFICE: OHSDC  PHONE: (301)749-4354

REASON FOR REFERRAL:
[ ] Appropriate Placement/Program
[ ] Behavioral/Emotional Concerns
[ ] Academic/Developmental Concerns
[ ] Re-evaluation
[X] Other: Attentional Concerns

TECHNIQUES UTILIZED:                     PSYCHOMETRICS:
[X] Review of records                    [ ] WISC-III
[ ] Observation                          [ ] WAIS-R
[ ] Interview                            [ ] WPPSI-R
    Consultation with:                   [ ] S-Binet, 4th Ed.
[X] Parent                               [ ] McCarthy
[X] Teacher, Counselor, Principal        [ ] K-ABC
[ ] Other: _____                [ ] Other: _____

PROJECTIVES:              RATING SCALES:        ADAPTIVE BEHAVIOR SCALES:
[ ] Drawings             [X] ADHD              [ ] AAMD/AAMR
[ ] Rorschach            [ ] Behavior          [ ] Vineland
[ ] TAT or CAT           [ ] Self              [ ] Other:_____
[ ] Roberts              [ ] Social/Emotional
[ ] Incomplete           [ ] Other: _____   SUPPLEMENTAL TESTS:
    Sentences                                  [ ] Bender
[ ] Other: _____                             [ ] VMI
                                               [ ] VADS
                                               [ ] Other: _____

STUDENT WAS EVALUATED IN HIS/HER PRIMARY LANGUAGE: [X] YES, English [ ] NO
                                                              See Narrative

THE INSTRUMENTS SELECTED ARE VALID FOR THIS STUDENT: [X] Yes [ ] No- See
                                                              Narrative

PS-44  (Revised 12/93)                              DW-04        260


W█████, D█████
█████-09

# PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS
## UPPER MARLBORO, MARYLAND   20772
## PSYCHOMETRIC SUMMARY

CONNERS' RATING SCALE - REVISED (Long Form)

| Scales | Parent | Teacher |
|---|---|---|
| Oppositional | Average | Poss. Significant |
| Cognitive Problems | Poss. Significant | Significant |
| Hyperactivity | Average | Borderline |
| Anxious-Shy | Average | Borderline |
| Perfectionism | Average | Average |
| Social Problems | Average | Average |
| Psychosomatic | Average | N/A |
| Conners' ADHD Index | Average | Significant |
| Restless-Impulsive | Average | Poss. Significant |
| Emotional Lability | Average | Average |
| Global Index - Total | Average | Borderline |
| Inattentive | Average | Significant |
| Hyperactive-Impulsive | Average | Borderline |
| DSM-IV - Total | Average | Significant |

ADDITIONAL TESTS ADMINISTERED:  None

Recommendations in this report will be transmitted to the appropriate school team for consideration regarding implementation.

PC-41  (Revised 12/95)

## PSYCHOLOGICAL ASSESSMENT REPORT PART II:   NARRATIVE

Name:   D██████ W██████
DOB:    ███-89
School:   Berkshire Elementary School

### REASON FOR REFERRAL:

D██████ is a ten-year-old fifth grader attending Berkshire Elementary School.  Presently, D██████ has been referred to the multidisciplinary team to investigate the possibility of attentional issues which may be negatively impacting his academic performance.  His teacher reported that D██████ had not completed homework or classwork assignments making it difficult to assess his academic progress.  Of positive note, she indicated that D██████ is artistic and willing to help others with physical activities such as cleaning, running errands and moving furniture.  She also rated his oral expression and reading comprehension as areas of relative strength.  D██████ mother appeared to share many of the teacher's concerns.  She stated that D██████ is receiving failing grades and appears to have a short attention span at school, although he obeys adults at home.

### BACKGROUND INFORMATION:

According to the parent questionnaire completed with D██████ mother as the informant, D██████ is the youngest of three children.  He lives with his mother, stepfather and siblings.  No serious problems were experienced during the pregnancy or delivery and all developmental milestones were achieved within expected timeframes.  D██████ mother rated his general health as excellent.  She described D██████ interests as skateboarding and cars and stated that he is a good reader. Additionally, she endorsed the following social-behavioral characteristics as describing D██████:

enjoys reading; has a short attention span; has a difficult time with paper and pencil tasks; avoids homework; is overactive; tells lies; is easily influenced by others sometimes and is literal.

### RATING SCALE DATA:

Due to reports of inattention and problems with organization, D██████ mother and his classroom teacher were asked to complete the Conners' Rating Scales - Revised, Long Form, a screening tool for Attention Deficit Hyperactivity Disorder (ADHD).  Scores indicate that the respondents differ in their perceptions of many of D██████ behaviors.

According to the parent rating scale, scores fell within the Average range in all assessed areas with the exception of the Cognitive Problems scale.  The corresponding score was described as Possibly Significant.  The teacher form also indicated serious


W████████, D████████                                                           4
████-89

concerns in this area with a significantly elevated score.
Cognitive problems are defined on the Conners' Rating Scale as
learning difficulties, organizational, attention and
concentration problems, and difficulty completing schoolwork.
D████████ mother endorsed the following items as being *pretty
much* or *very much true* of him:  fails to give close attention to
details or makes careless mistakes in schoolwork, work, or other
activities; has difficulty doing or completing homework; avoids,
expresses reluctance about, or has difficulties engaging in tasks
that require sustained mental effort (such as schoolwork or
homework); fails to complete assignments; has trouble
concentrating in class; and needs close supervision to get
through assignments.  Frequently, students with attention
problems also receive high scores on this scale as often
inattention negatively impacts academic performance.

    In contrast, the teacher rating scale reflected serious
concerns across a number of areas including the following:
inattention, Conners' ADHD Index, and DSM-IV Total.  These
results suggest that at school, D████████ is easily distracted, has
difficulty concentrating, often appears restless, acts
impulsively and exhibits many problematic behaviors, in general.
Children with high scores on the Inattention scale tend to have
trouble concentrating on tasks which require sustained mental
effort.  Inattention is a central feature of ADHD.

    The Conners' ADHD Index measures the presence of ADHD
symptoms.  D████████ classroom teacher rated the following items
as being *very much true* of D████████:  fails to finish things he
starts; is inattentive, easily distracted; only pays attention to
things he is really interested in; and distractibility or
attention span is a problem.  An elevated score on the DSM-IV -
Total scale indicates an unusually high correspondence to DSM-IV
criteria for combined Inattention and Hyperactive-Impulsive Type
ADHD.  In addition, D████████ teacher endorsed five of nine items
which correspond to a diagnosis of Attention Deficit
Hyperactivity Disorder, Predominantly Inattentive Type.

    Potentially serious concerns were reported by D████████
classroom teacher on the Restless-Impulsive and Oppositional
scales.  The corresponding scores were described as Possibly
Significant indicating that at school, D████████ often displayed
high levels of restlessness, impulsivity and inattention and  is
likely to break rules, have problems with authority, and become
more easily annoyed and angered than other children his age.

    It is not unusual to get disparate scores on some scales
from multiple respondents.  There are a number of possible
reasons for this.  The child's behavior may actually be different
from one context to the next; one respondent's tolerance level
for problem behaviors may be higher or lower than the other's; or

, D████████
████-89

5

the respondents may use different behavior management
strategies with varying degrees of effectiveness.  Inconsistency
of reporting could also indicate that some of D████████ problems
are exacerbated by the behavioral, academic, and/or social
demands of an academic setting.  Based on his academic history
and current rating scale data, it is possible that D██████ is
experiencing some attentional difficulties which may be
negatively affecting his academic performance.

SUMMARY:

       D██████ is a ten-year-old fifth grader at Berkshire
Elementary School.  Due to reports of inattention and
disorganization, a screening was conducted to rule out the
presence of Attention Deficit Hyperactivity Disorder.  Results of
behavior rating scales and academic history are suggestive of the
presence of Attention Deficit Hyperactivity Disorder,
Predominantly Combined Type.

RECOMMENDATIONS:

1.    The results of this evaluation will be forwarded to the
      multidisciplinary team to determine eligibility for
      instructional modifications.

2.    D████████ mother may wish to consult with her pediatrician
      or other health professional with expertise on the diagnosis
      and treatment of Attention Deficit Hyperactivity Disorder.

3.    Teachers should provide a highly structured classroom
      environment and limit distractions.  D████████ should be
      seated near the front of the room and away from the window,
      door, and other high traffic areas.

4.    Teachers should be sure they have D████████ full attention
      before giving clear, concise instructions or assigning work.
      They may check for understanding by having D███████ repeat or
      rephrase directions.  Also, it may be helpful to give
      D██████ periodic reminders to stay on task.

5.    Due to D████████ inattention and distractibility, academic
      assignments may need to be modified, such as breaking larger
      tasks down into smaller, more manageable steps.  D████████
      progress should be monitored frequently.

6.    Teachers may wish to use a timer or other incentives to
      challenge D██████ to complete more of his assignments in
      class.  In addition, D██████ should be encouraged to use his
      agenda book to record homework assignments.  His agenda book
      should be reviewed regularly by his teachers and parent to
      help increase task completion.

264

W███████, D█████████                                                    6
████-89

7.   Individual and/or group counseling as they are available in
     school may be useful for D███████ to help improve his
     motivation and decision-making skills.




                              _Shannon Holmes_ 6-20-00
                              Shannon Holmes, Psy. M.  Date
                              Certified School Psychologist

DW-25



*Making a Difference*

## INTERDYNAMICS, INC.
### *Evaluations and Therapy*
#### Psychiatric Evaluation

**Student Name:** D▬▬ Wil▬▬
**Date of Birth:** ▬▬▬▬▬, 1989
**Date of Report:** July 23, 2004
**Address:** 5019-11 Street, NE
Washington, DC 20017
**Telephone:** (H) 202-832-1048
**Examiner:** Spencer Johnson, MD
Psychiatrist

### Presenting Problems:

D▬▬ was referred for a psychiatric evaluation to assess emotionality and determine appropriate treatment modes, related to academic achievement and social adjustment.

D▬▬ symptoms and behavioral difficulties included the following: poor academic progress, inattentiveness, self-isolation and avoidant behaviors.

The following report was reviewed as a part of this Psychiatric Evaluation: A Cognitive Psychological Evaluation dated May 6, 2002 by Dr. Sandra Saulter.

### Social History:

D▬▬ and his paternal grandmother, Ms. Marion Murphy, provided the historical information for this evaluation. He resides with his grandmother, aunt and younger cousin and has two older siblings who reside on their own. Ms. Murphy has had legal guardianship of D▬▬ since he was two years old as a result of his mother's inability to care for him. According to Ms. Murphy, when D▬▬ mother, Barbara Jean Wilkins, had him her parents were unwilling to help care for him. Ms. Wilkins was unable to establish a strong relationship with D▬▬ prior to her death of breast cancer in August 2003. Although they visited at times, Ms. Murphy states that the visits were short and when allowed to live with his mother for six month intervals, his behavior became increasingly negative. While D▬▬ has a very good relationship with his immediate family, he has not established the type of bond with his father that Ms. Murphy feels is appropriate. According to Ms. Murphy, Kevin Stevenson, D▬▬ father, has always treated him more like a brother than a son and has not made enough effort to bond with him. Equally important is the history of substance abuse by both of D▬▬ parents in his early years of development. Mr. Stevenson eventually ceased the use of drugs and entered into the Navy where he has made a change in his life. Significantly, Ms. Murphy states that he now puts a little more effort into spending time with D▬▬.

According to Ms. Murphy, D▬▬ was carried full term and delivered vaginally. She states that both parents were using crack cocaine during the pregnancy, which could have led to his delayed

developmental milestones. D████ walked and put two words together after the age of two years old. He also had a history of ear infections that did not require surgery.

## Educational History:

A Cognitive Psychological Evaluation written by Dr. Saulter on May 6, 2002 indicated that D████ was responsive and cooperative during testing. He was diagnosed with a Mathematics Disorder and advised that further testing would be necessary rule out a prior diagnosis of ADHD. Dr. Saulter recommended special education services focusing on math, a behavioral management plan, psychosocial counseling and either a psychiatric or neuropsychological evaluation.

## History of Present Illness/ Psychiatric History:

D████ is a 14 year-old boy who will be attending Friendship Edison Charter School as a tenth grader. According to Ms. Murphy, he was diagnosed with ADHD in the 2nd grade but was not medicated at that time. He had difficulty with remaining focused, would leave his seat frequently to do whatever he chose, and wouldn't complete assignments. Significantly, he displayed severe problems while in the 2nd and 6th grades when he was allowed to reside with his biological mother for short periods of time. According to Ms. Murphy, the environment and activities that took place in Ms. Wilkins household caused him to act out negatively in school. While in the 6th grade, teachers complained that he had no supplies, wasn't completing classroom or homework assignments. Subsequently, Ms. Murphy was advised that he may be retained in the 6th grade so she removed him from his mother's house. She worked diligently with him in completing and understanding his schoolwork and thus he was promoted to the 7th grade. However, Ms. Murphy noticed that D████ had been more introverted since returning from his mothers' and she is unaware of what caused this behavior. Ms. Murphy stated that after the 6th grade, he was no longer allowed to go over to his mothers' house. He is currently seeing a Psychiatrist to deal with his feelings of loss and self-isolation.

Currently, Ms. Murphy reports that D████ is picked on by his peers and refuses to fight back; avoids completing math and english class assignments. He has been receiving special education services since the 7th grade while in a general education setting. D████ refuses to raise his hand to ask questions and will not move to the front of the class. Significantly, he was suspended this year due to leaving the school building.

According to D████, he enjoys science but finds math very difficult. He further stated that he does not complete classroom or homework assignments because he doesn't understand the material and there are too many instructions for math. D████ feels that special education services are helping just a little. He enjoys playing basketball and football and would like to go to college for architecture.

## Mental Status Examination:

D████ is a tall African American boy who was dressed appropriately. He was cooperative and maintained good eye contact. He was alert and oriented to person, place and time. There was no evidence of motor retardation. His mood was good and affect was appropriate. He denies having suicidal or homicidal ideations. There was no evidence of persecutory trends. He denies feelings of passive alien control. He did not evidence obsessive or compulsive behaviors. He has phobias of snakes. There was no evidence of depressive symptoms. He denies having auditory or visual hallucinations. There was no evidence of hypochondriacal trends or somatic delusions. His speech was normal in rate and rhythm. There was no evidence of loosening of association. He has good insight and cognitive judgment. His memories were intact remembering three out of three things in five minutes. His general fund of

267

knowledge is average. His concentration was good. He performed serial 7's with one mistake and spelled the word "world" backwards.

**Diagnosis:**

| | |
|---|---|
| Axis I | 314.0 History of Attention Deficit Hyperactivity Disorder |
| | 315.9 Learning Disability |
| | 300.4 Dysthymic Disorder |
| | |
| Axis II | Deferred |
| | |
| Axis III | Seasonal Allergies |
| | |
| Axis IV | Moderate (early separation from mother, abandonment from father, death of mother and academic difficulties in math) |
| | |
| Axis V | GAF (65) |

**Discussion and Recommendation:**

D█████ Wilkins is a 14 year-old African American male who is going into the 10th grade. He arrived to this testing site with his paternal grandmother, Ms. Murphy. He lives with his grandmother, aunt and cousin. He has been living with his grandmother since he was three months old but spent some time living with his biological mother. His mother died last year of breast cancer. During the interview he didn't exhibit any signs of hyperactivity. He admits to having problems with math. He has been taking Concerta 54 mgs daily, which might improve his concentration. At this time, he doesn't exhibit any sign of inattentiveness or behavioral problems. D█████ appears to respond well to one to one interactions. His performance during this evaluation yielded greater results than reported school experiences. Reported areas of concern are consistent with characteristics of ADHD. However, medication is reported to result in limited improvement. Nonetheless, D█████ reports difficulty in attending to multisteps. He also has difficulty with initiating and completing tasks. Organization problems are also reported.

Further complications of abandonment and the death of the maternal figure in his life have further impeded D█████ emotional adjustment. D█████ histories of abandonment and significant loss have impaired his sense of self work and feelings of belonging. These feelings have incapacitated him in areas of independence, assertiveness and social savvy. He is lost in a large class and would be overwhelmed in a population of aggressive acting out youngsters. He would benefit from a very small, highly structured program with activities designed to promote a sense of belonging and a feeling of some control. He would benefit from a re-evaluation of current medication trials, individual, group and family therapy as well as specialized instruction in areas of academic deficits. D█████ program should be success oriented with externalized prompting and organization.

Sincerely,

*Spencer J Johnson m*
Spencer Johnson, MD
Psychiatrist

268

DW-06



*Making a Difference*

# INTERDYNAMICS, INC.
### *Evaluations and Therapy*

## <u>Social Work Evaluation Report</u>

**Student Name:** D▮▮▮ W▮▮▮▮      **DOB:** ▮▮▮/89          **Age:** 14
**Primary Language:** English      **Grade:** 9
**Parent/Guardian:** Marian Murphy (paternal grandmother)
**Address:** 5019 11th St. NE Washington, DC 20017
**Telephone#** (202) 832-1048
**Referral Source:** Guardian
**Reason for referral:** D▮▮▮ was referred for an evaluation due to increasing concerns regarding his educational placement.

## <u>Developmental/Medical History</u>

D▮▮▮ was born of natural delivery at Howard University Hospital following his mother's full term pregnancy. Delivery was unremarkable, however D▮▮▮ mother and father are reported to have a history of substance abuse involving crack cocaine. At two years old, D▮▮▮ fell off a chair and was knocked unconscious for several minutes after hitting his head on the floor. He was observed overnight at Children's Hospital and released after x-rays revealed no significant damage. At twelve years old he was evaluated at the Educational Diagnostic Institute to assess his current level of cognitive functioning which revealed that D▮▮▮ was functioning in the "average" range of intelligence as compared with his peers. He did test well below grade level however in basic arithmetic leading to a diagnosis of Mathematics Disorder. Recommendations included referrals for special education services, in school psychosocial counseling and a referral for a neuropsychological evaluation. D▮▮▮ continues to take 50 mg. of Concerta daily as a treatment for ADHD and Allegra for allergies.

Ms. Murphy reports that D▮▮▮ achieved all developmental milestones on time including crawling, sitting, walking and talking.

## <u>Family History</u>

### <u>Household Composition</u>

| Name | Age | Relationship | Occupation |
|------|-----|--------------|------------|
| Marian Murphy | 57 | grandmother | day care provider |
| Tamira Murphy | 30 | aunt | |
| Tanisha Murphy | 8 | cousin | |
| D▓▓▓ W▓▓▓▓ | 14 | self | |

D▓▓▓ lives in a four bedroom house with his grandmother, aunt and cousin where they've been for approximately nine years. With the exception of two brief periods, D▓▓▓ has been in the care of his grandmother since he was two months old due to his mother's inability to provide care for him. When D▓▓▓ was approximately eight years old he went to live with his mother after she convinced the grandmother that she was capable of taking care of him. D▓▓▓ returned to the grandmother's home after several months because of an investigation of the mother's house initiated by DC Child and Family Services. Additionally, D▓▓▓ was reportedly missing a lot of days from school during this time. At approximately twelve years old, D▓▓▓ went to live with his mother again and returned to the grandndmother's house after one semester due to his mother's inability to get him to school on a consistent basis. D▓▓▓ continued to maintain sporadic contact with his mother, staying with her occasionally overnight, until she passed away of breast cancer in August 2003 at the age of forty. There is no knowledge of her educational or work history.

D▓▓▓ father, Kevin Stevenson  (38), lives in Lanham, Maryland and only recently began showing an interest in his well being. A reunification of sorts occurred during the funeral of D▓▓▓ mother. Mr. Stevenson had maintained distance between he and D▓▓▓ because of the circumstances under which D▓▓▓ was conceived. Apparently, Mr. Stevenson was involved in another relationship when he had an affair with D▓▓▓ mother. He continued to harbor feelings of resentment toward mother and child throughout D▓▓▓ young life. Mr. Stevenson has no other children and is in the process of getting married. He is a graduate of Roosevelt High School and completed three years in the Navy. He's returned to school to study electrical engineering and has a job with a construction company doing electrical work.

D▓▓▓ gets along well with all members of the household although he may have the best relationship with his aunt Tamira who has been sort of a big sister to him. He does chores including taking out the trash, cleaning his room and washing the family cars. He also cuts grass for some of the neighbors.

## Social/Behavior Characteristics

D▓▓▓ is described by Ms. Murphy as being shy and immature for his age. He doesn't have many friends and prefers playing with children who are younger than he is.

He enjoys playing video game and sports, particularly basketball.

270

## School History

D█████ attended the first grade at Sacred Heart Elementary School where Ms. Murphy reports that he performed on grade level although there were frequent reports of being overactive. He attended the second grade at Nativity Catholic Academy where he was initially tested for ADHD due to ongoing reports of his inability to remain seated during class time and difficulties following instructions. D█████ attended third grade at Rudolph Elementary School during a brief stay with his mother. Ms. Murphy reports that he had poor attendance, failed to complete most of his assignments and had difficulty remaining on task. He continued to attend Rudolph Elementary through the fifth grade with much of the same problems although he returned to live with his grandmother. In the sixth grade, D█████ attended Birkshire Elementary School in Prince George's County while living with his mother, experiencing failing grades as a result of poor attendance. D█████ returned to live with his grandmother after one semester, however Birkshire allowed her to transport him their every day from Washington,DC Ms. Murphy reports that he attended the seventh and eighth grade at Backus Middle School where he began to make some progress due to special education assistance received for math and English.

## Summary

D█████ W█████ is a fourteen year old African-American male with a history of academic problems related to a variety of factors including, but not limited to, unstable home life, inability to remain focused, poor self control and problems with mathematics.

D█████ has experienced a great deal of trauma associated with several failed attempts to reunite with his biological mother. Her inability to provide a nurturing environment for him contributed to issues related to trust, anxiety, insecurity and lack of continuity regarding academic progress. There would have been a high degree of distractibility for him during those times due to the fragile nature of their relationship, thereby affecting his ability to concentrate in the classroom. Also, associated feelings related to her death such as sadness, anger, uncertainty and depression would have affected his progress as well. Additionally, until recently, D█████ father hadn't displayed an interest in developing a relationship with him causing further emotional damage due to issues related to abandonment.

D█████ could benefit from a small structured academic environment that has a therapeutic component to address ongoing issues related to grief and loss, developing appropriate coping skills,  as well as helping with forming a bond with his father. A previous recommendation regarding individual therapy should be adhered to weather it takes place in school or at an independent site. A neuropsychological evaluation is recommended to address possible concerns related to exposure to drugs inutero or any lingering effects of a head injury suffered when he was a toddler. Additionally, although he has the overall cognitive ability to succeed, he will continue to need special assistance with overcoming significant delays with mathematics.

271

Finally, this is a very crucial stage in D█████ development, adolescence, which will continue to present challenges regarding identity formation, peer pressure and academic achievement. All possible supports and interventions should be explored in order to assist him in becoming the most productive individual he can be.


James Thomas, MSW

8/19/04
**Date**

Dw-07

🗀 **FILE**

# Law Office,
## Christopher N. Anwah, LLC
Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
   (DC, MD, NJ)
Fatmata Barrie, Esq.
   (DC, FL)
Panya Monford, Esq.
   (MD)
December 18, 2004

1003 K Street, N.W.
 Suite 500
Washington, D.C. 20001
Phone: (202) 626-0040
Fax: (202) 626-0048

**By Fax: (202) 442-5524**

Office of Mediation and Compliance
D.C. Public Schools
825 North Capitol Street, N.E.
Washington, D.C. 20002

        RE:   D█████ W██████
        DOB:  █████/89

Dear Sir/Ms.:

Our office is writing to inform you that the Settlement Agreement signed on June 24, 2004 gave DCPS fifteen (15) business days of the receipt of the last independent evaluation to review and to schedule an MDT/IEP meeting. Our office on September 5, 2004 provided Mr. Jack Schreibman, Esq., Attorney Advisor, copies of the independent evaluations for DCPS's review and to schedule an MDT/IEP; however, to date, DCPS has not contacted our office to provide us with a copy of its review of the independent evaluations and to provide us with a letter of invitation with three (3) dates for our consideration to schedule an MDT/IEP meeting. Therefore, DCPS has violated the Settlement Agreement. If you have any questions, please contact the undersigned staff personnel at either (202) 626-0040 or (202) 270-9156.

Thank you for your prompt attention and cooperation regarding this matter.

Sincerely,

Annie R. Pressley, J.D.
Law Clerk for Christopher Anwah, Esq.
Attorney for D█████ W██████

cc:    Client's file

273

# Law Office,
# Christopher N. Anwah, LLC

Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
    (DC, MD, NJ)
Fatmata Barrie, Esq.
    (DC, FL)
Panya Monford, Esq.
    (MD)

1003 K Street, N.W.
Suite 500
Washington, D.C. 20001
Phone: (202) 626-0040
Fax: (202) 626-0048

## FACSIMILE COVER LETTER

**DATE:**
    December 18, 2004

**TO:**
    Office of Mediation and Compliance

**COMPANY**
    D.C. Public Schools

**FAX NUMBER:**
    (202) 442-5524

**FROM:**
    Christopher Anwah, Esq./Annie R. Pressley, J.D. - Law Clerk/Education Advocate

**TOTAL NUMBER OF PAGES INCLUDING COVER SHEET** _2_

**MESSAGE:** INFORMING OF VIOLATION OF SETTLEMENT AGREEMENT FOR
D████████ W██████ - DOB: ██████89

If there is any problem with this transmission, please call as soon as possible at (202) 626-0040

### *** CONFIDENTIALLY NOTE ***

The pages accompany this facsimile transmission contain information from the CHRISTOPHER ANWAH, ESQ. law offices which is confidential or privileged, or both. The information is intended to be for the use of the individual or entity named on this cover letter. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this facsimile in error, please notify us by telephone immediately at (202) 626-0040 so that we can arrange for the retrieval of the original documents at no cost to you.

274

XMT REPORT

Dec. 19 2004 02:36AM

| NO. | OTHER FACSIMILE | START TIME | USAGE TIME | MODE | PAGES | RESULT |
|-----|-----------------|------------|------------|------|-------|--------|
| 01 | 202 442 5524 | Dec. 19 02:35AM | 01'12 | TX | 02 | OK |

Unto DCPS Mediation
& Complaine — Violation
of Settlement Agreement
signed on 6/24/04 for

████████ ████████.

Qp

275

*Dw-08*

FILE

# Law Office,
## Christopher N. Anwah, LLC
Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
   (DC, MD, NJ)
Fatmata Barrie, Esq.
   (DC, FL)
Panya Monford, Esq.
   (DC)

Federal District Building
1010 Vermont Avenue, N.W.
 Suite 600
Washington, D.C. 20005
Phone: (202) 347-7026
Fax: (202) 347-7108
Email: Lawoffcna@aol.com

September 5, 2004

**By Fax: (202) 442-5098**

Mr. Jack L. Schreibman, Esq.
Attorney Advisor
DCPS Office of the General Counsel
825 North Capitol Street, N.E.
Washington, D.C. 20002

           RE:   D██████ W██████
           DOB:  ██████/89

Dear Mr. Schreibman:

Our office is writing to submit the independent psychiatric and social history evaluations that have been completed for D██████ W██████, per the Settlement Agreement signed between DCPS and our office on June 24, 2004. DCPS in the Settlement Agreement agreed to convene an MDT meeting within fifteen (15) business days of the receipt of the independent evaluations, and to update D██████ IEP as warranted. Also, placement should be discussed and determined when the MDT team meet.

Therefore, we are requesting that DCPS review the independent evaluations and then contact the undersigned staff personnel to arrange for a mutual date and time for the scheduled MDT/IEP meeting for all parties concerned at either (202) 347-7026 or (202) 270-9156.

Thank you for your immediate attention and cooperation regarding this matter.

Sincerely,

Annie R. Pressley, J.D.
Law Clerk for Christopher Anwah, Esq.
Attorney for D█████ W██████

Attachments: (2)

cc:    Client's file

# Law Office,
# Christopher N. Anwah, LLC

Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
   (DC, MD, NJ)
Fatmata Barrie, Esq.
   (DC, FL)
Panya Monford, Esq.
   (MD)

Federal District Building
1010 Vermont Avenue, N.W.
Suite 600
Washington, D.C. 20005
Phone: (202) 347-7026
Fax: (202) 347-7108
Email: Lawoffcna@aol.com

## FACSIMILE COVER LETTER

**DATE:**
    September 5, 2004

**TO:**
    Mr. Jack Schreibman - Attorney Advisor

**COMPANY**
    DCPS Office of the General Counsel

**FAX NUMBER:**
    (202) 442-5098

**FROM:**
    Christopher Anwah, Esq./Annie R. Pressley, J.D. - Law Clerk/Education Advocate

**TOTAL NUMBER OF PAGES INCLUDING COVER SHEET __10__**

**MESSAGE: SUBMISSION OF INDEPENDENT EVALUATIONS FOR D███████**
**W██████ - DOB: ████/89 AND REQUEST TO SCHEDULE MDT/IEP MEETING**

If there is any problem with this transmission, please call as soon as possible at (202) 347-7026

### *** CONFIDENTIALLY NOTE ***

The pages accompany this facsimile transmission contain information from the IWEANOGE & ANWAH law offices which is confidential or privileged, or both. The information is intended to be for the use of the individual or entity named on this cover letter. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this facsimile in error, please notify us by telephone immediately at (202) 347-7026 so that we can arrange for the retrieval of the original documents at no cost to you.

278

002 WED 18:21 FAX 2021425524          DCPS SPECIAL ED DEPT

DW-09

## CONFIDENTIAL
## HEARING OFFICER'S DETERMINATION

**STUDENT:** D████ W█████      **DATE OF BIRTH:** ███████, 1989

**CASE NUMBER:** 2002-1501

**ADDRESS:** 5019-11ᵗʰ Street, N.E., Washington, D.C. 20019

**DATE OF HEARING:** August 20, 2002

**PRESENT SCHOOL:** IDEAL Public Charter School

**DATE OF FORM 6:** NA

**DATE OF MOST RECENT DCPS IEP:** NA

**DATE OF MOST RECENT DCPS PLACEMENT NOTICE:** NA

**PRESENT AT THE HEARING:**

**DCPS:**

Quinne Harris-Lindsey          Attorney Advisor

**Student:**

Christopher Anwah, Esq.        Counsel for the parent

**STUDENT'S REPRESENTATIVE:** Christopher Anwah, Esq.
**ADDRESS:** 1220 L. Street, N.W., Suite 700, Washington, D.C. 20002

**SCHOOL SYSTEM'S REPRESENTATIVE:** Quinne Harris-Lindsey, Esq.
**ADDRESS:** 825 North Capitol Street, N.E. 9th Floor, Washington, D.C. 20002



IN THE MATTER OF

D▮▮▮▮▮ W▮▮▮▮▮ (D.O.B. ▮▮▮▮▮▮▮▮▮▮▮, 1989)

## INTRODUCTION:

A Due Process Hearing was convened on August 20, 2002 at the District of Columbia Public Schools ("DCPS"), 825 North Capitol Street, N.E. Washington, D.C. 20002, concerning D▮▮▮▮ W▮▮▮▮. The hearing was held pursuant to a hearing request dated June 26, 2002, submitted by Christopher Anwah, Esq. Mr. Anwah represented the student at the Hearing. Quinne Harris-Lindsey represented DCPS at the Hearing.

## JURISDICTION:

The Hearing was held and this decision was written pursuant to the *Individuals with Disabilities Education Act* (I.D.E.A.), P.L. 101-476, as amended by P.L. 105-17, the *Rules of the Board of Education of the District of Columbia and the DC Appropriations Act, Section 145*, effective October 21, 1998.

## DUE PROCESS RIGHTS:

Mr. Anwah waived a formal reading of the due process rights.

## DOCUMENTS:

**On Behalf of DCPS:**

DCPS-01, Disclosure Letter dated August 14, 2002

**On Behalf of the Parent:**

KW-01 through KW-08, per Disclosure Letter dated August 13, 2002

## SUMMARY OF RELEVANT EVIDENCE:

The Hearing Request contends that the parent transferred D▮▮▮▮ to IDEAL Public Charter School ("IDEAL") from the Thurgood Marshall Middle School in Temple Hills, Maryland. She said that she gave the Co-Principal of IDEAL a copy of D▮▮▮▮▮ transfer along with a copy of a § 504 plan. D▮▮▮▮ records indicated that he had received special education services. However, Delonte did not receive special education services from IDEAL.

As a result a settlement agreement entered into February 28, 2002, DCPS agreed to complete a psycho-educational evaluation, speech and language evaluation and a social history assessment by March 25, 2002 and then convene a MDT team meeting. Additionally, if DCPS failed to conduct the evaluations, then DCPS agreed that it would fund independent evaluations.

280

002 WED 18:22 FAX 2024425524          DCPS SPECIAL ED DEPT                    ☑004

DCPS failed to conduct the evaluations as agreed, so the parent obtained an independent speech and language evaluation and psycho-educational evaluation and gave a copy to DCPS on May 25, 2002. The social history assessment is still outstanding. Also, the psycho-educational evaluation recommended that either a neuropsychological or a psychiatric evaluation should be obtained.

At the Hearing, the parties discussed the status of the evaluations on the record and reached an agreement that DCPS shall complete the social history and psychiatric evaluations within Thirty (30) days from the date of this Hearing. Ten (10) days after receipt of the last evaluation, an MDT/IEP/Placement meeting will be convened and the team will develop an appropriate IEP, determine an appropriate placement and issue a Prior Notice of placement.

**FINDING OF FACT AND CONCLUSIONS OF LAW:**

DCPS is obligated to ensure that all children with disabilities receive a Free and Appropriate Public Education ("FAPE") 34 C.F.R. §300.300. This obligation includes identifying children with disabilities and who may be in need of special education services. 34 C.F.R. §300.125. Additionally, DCPS is obligated for evaluating children in all areas of suspected disabilities 34 C.F.R. §300.320.

The Hearing Officer finds that D████ was not evaluated as the parties had agreed. However, the Hearing Officer concurs with the agreement of the parties as being in the best interest of the student and therefore incorporates the terms thereof into this Hearing Officer's Determination.

**ORDER:**

1. DCPS shall complete a social history and psychiatric evaluation within Thirty (30) days from the date of this Hearing. Ten (10) days after receipt of the last evaluation, an MDT/IEP/Placement meeting shall be convened and the team will develop an appropriate IEP, determine an appropriate placement and issue a Prior Notice of placement.

2. The parent reserves the right to claim compensatory education

3. The hearing Officer retains jurisdiction of this case and the parties may request an expedited hearing.

4. The parties shall cooperate with each other in scheduling evaluations and meetings and any delay caused by the parent in scheduling an evaluation shall extend the time for completing evaluations by the equivalent amount of time of the delay.

ED 16:22 FAX 2024425524          DCPS SPECIAL ED DEPT                    ☑005

This is the final administrative decision in this matter. Appeals on legal grounds may be made to a court of competent jurisdiction within 30 days of the rendering of this decision.

Date  8/27/02

David R. Smith
Hearing Officer

282



# Law Office,
# Christopher N. Anwah, LLC

Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
    (DC, MD, NJ)
Fatmata Barrie, Esq.
    (DC, FL)

Federal District Building
1010 Vermont Avenue, N.W.
 Suite 600
Washington, D.C. 20005
Phone: (202) 347-7026
Fax: (202) 347-7108
Email: Lawoffcna@aol.com

March 26, 2004

**By Fax: (202) 541-0573**

Mr. James Ricks
Principal
Village Learning Center Public Charter School
33 Riggs Road, N.E.
Washington, D.C. 20011

           RE:    D████ W█████
           DOB:  ████/89

Dear Mr. Ricks:

Our office represents Ms. Marian Murphy and her son, D████ W█████, in regards to D████ special education services. Prior to D████ registering at your school, a due process hearing was held on August 20, 2002 and the Hearing Examiner ordered that the D.C. Public School(DCPS) complete a social history and psychiatric evaluations within thirty (30) days from the date of his order. Also, that DCPS was to convene MDT/IEP-placement meeting within ten (10) days after the last evaluation was completed. After speaking with Ms. Murphy, she has informed us that she was not certain if DCPS had complied with that order. Further, that those evaluations, once completed, were to be forwarded to our office. We have reviewed D████ file in our office and we do not have any record that indicates that those evaluations were ever completed and forwarded to us.

Therefore, we are requesting that Village Learning Center Public Charter School ("Village") inform us as to the completion of those evaluations and to forward us copies by close of business Tuesday, March 30, 2004. In addition to those evaluations, please forward us a copy of D████ 2003/04 IEP. If you have any questions, please contact our office law clerk, Ms. Annie R. Pressley. Ms. Pressley can be reached at either (202) 347-7026 or (202) 270-9156.

283

Thank you for your immediate attention and cooperation regarding these matters.

Sincerely,

Christopher Anwah, Esq.
Attorney for D██████ W███████

cc:     Client's file

# Law Office,
# Christopher N. Anwah, LLC

Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
    (DC, MD, NJ)
Fatmata Barrie, Esq.
    (DC, FL)

Federal District Building
1010 Vermont Avenue, N.W.
 Suite 600
Washington, D.C. 20005
Phone: (202) 347-7026
Fax: (202) 347-7108
Email: Lawoffcna@aol.com

## FACSIMILE COVER LETTER

DATE:
    March 26, 2004

TO:
    Mr. James Ricks - Principal

COMPANY:
    Village Learning Center Public Charter School

FAX NUMBER:
    (202) 541-0573

FROM:
    Christopher Anwah, Esq.

TOTAL NUMBER OF PAGES INCLUDING COVER SHEET __2__

MESSAGE: Request for evaluations ordered by HOD for D█████ W█████ - DOB: ███/89

If there is any problem with this transmission, please call as soon as possible at (202) 347-7026

### *** CONFIDENTIALLY NOTE ***

The pages accompany this facsimile transmission contain information from the IWEANOGE & ANWAH law offices which is confidential or privileged, or both. The information is intended to be for the use of the individual or entity named on this cover letter. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this facsimile in error, please notify us by telephone immediately at (202) 347-7026 so that we can arrange for the retrieval of the original documents at no cost to you.

285

08/21/2004 12:30 FAX 202 442 5098
06/16/2004  10:23   2025410579

OFF. OF GENERAL COUNSEL
VLCPCS

DW-11

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.
INDIVIDUALIZED EDUCATIONAL PROGRAM

OCRS - IEP Page 1 of 4

Additional Comments: ☐

## I. IDENTIFICATION INFORMATION

| | | |
|---|---|---|
| Student Name: Last W████ | First D████ | MI A |

Student ID 00382703   Soc. Sec. No. ████   Age: 14   Grade 9

Gender ☑M ☐F   Date of Birth █/█/89   Ethnic Group African American

Address 5019 11th Street NE
House No.   Street Name

Washington DC 20017

☐ Non-attending

Attending School Village Learning Ctr.   Home School Backus MS

☐ Elem. ☐ Mid/JHS ☐ SHS ☐ CHS

Parent Marion Murphy

Address of (if different from student): ☑ Parent ☐ Guardian ☐ Surrogate

Telephone: Home 202-823-1048   Work 202-423-8159

## II. CURRENT INFORMATION

Date of IEP Meeting: 4/22/04
Date of Last IEP Meeting: 4/5/04
Date of Most Recent Eligibility Decision: 4/22/04

Purpose of IEP Conference:
☐ Initial IEP   ☑ Review of IEP
☐ Requested Eval.   ☐ 3yr ReEval.

Indicate Level of Statewide/Local Assessment:
III

(ADDENDA TO BE ATTACHED AS NEEDED)
Check the appropriate box(es)
☐ BEHAVIOR   ☐ TRANSPORTATION
☐ ESY   ☐ TRANSITION

## III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements | To be completed by Office of Bilingual Education (Design and Main Proficiency Assessment) |
|---|---|---|---|---|---|
| Student | English | English | English | Native Lang | Oral |
| Parent | English | English | English | Native Lang | Rdg/Written |
| Home | English | English | English | Native Lang | Instrument / Date: |

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING Gen Ed Code/Gen-al | FREQUENCY Hr/Min D/W/M | PROVIDER (as discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # wks-mos |
|---|---|---|---|---|---|
| Specialized Instruction | | 6 h W | Special Education Teacher | 4/22/2004 | 10 mos |
| Psychological Counseling | | 5 M W | Psychologist | 4/22/2004 | 10 mos |
| | | | | | |
| | | | | | |
| | | | | | |
| TOTAL | | 6.5 Hours Per Week | | | |

## V. Disability(ies)

Learning Disability

LD   ☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services:
☑ 0-20%   ☐ 21-60%   ☐ 61-100%

Percent of time NOT in a Regular Education Setting

## VI. IEP TEAM (Participants in the development of this IEP)

Print and sign your name below.

EBy Man   sped teacher

Keesha Blythe / Keesha Blythe   DCPS Placement Specialist

Marian Murphy   Marian Murphy   Parent

DeMyra N. Gallo   DeMyra N. Gallo   English teacher

I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in this IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature   Marian Murphy   Date 4/22/04

District of Columbia Public Schools   DK-12-2001   Division of Special Education   Appendix - A   IEP Page 1 of 4

286

| Student Name | D_____ W_____ | Managing School | Village Learning Ctr | DCPS - IEP Page 2 of 4 |
| Student ID Number | DO382703 | DOB | _____89 | Attending School | |

**VII. Present Educational Performance Levels in Areas Affected by the Disability**

Additional Comments: WIAT 9/17/02

**Academic Areas: (Evaluator)** Jennifer Penn

Score(s) When Available

**Math Strengths:** D_____ is able to add & subtract

Math Cal. SS 79

Math Res. _____

**Impact of disability on educational performance in general education curriculum:**
Weaknesses in math impact his ability to participate in mainstream courses

See goal page: _____

Date: _____

**Reading Strengths:**

Rdg. Com _____

Rdg. Basic SS = 98

Written Ex. SS = 91

**Impact of disability on educational performance in general education curriculum:**

See goal page: _____

Date: _____

**Communication (Speech & Language) (Evaluator)**

Score(s) When Available

**Strengths:**

Exp. Lang. _____

Rec. Lang. _____

Artic _____

Voice _____

**Impact of disability on educational performance in general education curriculum:**

Fluency _____

Exp. Voc. _____

Rec. Voc. _____

See goal page: _____

Date: _____

**Motor/Health (Evaluator)**

Score(s) /Results When Available

**Strengths:**

_____

_____

**Impact of disability on educational performance in general education curriculum:**

_____

See goal page: _____

Date: _____

**Social Emotional Behavioral Areas: (Evaluator)** Jennifer Penn

Score(s) When Available

**Strengths:** D_____ is able to follow directions

Via 93

Pia 114

Fsa 103

**Impact of disability on educational performance in general education curriculum:**
Poor attending and social-relatedness impact peer relation

See goal page: _____

Date: 5/6/02

**Cognitive/Adaptive Behavior: (Evaluator)**

Score(s) When Available

**Strengths:**

_____

_____

**Impact of disability on educational performance in general education curriculum:**

_____

See goal page: _____

Date: _____

**Prevocational Skills: (Evaluator)**

Score(s) When Available

**Strengths:**

_____

_____

**Impact of disability on educational performance in general education curriculum:**

_____

See goal page: _____

Date: _____

287

06/16/2004  10:23    2025410579    OFF.OF GENERAL COUNSEL
VLCPCS
@006
PAGE 07

| Student Name: [redacted] | | Managing School | | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number: 000 382703 | DOB: [redacted] 189 | Attending School VLCPCS | | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**   Additional Comments:    *Math*

Area addressed by goal: *Math*    Goal Number: [ ]

**ANNUAL GOAL:** (including mastery criteria)

[redacted] will demonstrate 1 years progress in applied math skills moving him From grade level to grade level through mastery of the following short term goals

Provider(s):   General Ed and SPED Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (Include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Multiply 1 digit by 2 digits — Multiply 2 digits by 3 digits with and with out regrouping with 70% accuracy | | Monthly |
| Divide by a 2, 3, digit divisor with and without a remainder with 80% accuracy | | Monthly |
| Solve simple word problems involving 1, 2, 3 step operation with 80% accuracy | | Monthly |
| Add, substract, like, and unlike fraction with 70% accuracy | | Monthly |
| complete Fractional computations with 70% accuracy | | |
| Identify the place value of a number with 80% accuracy | | Monthly |
| Student will complete fractional computations with 70% accuracy | | Monthly |

**EVALUATION PROCEDURE(S)**

(Portfolio)   Log   Chart   (Test)   (Documented Observation)   Report   Other _____

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 3 of 4

288

| Student Name | D_____ W_____ | Managing School | | DCPS - IEP |
| Student ID Number | 000382733 | 008 | Attending School VLCPCS | Page 3 of 4 |

Goal Number: [ ]

| VIII. SPECIALIZED SERVICES | Additional Comments: |

Area addressed by goal: **Social - Emotional**

**ANNUAL GOAL: (including mastery criteria.)**

D_____ will develop appropriate attending and Social relatedness skills

Provider(s): School counselor

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Attend to tasks without becoming Frustrated | | |
| Sit still during group activities | | |
| Attempt tasks before responding "I can't" or "I don't know how" | | |
| Attend to work time tasks until they are completed before moving on to another task | | |
| Participate in group activities Demonstrating continuing growth in social interactions | | |
| Accept the give and take of interactions with peers and adults | | |

**EVALUATION PROCEDURE(S)**

Portfolio    Log    Chart    Test    Documented Observation    Report    Other _____

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 3 of 4

289

06/21/2004 12:32 FAX 202 442 5098          OFF. OF GENERAL COUNSEL          @008
06/16/2004  10:23   2025410579                    VLCPCS                         PAGE 09

| Student Name | _____ W____ | Managing School | VLCPCS | DCPS-157 |
|---|---|---|---|---|
| Student ID Number: | DO0382703  DO___89 | Attending School | | |

**Additional Comments:**

**CL. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION**
**SERVICE ALTERNATIVES**

Can curricular modification, accomodation and/or supplemental aids and services be used for a LRE setting in regular education?    Yes    No

Explanation for removal out of regular education classroom.

D_____ is unable to be academically successful
in the general education classroom without
proper support

**X. Supplementary Aids and Services**

| Classroom Needs | SETTING | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yy) |
|---|---|---|---|---|---|---|---|
| (Do not name product or services.) | GenEd | SpEd | Total | Hr./Min | Dy/Wk. | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for testing:          None needed

Timing/Scheduling: Extended time

Setting: Small group

Presentation: Repeat and Rephrase direction, list of direction written

Response:

Equipment: Calculator, ruler

**XI. STATE AND DISTRICT ASSESSMENTS:**

Level I  Tested with non-disabled peers under standard conditions without accommodations.

Level II  Describe non-uniform conditions for Level III
Tested under non-standard conditions with permissible accommodations.

Level III  (Describe accommodations for Level III)
Tested under standard conditions with special accommodations.

Level IV  (Describe the alternative assessment)

Level V  Portfolio:

**XII. Areas Requiring Specialized Instruction and Related Services:**    Modifications:

| | | | |
|---|---|---|---|
| Reading | Physical/Sensory | Transition | Language Arts/English |
| Mathematics | Social Emotional | Vocational | Social Sciences |
| Written Expression | Physical Development | Independent Living | Biological & Physical Science |
| Other: | | Speech/Language | Fine Arts |

None    Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

**XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION**

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| Maximum Inclusion → Combination General Education | Accept | None |
| General Education Out of General Education | reject  reject | School failure  not LRE |

Modification(s)/Accommodation(s) to address the harmful effects:

Specialized Instruction & Psychological Counseling

Location for Services

District of Columbia Public Schools     07-02-2001     Division of Special Education     Appendix - A     IEP Page 4 of 4

290

_Marian Murphy_

Received a

Copy of "The Caring For Our Students with Disabilities", a procedural Manual for Parents

Delivered at the Village Learning Center on 4/22/04

From _E R Warn_

NAME

April 22 04

DATE

_Marian Murphy_

Parent / Recipient

_E R Warn_

Delivered by

291

06/21/2004 12:33 FAX 202 442 5098          OFF.OF GENERAL COUNSEL                    ☒010
06/16/2004  10:23   2025410579                    VLCPCS                           PAGE  04

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

INDIVIDUALIZED EDUCATION PROGRAM
(IEP)
MEETING NOTES

STUDENT ~~D██████ W████~~    SCHOOL Villiage Learning Ctr  DATE: 4/22/04

| PARTICIPANTS: | PARTICIPANTS: (Sign Name) | DISCIPLINE |
|---|---|---|
| EB Men | EB Men | SPED Teacher |
| Keesha Blythe | Keesha Blythe | DCPS Placement specialist |
| Marian Murphy | Mary Murphy | Parent |
| De'Myra N. Gallo | DiMyra N. Gallo | English teacher |

The MDT agrees that D█████ continues
to be eligible for special education services
as a child with a Learning Disability

→ Services          Specialized Instruction  16hrs/W
                    Psychological Counseling . 5 min/W

→ Combination General Education
→ Level III
→ Accomodations: extended time, small group
        repeat and rephrase directions, calculator,
           ruler,

292

06/21/2004 12:33 FAX 202 442 5098          OFF.OF GENERAL COUNSEL                    ☐011
   06/16/2004  10:23   2025410579                    VLCPCS                          PAGE  02

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES

MDT REFERRAL DATE: _____                    MEETING DATE: 4/27/04

STUDENT: ████ W███████          SCHOOL: Villiage Learning Ctr

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| E. B. Men | E. B. Men | Dir of SPED / SPED Teacher |
| Keesha Blythe | Keesha Blythe | DCPS Placement Specialist |
| Marian Murphy | Marian Murphy | Parent - Legal Guardian |
| DeMyra N. Gallo | DeMyra N. Gallo | English Teacher |

The purpose of today's meeting is to discuss
current progress and review IEP.
Everyone present was introduced
The parent was provided a copy of the procedural
safeguards
Ms Murphy, grandmother is concerned with
████ being able to formulating sentences.
In his previous IEP, ████ spelling & reading scores
are within the expected range.
Ms Gallo reports that ████ reads very

THE PARENT (IS PRESENT)  IS NOT PRESENT AT THE MEETING  ████ T. W████

AFTER A REVIEW OF THE ASSESSMENTS, IT IS DETERMINED THAT

  CONTINUES TO BE ELIGIBLE FOR SPECIAL EDUCATION
  IS TO BE EXITED FROM SPECIAL EDUCATION

06/21/2004 12:34 FAX 202 442 5098          OFF.OF GENERAL COUNSEL                    ☒012
06/16/2004  10:23   2025410579                    VLCPCS                             PAGE  03

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

MDT REFERRAL DATE: _____          MULTIDISCIPLINARY TEAM (MDT)          Page: ___ of ___
                                     CONTINUATION MEETING NOTES
                                     MEETING TYPE: MDT
STUDENT: D____ W____      SCHOOL: Villiage Learning Cr    DATE: 4/22/04

well. D____ has difficulties with his writing
D____ is capable of doing the work.
When you sit with him to do the work,
D____ is able to perform the task
~~xxxxxxxxxxxxxxxxxxxxx~~ D____ would
benefit from ~~xxxxxxxxx~~ repeated/listed directions.
To become more organized, he could use
an assignment notebook to list daily
tasks ~~xxxx~~ to be reviewed by classroom
teacher daily. D____ is also diagnosed w/
ADHD and takes Concerta 54mg daily
The MDT agrees that D____ continues to be
eligible for Special Education Services
as a child with a Learning Disability

DW-12

**District of Columbia Public
Schools Division of Special
Education Washington, D.C.**

**NEW ADDENDUM MEETING PAGE**
Attach to the IEP and check the box on page one.

Student Name ~~[redacted]~~ W~~[redacted]~~   DOB ~~[redacted]~~ 89   DATE 5/25/05

Student ID Number 00382703       School High Road Academy

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | DISCIPLINE |
|---|---|---|
| Meghan Riordan | Meg Riordan | Social Work |
| Marian Murphy | Marian Murphy | Grandmother |
| Debata Wilkins | Debata Wilkins | Student |
| Annie R Pressey | Annie R Pressey | Edu Advocate |
| Shanon Redman | S Redman | Director |

**INSTRUCTIONS:** Use this addendum, in an IEP/MDT meeting, when changing levels of services on an IEP section or part. Discipline service providers must participate in the meeting. Attach addendum to the IEP and check the appropriate box on page one.

**Purpose of this meeting is to:**

assess within the 30 day review period the appropriateness of placement and IEP.

**SERVICES TO BE ADDED TO THE IEP**

| SERVICES | SETTING GenEd | SETTING SpEd | SETTING Total | FREQUENCY Hr./Min | FREQUENCY D/W/M. | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # wks/mos | DATE ADDED mm/dd/yyyy |
|---|---|---|---|---|---|---|---|---|---|
| Psychological Counseling | | 1.5 | 1.5 | hrs | W. | social worker | 5/25/2005 | 10 | 5/25/2005 |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| **TOTAL** | | 1.5 | 1.5 | Hours Per Week | | | | | |

CURRENT IEP : Percent of time in Special Services          THIS ADDENDUM : Percent of time in Special Services
0-20%      21-60%      61-100%                          0-20%      21-60%      61-100%

**Describe:**
Psychological counseling increased to include necessary group therapy participation.

PARENT SIGNATURE FOR ADDITION(S) APPROVAL: Marian Murphy    DATE: 5/25/05

DISTRICT OF COLUMBIA PUBLIC SCHOOLS    07-02-2001    DIVISION OF SPECIAL EDUCATION    APPENDIX-A

295

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

INDIVIDUALIZED EDUCATION PROGRAM
(IEP)
MEETING NOTES

STUDENT ▬▬▬ W▬▬▬    SCHOOL High Road Academy DATE: 5/25/05

| PARTICIPANTS: | PARTICIPANTS: (Sign Name) | DISCIPLINE |
|---|---|---|
| Meehan Riordan | Meehan Riordan | social worker |
| Marian Murphy | Marian Murphy | Grandmother |
| Debuta Wilkins | Deluta Wilkins | Student |
| Annie R. Pressley | Annie R Pressley | Edu. Advocate |
| Shanon Redman | S Redman | Director |

Introductions made.
Copies of IEP and evals provided to educational
advocate and grandmother.
At 230 Ms. Harrison is attempted to be
contacted multiple times by Ms. Redman.
LEA unavailable. Mtg continues.
30 day review continues without her.
Based on information MDT team feels/
determined to be appropriate placement

for D▮▮▮▮ for current school year, ESY services as well as the academic year 2005-2006.

Student and guardian are in agreement c̄ summer school and placement.

## Comp ed

Advocate requests tracker forms from 2005 - present Students placement at High Road including all related services for the comp ed issues satisfaction

## Additionally team request

psychoeducational testing to be updated as it is expired (5/6/09) to be done within 30 days to assess additional needs possibility.

Further requested that psychological counseling be increased to 1.5 hours in order to participate in group counseling as well as individual counseling per the High Road Model.

It is noted that D▮▮▮▮ is behind in Math + Reading and is hoped to be an academic focus.

D▮▮▮▮ reports doing well at this time. All are happy with High Road as a placement.
Mtg adjourned.

297

📁 **FILE**   *Dw-B*

# Law Offices,
## Christopher N. Anwah, PLLC
**Attorneys and Counselors at Law**

Christopher N. Anwah, Esq.
   (DC, MD, NJ)
Fatmata Barrie, Esq.
   (DC, FL)
Panya Monford, Esq.
   (MD)

**Carpenter's Building**
1003 K Street, N.W.
 Suite 565
Washington, D.C. 20001
Phone: (202) 626-0040
Fax: (202) 626-0048
Email:chrisanwahfirm@chrisanwahfirm.com

June 19, 2005

**By Fax: (202) 396-8229**

Mr. Wallace R. Henry III
Special Education Coordinator
Friendship-Edison Collegiate Academy
4095 Minnesota Avenue, N.E.
Washington, D.C. 20019

          RE:  D█████ W█████
          DOB:  ████789

Dear Mr. Henry:

Our office is writing to request that Friendship-Edison Collegiate Academy ("FE") provide us with tracker forms for all specialized instructions and related services that D█████ was entitled while attending FE and until he transferred out of FE. We are requesting that FE provide us this information no later than **Thursday, June 23, 2005 by close of business**. If you have any questions, you may contact the undersigned staff personnel at either (202) 626-0040 or (202) 270-9156.

Thank you for your prompt attention and cooperation regarding this matter.

Sincerely,

Annie R. Pressley, J.D.
Education Advocate for Christopher Anwah, Esq.
Attorney for D█████ W█████

cc:    Client's file

# Law Offices,
## Christopher N. Anwah, PLLC
Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
   (DC, MD, NJ)
Fatmata Barrie, Esq.
   (DC, FL)
Panya Monford, Esq.
   (MD)

**Carpenter's Building**
1003 K Street, N.W.
 Suite 565
Washington, D.C.  20001
Phone: (202) 626-0040
Fax: (202) 626-0048
**Email: chrisanwahfirm@chrisanwahfirm.com**

## FACSIMILE  COVER  LETTER

**DATE:**
    June 19, 2005

**TO:**
    Mr. Wallace R. Henry III OR Designated Agent

**COMPANY**
    Friendship/Edison Collegiate Academy

**FAX NUMBER:**
    (202) 396-8229

**FROM:**
    Christopher Anwah, Esq./Annie R. Pressley, J.D. - Education Advocate

**TOTAL NUMBER OF PAGES INCLUDING COVER SHEET** _2_

**MESSAGE: DOCUMENT REQUEST RE: TRACKER FORMS FOR D█████ W█████**
   **DOB: █████/89**

If there is any problem with this transmission, please call as soon as possible at (202) 626-0040

### *** CONFIDENTIALLY NOTE ***

The pages accompany this facsimile transmission contain information from the CHRISTOPHER ANWAH, ESQ. law offices which is confidential or privileged, or both.  The information is intended to be for the use of the individual or entity named on this cover letter.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.  If you have received this facsimile in error, please notify us by telephone immediately at (202) 626-0040 so that we can arrange for the retrieval of the original documents at no cost to you.

Mar. 1. 2005  4:38PM   Dalton, Dalton,& Houston                    No.8193   P. 8/1 DN-14

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.
INDIVIDUALIZED EDUCATIONAL PROGRAM

DCPS - IEP Page 1 of 4
Additional Comments ☐

## I. IDENTIFICATION INFORMATION

Student Name: Last _____ First _____ M.I. ___

Student ID# 00382903  Soc. Sec. No. _____ Age: 14  Grade 9

Gender ☒M ☐F  Date of Birth _____  Ethnic Group  African American

Address  5019  11th Street NE
         Washington, DC 20017

☐ Non-attending

Attending School  S.E.C.A.    Home School  Cooling SHS

☐ Elem. ☐ Middle/Jr.HS ☐ CHS /

Parent  Marion Murphy

Address (if different from student):  ☐ Parent ☒ Guardian ☐ Surrogate

Telephone: Home 2/ 823-048  Work 2/ 423-8153

### II. CURRENT INFORMATION

Date of IEP Meeting: 9/17/04
Date of Last IEP Meeting: 4/22/04
Date of Most Recent Eligibility Decision: 9/17/04

Purpose of IEP Conference:
☐ Initial IEP   ☒ Review of IEP
☐ Requested Eval.   ☐ 3yr Reeval.

Indicate Level of Standardized Assessment:  III

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| BEHAVIOR | | TRANSPORTATION |
| --- | --- | --- |
| EBY | | ☒ TRANSITION |

## III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
| --- | --- | --- | --- | --- | --- |
| Student | English | English | English | / | Oral |
| Parent | English | English | English | | Rdg / Written |
| Home | English | English | | | Informal |
| | | | | | Date |

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING Genl Ed Spec Ed | FREQUENCY Hr/ Mo DW/M | PROVIDER By Specialist | BEGINNING DATE MM/DD/YYYY | DURATION # Weeks |
| --- | --- | --- | --- | --- | --- |
| Specialized Instruction | 15/15 | hr  D | Special Ed. Teacher | 9/20/04 | 10 mos |
| Psychological Counseling | .5 .5 | m  D | | 9/20/04 | 10 mos |
| | | | | | |
| TOTAL | 15 15 | Hours Per Week | | | |

### V. Disability(ies)

LD

☐ (Check if setting is general Ed.)

Learning Disabled

Percent of time in Specialized Instruction and Related Services
☐ 0-20%  ☐ 21-60%  ☐ 61-100%

Percent of time NOT in a Regular Education Setting  42%

## VI. IEP TEAM (Participants in the development of the IEP)

Print and also sign name below:

| | |
| --- | --- |
| Amira Murphy  parent | Amira Murphy |
| Charles M.  Sped. Coordinator | Charles Blymn |
| | Psychologist | |
| | Principal | |
| Barbara Larger  General Ed. teacher | Barbara Larger |
| S. Green | |

☒ I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature  Amira Murphy    Date  9-17-04

District of Columbia Public Schools   07-02 2001   Division of Special Education   Appendix A   IEP Page 1 of 4

300

Mar. 1. 2005  4:39PM   Dalton, Dalton,& Houston                    No.8193   P. 9/23

| Student Name | Dashanta Walk | Managing Schoolss | Friendship-Edion College OCR's - nur |
| Student ID Number | 00 382703 | DOM | Attending School | Chhbt | Page 2 of 4 |

**VII. Present Educational Performance Levels in Areas Affected by the Disability**    Additional Comments: ☐

Academic Areas (Evaluator)  C Williams
Math Strength:
Dashanta Dtkalwkin is on 6-7 grade level

Impact of disability on educational performance in general education curriculum:
Calcalation problems above 7th grade may
be goale discult for him

Reading Strength:
Reading fluency is a strength at 7.1 grade level

Impact of disability on educational performance in general education curriculum:
passage compreheniun is limited at 5th grade level

Communication (Speech & Language) (Evaluator)
Strengths:

Impact of disability on educational performance in general education curriculum:

Mental/Health (Evaluator)
Strengths:

Impact of disability on educational performance in general education curriculum:

Social Emotional Behavioral Areas (Evaluator)
Strengths:

Impact of disability on educational performance in general education curriculum:

Cognitive/Adaptive Behavior: (Evaluator)
Strengths:

Impact of disability on educational performance in general education curriculum:

Prevocational Skills: (Evaluator)
Strengths:

Impact of disability on educational performance in general education curriculum:

Scores When Available
Math Cal 9-5.8/6. 7
Math Red.
See goal page:
Date: 9/17/04
Rdg. Comp 3= 90/76
Rdg. Basic
Written Ex 55=138/18-07
See goal page:
Date: 9/17/07

Score(s) When Available
Exp.Lang.
Rec. Lang.
Artic
Voice
Fluency
Exp. Voc.
Rec. Voc.
See goal page:
Date:

Score(s) Results When Available
See goal page:
Date:

Score(s) When Available
See goal page:
Date:

Score(s) When Available
See goal page:
Date:

Score(s) When Available
See goal page:
Date:

301

Mar. 1. 2005  4:39PM    Dalton, Dalton, & Houston                    No.8193   P. 10/23

| Student Name ~~████ ████████~~ | | Managing School | | | DC78 - IEP |
| Student ID Number ~~0B0382703~~ | DCB | Attending School VLCPCS | | | Page 3 of 4 |

| YEL SPECIALIZED SERVICES | Additional Comments: | | Goal Number: |
| | Area addressed by goal: SOCIAL—EMOTIONAL | | |

**ANNUAL GOAL:** (Including mastery criteria.)

D██████ will develop appropriate thinking and Social Relatedness skills

**Provider(s):** School counselor

*Consider acquisition, behavior, transition, degree and evaluation.*

| SHORT-TERM OBJECTIVES (Include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Attend to tasks without becoming Frustrated | | |
| Sit still during group activities | | |
| Attempt tasks before responding "I can't" or "I don't know how" | | |
| Attend to work time tasks until they are completed before moving on to another task | | |
| Participate in group activities | | |
| Demonstrating continuing growth in social interactions | | |
| Accept the give and take of interactions with peers and adults | | |

**EVALUATION PROCEDURE(S)**

( Portfolio  Log ) Chart  Test  Documented Observation  Report  Other _____

302

Mar. 1. 2005  4:39PM     Dalton, Dalton,& Houston                          No.8193   P. 11/23

Area addressed by goal: **Math**

ANNUAL GOAL:

D____ will demonstrate 1years progress in applied Math skills moving him from grade level to grade level through Mastery of the following short term goals

Provider(s): General Ed and SPED Teacher

| SHORT-TERM OBJECTIVES | Date Mastered | Evaluation Schedule |
|---|---|---|
| Multiply 1 digit by 2 digits — Multiply 2 digits by 3 digits with and without Regrouping with 70% accuracy | | Monthly |
| Divide by a 2,3, digit divisor with and without a remainder with 80% accuracy | | Monthly |
| Solve simple word problems involving 1, 2, 3 step operation with 80% accuracy | | Monthly |
| Add, substract, like, and unlike fraction with 70% accuracy complete fractional computations with 70% accuracy | | Monthly |
| Identify the place value of a number with 80% accuracy | | Monthly |
| Student will complete fractional computations with 70% accuracy | | Monthly |

EVALUATION PROCEDURE(S)

Portfolio    Log    Chart    Test    Documented Observation    Report    Other

Mar. 1. 2005  4:40PM   Dalton, Dalton,& Houston                    No.8193   P. 12/23

Student Name: _____ W_____    Managing School: VLCPCS

Student ID Number: 000782203  DC1 ____ 89    Attending School: H

DCPS ID #: ___
Page 4 of 4

Additional Comments:

**IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION SERVICE ALTERNATIVES**

Can curricular modifications, accommodations and/or Supplemental aids and services be used for a LRE setting in regular education?   Yes   No

Explanation for removal out of regular education placement.

D_____ is unable to be academically successful
in the general education classroom without
proper support

**X. Supplementary Aids and Services**

| Classroom Needs (List All "other" products or services) | EXISTING ConEd SoEd Total | FREQUENCY Hr/ Wk | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yy) |
|---|---|---|---|---|

Check and list modifications and/or accommodations, for testing:   None needed

Timing/Scheduling: Extended time
Setting: Small group
Presentation: Repeat and Rephrase direction, list of direction
Assistive:
Equipment: Calculator, ruler

**XI. STATE AND DISTRICT ASSESSMENTS:**

Level I   Tested with non-modified standard assessment procedures without accommodations.

Level II   Describe non-standard conditions for level III Tested under non-standard conditions w/ & particular accommodations.

Level V   Portfolio

Level III   Describe alternate measures (for level III) Tested under standard conditions with alternate accommodations, etc.

Level IV   Reasons for alternate assessment.

**XII. Areas Requiring Specialized Instruction and Related Services:**   Modifications:

Reading   Math/Calculation   Transition   Language Arts-English
Mathematics   Social Emotional   Vocational   Social Science
Written Expression   Physical Development   Independent Living   Biological & Physical Sciences
Other:   Speech/Language   Fine Arts
None   Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

**XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION**

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT/IEC* REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| Maximum Inclusion = Combination General Education | Accept | None |
| General Education | Reject | School failure |
| Out of General Education | Reject | not LRE |

Modifications/Accommodations: to address the harmful effects:

Specialized Instruction & Psychological Counseling

Location for Services:

District of Columbia Public Schools    07-31-2001    Division of Special Education    Appendix - A    IEP Page 4 of 4

304

DW-15

**Dr. George Rutherford III**

**Principal**

**Ideal        Academy, Public**

**Charter School**

**100  Peabody  St. N.W.**

**Washington,       DC 20011**

Marian Murphy
    5019 11th Street N>E>
    Washington DC 20017
    May 7, 2002

Dis

Mr. Rutherford:

In September 2001, the beginning of the school year, I came to you with the transfer for D̶█████
Wilkins, along with his 504 plan  for his learning disability from his previous school and his
Psychological report. I discussed a plan with you  for a review and  a plan for educational assistance
for ADHD.  ADHD was diagnosed  before he came to Ideal.  He has recently been retested  and
the diagnosis remains the same.  I was told by you a plan would be put into effect and he would
be retested by your school.  This never happened, to this date you have never mentioned testing
nor implemented any type of special help. He never received any help for ADHD fro Ideal School.
According to my manual for the District Government, it states private or public schools are in
Violation of State and Federal law if provisions are not made for persons, with learning disabilities.
Mr Tundi, Earth Science, Mr Akelle Social Studies, and Ms. Marina –Spanish, have all told me
There is nothing wrong with  him as far as having a disability, yet on all of their progress reports,
Is stated by the teachers, he is working below his ability, he is distracted, his attention span is short.
These are all symptoms of ADHD.

After I went to the Advocates for Justice, Attorney Chike Ijeabuonwu,  mental and now physical,
Harassment  has  happened to him at your school.  On April 10,2002 , after half the school year
Has passed , without any  misconduct from him, he is accused of using profanity in Spanish class
And threatened suspension by Mr. Kenan,  Assistant Principle, yet no adult , teacher nor guest
Could point him out as using profanity. This caused him a lot  of mental anguish thinking he was
Going to be suspened for something he did not do.  He was under a doctors care, from April  11,
Thru April 15,2002, a  doctor's statement was sent to your school. After returning to Ideal on
April 15th,  he was again attacked,  physically this time.  Mr. David McCoy, attacked him for no
Reason that he can understand.  On April 18, after seeing his face, when I  picked him up, I
Attempted to come on the school grounds to see you and I was prevented by Mr. David McCoy
Himself.  Mr. McCoy told me  Mr. Rutherford is off the school premises.

Because of his attack  he is under medical care, and psychiatric care.  I called you on April 19,
And spoke to Ms. Gainor in the office, I left a message for you to call me, I have not received
A call from you or any officials at your school.

The Fourth District Police, have been in touch with you . According to the detective, I spoke to
On May 3,2002  he is waiting for a list of the students who witness the attack or who was in
The class as the time and to  speak to Mr. Jason, Physical Ed. Teacher who had knowledge
Of the attack.  I understand Mr. Jason, made you aware of the attack on D█████. The
Officer states each time he has been there Mr. Jason has been unavailable.  I  would like to
Know what action has been taken against Mr. McCoy, and what can be done to safely permit
D█████ to complete his time at your school this year or can some other method  of completing
This term be put into effect as soon as possible.

305

● Page 2                                                    May 7, 2002

Medical reports, pictures of injury are available.

Sincerely,

Mrs. Marian Murphy

cc:

Ms. Linda Mckay
DC Public Chartered School Board

Mr. Justin Blum,
Washington Post

NAACP Northwest Branch

Congresswoman, Elenore Norton Holmes

Attorney Chike Ijeabuonwu
Advocate for Justice

Advocate For Justice Child Abuse unit

Kevin Chavous,Councilmember

DW-16

## PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS

## SECTION 504 SUMMARY OF MEETING

To the Parents/Guardians of: ~~D███████ W█████~~          Date of Meeting: 4-24-01
Student Number: 000382703                                  Date of Birth: ~~████~~-89
School: Berkshire Elementary School                        Grade 6

**I.   Purpose of the Meeting:**

Review Section 504 Plan

**II.   The Following Determinations Were Made:**

· Communication regarding assignments between parent/grandmother and team of teachers.
· Parent/grandparent will review homework at home.
· Ask for help with work if needed.
· Student will turn in completed assignments.

**III.   Results:**

Plan was revised for the next school year. The plan will be reviewed in September 2001.

**IV.   Suggested Follow-Up:** (e.g. referral for follow-up care, special transportation, referral to other agencies, refer for Special Education Screening).

1. _____          By: _____

2. _____          By: _____

3. _____          By: _____

**V.   Members Present:**

| Name (Signatures) | Title |
|---|---|
| Heather M. Hanna | RRT |
| Isoke J. Mlin | Classroom teacher |
| Rhonda B. Tenenbaum | Counselor |
| Andrea H. Sanden | SCP |
| Sandra Collins | Comer SDP Facilitator |
| Joanne Jenkin | Reading Specialist |

PS-163G (2/99)
PGIN 7540-3080          White: Parent/Guardian          Canary: Cumulative Folder

307

Marian Musker-Grandmother

**PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS**
## Section 504 Accessibility Plan

| | School Berkshire Elem. | Disability Condition ADHD | Meeting Date 4/24/01 |
|---|---|---|---|
| Student # 000 382 703 | Check One: ___ Initial Plan ✓ Review Plan | Date To Be Reviewed Sept. 2001 | |

| Accommodations/Services | Responsible Person | Time Line |
|---|---|---|
| Communication regarding assignments between parent/grandmother and team of teachers (communication via homework planner, Phone, Internet (if available) | Teachers Mother/Grand-mother | Daily |
| Check with teachers if help is needed. Ask Grandmother to check work. Write assignments in notebook. Turn in completed assignments | ~~Delonda~~ Watkins | Daily |
| | | |

| | Title | | Review Result | Comments: |
|---|---|---|---|---|
| ___ | Counselor | ___ | Successful/Continue | |
| ✓ | Reading Specialist | ___ | Revise (see new plan) | |
| ___ | Comer SDP Facilitator | ___ | Refer for Special Education | |
| = | Speech Lang Pathlog | | | |
| _ | RRT | | | |
| = | Grandmother | | | |

Page _1_ of _1_

White Copy: Student Cumulative Folder          Canary Copy: Parent/Guardian          Pink Copy: Teacher

308

# PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS
## Section 504 Accessibility Plan

| Student | School | Disability Condition | | Meeting Date |
|---|---|---|---|---|
| D███████ W████ | Berkshire Elem. | ADHD | | 9/24/01 |
| Date of Birth | Grade | Student # | Check One: | Date To Be Reviewed |
| ██/8-9 | 6 | 000 382 703 | ☐ Initial Plan  ☑ Review Plan | Sept, 2001 |

| Problems Identified | Accommodations/Services | Responsible Person | Time Line |
|---|---|---|---|
| Does not complete and turn in classwork and homework assignments | Communication between parent/grandmother and team of teachers (communication via homework planner, Phone, Internet if available) | Teachers/Grand-mother/Mother | Daily |
| | Check with teachers if help is needed. Ask Grandmother to check work. Write assignments in notebook. Turn in completed assignments | D██████ W████ | Daily |

**Team Members:**

| Name | Title |
|---|---|
| Rhonda Tenenbaum | Counselor |
| S████████ S██████ | Reading Specialist |
| L████ n Collins | Gen. SDS Specialist |
| L████ S████ | Tech & Sec. Teacher |
| I████ M████ B██ | |
| M████ y M████ | School Psycholog. |

PS-163B (2/99)
PGIN 7540-3080

White Copy: Student Cumulative Folder    Canary Copy: Parent/Guardian    Pink Copy: Teacher

**Review Result**
— Successful/Continue
— Revise (see new plan)
— Refer for Special Education

**Comment:**

Page 1 of 1

309

Prince George's County Public Schools
Upper Marlboro, Maryland 20772

## Parental Permission for Psychological Services

☑ I hereby give my consent for my son/daughter, D̶e̶l̶o̶r̶e̶s̶ W̶i̶l̶k̶i̶n̶s̶

Birth Date _____ - 89 at **Berkshire ES**
School to receive the below indicated psychological services.

☐ Individual Psychological Counseling     ☐ Group Psychological Counseling

☑ Other (Specify) ___attentional screening___

☐ Psychological Evaluation which may include one or all of the following:
- An intelligence test, individually administered, to assess general current level of intellectual functioning.
- Perceptual test(s), individually administered, to assess general maturational level of perceptual
- An achievement test, individually administered, to assess grade level of school achievement.
- Projective tests(s), individually administered, to assess general current level of emotional functioning.
- A diagnostic interview conducted to further assess general level of functioning.
- Additional diagnostic instruments as may be indicated by the specific problems presented.

When an evaluation has been completed, an interpretive conference with parents and professional staff relative to results and recommendations will be conducted. The Psychological Evaluation Report will be maintained in a Limited Access Folder available for review as prescribed by Board of Education Record Policy and Procedures (Number 5125).

I have been given the opportunity to ask any questions pertaining to the above items and have received necessary information relative to my questions.

**Shannon Holmes Psy. M.**
Certified School Psychologist

**Oxon Hill Staff Dev. Center**
Office

**(301) 749-4384**
Phone

May 2, 2000
Date

_Signature of Parent/Guardian_

6409 Penn Ave # 202
Address

Forestville MD 20747

(301)576-5774 (H) (301)853-3102 (W)
Phone

5-2-00
Date

310

PS-33 Rev. 9-85

03/16/2005  10:03  2024425556          STUDENT HEARINGS OFF          PA( DW-17

# District of Columbia Public Schools
## State Enforcement and Investigation Division
### *confidential*

H. St. Clair, Esq., Due Process Hearing Officer
825 North Capitol Street, NE  8th Floor
Washington, D.C. 20002
Facsimile: (202) 442-5556

| | | |
|---|---|---|
| **In the Matter of** | ) | **IMPARTIAL** |
| | ) | **DUE PROCESS HEARING** |
| D██████, W██████, student | ) | |
| Date of Birth: ████████, 1989 | ) | |
| | ) | **DECISION AND ORDER** |
| Petitioner, | ) | |
| | ) | Request Date:  February 3, 2005 |
| versus | ) | Hearing Date:  March 8, 2005 |
| | ) | |
| | ) | |
| **Friendship-Edison Pub. Charter School** | ) | Held at:  825 North Capitol Street, NE |
| | ) | Eighth Floor, Hearing Room 2 |
| and | ) | Washington, D.C. 20002 |
| | ) | |
| **The District of Columbia Public Schools,** | ) | |
| Home School: Not listed, | ) | |
| Attending: Friendship-Edison Pub. C. S., | ) | |
| | ) | |
| Respondent. | ) | |

**Parent:**               Marian Murphy
                          5019 11th Street, NE
                          Washington, D.C. 20017

**Counsel for the Parent/Student:**   Fatmata Barrie, Esq.
                          **Christopher N. Anwah, P.A.**
                          1010 Vermont Avenue, NW, Suite 600
                          Washington, D.C. 20005

i

311

| | |
|---|---|
| **Counsel for Friendship-Edison PCS:** | Paul S. Dalton, Esq.<br>**Dalton, Dalton & Houston, P.C.**<br>1008 Pendleton Street<br>Alexandria, Virginia 22314-1837 |
| **District of Columbia Public Schools:** | Michael Levy, Esq., Attorney-Advisor<br>**Office of the General Counsel, DCPS**<br>825 North Capitol Street, NE  9th Floor<br>Washington, D.C. 20002 |

An  INDEX of NAMES  is attached hereto for the benefit of the parties.  The index will permit the parties to identify specific witnesses and other relevant witnesses.  The index will be detached before release of this  DECISION & ORDER  as a public record.

ii

## INDEX of NAMES for Delante W███████

**Hearing Date:** March 8, 2005

Appearing on behalf of DCPS:  None.

Appearing on behalf of the parent/student: None.

No testimony was received.

iii

313

## INTRODUCTION

On February 3, 2005, Counsel for the Parent filed the herein Request for Mediation/ Hearing on behalf of the parent and student complaining the District of Columbia Public Schools (DCPS) and Friendship-Edison Public Charter School (FEPSC) denied a Free Appropriate Public Education (FAPE) to the student. Specifically, Counsel for the Parent complained of violation of the SETTLEMENT AGREEMENT entered into by the parties on June 24, 2005.

The Student Hearing Office, DCPS, scheduled a hearing in this matter for 11:00 A.M., Tuesday, March 8, 2005 at DCPS Headquarters, Hearing Room 2, 825 North Capitol Street, NE 8th Floor, Washington, D.C. 20002. The hearing convened as scheduled.

## JURISDICTION

The hearing convened under Public Law 105-17, The Individuals with Disabilities Education Act Amendments of 1997, 20 United States Code 1400 et. seq.; Title 34 of the Code of Federal Regulations, Part 300; and Title V of the District of Columbia Municipal Regulations.

## SUMMARY of the EVIDENCE  and  FINDINGS of FACT

By facsimile dated March 1, 2005, DCPS disclosed 6 witnesses along with a Motion to Join Party and a Motion to Compel a Specific Witness; the Motions were also dated March 1, 2005.

By facsimiles dated February 16th, March 1st and 7th, 2005, the parent disclosed 6 witnesses and 12 documents.

By facsimile dated February 16, 2005, FEPCS disclosed 7 witnesses and 2 documents. The documents were placed into the record and are referenced/footnoted herein where relevant.

On March 2, 2005, Counsel for FEPCS filed a Motion for Dismissal against FEPCS that was GRANTED on March 7, 2005.

As a preliminary matter, DCPS moved that the March 7, 2005 ORDER dismissing FEPCS as a party be set aside representing that issues in the Request for Mediation/Hearing concerned FEPCS; that DCPS expected the three Motions to be ruled upon at the instant hearing.

Here, the hearing officer GRANTED the Motion to Set Aside the March 7, 2005 ORDER dismissing FEPCS as a party as it related to issues of compensatory education from the date of matriculation of the student to FEPCS to the date of this DECISION & ORDER.

The hearing officer ordered the hearing forward of the issue of breach of the June 24, 2004 SETTLEMENT AGREEMENT, Parent Document No 2.

Counsel for the Parent represented that on June 24, 2004 the parent and DCPS agreed to independent evaluations and an MDT meeting; that the parent forwarded the independent evaluations to DCPS, requested an MDT meeting both from the previous Attorney-Advisor and the Office of Complianc, DCPS, and that, to date, DCPS had done nothing to convene the agreed upon MDT meeting.

1 of 3 pages

314

DCPS did not controvert.

The hearing officer directed a **Finding for the Parent: Denial of FAPE, failure to perform as agreed in the June 24, 2004 SETTLEMENT AGREEMENT** and ordered the hearing forward on the issue of educational benefit at the High Road Academy of Washington, D.C.

DCPS stipulated to educational benefit for the student at the High Road Academy of Washington D.C.

In consideration of the foregoing, the hearing officer made the following

# ORDER

1.  On an interim basis with transportation for the balance of the 2004-05 School Year, DCPS shall place and fund the student at the High Road Academy of Washington, D.C.

2.  Within 30 days of matriculation of the student at the High Road Academy of Washington, D.C., DCPS will convene an MDT/IEP/Placement meeting during which evaluations will be reviewed, the IEP reviewed and revised as appropriate and placement discussed and determined. If a DCPS placement is recommended, a Notice of Placement will be issued within 5 schooldays of the said meeting; if a non-public placement is recommended, a Notice of Placement will be issued within 30 days of the said meeting.

3.  At the said MDT/IEP/Placement meeting, the form, amount and delivery of compensatory education up to the date the student matriculated to FEPCS, if any, will be discussed and determined. For disputes under this paragraph, DCPS or the parent may request a hearing.

4.  For the said MDT/IEP/Placement meeting, scheduling is to be through and notices are to be sent to Counsel for the Guardian Parent except that, for everyday of unavailability of parent/educational advocate/Counsel for the Guardian Parent, the deadline herein will be extended one day. For

2 of 3 pages

315

disputes under this paragraph, with the burden of
proof on DCPS, documentation of the parties will be
relied upon to determine the good faith of each party.

4.  Issues concerning compensatory education from
the date of matriculation of the student at FEPCS to
the date hereof are reserved to the parties,
respectively.

**This is THE FINAL ADMINISTRATIVE DECISION. Appeal can be made to a court of
competent jurisdiction within thirty (30) days of the issue date of this decision.**

Date: March 15, 2005

H. St. Clair, Esq., Hearing Officer

Issued: 3-16-05

Student Hearing Office, DCPS

3 of 3 pages

316

TRANSMISSION VERIFICATION REPORT

```
                                        TIME  : 08/11/2005 17:01
                                        NAME  :
                                        FAX   :
                                        TEL   :
                                        SER.# : BROK3J760429
```

```
        DATE,TIME                       08/11  15:40
        FAX NO./NAME                    3994387
        DURATION                        01:21:28
        PAGE(S)                         74
        RESULT                          OK
        MODE                            STANDARD
                                        ECM
```

317



# LAW OFFICES,
# CHRISTOPHER N. ANWAH, PLLC

**Attorneys and Counselors at Law**

Christopher N. Anwah, Esq.
(DC, MD, NJ)
Fatmata Barrie, Esq.
(DC, FL)
Georgina A. Oladokun, Esq.
(MD)

Carpenter's Building
1003 K Street, N.W.
Suite 565
Washington, D.C. 20001
Phone: (202) 626-0040
Fax: (202) 626-0048
Email: chrisanwahfirm@chrisanwahfirm.com

## FACSIMILE COVER LETTER

DATE: 08/11/05

TO: W. Dexter, Esq.

COMPANY: Ideal Academy Public Charter School

FAX NUMBER: 202-399-4387

FROM: Fatmata Barrie, Esq.

RE: 5-day for D███████ W██████

TOTAL NUMBER OF PAGES INCLUDING COVER SHEET      76

MESSAGE:

If there is any problem with this transmission, please call as soon as possible at (202) 626-0040

***CONFIDENTIALITY NOTICE***

The pages accompanying this facsimile transmission contain information from the Law Office of Christopher Anwah, PLLC, which is confidential or privileged, or both. The information is intended to be for the use of the individual or entity named on this cover letter. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this facsimile in error, please notify us by telephone immediately at (202) 626-0040 so that we can arrange for the retrieval of the original documents at no cost to you.

318

**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

*Office of the Superintendent*
**Office of the General Counsel**
825 North Capitol Street, N.E., 9th Floor
Washington, D.C. 20002-4232
202-442-5000  Fax # 202-442-5098
*www.k12.dc.us*

August 10, 2005

Fatmata Barrie, Esquire
Christopher Anwah's Law Offices
Attorney at Law
1003 K Street, NW
Suite 500
Washington, D.C.  20001

<u>**By Facsimile: 202-626-0048**</u>
<u>**Number of Pages:   2**</u>

*Re:*   **D████ W████**
**DOB:** ████/89
**ID#:**

## *Disclosure Notice*

Dear Ms. Barrie:

At the upcoming due process hearing in the above-referenced matter, that is scheduled for **Thursday, August 18th at 9:00 a.m.** and pursuant to **34 C.F.R. 300.509(a)(3).** In addition to any documents and witnesses disclosed by the parent, DCPS may rely upon any of the following witnesses/documents:

## Witnesses

MaryLee Phelps*, or her designee(s), Interim Chief for Sp. Ed. Reform, Sp. Ed. Div.
Carol Helton*, or her designee(s), Assistant Director, School Support Services
Linda Smalls*, or her designee(s), Compliance Specialist, Sp. Ed. Div.
Koliwe Moyo*, or her designee(s), Compliance Specialist, Sp. Ed. Div.
Principal, High Road School
Special Education Coordinator, Ideal Public Charter School
Special Education Teacher, Ideal Public Charter School
Dwight Thomas, or his designee(s), Placement Specialist/Monitor, Sp. Ed. Div.
School Psychologist, Sp. Ed. Div.
Speech/Language Pathologist, Sp. Ed. Div.
Clinical Psychologist, Sp. Ed. Div.
Social Worker, Sp. Ed. Div.

*Witnesses who may testify by telephone

*Children First*

319

Page 2
Disclosure Notice for D██████ W██████, DOB: ██████/89

DCPS reserves the right to rely on any documents/witnesses presented by the parent if it deems relevant in this case.

If you wish to discuss any aspect of this case further, or have questions, please contact me at 202/442-5172.

Sincerely,

Karen J. Herbert
Attorney Advisor

cc:     Student Hearing Office

```
┌─────────────────────────────────────────┐
│   TRANSMISSION VERIFICATION REPORT        │
└─────────────────────────────────────────┘
```

```
                              TIME  : 07/21/2005 08:18
                              NAME  : STUDENT HEARINGS OFF
                              FAX   : 2024425556
                              TEL   : 2024425432
                              SER # : BROH3J608601
```

```
┌─────────────────────────────────────────────────────────────────┐
│   DATE,TIME              07/21  08:17                              │
│   FAX NO./NAME           96260048                                 │
│   DURATION               00:00:28                                 │
│   PAGE(S)                01                                        │
│   RESULT                 OK                                        │
│   MODE                   STANDARD                                 │
│                          ECM                                      │
└─────────────────────────────────────────────────────────────────┘
```

# District of Columbia Public Schools
## *Office of Compliance*
### STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



**HEARING NOTICE**

| MEMORANDUM VIA: [✗] FACSIMILE [ ] MAIL [ ] HAND DELIVERY |

TO:    Parent (or Representative): **F. BARRIE/W. DEXTER**    Fax No.: **626-0048**
                                                                        **399-4387**

LEA Legal Counsel: **K. HERBERT**

RE:    ~~W████████, D█████~~ and (LEA) DOB: ~~██~~/██/**89**
       Student's Name

FROM:    **SHARON NEWSOME**
         Special Education Student Hearing Office Coordinator

DATE SENT:    **7/20/05**

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on **6/30/05**. Please be advised that the hearing has been scheduled for:

DATE:    **8/18/05**

TIME:    **9:00 AM**

321

```
TRANSMISSION VERIFICATION REPORT
```

```
                    TIME : 07/20/2005 14:27
                    NAME : STUDENT HEARINGS OFF
                    FAX  : 2024425556
                    TEL  : 2024425432
                    SER.# : BROH3J608601
```

```
DATE,TIME            07/20  14:26
FAX NO./NAME         93994387
DURATION             00:01:17
PAGE(S)              01
RESULT               OK
MODE                 STANDARD
                     ECM
```

# District of Columbia Public Schools
## *Office of Compliance*
### STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556

### HEARING NOTICE

MEMORANDUM VIA: [✓] FACSIMILE [ ] MAIL [ ] HAND DELIVERY

TO:   Parent (or Representative): *F. BARRIE/W. DEXTER*    Fax No.: *626-0048*
                                                                    *399-4387*

LEA Legal Counsel: *K. HERBERT*

RE: *W_____, D_____* and (LEA) DOB: *___/89*
         Student's Name

FROM:   **SHARON NEWSOME**
        Special Education Student Hearing Office Coordinator

DATE SENT:   *7/20/05*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
*6/30/05*. Please be advised that the hearing has been scheduled for:

DATE:   *8/18/05*

TIME:   *9:00 AM*

322

# LAW OFFICES,
# CHRISTOPHER N. ANWAH, PLLC

Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
(DC, MD, NJ)
Fatmata Barrie, Esq.
(DC, FL)
Georgina A. Oladokun, Esq.
(MD)

Carpenter's Building
1003 K Street, N.W.
Suite 565
Washington, D.C. 20001
Phone: (202) 626-0040
Fax: (202) 626-0048
Email: chrisanwahfirm@chrisanwahfirm.com

## FACSIMILE COVER LETTER

DATE: 06/30/05

TO: SHO

COMPANY: SHO

FAX NUMBER: 202-442-5556

FROM: Fatmata Barrie, Esq.

RE: Hearing Request for D█████ W████,

TOTAL NUMBER OF PAGES INCLUDING COVER SHEET      06

MESSAGE:

If there is any problem with this transmission, please call as soon as possible at (202) 626-0040

### ***CONFIDENTIALITY NOTICE***

The pages accompanying this facsimile transmission contain information from the Law Office of Christopher Anwah, PLLC, which is confidential or privileged, or both. The information is intended to be for the use of the individual or entity named on this cover letter. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this facsimile in error, please notify us by telephone immediately at (202) 626-0040 so that we can arrange for the retrieval of the original documents at no cost to you.

323

1 – De████ Wi█████ (DOB: █████/89)

## STUDENT HEARING OFFICE OF THE DISTRICT OF COLUMBIA
## EXPEDITED REQUEST FOR MEDIATION/HEARING

➢ This form shall be used to give notice to the District of Columbia Public Schools and/or a District of Columbia Public Charter School of parental disagreement with the identification, evaluation or educational placement of their child with a disability, or the timely provision of a free appropriate public education to that child, and to request a hearing and/or mediation regarding the same.

➢ This form must be sent to the Student Hearing Office of the District of Columbia, 825 North Capitol Street, N.E., 8th Floor, Washington, D.C. 20002.  Fax number 202-442-5556

---

Federal law requires that when a parent or representative requests mediation, it shall be offered at no cost to the parent.  Mediation may be beneficial in your case.  Please indicate your decision:

___ I REQUEST MEDIATION  ___ I REQUEST MEDIATION AND A HEARING  _X_ I REQUEST A HEARING

---

### STUDENT FOR WHOM MEDIATION/DUE PROCESS HEARING IS REQUESTED

Student Name:  D█████ W███████                          DOB:  █████/89

Address:   5019-11TH STREET, N.E., WASHINGTON, D.C.  20017

Present School of Attendance: HIGH ROAD ACADEMY  Home School: UNKNOWN
                                                (Neighborhood school where child is registered)

**COMPLAINT IS MADE AGAINST:**    **DCPS, IDEAL PCS, and FEPC**
                                  DCPS and/or D.C. Public Charter School (specify)

### INDIVIDUAL REQUESTING MEDIATION/DUE PROCESS HEARING

Name:  MS. MARION MURPHY

Address:  5019-11TH STREET, N.E., ASHINGTON, D.C.  20017

Phone:  (H)   (202) 832-1048          (W)                  (Fax)

Relationship to Student: ___ Parent ___ Self  _X_  Legal Guardian ___ Parent Surrogate ___ Public Agency

### PARENT REPRESENTATIVE/ATTORNEY/ADVOCATE (if applicable):

**Name:  Fatmata Barrie, Esq.   (Christopher Anwah's Law Office)  Phone:  (W) (202) 626-0040**

Address:  1003 K Street, N.W., Suite 500, Washington, D.C. 20001  Fax: (202) 626-0048

---

Form 101

2 – D█████ W█████ (DOB: ██████/89)

1.  You must indicate three (3) dates when you and your representative (if you have one) are available within the next twenty (20) days for mediation (if you are requesting mediation) and/or three (3) dates within the next 35 days (or 30 days if you represent a student enrolled at ETS or Rock Creek Academy) when you, your representative, and witnesses will be available to appear for a hearing (if you are requesting a hearing). Please indicate whether you are available in the AM, PM, or both on the identified dates.

Hearings:  __July 25, 2005____    __July 26, 2005____    __July 27, 2005____
Mediation: _____

**FOR ALL DCPS STUDENTS, IF YOU PROPOSE DATES MORE THAN 35 DAYS FROM THE DATE OF YOUR REQUEST, YOUR SIGNATURE BELOW WILL INDICATE YOUR WAIVER OF YOUR RIGHT TO A HEARING OFFICER DETERMINATION WITH 45 DAYS OF THIS REQUEST. IN THE CASE OF A WAIVER, THE STUDENT HEARING OFFICE WILL CONTINUE TO USE BEST EFFORTS TO ISSUE A HEARING OFFICER DETERMINATION WITHIN 45 DAYS OF YOUR REQUEST (OR AS CLOSE TO 45 DAYS AS IS POSSIBLE).**

**FOR STUDENTS ATTENDING ETS OR ROCK CREEK ACADEMY, IF YOU PROPOSE DATES BEYOND THE 30-DAY PERIOD, YOUR SIGNATURE BELOW WILL INDICATE YOUR WAIVER OF YOUR RIGHT TO A HEARING WITHIN THAT PERIOD.**

Every effort will be made to accommodate your requested dates. Please be aware that proposed hearing dates which fall fewer than 21 days from the date of your request are difficult to accommodate. Your dates are most likely to be available if you propose hearing dates between 21 and 35 (or 30, for students enrolled at ETS or Rock Creek Academy) days from the date your request is received and docketed by the Student Hearing Office.

If none of your proposed dates are available, or if you fail to specify any dates, the Student Hearing Office will schedule your hearing for the first available date. Upon receipt of a Hearing Notice confirming the date of your hearing, you will have an opportunity to file a Motion for Continuance, if necessary, by using the form Motion attached to your Hearing Notice. *Please do not contact the Hearing Office by phone to request a continuance. Only the Hearing Officer assigned to your case is authorized to grant requests for continuances.*

Unless you receive notice that the Hearing Officer has granted your request for a continuance, you must appear for the hearing as scheduled. Failure to report for the hearing may result in dismissal of this case, or in a default decision against you. Disclosure of evidence and witnesses to the opposing party is required at least five business days prior to the hearing, with copies to the Special Education Student Hearing Office.

2. Special Accommodation Requests for Mediation/Due Process Hearing (please be specific):

        Interpreter
        ___ Foreign Language _____
        ___ Sign Language _____

_____

| Form 101 |
|----------|

3 – D█████ W█████ (DOB: ██/██/89)

Other _____
Special Communications _____
Special Accommodation for Disability _____
Other _____

3. In accordance with the Individuals with Disabilities Education Act (IDEA), please answer below:
   (You may attach additional pages to provide more information if needed.)

**Describe the nature of the problem**: Counsel for parent and student incorporates all previous IDEA violations in prior HODs, Settlement Agreements, Disciplinary Hearings, and Parent/Teacher Conferences.

**DCPS, IDEAL PCS & Friendship/Edison have failed to provide FAPE because it:**
1. Failed to provide student's triennials in a timely manner.
2. Failed to comply with the 03/16/05 HOD and to evaluate in all areas of suspected disabilities as recommended by the psychiatric evaluation. ie neuropsychological
3. Failed to provide the requested encounter tracker forms for all related services to determine compensatory education award owed to student.
4. Failed to complete initial evaluations and convene an MDT/IEP meeting to determine eligibility in a timely manner even though the grandmother has been requesting that DCPS provide her grandson with the services he needed since he was in the second grade when he started indicating signs of inattention.
5. Failed to provide special education services even though the grandmother provided evaluations to IDEAL PCS and the information from Maryland which indicated that he needed services.
6. Failed to develop an appropriate IEP because he has never received the full time intensive services he so desperately needed and his current IEP does not include the recommendations from his current evaluations and it is not yet a full time IEP.
7. Failed to provide all appropriate personnel at the last MDT/IEP as mandated by the IDEA.
8. Failed to provide D█████ with the appropriate educational services, related services, and placement from the second grade until his matriculation to High Road because although it was evident that D█████ had academic difficulties DCPS, Ideal PCS and FEPC did nothing to provide him with the intensive services that he needed.
9. Failed to provide compensatory education for the present and past denial of FAPE because problems 1 to 8 and for not convening a placement meeting when the Village Learning Center closed after the 2003-2004 SY.

**Describe issues to be addressed at the mediation and/or hearing, with specificity:**
**Did DCPS, IDEAL PCS & Friendship/Edison fail to provide D█████ FAPE when it:**
1. Failed to provide student's triennials in a timely manner.?
2. Failed to comply with the 03/16/05 HOD and to evaluate in all areas of suspected disabilities as recommended by the psychiatric evaluation. ie neuropsychological?
3. Failed to provide the requested encounter tracker forms for all related services to determine compensatory education award owed to student?
4. Failed to complete initial evaluations and convene an MDT/IEP meeting to determine eligibility in a timely manner even though the grandmother has been requesting that DCPS

Form 101

4 – D█████ W█████ (DOB: ██████/89)

provide her grandson with the services he needed since he was in the second grade when he started indicating signs of inattention?

5.     Failed to develop an appropriate IEP because he has never received the full time intensive services he so desperately needed and his current IEP does not include the recommendations from his current evaluations and it is not yet a full time IEP?

6.     Failed to develop an appropriate IEP because he has never received the full time intensive services he so desperately needed and his current IEP does not include the recommendations from his current evaluations and it is not yet a full time IEP?

7.     Failed to provide special education services even though the grandmother provided evaluations to IDEAL PCS and the information from Maryland which indicated that he needed services?

8.     Failed to provide D█████ with the appropriate educational services, related services, and placement from the second grade until his matriculation to High Road because although it was evident that D█████ had academic difficulties DCPS, Ideal PCS and FEPC did nothing to provide him with the intensive services that he needed?

9.     Failed to provide compensatory education for the present and past denial of FAPE because of issues 1 to 8 and for not convening a placement meeting when the Village Learning Center closed after the 2003-2004 SY?

**Describe relevant facts relating to the problem:**

Since the 2nd grade D█████ has had problems with inattention, retaining information and fidgeting in the classroom setting. He attended Rudolph Elementary school and had his academics were poor. In 2000 a psychological evaluation was conducted and it found that D█████ needed a "highly structured classroom environment with limited distractions." He attended school in MD briefly but upon his move back to DC, D█████ attended Backus MS for the 7th and 8th grades and IDEAL PCS and his grandmother provided the evaluation and documentation that he was in need of specialized services. However, the school did not provide those services nor did they convene a meeting to determine appropriate services. Therefore, he was denied FAPE and as a result, he is owed compensatory education.

Additionally, although he has been diagnosed with ADHD, the schools have not provided him with services to address that disability. In fact, none of his IEPs has accommodations for ADHD but it was discussed in the meeting notes. During his attendance at Village Learning Center the school knew that he needed someone to sit with him for him to complete his work. However, that issue was never addressed in his IEP. When Village Learning Center closed, DCPS did not convene a meeting to determine an appropriate placement. Instead, the grandmother had to look for a school. Although she identified FEPC, it was not the right environment for D█████ because he was not progressing and FEPC was not providing him with the intensity of services that he needed. Therefore, he was denied FAPE and as a result, he is owed compensatory education.

On 06/24/04, DCPS and parent's counsel entered into a settlement agreement in which DCPS was to fund independent evaluations and convene a meeting. Although parent's counsel completed the evaluations, forwarded them to DCPS, DCPS did not convene the meeting within the time frame required. As a result, parent's counsel notified DCPS office of compliance of the violation but again, no response from DCPS. A hearing was finally filed and an HOD issued on 03/16/05 in which DCPS

Form 101

327

5 – D▓▓▓▓ W▓▓▓▓ (DOB: ▓▓▓▓/89)

was ordered to place and fund D▓▓▓▓ at High Road and convene a meeting within 30 days of his attendance at High Road. DCPS did not convene the meeting within the time frame required.

On 05/25/05, the parent's advocate attended an MDT meeting that was previously confirmed. However, DCPS' LEA representative did not attend but informed High Road Academy personnel to go forward with the meeting without her. The MDT/IEP meeting was to develop his IEP, discuss placement, and to discuss compensatory education, per HOD. Since the LEA was not present, DCPS did not issue a prior notice of placement, per the HOD or discuss compensatory education because Friendship/Edison and DCPS have failed to provide the advocate with the encounter tracker forms for all related services that were requested prior to D▓▓▓▓ being placed at High Road Academy. Also, the psychologist and psychiatrist were not present at the MDT meeting to discuss and to interpret the psychological evaluation and the psychiatric evaluation. The decision was made that D▓▓▓▓ needed a psycho-ed re-evaluation because it was expired. The team agreed that it was to be done within 30 days. However, that evaluation was not completed.

Although the grandmother has been trying to have services for D▓▓▓▓, there have been other settlement agreements and HODs, including some from 2002 that DCPS has violated. Therefore, the grandmother is bringing forth this complaint to induce DCPS, IDEAL and FEPC to comply with IDEA, the HOD and provide D▓▓▓▓ with an appropriate IEP and compensatory education for the past and present denial of FAPE.

**State how you would like to see the problem corrected:** Ms. Murphy is seeking the following relief: (1) DCPS, IDEAL and Friendship/Edison to fund an independent comprehensive evaluations for all suspected disabilities; (2) to convene the MDT/IEP meeting within five (5) days of receipt of the independent evaluations; (3) to develop an appropriate IEP; (4) to provide all appropriate related and transition services, including transportation; (5) to provide Advocate copies of all tracker forms for all related services to determine the amount of compensatory education owed to student; (6) to honor the "stay put" provision of the IDEA for D▓▓▓▓ to remain at High Road Academy until all issues have been resolved; and, (6) DCPS to provide compensatory education for the past and present denial of FAPE.

_____                    _____June 30, 2005_____
Signature of Applicant/Parent (Required)                    Date (Required)

**MAIL, FAX, OR DELIVER APPLICATION TO:**
**Student Hearing Office of the District of Columbia**
**825 North Capitol Street, NE, 8ᵗʰ Floor**
**Washington, DC 20002 FAX: (202) 442-5556**

*FOR OFFICE USE ONLY:*
Case Number: _____
Student ID#: _____

Form 101                                    Revised 02/01/2003

Form 101

328

# District of Columbia Public Schools

## *State Enforcement and Investigation Division*
### <u>*confidential*</u>

H. St. Clair, Esq., Due Process Hearing Officer
825 North Capitol Street, NE   8th Floor
Washington, D.C. 20002
Facsimile: (202) 442-5556

| | | |
|---|---|---|
| **In the Matter of** | ) | **IMPARTIAL** |
| | ) | **DUE PROCESS HEARING** |
| ▮▮▮▮▮ W▮▮▮▮▮, student | ) | |
| Date of Birth: ▮▮▮▮▮, 1989 | ) | |
| | ) | **<u>DECISION AND ORDER</u>** |
| Petitioner, | ) | |
| | ) | Request Date:  February 3, 2005 |
| versus | ) | Hearing Date:  March 8, 2005 |
| | ) | |
| **Friendship-Edison Pub. Charter School** | ) | |
| | ) | Held at:  825 North Capitol Street, NE |
| and | ) | Eighth Floor, Hearing Room 2 |
| | ) | Washington, D.C. 20002 |
| **The District of Columbia Public Schools,** | ) | |
| Home School: Not listed, | ) | |
| Attending: Friendship-Edison Pub. C. S., | ) | |
| | ) | |
| Respondent. | ) | |

**Parent:**

Marian Murphy
5019 11th Street, NE
Washington, D.C. 20017

**Counsel for the Parent/Student:**

Fatmata Barrie, Esq.
**Christopher N. Anwah, P.A.**
1010 Vermont Avenue, NW, Suite 600
Washington, D.C. 20005

i

329

**Counsel for Friendship-Edison PCS:**    Paul S. Dalton, Esq.
**Dalton, Dalton & Houston, P.C.**
1008 Pendleton Street
Alexandria, Virginia 22314-1837

**District of Columbia Public Schools:**    Michael Levy, Esq., Attorney-Advisor
**Office of the General Counsel, DCPS**
825 North Capitol Street, NE  9th Floor
Washington, D.C. 20002

An INDEX of NAMES is attached hereto for the benefit of the parties. The index will permit the parties to identify specific witnesses and other relevant witnesses. The index will be detached before release of this DECISION & ORDER as a public record.

ii

330

**<u>INDEX of NAMES</u> for D██████ W██████**

**Hearing Date:** March 8, 2005

Appearing on behalf of DCPS: None.

Appearing on behalf of the parent/student: None.

No testimony was received.

iii

## INTRODUCTION

On February 3, 2005, Counsel for the Parent filed the herein Request for Mediation/ Hearing on behalf of the parent and student complaining the District of Columbia Public Schools (DCPS) and Friendship-Edison Public Charter School (FEPSC) denied a Free Appropriate Public Education (FAPE) to the student. Specifically, Counsel for the Parent complained of violation of the SETTLEMENT AGREEMENT entered into by the parties on June 24, 2005.

The Student Hearing Office, DCPS, scheduled a hearing in this matter for 11:00 A.M., Tuesday, March 8, 2005 at DCPS Headquarters, Hearing Room 2, 825 North Capitol Street, NE 8th Floor, Washington, D.C. 20002. The hearing convened as scheduled.

## JURISDICTION

The hearing convened under Public Law 105-17, The Individuals with Disabilities Education Act Amendments of 1997, 20 United States Code 1400 et. seq.; Title 34 of the Code of Federal Regulations, Part 300; and Title V of the District of Columbia Municipal Regulations.

## SUMMARY of the EVIDENCE  and  FINDINGS of FACT

By facsimile dated March 1, 2005, DCPS disclosed 6 witnesses along with a <u>Motion to Join Party</u> and a <u>Motion to Compel a Specific Witness</u>; the Motions were also dated March 1, 2005.

By facsimiles dated February 16th, March 1st and 7th, 2005, the parent disclosed 6 witnesses and 12 documents.

By facsimile dated February 16, 2005, FEPCS disclosed 7 witnesses and 2 documents.

The documents were placed into the record and are referenced/footnoted herein where relevant.

On March 2, 2005, Counsel for FEPCS filed a Motion for Dismissal against FEPCS that was GRANTED on March 7, 2005.

As a preliminary matter, DCPS moved that the March 7, 2005 ORDER dismissing FEPCS as a party be set aside representing that issues in the Request for Mediation/Hearing concerned FEPCS; that DCPS expected the three Motions to be ruled upon at the instant hearing.

Here, the hearing officer GRANTED the Motion to Set Aside the March 7, 2005 ORDER dismissing FEPCS as a party as it related to issues of compensatory education from the date of matriculation of the student to FEPCS to the date of this <u>DECISION & ORDER</u>.

The hearing officer ordered the hearing forward of the issue of breach of the June 24, 2004 SETTLEMENT AGREEMENT, Parent Document No 2.

Counsel for the Parent represented that on June 24, 2004 the parent and DCPS agreed to independent evaluations and an MDT meeting; that the parent forwarded the independent evaluations to DCPS, requested an MDT meeting both from the previous Attorney-Advisor and the Office of Complianc, DCPS, and that, to date, DCPS had done nothing to convene the agreed upon MDT meeting.

<div align="center">1 of 3 pages</div>

DCPS did not controvert.

The hearing officer directed a **Finding for the Parent: Denial of FAPE, failure to perform as agreed in the June 24, 2004 SETTLEMENT AGREEMENT** and ordered the hearing forward on the issue of educational benefit at the High Road Academy of Washington, D.C.

DCPS stipulated to educational benefit for the student at the High Road Academy of Washington D.C.

In consideration of the foregoing, the hearing officer made the following

# ORDER

1. On an interim basis with transportation for the balance of the 2004-05 School Year, DCPS shall place and fund the student at the High Road Academy of Washington, D.C.

2. Within 30 days of matriculation of the student at the High Road Academy of Washington, D.C., DCPS will convene an MDT/IEP/Placement meeting during which evaluations will be reviewed, the IEP reviewed and revised as appropriate and placement discussed and determined. If a DCPS placement is recommended, a Notice of Placement will be issued within 5 schooldays of the said meeting; if a non-public placement is recommended, a Notice of Placement will be issued within 30 days of the said meeting.

3. At the said MDT/IEP/Placement meeting, the form, amount and delivery of compensatory education up to the date the student matriculated to FEPCS, if any, will be discussed and determined. For disputes under this paragraph, DCPS or the parent may request a hearing.

4. For the said MDT/IEP/Placement meeting, scheduling is to be through and notices are to be sent to Counsel for the Guardian Parent except that, for everyday of unavailability of parent/educational advocate/Counsel for the Guardian Parent, the deadline herein will be extended one day. For

333

disputes under this paragraph, with the burden of
proof on DCPS, documentation of the parties will be
relied upon to determine the good faith of each party.

4.  Issues concerning compensatory education from
the date of matriculation of the student at FEPCS to
the date hereof are reserved to the parties,
respectively.

**This is THE  FINAL  ADMINISTRATIVE  DECISION. Appeal can be made to a court of
competent jurisdiction within thirty (30) days of the issue date of this decision.**

_____   Date: 3-15-2005 _____
H. St. Clair, Esq., Hearing Officer

Issued: _____
          Student Hearing Office, DCPS

3 of 3 pages

334

11 ə HRm²

# DUE PROCESS HEARING
## SIGN-IN SHEET

**STUDENT'S NAME:** D___ K_____

**HEARING DATE:** March 8, 2005

| PRINTED NAME | ON BEHALF OF DCPS OR STUDENT | TITLE |
|---|---|---|
| MICHAEL LEVY | DCPS | Att'y. Advisor |
| Fatmata Barrie | Student | Atty |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
*SPECIAL EDUCATION STUDENT HEARING OFFICE*

**HEARING OFFICER**

335

Home School: _____ Attending: _____

Good __M__. Today is ___Tues  3-8___ ; it's about ___1/8___

**This is a confidential administrative hearing concerning the special education**

services being provided to ___D████  M████___ by the District of

**Columbia Public Schools (and _____, a Public Charter**

**School and (LEA).**

_____ ( sex____ ) was born on ███-89 .

    This hearing is authorized by Public Law 105-17, the *Individuals with Disabilities Education Act Amendments of 1997* ; Title 34 of the Code of Federal Regulations, Part 300 and Title V of the District of Columbia Municipal Regulations.

    This hearing is conducted under the auspices of the District of Columbia Public Schools, hereinafter referred to as DCPS. *This hearing is confidential and will be closed to the public unless the parent request that it be opened to the public.* This hearing is being tape recorded and either party may request a copy of the tape or a transcript by making a written request for both or either to the Student Hearing Office, DCPS.

    My name is Herbert St. Clair. I am the Hearing Officer.

    Everyone is to identify himself/herself and relationship to the hearing, stating any professional and/or business affiliations; let's begin with the Attorney-Advisor.

    Have the parties come to terms/ The hearing officer is under the impression the parties have a settlement agreement?_____.

    *Waive review of Parental Rights?* _____

Preliminary Matters ? _____

Disclosures? _____

_____

_____

336

## FAX TRANSMISSION COVER SHEET
### Dalton, Dalton & Houston P.C.
#### Attorneys at Law
#### 1008 Pendleton Street
#### Alexandria, Virginia 22314
#### (703) 739-4300
#### FAX (703) 739-2323

**DATE:**    **March 2, 2005**

**TO:**    **Michael Levy, Esq.**

**AT FAX:**    **202-442-5098**

**FROM:**    **Paul S. Dalton, Esq.**

**RE:**    ~~Delauter Waters~~ **Motion to Dismiss**

**NUMBER OF PAGES INCLUDING THIS PAGE:**    **2**

**ADDITIONAL INFORMATION:**

---

**PLEASE DELIVER ASAP.**

*********************************************************************

**THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.**

**IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECI-
PIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS
STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNI-
CATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELE-
PHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE
ABOVE ADDRESS.**

*********************************************************************

337

Law Offices
## DALTON, DALTON & HOUSTON, P.C.

1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703)-739-4300
Facsimile: (703)-739-2323
E-MAIL: DCSPEDLAW@AOL.COM

Paul S. Dalton*
Ellen Douglass Dalton*
William E. Houston+
Talib Abdus Shahid+
Laura E. Duos~
*ALSO ADMITTED IN D.C. & W.VA
+ ADMITTED IN D.C. & PA
~ADMITTED IN MD

Washington DC. Office:
601 Pennsylvania Avenue, N.W.
South Building,  Suite 900
Washington, DC 20004
Telephone: (202)-393-0060
Facsimile: (202)-393-1555

## MOTION TO DISMISS DUE PROCESS HEARING REQUEST

March 2, 2005

By Mail    _____
By Fax     X

District of Columbia Public Schools
Student Hearing Office
Attn. Mr. David Smith
825 North Capitol Street, N.E., 8th Floor
Washington, DC  20002

RE: D███████ W██████

Dear Hearing Officer Smith:

A Due Process Hearing has been scheduled for D███████ W██████ on March 8, 2005.  The parent's representative, Ms. Fatmata Barrie, Esq., is requesting that DCPS abide by its previous settlement agreement of June 22, 2004, when DCPS agreed to hold an MDT meeting after receiving the parent's independent evaluations.  After the settlement agreement was signed the student began attending Friendship Edison.  At no point was Edison made aware that the settlement agreement existed.  Edison was also not given notice that there were outstanding evaluations that needed to be reviewed.

Edison held a thirty day IEP review on September 17, 2004, and at no time was Edison made aware that there was an outstanding settlement agreement with DCPS, nor were the psychiatric or social history provided to the school so they could review them.  Because this case involves a settlement agreement signed before Edison had jurisdiction over this student, and because Edison was never given notice that outside evaluations existed, we request that Edison be dismissed as a party to this case.

Respectfully Submitted,

Paul S. Dalton
Counsel for Edison P.C.S.

cc: Fatmata Barrie, Esq., Parent's Attorney
    Michael Levy, Esq., DCPS Attorney advisor

338



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

**Office of the Superintendent**
Office of the General Counsel
825 North Capitol Street, N.E., 9th Floor
Washington, D.C. 20002-4232
202-442-5000      Fax: 202-442-5098
www.k12.dc.us

March 1, 2005

Fatmata Barrie, Esq.           &
1003 K Street, NW, Suite 500
Washington, DC 20001

Paul Dalton, Esq.
1008 Pendleton Street
Alexandria, VA 22314-1837

## DISCLOSURE STATEMENT & MOTION TO JOIN PARTY & COMPEL ATTENDANCE

## VIA FACSIMILE 202/626-0048 (Barrie) & 703/739-2323 (Dalton)

**Subject:**       **Due Process Hearing for D▬▬ W▬▬**
**DOB:**            ▬▬/1989
**Attending School:**  **Friendship Edison Public Charter School (FEPCS)**

Dear Ms. Barrie & Mr. Dalton:

At the upcoming due process hearing in the above-referenced matter scheduled for Tuesday, March 8, 2005 at 11:00 a.m. or any subsequent hearing, and pursuant to 34 C.F.R. 300.509(a)(3), in addition to any documents and witnesses disclosed by the parent and/or Friendship Edison Public Charter School (FEPCS), DCPS may rely upon any of the following witnesses/documents[1], in addition to any documents and/or witnesses previously disclosed by any party for any earlier hearing for this student and/or compelled below:

**Witnesses**

Dr. Raymond Bryant or successor, Associate Superintendent, DCPS and/or designee(s);

Ruth Blake, Executive Director, Non-Public Day, Residential/Interagency, Charter & Surrounding County Schools & Incarcerated Youth, DCPS and/or designee(s);

Tammye Martin, Assistant Director, School Support, DCPS and/or designee(s);

Dwight Thomas and/or Keesha Blythe, Placement Specialist/Monitor, DCPS and/or successor(s) and/or designee(s);

**Wallace Henry III, Director/Administrator, FEPCS (compelled).**

DCPS hereby moves the hearing office to join and/or retain FEPCS as a necessary party to this hearing as many or all of the issues raised in the hearing request relate to matters arising at that school and/or for which that school, as its own LEA. is responsible.

DCPS reserves the right to object to expert testimony by any witness whose curriculum vitae has not been disclosed to the Office of the General Counsel for DCPS at least five (5) business days prior to the hearing. DCPS also reserves the right to examine any witnesses called or identified as a potential witness by the representative of the student as though the witness was called by DCPS.

---

[1] Witnesses may testify by telephone.

339

Page Two
March 1, 2005
RE:   Due Process Hearing for D██████ W██████

DCPS furthermore reserves the right to rely upon and /or use any documents/witnesses presented and/or disclosed by the parent that DCPS deems relevant in this case.  Also, DCPS reserves the right to call rebuttal witnesses in its case.

If you wish to discuss any aspect of this case further, or have questions, please contact me at (202) 442-5157.

Sincerely,

Michael D. Levy
Attorney Advisor

cc: Student Hearing Office

340

# LAW OFFICES,
## CHRISTOPHER N. ANWAH, LLC

Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
  (DC, MD, NJ)
Fatmata Barrie, Esq.
  (DC, FL)
Panya Monford, Esq.
  (MD**)
**Only practices in administrative hearings in D.C.*

Carpenter's Building
1003 K Street, N.W.
Suite 500
Washington, D.C. 20001
Phone: (202) 626-0040
Fax: (202) 626-0048
Email: chrisanwahfirm@chrisanwahfirm.com

March 1, 2005

Paul Dalton, Esq.
Dalton, Dalton, & Houston P.C.
1008 Pendleton Street
Alexander, VA  22314

**Via Facsimile: 703-739-2323**

RE:     D██████ W███████
DOB:    ██████/89

## Disclosure of Witnesses and Documents

Dear Mr. Levy:

Pursuant to the five-day rule set forth in 34.C.F.R. 509 (a) (3), attached is a list of witnesses and documents, which we intend to rely on for the upcoming Due Process Hearing scheduled for March 8, 2005.

### Witnesses*

1.     Marian Murphy – Parent
2.     D█████ W██████ – Student
3.     Educational Advocate and/or her designee
4.     High Road School Representative
5.     FLOC Learning Center Representative
6.     Social Worker and/or designee

*Witnesses may testify by telephone*

341

## **Documents**

DW-01   02/02/05 Hearing Request
DW-02   06/22/04 Settlement Agreement
DW-03   05/06/02 Cognitive Psychological Evaluation
DW-04   05/02/00 Psychological Report
DW-05   07/23/04 Psychiatric
DW-06   08/19/04 Social Work Evaluation
DW-07   12/18/04 Letter to Office of Compliance
DW-08   09/05/04 Letter to DCPS Counsel
DW-09   08/23/02 HOD
DW-10   03/26/04 Letter to Village Learning Center
DW-11   04/22/04 IEP


We reserve the right to disclose additional documents as they become available, the right to rely on DCPS' witnesses and evidence as if disclosed by parent and the right to rely on documents previously disclosed to counsel for any prior hearings or procedures. We also reserve the right to produce rebuttal witnesses. Should you have any questions or need additional information, please do not hesitate to contact me.

Sincerely,

Fatmata Barrie, Esq.

cc: SHO

342

# Law Offices,
# Christopher N. Anwah, LLC

**Attorneys and Counselors at Law**

Christopher N. Anwah, Esq.
  (DC, MD, NJ)
Fatmata Barrie, Esq.
  (DC, FL)
Panya Monford, Esq.
  (MD**)
**Only practices in administrative hearings in D.C.*

Carpenter's Building
1003 K Street, N.W.
Suite 500
Washington, D.C. 20001
Phone: (202) 626-0040
Fax: (202) 626-0048
Email: chrisanwahfirm@chrisanwahfirm.com

March 7, 2005

Michael Levy, Esq.
Office of General Counsel
825 North Capitol St, NE
9th Floor
Washington, DC  20002

**Via Facsimile: 202-442-5098/97**

RE:    D██████ W██████
DOB:   ██████/89

## SUPPLEMENTAL Disclosure of Witnesses and Documents

Dear Mr. Levy:

Pursuant to the five-day rule set forth in 34.C.F.R. 509 (a) (3), attached is a list of witnesses and documents, which we intend to rely on for the upcoming Due Process Hearing scheduled for March 8, 2005.

### Witnesses*

1.    Marian Murphy – Parent
2.    D██████ W██████ – Student
3.    Educational Advocate and/or her designee
4.    High Road School Representative
5.    FLOC Learning Center Representative
6.    Social Worker and/or designee

*Witnesses may testify by telephone*

343

## Documents

DW-01  02/02/05 Hearing Request
DW-02  06/22/04 Settlement Agreement
DW-03  05/06/02 Cognitive Psychological Evaluation
DW-04  05/02/00 Psychological Report
DW-05  07/23/04 Psychiatric
DW-06  08/19/04 Social Work Evaluation
DW-07  12/18/04 Letter to Office of Compliance
DW-08  09/05/04 Letter to DCPS Counsel
DW-09  08/23/02 HOD
DW-10  03/26/04 Letter to Village Learning Center
DW-11  04/22/04 IEP
DW-12  03/07/05 High Road Acceptance Letter

We reserve the right to disclose additional documents as they become available, the right to rely on DCPS' witnesses and evidence as if disclosed by parent and the right to rely on documents previously disclosed to counsel for any prior hearings or procedures. We also reserve the right to produce rebuttal witnesses. Should you have any questions or need additional information, please do not hesitate to contact me.

Sincerely,

Fatmata Barrie, Esq.

cc: SHO

344

DW-01

## STUDENT HEARING OFFICE OF THE DISTRICT OF COLUMBIA
## EXPEDITED REQUEST FOR MEDIATION/HEARING

➤ **This form shall be used to give notice to the District of Columbia Public Schools and/or a District of Columbia Public Charter School of parental disagreement with the identification, evaluation or educational placement of their child with a disability, or the timely provision of a free appropriate public education to that child, and to request a hearing and/or mediation regarding the same.**

➤ **This form must be sent to the Student Hearing Office of the District of Columbia, 825 North Capitol Street, N.E., 8th Floor, Washington, D.C. 20002.   Fax number 202-442-5556**

---

**Federal law requires that when a parent or representative requests mediation, it shall be offered at no cost to the parent.  Mediation may be beneficial in your case.  Please indicate your decision:**

___ I REQUEST MEDIATION  ___ I REQUEST MEDIATION AND A HEARING  X I REQUEST A HEARING

---

### STUDENT FOR WHOM MEDIATION/DUE PROCESS HEARING IS REQUESTED

Student Name:  D██████ W██████                    DOB:  ████/89

Address:   5019-11TH STREET, N.E., WASHINGTON, D.C. 20017
Present School of Attendance: Friendship Edison PCS     Home School: UNKNOWN
                                                (Neighborhood school where child is registered)

**COMPLAINT IS MADE AGAINST:**     DCPS & Friendship Edison PCS
                                    DCPS and/or D.C. Public Charter School (specify)

### INDIVIDUAL REQUESTING MEDIATION/DUE PROCESS HEARING

Name:  MS. MARIAN MURPHY

Address:   5019-11TH STREET, N.E., WASHINGTON, D.C. 20017

Phone:  (H)  (202) 832-1048      (W) _____      (Fax) _____

Relationship to Student:  X   Parent ____  Self ____  Legal Guardian ___  Parent Surrogate ___ Public Agency

### PARENT REPRESENTATIVE/ATTORNEY/ADVOCATE (if applicable):

Name:  Fatmata Barrie, Esq.   (Christopher Anwah's Law Office)  Phone:  (W) (202) 626-0040

Address:  1003 K Street, N.W., Suite 500, Washington, D.C. 20001  Fax: (202) 626-0048

---

Form 101                                                                                    345

2—D█████ W█████(█████/89)

1. You must indicate three (3) dates when you and your representative (if you have one) are available within the next twenty (20) days for mediation (if you are requesting mediation) and/or three (3) within the next 35 days (or 30 days if you represent a student enrolled at ETS or Rock Creek Academy) when you, your representative, and witnesses will be available to appear for a hearing (if you are requesting a hearing). Please indicate whether you are available in the AM, PM, or both on the identified dates.

Hearings:　__February 24, 2005__　　　__February 25, 2005__　　__February 28, 2005__

Mediation: _____

**FOR ALL DCPS STUDENTS, IF YOU PROPOSE DATES MORE THAN 35 DAYS FROM THE DATE OF YOUR REQUEST, YOUR SIGNATURE BELOW WILL INDICATE YOUR WAIVER OF YOUR RIGHT TO A HEARING OFFICER DETERMINATION WITH 45 DAYS OF THIS REQUEST. IN THE CASE OF A WAIVER, THE STUDENT HEARING OFFICE WILL CONTINUE TO USE BEST EFFORTS TO ISSUE A HEARING OFFICER DETERMINATION WITHIN 45 DAYS OF YOUR REQUEST (OR AS CLOSE TO 45 DAYS AS IS POSSIBLE).**

**FOR STUDENTS ATTENDING ETS OR ROCK CREEK ACADEMY, IF YOU PROPOSE DATES BEYOND THE 30-DAY PERIOD, YOUR SIGNATURE BELOW WILL INDICATE YOUR WAIVER OF YOUR RIGHT TO A HEARING WITHIN THAT PERIOD.**

Every effort will be made to accommodate your requested dates. Please be aware that proposed hearing dates which fall fewer than 21 days from the date of your request are difficult to accommodate. Your dates are most likely to be available if you propose hearing dates between 21 and 35 (or 30, for students enrolled at ETS or Rock Creek Academy) days from the date your request is received and docketed by the Student Hearing Office.

If none of your proposed dates are available, or if you fail to specify any dates, the Student Hearing Office will schedule your hearing for the first available date. Upon receipt of a Hearing Notice confirming the date of your hearing, you will have an opportunity to file a Motion for Continuance, if necessary, by using the form Motion attached to your Hearing Notice. *Please do not contact the Hearing Office by phone to request a continuance. Only the Hearing Officer assigned to your case is authorized to grant requests for continuances.*

Unless you receive notice that the Hearing Officer has granted your request for a continuance, you must appear for the hearing as scheduled. Failure to report for the hearing may result in dismissal of this case, or in a default decision against you. Disclosure of evidence and witnesses to the opposing party is required at least five business days prior to the hearing, with copies to the Special Education Student Hearing Office.

2. Special Accommodation Requests for Mediation/Due Process Hearing (please be specific):

      Interpreter
      ___ Foreign Language _____
      ___ Sign Language _____

| Form 101 |
|---|

3—D█████ W█████( ██/██/89)

Other _____
Special Communications _____
Special Accommodation for Disability _____
Other _____

3. In accordance with the Individuals with Disabilities Education Act (IDEA), please answer below:
   (You may attach additional pages to provide more information if needed.)

**Describe the nature of the problem**: Counsel for parent and student incorporates all previous IDEA violations in prior HODs, Settlement Agreements, Disciplinary Hearings, and Parent/Teacher Conferences.

1.  DCPS and FEPCS has failed to adhere to the June 24, 2004, a Settlement Agreement by not convening an MDT/IEP/Placement meeting for D█████.
2.  DCPS and FEPCS has failed to complete an appropriate IEP for D█████ because his IEP is expired and his IEP does not include the amount of counseling recommended by DCPS' psychologist.
3.  DCPS and FEPCS has failed to provide D█████ with an appropriate placement.
4.  DCPS and FEPCS has failed to provide D█████ with appropriate special education.
5.  DCPS and FEPCS has failed to provide D█████ with FAPE for several years by not providing him with the appropriate services, IEP and placement.

**Describe issues to be addressed at the mediation and/or hearing, with specificity:**

1.  Whether DCPS and FEPCS denied D█████ FAPE when it failed to adhere to the June 24, 2004, Settlement Agreement by not convening an MDT/IEP/Placement meeting for D█████?
2.  Whether DCPS and FEPCS denied D█████ FAPE when it failed to complete an appropriate IEP for D█████?
3.  Whether DCPS and FEPCS denied D█████ FAPE when it failed to provide D█████ with an appropriate placement?
4.  Whether DCPS and FEPCS denied D█████ FAPE when it failed to provide D█████ with appropriate special education services?
5.  Whether DCPS and FEPCS denied D█████ FAPE for several years by not providing him with the appropriate services, IEP and placement?

**Describe relevant facts relating to the problem:**

On June 24, 2004, DCPS counsel and parent's counsel signed a settlement agreement in which DCPS agreed to fund independent psychiatric and social history evaluations. Within 15 business days of the receipt of the last independent evaluation, DCPS would conduct an MDT meeting to review the evaluations, review and revise the IEP, determine placement and discuss the need for compensatory education.

Parent's counsel obtained the independent psychiatric and social history evaluations and forwarded copies to Jack L. Schriebman, DCPS Attorney Advisor, on September 5, 2004. The letter reminded

Form 101                                                                              347

4—D███ W████ (██/89)

Mr. Schreibman that DCPS had fifteen (15) business days of the receipt of the independent evaluations to convene an MDT meeting to review/revise the student's IEP, to discuss placement, and compensatory education. Counsel for parent requested that DCPS contact its office to negotiate a mutual date and time to schedule the MDT meeting, but DCPS has yet to respond.

Additonally, on December 18, 2004 counsel for parent notified the Office of Mediation and Compliance of DCPS's failure to comply with the stipulations on the Settlement Agreement. However, the office of compliance has not responded to the letter of notification of the violation of the settlement agreement.

Currently, D██████ IEP is expired and does not provide for the 45 minutes of counseling recommended by DCPS' psychologist or services to deal with his ADHD.  Furthermore, he is not receiving his needed related services which includes counseling and services for his ADHD diagnosis.

Although D█████ has not been academically successful for years and DCPS has been aware that he could only succeed if he has someone working closely with him, DCPS has continued to provide him with and IEP and program that does not provide him with the amount of one on one that he needs.

On 01/31/05, parent's counsel again forwarded the evaluations to DCPS counsel as part of a 5-day disclosure but DCPS has yet to convene an MDT/IEP/Placement meeting.

At this time, the student continues to be without appropriate specialized instructions, IEP, placement, and denied compensatory education award.  Therefore, the parent is bringing forth this complaint to induce DCPS to comply with the Settlement Agreement, to provide D██████ with an appropriate IEP and with an appropriate Placement.

**State how you would like to see the problem corrected:** Ms. Murphy is seeking the following relief: (1) DCPS to convene an MDT/IEP meeting within five (5) days of the issuance of its order to discuss the independent evaluations; (2) DCPS to fund all necessary and appropriate specialized instructions, related, and transition services, including transportation; (3) DCPS to develop an appropriate IEP; (4) DCPS to fund a placement of parent's choice;  and, (5) DCPS to provide compensatory education for the past denial of FAPE and the present denial of FAPE.

_____                    _____February 2, 2005_____
Signature of Applicant/Parent (Required)                              Date (Required)

**MAIL, FAX, OR DELIVER APPLICATION TO:**
**Student Hearing Office of the District of Columbia**
**828 North Capitol Street, NE, 8th Floor**
**Washington, DC  20002  FAX:  (202) 442-5556**

| Form 101 | |
|---|---|

5—D̶e̶l̶e̶u̶m̶ ̶W̶i̶l̶l̶i̶a̶m̶ (▓▓▓▓/89)

---

**FOR OFFICE USE ONLY:**
Case Number: _____
Student ID#: _____

Form 101                                              Revised 02/01/2003

---

06/23/2004 10:00 FAX 202 442 5098    OFF.OF GENERAL COUNSEL    002/0 Dw-0-



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

*Office of the Superintendent*
**Office of the General Counsel**
*825 North Capitol Street, N.E., 9th Floor*
202-442-5000 Fax # 20 2-442-5098
www.k12.dc.us

June 22, 2004

Christopher Anwah, Esq.
Attorneys and Counselors at Law
Federal District Building
1010 Vermont Avenue, N.W.
Suite 600
Washington, D.C. 20005

**PROPOSED SETTLEMENT**

**VIA FACSIMILE 202-347-7108**

Subject: **Due Process Hearing for D███, W█████**
DOB:    ████89

Attending School: **The Village Learning Center Public Charter School**
Home School:

Dear Mr. Anwah:

    In lieu of the formal Due Process Hearing in the above-referenced matter, scheduled for Monday, June 28, at 11:00 a.m., the parties to this action, District of Columbia Public Schools (hereinafter DCPS), and parent's representative agree to resolve this matter pursuant to the following terms and conditions:

    1. Parent/Counsel verifies that the student is a resident of the District of Columbia, has established residency, and has registered as attending or non-attending at their local school. If DCPS becomes aware subsequently to the executions of this settlement agreement that residency and/or registration has not been completed and/or established then any DCPS obligations under this agreement will not be completed until proof of registration and/or residency is provided to DCPS.

    2. The Parent/Counsel verifies that the student's date of birth is ███████████, 1989 that the attending school is The Village Learning Center Public Charter School.

    3. Parent/Counsel agrees to cooperate fully with DCPS in the implementation of the terms of this settlement agreement. Any delay caused by the unavailability of the student, parent, or advocate as it pertains to testing, meeting dates, or compliance with the terms of this agreement will toll any deadlines herein by one day for each day of delay.

*Children First*

350

06/23/2004 10:01 FAX 202 442 5098    OFF. OF GENERAL COUNSEL    ☒003/004

DCPS Office of the General Counsel
Page 2

4. DCPS agrees to a fund independent evaluations, consistent with DCPS guidelines. Parent/counsel agrees that DCPS' liability is limited to costs not to exceed those specified in the Superintendent Directive Number 530.6, dated March 20, 2002. The evaluations DCPS agrees to fund are a psychiatric evaluation and a social history evaluation.

5. DCPS agrees to conduct a MDT meeting within 15 business days of the receipt of the independent evaluation. DCPS agrees to update the student's IEP as warranted. Placement will be also be discussed and determined. For a public placement, a Prior Notice of Placement will be issued within 5 school days of the MDT meeting and for a private placement a PNOP will be issued within 30 calendar days of the MDT meeting. DCPS also agrees to discuss compensatory education, and if warranted a plan will be developed. Parent reserves the right to bring a hearing if the parent disagrees with the compensatory education plan developed.

6. All meetings/conferences/evaluations shall be scheduled through counsel for the parent, via facsimile, at 202-347-7108.

7. Both parties agree that execution of this agreement will occur when the signature of both parties has been affixed below and counsel of DCPS has received transmittal of the signed agreement.

8. If for some reason DCPS is unable to comply with this agreement as of result of unforeseen circumstances beyond its control, DCPS will request that Parent/Counsel agree to extend the deadlines or negotiate new timelines, whichever appropriate. Parent/Counsel will not unreasonably deny any such request for extension/renegotiation.

9. Parent/Counsel agrees to contact DCPS Office of Mediation & Compliance personnel when there has been a failure to comply with the terms incorporated in this agreement in order to bring the case into compliance prior to filing a hearing request alleging DCPS' failure to comply.

10. This agreement is in full satisfaction and settlement of all the claims contained in the pending hearing request, and including all claims that the parent now asserts or could have asserted as of the date of this agreement in relation to special education issues.

11. Parent/Counsel agrees to accept reasonable attorney fees not to exceed Four Thousand ($4,000.00) Dollars, as full and final payment of the attorney fees and related costs incurred in this matter. Payment of the specified amount is contingent upon the submission of a certified, itemized invoice conforming to the DCPS attorney fee guidelines.

12. Parent/Counsel agrees that the hearing request that is subject of this Agreement will be immediately withdrawn and the written evidence of such withdrawal is required before any invoices will be processed.

Sincerely,

Jack L. Schreibman
Attorney Advisor

---

*Children First*

06/25/2004 08:30 FAX 202 442 5098          OFF.OF GENERAL COUNSEL                    ☐003
    06/23/2004 10:01 FAX 202 442 5098          OFF.OF GENERAL COUNSEL                  ☐004/004

DCPS Office of the General Counsel
Page 3


Agreed to:    _____          _____
              Christopher Anwah, Esq.            Date
              Counsel for Parent


Agreed to:    _____          _____
              Jack Schreibman, Esq.             Date
              Attorney Advisor

DW-03



**Educational Diagnostics Institute, Inc.**
1401 New York Ave., NW, Suite 700
Washington, DC 20005  (202) 347-9101

**Saudra R. Saulter, Ph.D.**
**Licensed Clinical Psychologist**

## COGNITIVE PSYCHOLOGICAL EVALUATION

**Name:** Wil̶l̶i̶a̶m̶, De̶l̶m̶a̶r̶
**Date of Birth:** ▮▮/▮▮/1989
**Date of Evaluation:** 04/19/02
**Chronological Age:** 12 years, 6 months

**School:** Academy for Ideal Education
**Grade:** Seventh
**Date of Report:** 05/06/02

**REASON FOR REFERRAL AND BACKGROUND INFORMATION:**
De̶l̶m̶a̶r̶ is a 12-year-old African-American male, who was referred for a psychological
evaluation to determine his current level of cognitive functioning.  He resides in
Northeast Washington, D.C. with his legal guardian and paternal grandmother, Marian
Murphy.  An aunt and cousin also reside in the home.  De̶l̶m̶a̶r̶ is a seventh grader at
Academy for Ideal Education in Washington, D.C.  The record reflects that he attended
Berkshire Elementary School in Prince George's County prior to attending Ideal.  A
Section 504 Plan was developed for him at Berkshire "to address academic concerns
affected by ADHD."  The plan included his asking for help when needed, seeing the
guidance counselor before and after school to check assignments, and his parents
checking his homework assignment notebook and reviewing his homework at home.  The
plan also included his being accommodated in the classroom with "special seating and an
additional support person."

*Interview with Guardian* - Ms. Marian Murphy was interviewed by this examiner at
Educational Diagnostics Institute, Inc. (EDI) on April 19, 2002.  Ms. Murphy reported
that she has had legal custody of De̶l̶m̶a̶r̶ since he was five or six years old.  However, he
has been living with her since he was about three months old.  He stayed with his mother
briefly when he was in the second grade, and half of the fifth and sixth grades.  Ms.
Murphy indicated that De̶l̶m̶a̶r̶ has seasonal allergies and takes Claritin.  His birth was
without complications, but he was exposed in the uterus to crack cocaine.  In addition,
both mother and father were using crack cocaine at the time of his conception.  Ms.
Murphy also reported that De̶l̶m̶a̶r̶ was a "little slow" at walking and talking.  He did
well in kindergarten and first grade.  He started to have problems in the second grade
with inattention, retaining information, and keeping still in the classroom.  He attended
Berkshire Elementary School in Forestville, Maryland in the sixth grade.  There, "they"
threatened to retain him, but Ms. Murphy took him back from his mother, worked with
him, and he managed to "pull up" his grades.  Although he resided with Ms. Murphy in
Washington, D.C. for the remainder of the sixth grade, the administration at Berkshire
allowed him to remain there (in Maryland) until the school year was completed.

Ms. Murphy indicated that De̶l̶m̶a̶r̶ is not getting any special accommodations at Ideal,
and this is a violation of his Section 504 Plan.  His teachers at Ideal do not think that he

03/09/2002 08:10 FAX 202 547 9102

COGNITIVE PSYCHOLOGICAL EVALUATION (continued):                    Page 2 of 7
W̶i̶l̶l̶i̶s̶, D̶e̶l̶a̶n̶o̶; DOB: ██/██/89

has a problem or needs special accommodations. Ms. Murphy stated that she is
"extremely" dissatisfied with Ideal. She feels that D██████ is not getting what he needs
academically, and she alluded to his physical safety being in jeopardy at Ideal. She
shared that D██████ has been physically injured more than once at Ideal, and she was not
informed immediately of his injuries. Ms. Murphy also expressed that she is concerned
about D██████ "short attention span, inability to remember all steps in verbal
instruction, and social immaturity." In regard to the latter, she explained that he prefers
to play with younger children, and he does not fight back when kids beat up on him at
school. Ms. Murphy also indicated that D██████ is "an inward person;" it is hard for him
to talk about what is bothering him.

Ms. Murphy was administered the CPRS-RS, a parent-report questionnaire, as a means of
obtaining more precise information regarding D██████ behavior. He scored in the
clinical range on scales assessing inattention, hyperactivity, and symptoms of ADHD per
se. Specially, he attained T scores of 43 on the Oppositional Scale, 71 on the Cognitive
Problems/Inattention Scale, 77 on the Hyperactivity Scale, and 72 on the Conners'
ADHD Index Scale. T scores at and above 65 are considered clinically significant.
Ms. Murphy reported that D██████ has a short attention span, and is easily frustrated and
distractible. He has problems organizing his work, completing tasks or schoolwork, and
concentrating in class and on tasks that require sustained mental effort. He also fidgets
with his hands and feet, and is disorganized at school. Ms. Murphy also disclosed that
D██████ bites his fingernails. His pediatrician has referred him to a psychiatrist to
determine if he is "ADHD."

## TESTS ADMINISTERED AND DATA SOURCES:
### Wechsler Abbreviated Scale of Intelligence (WASI)
**Verbal Subtests**
    Vocabulary TS = 49; SS = 10
    Similarities TS = 42; SS = 8
**Performance Subtests**
    Block Design TS = 57; SS = 12
    Matrix Reasoning TS = 60; SS = 13
Verbal IQ 93 (average); Performance IQ = 114 (high average); Full Scale IQ = 103 (average)
### Cognitive Assessment System (CAS)
**Planning (PLAN) Processing Scale Subtests**
    Matching Numbers SS = 10
    Planned Codes SS = 8
**Simultaneous (SIM) Processing Scale Subtests**
    Nonverbal Matrices SS = 8
    Verbal-Spatial Relations SS = 8
**Attention (ATT) Processing Scale Subtests**
    Expressive Attention SS = 10
    Number Detection SS = 7
**Successive (SUC) Processing Scale Subtests**
    Word Series SS = 11
    Sentence Repetition SS = 10
PLAN SS = 94 (average); SIM SS = 88 (low average); ATT SS = 91 (average);
SUC SS = 108 (average); FS SS = 92 (average)

05/08/2002 09:10 FAX 202 347 8102

COGNITIVE PSYCHOLOGICAL EVALUATION (continued):          Page 3 of 7
Wtithin, Delonte DOB: /89

(Standard scores for the Scales and Full Scale are set at a mean of 100 and standard deviation of
15.)
**Wide Range Achievement Test-Revision 3** (WRAT3)
    Reading (word recognition) Test SS = 103; GE = Eighth
    Spelling Test SS = 103; GE = Seventh
    Arithmetic Test SS = 90; GE = Fifth
**The Beery-Buktenica Developmental Test of Visual-Motor Integration** (VMI)
    Developmental Age Equivalent = 11 years, 3 months; SS = 96
**Conners' Parent Rating Scale-Revised Short** (CPRS-RS)
    Oppositional TS = 43
    Cognitive Problems/Inattention TS = 71
    Hyperactivity TS = 77
    Conners' ADHD Index TS = 72
(T scores at and above 65 are clinically significant.)
Clinical Interview and Observation of Test Behavior
Interview with Guardian
Record Review
    PG County Public Schools Section 504 Accessibility Plan – 10/10/00
    PG County Public Schools Psychological Report – 5/2/00

**CLINICAL INTERVIEW AND OBSERVATION OF TEST BEHAVIOR:**
Delonte was seen by this examiner at Educational Diagnostics Institute, Inc. (EDI) on
April 19, 2002. He was accompanied to EDI by his paternal grandmother and legal
guardian, Marian Murphy. Testing occurred over a period of approximately three and
one-half hours. Separation for testing was uneventful. Delonte was noted to be properly
dressed and groomed. His fingernails, however, were badly bitten to the quick. He was
also noted to have a bruise on the right side of his forehead. Gross and fine motor
functioning appeared adequate. He demonstrated right-handedness.

A clinical interview was conducted with Delonte before the administration of test
instruments. A functional rapport was easily established. Delonte was friendly and
responsive to inquiry. On request, he gave correct identifying data. In response to
inquiry, he reported that he lives with his grandmother, aunt and cousin. He likes to build
things and wants to be an architect when he grows up. His best friend is George, a nine-
year-old boy who lives in the neighborhood. Delonte also reported that he does not like
attending Ideal Academy. He stated that other students pick on him and fight him. When
asked about the bruise on his forehead, he explained that he acquired the bruise after
being tripped by another student at school yesterday, causing him to fall. Thus, a fight
resulted between him and the other student. Since Delonte did not start the fight, he did
not get suspended. Delonte also disclosed that his favorite subject is science. His easiest
subject is physical education. His hardest subject is math. He does not like music. In
spite of his reporting that other students fight and pick on him at school, he indicated that
he has no problems at school.

Delonte revealed that he feels "good" about himself and does not want to change
anything about himself. He did not admit to any worries or concerns. He also did not
admit to any problems eating/sleeping, any suicidal/homicidal ideation, or any
visual/auditory hallucinations. He shared that he feels like fighting someone when he

355

05/09/2002 09:10 FAX 202 347 9108

gets "very mad or frustrated." However, he would not actually start a fight with anyone because he was angry. What makes him angry is not being able to do his schoolwork well, especially math. When asked what he would wish for if he had three wishes, he replied, "I wish for my own car, a big house, and to live a happy life." Delmar's speech was clear. He did not evince any loose or disassociative thought content. He was oriented to person, time and place. He gave direct eye contact.

Delmar was cooperative throughout testing. He exhibited no overt signs of off-task behavior, distractibility or hyperactivity. He maintained an appropriate level of attention and motivation. It is believed that the overall results of the administered accurately reflect his cognitive functioning at the time of testing.

## ANALYSIS OF TEST RESULTS:
### Cognitive Functioning - WASI Findings
Delmar was administered the WASI to obtain an estimate of his general intelligence. He attained a Verbal IQ of 93, a Performance IQ of 114 and a Full Scale IQ of 103, indicating that he functions overall in the "average" range of intelligence. However, his uneven cognitive pattern makes it difficult to summarize his overall intellectual functioning by a single score. His subtest scaled scores range from high average (13) to average (8), and the significant differential of twenty-one scaled points between the Verbal and Performance IQs, in favor of the latter, suggests that his nonverbal (visual) skills are better developed overall than his verbal (auditory) skills. In the Verbal realm, he displayed average ability on subtests measuring word knowledge (Vocabulary SS = 10), and verbal abstract reasoning and concept formation (Similarities SS = 8). In the Performance realm, high average ability was displayed on subtests measuring nonverbal fluid reasoning (Matrix Reasoning SS = 13), and nonverbal abstract reasoning and visual motor perception/ integration (Block Design SS = 12).

### Cognitive Functioning - CAS Findings
The CAS was administered to Delmar to obtain a more comprehensive assessment of his cognitive abilities. This instrument goes beyond the traditional Wechsler test and concept of general intelligence by identifying specific abilities or cognitive processes that may impact on learning. On the CAS, Delmar earned a Full Scale standard score of 92, which falls in the "average" range. He ranked at the 30th percentile in overall cognitive processing ability in comparison to same-aged peers. He earned scaled scores that ranged from average to low average on the four separate scales comprising the Full Scale. Due to significant variability occurring among the four PASS Scales, the Full Scale standard score of 92 is not the best representation of each PASS scale standard score. Specifically, Delmar attained a Planning (PLAN) standard score of 94, a Simultaneous processing (SIM) standard score of 88, an Attention (ATT) standard score of 91, and a Successive processing (SUC) standard score of 108.

Delmar performed as well as 34% of same-aged peers in the normative sample on measures of planning processing. He was required to match numbers and codes within a prescribed amount of time. In order to be successful, he had to devise a strategy (i.e., plan) to solve the problem, apply the plan, and modify the plan as needed. The "average"

ability which he displayed on the PLAN Scale (standard score = 94) reflected the generation and use of efficient and effective strategies for problem solving and self-regulation.

Successive processing ability was measured on subtests that required information to be arranged in a specific linear order where each step was related only to the previous one. D███ displayed average skills on the SUC Scale. He performed as well as 70% of same-aged peers in the normative sample. Since the SUC Scale standard score of 108 is significantly higher than the mean of 95.3 of the four PASS standard scores, this indicates that successive processing is a relative cognitive strength for D███. This type of processing is important when it is necessary to keep information in its correct order. It is involved in rote memory, and in the breaking down or analyzing of information into an ordered sequence. D███ "average" performance on the SUC Scale suggested that he is able to hold sounds or words in sequence and follow step by step simple to complex verbal instruction well.

Attentional processing was measured on subtests that required D███ to detect and selectively attend to particular stimuli while avoiding responding to irrelevant competing stimuli. He performed as well as 27% of same-aged peers in the normative sample on the ATT Scale (standard score = 91). On the two core subtests comprising the ATT Scale, he attained a standard score of 10 on the Expressive Attention subtest and 7 on the Number Detection subtest. On the former subtest, his task was to identify the color of ink in which certain words were printed. For example, the word "green" was printed in red ink. On the latter task, his task was to visually scan an array while underlining target numbers printed in a particular font. His overall "average" performance on the ATT Scale illustrated that he is capable of adequately sustaining his attention and avoiding distracting stimuli in the classroom.

Simultaneous processing ability was measured on subtests that required D███ to integrate several pieces of information and comprehend them as a group or whole using both verbal and nonverbal content. This type of processing is important when it is necessary to see or comprehend things as a whole. It is seen in tasks that involve spatial skills like using blocks to build a design, seeing patterns in numbers, seeing a group of letters as a word, words as a whole, a sentence as part of a paragraph, categorizing words, and in reading comprehension. D███ lowest standard score was attained on the SIM Scale (SS = 88). Since he was able to perform as well as 21% of same-aged peers on subtests comprising this scale, his "low average" performance suggested that simultaneous processing is a relative weakness, but not a cognitive deficit, for him. He may have some difficulty in the classroom solving problems that demand complex integration of information as well as performing the following tasks involving simultaneous processing:

> Recognizing sight words quickly
> Interpreting sentences, or passage meaning
> Seeing the shapes of words or working with spatial tasks
> Seeing patterns in text or math problems
> Comprehending math word problems

357

**Perceptual-Motor (Visuospatial) Functioning**

D█████ demonstrated visual-motor perception/integration and graphomotor skills within chronological age expectancy on the VMI. He attained a developmental age equivalent of 11 years, 3 months and a standard score of 96. He ranked at the 39th percentile in comparison to same-aged peers. His task was to copy two-dimensional geometric shapes using paper and pencil. He exhibited an intermediate pencil grip and copied the designs with ease. The few errors he made were due to carelessness as opposed to sensory motor feedback problems.

**Academic Functioning**

D█████ was administered the WRAT3 to obtain an estimate of his achievement in basic academic areas. He scored at eighth grade level in reading (word recognition), seventh grade level in spelling, and fifth grade level in arithmetic. These grade equivalents are commensurate with standard scores of 103, 103 and 90, and percentile ranks of 58, 58 and 27 in these academic areas, respectively. In consideration of D█████'s age and current grade placement, he is achieving below grade expectancy in basic arithmetic. His weaknesses in arithmetic are most likely related to his relative weaknesses in simultaneous processing. If one were to use the Performance IQ of 114 as a fairer estimate of D█████ intellectual functioning than the Full Scale IQ of 103, then a severe discrepancy exists between intellectual functioning and achievement in basic arithmetic. Thus, he meets the criteria as a specific learning disabled student in accordance to Public Law 105-17 (IDEA). D█████ also reported that math is his hardest subject, and it causes him much anger and frustration.

**SUMMARY AND RECOMMENDATIONS:**

Current psychometric findings indicate that D█████ has uneven cognitive skills ranging from high average to low average. He attained a VIQ of 93, a PIQ of 114 and a FSIQ of 103 on the WASI, and a Full Scale standard score of 92 on the CAS. On the four PASS Scales comprising the Full Scale of the CAS, successive processing was found to be a relative strength, and simultaneous processing a relative weakness. Specially, he attained a standard score of 94 on the PLAN Scale, 88 on the SIM Scale, 91 on the ATT Scale, and 108 on the SUC Scale. D█████ was found to have age-appropriate visual-motor perception/integration skills. On the VMI, he earned a developmental age equivalent of 11 years, 3 months and a standard score of 96. With the exception of arithmetic, D█████ basic academic skills were found to be at or above grade expectancy. He scored at the eighth grade level in reading (word recognition), seventh grade level in spelling, and fifth grade level in arithmetic.

Findings from the CPRS-RS, a parent-report questionnaire, suggested that D█████ exhibits behaviors that are consistent with an attention deficit disorder. He scored in the clinically significant range on scales of Cognitive Problems/Inattention, Hyperactivity, and Conners' ADHD Index. In October 2000, Prince George's County Public School provided him with a Section 504 Plan "to address academic concerns affected by his ADHD." His paternal grandmother and legal guardian, Marian Murphy, reported to this examiner that his current pediatrician has referred him to a psychiatrist to rule out ADHD. It is important to note that D█████ did not exhibit any overt signs of an attention

05/09/2002 08:12 FAX 202 347 8104

COGNITIVE PSYCHOLOGICAL EVALUATION (continued):                    Page 7 of 7
William, Delmar; DOB: ____/89

deficit disorder during testing. In addition, he scored in the "average" range in attentional
processing. Therefore, more extensive testing is needed before this examiner can rule on
a clinical diagnosis of ADHD.

The overall findings from this cognitive psychological evaluation concur with the
following DSM-IV multiaxial diagnosis:

Axis I:       315.1 Mathematics Disorder
Axis II:      V71.09 No Diagnosis on Axis II
Axis III:     Seasonal Allergies
Axis IV:      Educational problems: academic weaknesses in math, possible problems
              with inattention, disorganization, and difficulty completing assignments
              Problems with primary support group: H/O maternal and paternal drug
              abuse
Axis V:       GAF = 70 (current)

Recommendations:

➢ Delmar should be referred to special education for placement in an appropriate
  school program that can address his academic needs. He requires academic
  remediation in math, and behavior management as needed in the classroom.

➢ Delmar should receive group psychosocial counseling at school once weekly for
  45 minutes to enhance his social skills and aid him in developing age-appropriate
  friendships.

➢ Delmar should be referred for a neuropsychological or psychiatric evaluation to
  further investigate his reported problems with inattention.

Prepared by:    Sandra R. Saulter, Ph.D., Clinical Psychologist

*Sandra R. Saulter, Ph.D.*

Licensed/District of Columbia
Registrant/National Register of Health Service Providers in Psychology

359

DW-04

**PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS**
**UPPER MARLBORO, MARYLAND   20772**

CONFIDENTIAL                                                    CONFIDENTIAL

**DEPARTMENT OF PSYCHOLOGICAL SERVICES**

PSYCHOLOGICAL REPORT

[  ] EVALUATION    [ X ] ASSESSMENT    [  ] REEVALUATION

NAME: ~~D████ W██████~~    STUDENT #:000382703   SCHOOL: Berkshire Elementary

ADDRESS: __6409 Pennsylvania Avenue # 202, Forestville, MD 20747__

DATE OF BIRTH: ~~████~~/89   AGE: 10-7    SEX: M    GRADE: 5

PARENT/GUARDIAN: __Barbara Wilkins__

HOME PHONE:301-516-5774   WORK PHONE(s): MOTHER: 301-853-3102 FATHER: _____

DATE OF REFERRAL: 5/2/00  CURRENT ASSESS: 5/2/00   PRIOR ASSESS: __N/A__

PSYCHOLOGIST: Shannon Holmes, Psy. M.   OFFICE: OHSDC   PHONE: (301)749-4384

REASON FOR REFERRAL:
[  ] Appropriate Placement/Program
[  ] Behavioral/Emotional Concerns
[  ] Academic/Developmental Concerns
[  ] Re-evaluation
[X] Other: __Attentional Concerns__

| TECHNIQUES UTILIZED: | PSYCHOMETRICS: |
|---|---|
| [X] Review of records | [ ] WISC-III |
| [ ] Observation | [ ] WAIS-R |
| [ ] Interview | [ ] WPPSI-R |
| Consultation with: | [ ] S-Binet, 4th Ed. |
| [X] Parent | [ ] McCarthy |
| [X] Teacher, Counselor, Principal | [ ] K-ABC |
| [ ] Other: _____ | [ ] Other: _____ |

| PROJECTIVES: | RATING SCALES: | ADAPTIVE BEHAVIOR SCALES: |
|---|---|---|
| [ ] Drawings | [X] ADHD | [ ] AAMD/AAMR |
| [ ] Rorschach | [ ] Behavior | [ ] Vineland |
| [ ] TAT or CAT | [ ] Self | [ ] Other:_____ |
| [ ] Roberts | [ ] Social/Emotional | |
| [ ] Incomplete | [ ] Other: _____ | SUPPLEMENTAL TESTS: |
| Sentences | | [ ] Bender |
| [ ] Other: _____ | | [ ] VMI |
| | | [ ] VADS |
| | | [ ] Other: _____ |

STUDENT WAS EVALUATED IN HIS/HER PRIMARY LANGUAGE: [X] YES, __English__ [ ] NO
                                                      See Narrative

THE INSTRUMENTS SELECTED ARE VALID FOR THIS STUDENT: [X] Yes [ ] No- See
                                                                   Narrative

PS-14  (Revised 12/90)

DW-04

360



W███████, D████████
████-09

# PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS
## UPPER MARLBORO, MARYLAND  20772
### PSYCHOMETRIC SUMMARY

CONNERS' RATING SCALE - REVISED (Long Form)

| Scales | Parent | Teacher |
|---|---|---|
| Oppositional | Average | Poss. Significant |
| Cognitive Problems | Poss. Significant | Significant |
| Hyperactivity | Average | Borderline |
| Anxious-Shy | Average | Borderline |
| Perfectionism | Average | Average |
| Social Problems | Average | Average |
| Psychosomatic | Average | N/A |
| Conners' ADHD Index | Average | Significant |
| Restless-Impulsive | Average | Poss. Significant |
| Emotional Lability | Average | Average |
| Global Index - Total | Average | Borderline |
| Inattentive | Average | Significant |
| Hyperactive-Impulsive | Average | Borderline |
| DSM-IV - Total | Average | Significant |

ADDITIONAL TESTS ADMINISTERED:   None

Recommendations in this report will be transmitted to the appropriate school team for consideration regarding implementation.

361

PS-54   (Revised 12/95)

## PSYCHOLOGICAL ASSESSMENT REPORT PART II:  NARRATIVE

Name:  D██████ W████████
DOB:  ████-89
School:  Berkshire Elementary School

### REASON FOR REFERRAL:

D██████ is a ten-year-old fifth grader attending Berkshire Elementary School.  Presently, D██████ has been referred to the multidisciplinary team to investigate the possibility of attentional issues which may be negatively impacting his academic performance.  His teacher reported that D██████ had not completed homework or classwork assignments making it difficult to assess his academic progress.  Of positive note, she indicated that D██████ is artistic and willing to help others with physical activities such as cleaning, running errands and moving furniture.  She also rated his oral expression and reading comprehension as areas of relative strength.  D██████ mother appeared to share many of the teacher's concerns.  She stated that D██████ is receiving failing grades and appears to have a short attention span at school, although he obeys adults at home.

### BACKGROUND INFORMATION:

According to the parent questionnaire completed with Delonta's mother as the informant, D██████ is the youngest of three children.  He lives with his mother, stepfather and siblings.  No serious problems were experienced during the pregnancy or delivery and all developmental milestones were achieved within expected timeframes.  D██████ mother rated his general health as excellent.  She described D██████ interests as skateboarding and cars and stated that he is a good reader. Additionally, she endorsed the following social-behavioral characteristics as describing D██████:

enjoys reading; has a short attention span; has a difficult time with paper and pencil tasks; avoids homework; is overactive; tells lies; is easily influenced by others sometimes and is likable.

### RATING SCALE DATA:

Due to reports of inattention and problems with organization, D██████ mother and his classroom teacher were asked to complete the Conners' Rating Scales - Revised, Long Form, a screening tool for Attention Deficit Hyperactivity Disorder (ADHD).  Scores indicate that the respondents differ in their perceptions of many of D██████ behaviors.

According to the parent rating scale, scores fell within the Average range in all assessed areas with the exception of the Cognitive Problems scale.  The corresponding score was described as Possibly Significant.  The teacher form also indicated serious

362

W███████, D████████
████-89
4

concerns in this area with a significantly elevated score.
Cognitive problems are defined on the Conners' Rating Scale as
learning difficulties, organizational, attention and
concentration problems, and difficulty completing schoolwork.
D████████ mother endorsed the following items as being *pretty
much* or *very much true* of him:  fails to give close attention to
details or makes careless mistakes in schoolwork, work, or other
activities; has difficulty doing or completing homework; avoids,
expresses reluctance about, or has difficulties engaging in tasks
that require sustained mental effort (such as schoolwork or
homework); fails to complete assignments; has trouble
concentrating in class; and needs close supervision to get
through assignments.  Frequently, students with attention
problems also receive high scores on this scale as often
inattention negatively impacts academic performance.

In contrast, the teacher rating scale reflected serious
concerns across a number of areas including the following:
inattention, Conners' ADHD Index, and DSM-IV Total.  These
results suggest that at school, D██████ is easily distracted, has
difficulty concentrating, often appears restless, acts
impulsively and exhibits many problematic behaviors, in general.
Children with high scores on the <u>Inattention</u> scale tend to have
trouble concentrating on tasks which require sustained mental
effort.  Inattention is a central feature of ADHD.

The <u>Conners' ADHD Index</u> measures the presence of ADHD
symptoms.  D████████ classroom teacher rated the following items
as being *very much true* of D██████:  fails to finish things he
starts; is inattentive, easily distracted; only pays attention to
things he is really interested in; and distractibility or
attention span is a problem.  An elevated score on the <u>DSM-IV -
Total</u> scale indicates an unusually high correspondence to DSM-IV
criteria for combined Inattention and Hyperactive-Impulsive Type
ADHD.  In addition, D████████ teacher endorsed five of nine items
which correspond to a diagnosis of Attention Deficit
Hyperactivity Disorder, Predominantly Inattentive Type.

Potentially serious concerns were reported by D████████
classroom teacher on the <u>Restless-Impulsive</u> and <u>Oppositional</u>
scales.  The corresponding scores were described as Possibly
Significant indicating that at school, D██████ often displayed
high levels of restlessness, impulsivity and inattention and  is
likely to break rules, have problems with authority, and become
more easily annoyed and angered than other children his age.

It is not unusual to get disparate scores on some scales
from multiple respondents.  There are a number of possible
reasons for this.  The child's behavior may actually be different
from one context to the next; one respondent's tolerance level
for problem behaviors may be higher or lower than the other's; or

W████████, D████████
████-89

5

the respondents may use different behavior management
strategies with varying degrees of effectiveness. Inconsistency
of reporting could also indicate that some of D████████ problems
are exacerbated by the behavioral, academic, and/or social
demands of an academic setting. Based on his academic history
and current rating scale data, it is possible that D████████ is
experiencing some attentional difficulties which may be
negatively affecting his academic performance.

SUMMARY:

    D████████ is a ten-year-old fifth grader at Berkshire
Elementary School. Due to reports of inattention and
disorganization, a screening was conducted to rule out the
presence of Attention Deficit Hyperactivity Disorder. Results of
behavior rating scales and academic history are suggestive of the
presence of Attention Deficit Hyperactivity Disorder,
Predominantly Combined Type.

RECOMMENDATIONS:

1.  The results of this evaluation will be forwarded to the
    multidisciplinary team to determine eligibility for
    instructional modifications.

2.  D████████ mother may wish to consult with her pediatrician
    or other health professional with expertise on the diagnosis
    and treatment of Attention Deficit Hyperactivity Disorder.

3.  Teachers should provide a highly structured classroom
    environment and limit distractions. D████████ should be
    seated near the front of the room and away from the window,
    door, and other high traffic areas.

4.  Teachers should be sure they have D████████ full attention
    before giving clear, concise instructions or assigning work.
    They can check for understanding by having D████████ repeat or
    rephrase directions. Also, it may be helpful to give
    D████████ periodic reminders to stay on task.

5.  Due to D████████ inattention and distractibility, academic
    assignments may need to be modified, such as breaking larger
    tasks down into smaller, more manageable steps. D████████
    progress should be monitored frequently.

6.  Teachers may wish to use a timer or other incentives to
    challenge D████████ to complete more of his assignments in
    class. In addition, D████████ should be encouraged to use his
    agenda book to record homework assignments. His agenda book
    should be reviewed regularly by his teachers and parent to
    help increase task completion.

364

, D███████
████-89

6

7.  Individual and/or group counseling as they are available in
    school may be useful for D██████ to help improve his
    motivation and decision-making skills.

Shannon Holmes, Psy. M.    Date
Certified School Psychologist    6-20-00



*Making a Difference*

## INTERDYNAMICS, INC.
### *Evaluations and Therapy*
### <u>Psychiatric Evaluation</u>

*DW-05*

**Student Name:** D█████ W█████
**Date of Birth:** █████████, 1989
**Date of Report:** July 23, 2004
**Address:** 5019-11 Street, NE
    Washington, DC 20017
**Telephone:** (H) 202-832-1048
**Examiner:** Spencer Johnson, MD
    Psychiatrist

### <u>Presenting Problems:</u>

D█████ was referred for a psychiatric evaluation to assess emotionality and determine appropriate treatment modes, related to academic achievement and social adjustment.

D█████ symptoms and behavioral difficulties included the following: poor academic progress, inattentiveness, self-isolation and avoidant behaviors.

The following report was reviewed as a part of this Psychiatric Evaluation: A Cognitive Psychological Evaluation dated May 6, 2002 by Dr. Sandra Saulter.

### <u>Social History:</u>

D█████ and his paternal grandmother, Ms. Marion Murphy, provided the historical information for this evaluation. He resides with his grandmother, aunt and younger cousin and has two older siblings who reside on their own. Ms. Murphy has had legal guardianship of D█████ since he was two years old as a result of his mother's inability to care for him. According to Ms. Murphy, when D█████ mother, Barbara Jean Wilkins, had him her parents were unwilling to help care for him. Ms. Wilkins was unable to establish a strong relationship with D█████ prior to her death of breast cancer in August 2003. Although they visited at times, Ms. Murphy states that the visits were short and when allowed to live with his mother for six month intervals, his behavior became increasingly negative. Ms. Murphy took D█████ to see his mother frequently when his mother's condition became more serious. While D█████ has a very good relationship with his immediate family, he has not established the type of bond with his father that Ms. Murphy feels is appropriate. According to Ms. Murphy, Kevin Stevenson, D█████ father, has always treated him more like a brother than a son and has not made enough effort to bond with him. Equally important is the history of substance abuse by both of D█████ parents in his early years of development. Mr. Stevenson eventually ceased the use of drugs and entered into the Navy where he has made a change in his life. Significantly, Ms. Murphy states that he now puts a little more effort into spending time with D█████

According to Ms. Murphy, D█████ was carried full term and delivered vaginally. She states that both parents were using crack cocaine during the pregnancy, which could have led to his delayed

developmental milestones. D█████ walked and put two words together after the age of two years old. He also had a history of ear infections that did not require surgery.

**Educational History:**

A Cognitive Psychological Evaluation written by Dr. Saulter on May 6, 2002 indicated that D█████ was responsive and cooperative during testing. He was diagnosed with a Mathematics Disorder and advised that further testing would be necessary rule out a prior diagnosis of ADHD. Dr. Saulter recommended special education services focusing on math, a behavioral management plan, psychosocial counseling and either a psychiatric or neuropsychological evaluation.

**History of Present Illness/ Psychiatric History:**

D█████ is a 14 year-old boy who will be attending Friendship Edison Charter School as a tenth grader. According to Ms. Murphy, he was diagnosed with ADHD in the 2nd grade but was not medicated at that time. He had difficulty with remaining focused, would leave his seat frequently to do whatever he chose, and wouldn't complete assignments. Significantly, he displayed severe problems while in the 2nd and 6th grades when he was allowed to reside with his biological mother for short periods of time. According to Ms. Murphy, the environment and activities that took place in Ms. Wilkins household caused him to act out negatively in school. While in the 6th grade, teachers complained that he had no supplies, wasn't completing classroom or homework assignments. Subsequently, Ms. Murphy was advised that he may be retained in the 6th grade so she removed him from his mother's house. She worked diligently with him in completing and understanding his schoolwork and thus he was promoted to the 7th grade. However, Ms. Murphy noticed that D█████ had been more introverted since returning from his mothers' and she is unaware of what caused this behavior. Ms. Murphy stated that after the 6th grade, he was no longer allowed to go over to his mothers'house. He is currently seeing a Psychiatrist to deal with his feelings of loss and self-isolation.

Currently, Ms. Murphy reports that D█████ is picked on by his peers and refuses to fight back; avoids completing math and english class assignments. He has been receiving special education services since the 7th grade while in a general education setting. D█████ refuses to raise his hand to ask questions and will not move to the front of the class. Significantly, he was suspended this year due to leaving the school building.

According to D█████ he enjoys science but finds math very difficult. He further stated that he does not complete classroom or homework assignments because he doesn't understand the material and there are too many instructions for math. D█████ feels that special education services are helping just a little. He enjoys playing basketball and football and would like to go to college for architecture.

**Mental Status Examination:**

D█████ is a tall African American boy who was dressed appropriately. He was cooperative and maintained good eye contact. He was alert and oriented to person, place and time. There was no evidence of motor retardation. His mood was good and affect was appropriate. He denies having suicidal or homicidal ideations. There was no evidence of persecutory trends. He denies feelings of passive alien control. He did not evidence obsessive or compulsive behaviors. He has phobias of snakes. There was no evidence of depressive symptoms. He denies having auditory or visual hallucinations. There was no evidence of hypochondriacal trends or somatic delusions. His speech was normal in rate and rhythm. There was no evidence of loosening of association. He has good insight and cognitive judgment. His memories were intact remembering three out of three things in five minutes. His general fund of

367

knowledge is average. His concentration was good. He performed serial 7's with one mistake and spelled the word "world" backwards.

**Diagnosis:**

| Axis I | 314.0 History of Attention Deficit Hyperactivity Disorder |
| | 315.9 Learning Disability |
| | 300.4 Dysthymic Disorder |
| Axis II | Deferred |
| Axis III | Seasonal Allergies |
| Axis IV | Moderate (early separation from mother, abandonment from father, death of mother and academic difficulties in math) |
| Axis V | GAF (65) |

**Discussion and Recommendation:**

D█████ W█████ is a 14 year-old African American male who is going into the 10th grade. He arrived to this testing site with his paternal grandmother, Ms. Murphy. He lives with his grandmother, aunt and cousin. He has been living with his grandmother since he was three months old but spent some time living with his biological mother. His mother died last year of breast cancer. During the interview he didn't exhibit any signs of hyperactivity. He admits to having problems with math. He has been taking Concerta 54 mgs daily, which might improve his concentration. At this time, he doesn't exhibit any sign of inattentiveness or behavioral problems. D█████ appears to respond well to one to one interaction. His performance during this evaluation yielded greater results than reported school experiences. Reported areas of concern are consistent with characteristics of ADHD. However, medication is reported to result in limited improvement. Nonetheless, D█████ reports difficulty in attending to multisteps. He also has difficulty with initiating and completing tasks. Organization problems are also reported.

Further complications of abandonment and the death of the maternal figure in his life have further impeded D█████ emotional adjustment. D█████ histories of abandonment and significant loss have impaired his sense of self work and feelings of belonging. These feelings have incapacitated him in areas of independence, assertiveness and social savvy. He is lost in a large class and would be overwhelmed in a population of aggressive acting out youngsters. He would benefit from a very small, highly structured program with activities designed to promote a sense of belonging and a feeling of some control. He would benefit from a re-evaluation of current medication trials, individual, group and family therapy as well as specialized instruction in areas of academic deficits. D█████ program should be success oriented with externalized prompting and organization.

Sincerely,

*Spencer J Johnson m*

Spencer Johnson, MD
Psychiatrist

368

DW-06



*Making a Difference*

## INTERDYNAMICS, INC.
*Evaluations and Therapy*

### Social Work Evaluation Report

**Student Name:** D̶e̶████ W̶i̶l̶████    **DOB:** ████89        **Age:** 14
**Primary Language:** English    **Grade:** 9
**Parent/Guardian:** Marian Murphy (paternal grandmother)
**Address:** 5019 11ᵗʰ St. NE Washington, DC 20017
**Telephone#** (202) 832-1048
**Referral Source:** Guardian
**Reason for referral:** D̶e̶████ was referred for an evaluation due to increasing concerns regarding his educational placement.

### Developmental/Medical History

D̶e̶████ was born of natural delivery at Howard University Hospital following his mother's full term pregnancy. Delivery was unremarkable, however D̶e̶████ mother and father are reported to have a history of substance abuse involving crack cocaine. At two years old, D̶e̶████ fell off a chair and was knocked unconscious for several minutes after hitting his head on the floor. He was observed overnight at Children's Hospital and released after x-rays revealed no significant damage. At twelve years old he was evaluated at the Educational Diagnostic Institute to assess his current level of cognitive functioning which revealed that D̶e̶████ was functioning in the "average" range of intelligence as compared with his peers. He did test well below grade level however in basic arithmetic leading to a diagnosis of Mathematics Disorder. Recommendations included referrals for special education services, in school psychosocial counseling and a referral for a neuropsychological evaluation. D̶e̶████ continues to take 50 mg. of Concerta daily as a treatment for ADHD and Allegra for allergies.

Ms. Murphy reports that D̶e̶████ achieved all developmental milestones on time including crawling, sitting, walking and talking.

### Family History

### Household Composition

| Name | Age | Relationship | Occupation |
|------|-----|--------------|------------|
| Marian Murphy | 57 | grandmother | day care provider |
| Tamira Murphy | 30 | aunt | |
| Tanisha Murphy | 8 | cousin | |
| D▮▮▮▮ W▮▮▮▮▮ | 14 | self | |

D▮▮▮▮ lives in a four bedroom house with his grandmother, aunt and cousin where they've been for approximately nine years. With the exception of two brief periods, D▮▮▮▮ has been in the care of his grandmother since he was two months old due to his mother's inability to provide care for him. When D▮▮▮▮ was approximately eight years old he went to live with his mother after she convinced the grandmother that she was capable of taking care of him. D▮▮▮▮ returned to the grandmother's home after several months because of an investigation of the mother's house initiated by DC Child and Family Services. Additionally, D▮▮▮▮ was reportedly missing a lot of days from school during this time. At approximately twelve years old, D▮▮▮▮ went to live with his mother again and returned to the grandndmother's house after one semester due to his mother's inability to get him to school on a consistent basis. D▮▮▮▮ continued to maintain sporadic contact with his mother, staying with her occasionally overnight, until she passed away of breast cancer in August 2003 at the age of forty. There is no knowledge of her educational or work history.

D▮▮▮▮ father, Kevin Stevenson (38), lives in Lanham, Maryland and only recently began showing an interest in his well being. A reunification of sorts occurred during the funeral of D▮▮▮▮ mother. Mr. Stevenson had maintained distance between he and D▮▮▮▮ because of the circumstances under which D▮▮▮▮ was conceived. Apparently, Mr. Stevenson was involved in another relationship when he had an affair with D▮▮▮▮ mother. He continued to harbor feelings of resentment toward mother and child throughout D▮▮▮▮ young life. Mr. Stevenson has no other children and is in the process of getting married. He is a graduate of Roosevelt High School and completed three years in the Navy. He's returned to school to study electrical engineering and has a job with a construction company doing electrical work.

D▮▮▮▮ gets along well with all members of the household although he may have the best relationship with his aunt Tamira who has been sort of a big sister to him. He does chores including taking out the trash, cleaning his room and washing the family cars. He also cuts grass for some of the neighbors.

## Social/Behavior Characteristics

D▮▮▮▮ is described by Ms. Murphy as being shy and immature for his age. He doesn't have many friends and prefers playing with children who are younger than he is.

He enjoys playing video game and sports, particularly basketball.

370

## School History

D▆▆▆▆ attended the first grade at Sacred Heart Elementary School where Ms. Murphy reports that he performed on grade level although there were frequent reports of being overactive. He attended the second grade at Nativity Catholic Academy where he was initially tested for ADHD due to ongoing reports of his inability to remain seated during class time and difficulties following instructions. D▆▆▆▆ attended third grade at Rudolph Elementary School during a brief stay with his mother. Ms. Murphy reports that he had poor attendance, failed to complete most of his assignments and had difficulty remaining on task. He continued to attend Rudolph Elementary through the fifth grade with much of the same problems although he returned to live with his grandmother. In the sixth grade, D▆▆▆▆ attended Birkshire Elementary School in Prince George's County while living with his mother, experiencing failing grades as a result of poor attendance. D▆▆▆▆ returned to live with his grandmother after one semester, however Birkshire allowed her to transport him their every day from Washington,DC Ms. Murphy reports that he attended the seventh and eighth grade at Backus Middle School where he began to make some progress due to special education assistance received for math and English.

## Summary

D▆▆▆▆ Wilkins is a fourteen year old African-American male with a history of academic problems related to a variety of factors including, but not limited to, unstable home life, inability to remain focused, poor self control and problems with mathematics.

D▆▆▆▆ has experienced a great deal of trauma associated with several failed attempts to reunite with his biological mother. Her inability to provide a nurturing environment for him contributed to issues related to trust, anxiety, insecurity and lack of continuity regarding academic progress. There would have been a high degree of distractibility for him during those times due to the fragile nature of their relationship, thereby affecting his ability to concentrate in the classroom. Also, associated feelings related to her death such as sadness, anger, uncertainty and depression would have affected his progress as well. Additionally, until recently, D▆▆▆▆ father hadn't displayed an interest in developing a relationship with him causing further emotional damage due to issues related to abandonment.

D▆▆▆ could benefit from a small structured academic environment that has a therapeutic component to address ongoing issues related to grief and loss, developing appropriate coping skills, as well as helping with forming a bond with his father. A previous recommendation regarding individual therapy should be adhered to weather it takes place in school or at an independent site. A neuropsychological evaluation is recommended to address possible concerns related to exposure to drugs inutero or any lingering effects of a head injury suffered when he was a toddler. Additionally, although he has the overall cognitive ability to succeed, he will continue to need special assistance with overcoming significant delays with mathematics.

Finally, this is a very crucial stage in D███████ development, adolescence, which will continue to present challenges regarding identity formation, peer pressure and academic achievement. All possible supports and interventions should be explored in order to assist him in becoming the most productive individual he can be.


James Thomas, MSW

8/19/04
Date

DW-07

📁 **FILE**

# Law Office,
## Christopher N. Anwah, LLC
Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
   (DC, MD, NJ)
Fatmata Barrie, Esq.
   (DC, FL)
Panya Monford, Esq.
   (MD)
December 18, 2004

1003 K Street, N.W.
 Suite 500
Washington, D.C. 20001
Phone: (202) 626-0040
Fax: (202) 626-0048

**By Fax: (202) 442-5524**

Office of Mediation and Compliance
D.C. Public Schools
825 North Capitol Street, N.E.
Washington, D.C. 20002

                      RE:   D██████ W████
                      DOB:  ██████89

Dear Sir/Ms.:

Our office is writing to inform you that the Settlement Agreement signed on June 24, 2004 gave DCPS fifteen (15) business days of the receipt of the last independent evaluation to review and to schedule an MDT/IEP meeting. Our office on September 5, 2004 provided Mr. Jack Schreibman, Esq., Attorney Advisor, copies of the independent evaluations for DCPS's review and to schedule an MDT/IEP; however, to date, DCPS has not contacted our office to provide us with a copy of its review of the independent evaluations and to provide us with a letter of invitation with three (3) dates for our consideration to schedule an MDT/IEP meeting. Therefore, DCPS has violated the Settlement Agreement. If you have any questions, please contact the undersigned staff personnel at either (202) 626-0040 or (202) 270-9156.

Thank you for your prompt attention and cooperation regarding this matter.

Sincerely,

*Annie R. Pressley*

Annie R. Pressley, J.D.
Law Clerk for Christopher Anwah, Esq.
Attorney for D██████ W████

cc:    Client's file

373

# Law Office,
# Christopher N. Anwah, LLC
Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
    (DC, MD, NJ)
Fatmata Barrie, Esq.
    (DC, FL)
Panya Monford, Esq.
    (MD)

1003 K Street, N.W.
Suite 500
Washington, D.C. 20001
Phone: (202) 626-0040
Fax: (202) 626-0048

## FACSIMILE COVER LETTER

DATE:
    December 18, 2004

TO:
    Office of Mediation and Compliance

COMPANY
    D.C. Public Schools

FAX NUMBER:
    (202) 442-5524

FROM:
    Christopher Anwah, Esq./Annie R. Pressley, J.D. - Law Clerk/Education Advocate

TOTAL NUMBER OF PAGES INCLUDING COVER SHEET _2_

MESSAGE: INFORMING OF VIOLATION OF SETTLEMENT AGREEMENT FOR
    D█████ W█████ - DOB: ██████89

If there is any problem with this transmission, please call as soon as possible at (202) 626-0040

### *** CONFIDENTIALLY NOTE ***

The pages accompany this facsimile transmission contain information from the CHRISTOPHER ANWAH, ESQ. law offices which is confidential or privileged, or both. The information is intended to be for the use of the individual or entity named on this cover letter. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this facsimile in error, please notify us by telephone immediately at (202) 626-0040 so that we can arrange for the retrieval of the original documents at no cost to you.

TII REPORT

Dec. 19 2004 02:36AM

| NO. | OTHER FACSIMILE | START TIME | USAGE TIME | MODE | PAGES | RESULT |
|-----|-----------------|------------|------------|------|-------|--------|
| 01 | 202 442 5524 | Dec. 19 02:35AM | 01'12 | TX | 02 | OK |

*Wrote DCPS Mediation + Complaine — Violation of Settlement Agreement signed on 6/24/04 for ~~Quality~~ child. AJP*

375

Dw-08

FILE

# Law Office,
## Christopher N. Anwah, LLC
Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
   (DC, MD, NJ)
Fatmata Barrie, Esq.
   (DC, FL)
Panya Monford, Esq.
   (DC)

Federal District Building
1010 Vermont Avenue, N.W.
 Suite 600
Washington, D.C.  20005
Phone: (202) 347-7026
Fax: (202) 347-7108
Email: Lawoffcna@aol.com

September 5, 2004

**By Fax: (202) 442-5098**

Mr. Jack L. Schreibman, Esq.
Attorney Advisor
DCPS Office of the General Counsel
825 North Capitol Street, N.E.
Washington, D.C.  20002

        RE:    D██████ W██████
        DOB:   ██████/89

Dear Mr. Schreibman:

Our office is writing to submit the independent psychiatric and social history evaluations that have been completed for D██████ W██████, per the Settlement Agreement signed between DCPS and our office on June 24, 2004.  DCPS in the Settlement Agreement agreed to convene an MDT meeting within fifteen (15) business days of the receipt of the independent evaluations, and to update D██████ IEP as warranted.  Also, placement should be discussed and determined when the MDT team meet.

Therefore, we are requesting that DCPS review the independent evaluations and then contact the undersigned staff personnel to arrange for a mutual date and time for the scheduled MDT/IEP meeting for all parties concerned at either (202) 347-7026 or (202) 270-9156.

Thank you for your immediate attention and cooperation regarding this matter.

Sincerely,

Annie R. Pressley, J.D.
Law Clerk for Christopher Anwah, Esq.
Attorney for D̶██████ W̶█████

Attachments: (2)

cc:    Client's file

# Law Office,
# Christopher N. Anwah, LLC

Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
   (DC, MD, NJ)
Fatmata Barrie, Esq.
   (DC, FL)
Panya Monford, Esq.
   (MD)

Federal District Building
1010 Vermont Avenue, N.W.
Suite 600
Washington, D.C. 20005
Phone: (202) 347-7026
Fax: (202) 347-7108
Email: Lawoffcna@aol.com

## FACSIMILE COVER LETTER

**DATE:**
   September 5, 2004

**TO:**
   Mr. Jack Schreibman - Attorney Advisor

**COMPANY**
   DCPS Office of the General Counsel

**FAX NUMBER:**
   (202) 442-5098

**FROM:**
   Christopher Anwah, Esq./Annie R. Pressley, J.D. - Law Clerk/Education Advocate

**TOTAL NUMBER OF PAGES INCLUDING COVER SHEET** __10__

**MESSAGE:** SUBMISSION OF INDEPENDENT EVALUATIONS FOR D█████
  W█████ - DOB:█████89 AND REQUEST TO SCHEDULE MDT/IEP MEETING

If there is any problem with this transmission, please call as soon as possible at (202) 347-7026

### *** CONFIDENTIALLY NOTE ***

The pages accompany this facsimile transmission contain information from the IWEANOGE & ANWAH law offices which is confidential or privileged, or both. The information is intended to be for the use of the individual or entity named on this cover letter. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this facsimile in error, please notify us by telephone immediately at (202) 347-7026 so that we can arrange for the retrieval of the original documents at no cost to you.

DW-09

## CONFIDENTIAL
## HEARING OFFICER'S DETERMINATION

**STUDENT:**  D██████ W██████        **DATE OF BIRTH:**  ███████ ██, 1989

**CASE NUMBER:**   2002-1501

**ADDRESS:**   5019-11th Street, N.E., Washington, D.C. 20019

**DATE OF HEARING:**      August 20, 2002

**PRESENT SCHOOL:**      IDEAL Public Charter School

**DATE OF FORM 6:**      NA

**DATE OF MOST RECENT DCPS IEP:**  NA

**DATE OF MOST RECENT DCPS PLACEMENT NOTICE:**  NA

**PRESENT AT THE HEARING:**

**DCPS:**

Quinne Harris-Lindsey          Attorney Advisor

**Student:**

Christopher Anwah, Esq.          Counsel for the parent

**STUDENT'S REPRESENTATIVE:**      Christopher Anwah, Esq.
**ADDRESS:**       · 1220 L. Street, N.W., Suite 700, Washington, D.C. 20002

**SCHOOL SYSTEM'S REPRESENTATIVE:**   Quinne Harris-Lindsey, Esq.
**ADDRESS:**   825 North Capitol Street, N.E. 9th Floor, Washington, D.C. 20002

379

## IN THE MATTER OF
## D███████ W██████ (D.O.B. ████████████, 1989)

### INTRODUCTION:

A Due Process Hearing was convened on August 20, 2002 at the District of Columbia Public Schools ("DCPS"), 825 North Capitol Street, N.E. Washington, D.C. 20002, concerning D██████ W██████. The hearing was held pursuant to a hearing request dated June 26, 2002, submitted by Christopher Anwah, Esq. Mr. Anwah represented the student at the Hearing. Quinne Harris-Lindsey represented DCPS at the Hearing.

### JURISDICTION:

The Hearing was held and this decision was written pursuant to the *Individuals with Disabilities Education Act* (I.D.E.A.), P.L. 101-476, as amended by P.L. 105-17, the *Rules of the Board of Education of the District of Columbia and the DC Appropriations Act, Section 145*, effective October 21, 1998.

### DUE PROCESS RIGHTS:

Mr. Anwah waived a formal reading of the due process rights.

### DOCUMENTS:

**On Behalf of DCPS:**

DCPS-01, Disclosure Letter dated August 14, 2002

**On Behalf of the Parent:**

KW-01 through KW-08, per Disclosure Letter dated August 13, 2002

### SUMMARY OF RELEVANT EVIDENCE:

The Hearing Request contends that the parent transferred D██████ to IDEAL Public Charter School ("IDEAL") from the Thurgood Marshall Middle School in Temple Hills, Maryland. She said that she gave the Co-Principal of IDEAL a copy of D██████ transfer along with a copy of a § 504 plan. D██████ records indicated that he had received special education services. However, D██████ did not receive special education services from IDEAL.

As a result a settlement agreement entered into February 28, 2002, DCPS agreed to complete a psycho-educational evaluation, speech and language evaluation and a social history assessment by March 25, 2002 and then convene a MDT team meeting. Additionally, if DCPS failed to conduct the evaluations, then DCPS agreed that it would fund independent evaluations.

DCPS failed to conduct the evaluations as agreed, so the parent obtained an independent speech and language evaluation and psycho-educational evaluation and gave a copy to DCPS on May 25, 2002. The social history assessment is still outstanding. Also, the psycho-educational evaluation recommended that either a neuropsychological or a psychiatric evaluation should be obtained.

At the Hearing, the parties discussed the status of the evaluations on the record and reached an agreement that DCPS shall complete the social history and psychiatric evaluations within Thirty (30) days from the date of this Hearing. Ten (10) days after receipt of the last evaluation, an MDT/IEP/Placement meeting will be convened and the team will develop an appropriate IEP, determine an appropriate placement and issue a Prior Notice of placement.

## FINDING OF FACT AND CONCLUSIONS OF LAW:

DCPS is obligated to ensure that all children with disabilities receive a Free and Appropriate Public Education ("FAPE") 34 C.F.R. §300.300. This obligation includes identifying children with disabilities and who may be in need of special education services. 34 C.F.R. §300.125. Additionally, DCPS is obligated for evaluating children in all areas of suspected disabilities 34 C.F.R. §300.320.

The Hearing Officer finds that D███████ was not evaluated as the parties had agreed. However, the Hearing Officer concurs with the agreement of the parties as being in the best interest of the student and therefore incorporates the terms thereof into this Hearing Officer's Determination.

## ORDER:

1. DCPS shall complete a social history and psychiatric evaluation within Thirty (30) days from the date of this Hearing. Ten (10) days after receipt of the last evaluation, an MDT/IEP/Placement meeting shall be convened and the team will develop an appropriate IEP, determine an appropriate placement and issue a Prior Notice of placement.

2. The parent reserves the right to claim compensatory education

3. The hearing Officer retains jurisdiction of this case and the parties may request an expedited hearing.

4. The parties shall cooperate with each other in scheduling evaluations and meetings and any delay caused by the parent in scheduling an evaluation shall extend the time for completing evaluations by the equivalent amount of time of the delay.

This is the final administrative decision in this matter.  Appeals on legal grounds may be made to a court of competent jurisdiction within 30 days of the rendering of this decision.

_David R. Smith_  8-23-02

Date **8/27/02**

David R. Smith
Hearing Officer



# Law Office,
# Christopher N. Anwah, LLC

**Attorneys and Counselors at Law**

Christopher N. Anwah, Esq.
   (DC, MD, NJ)
Fatmata Barrie, Esq.
   (DC, FL)

Federal District Building
1010 Vermont Avenue, N.W.
Suite 600
Washington, D.C. 20005
Phone: (202) 347-7026
Fax: (202) 347-7108
Email: Lawoffcna@aol.com

March 26, 2004

**By Fax: (202) 541-0573**

Mr. James Ricks
Principal
Village Learning Center Public Charter School
33 Riggs Road, N.E.
Washington, D.C. 20011

        RE:   D▮▮▮▮ W▮▮▮▮
        DOB:  ▮▮▮/89

Dear Mr. Ricks:

Our office represents Ms. Marian Murphy and her son, D▮▮▮▮ W▮▮▮▮, in regards to D▮▮▮▮ special education services. Prior to D▮▮▮▮ registering at your school, a due process hearing was held on August 20, 2002 and the Hearing Examiner ordered that the D.C. Public School(DCPS) complete a social history and psychiatric evaluations within thirty (30) days from the date of his order. Also, that DCPS was to convene MDT/IEP-placement meeting within ten (10) days after the last evaluation was completed. After speaking with Ms. Murphy, she has informed us that she was not certain if DCPS had complied with that order. Further, that those evaluations, once completed, were to be forwarded to our office. We have reviewed D▮▮▮▮ file in our office and we do not have any record that indicates that those evaluations were ever completed and forwarded to us.

Therefore, we are requesting that Village Learning Center Public Charter School ("Village") inform us as to the completion of those evaluations and to forward us copies by close of business Tuesday, March 30, 2004. In addition to those evaluations, please forward us a copy of D▮▮▮▮ 2003/04 IEP. If you have any questions, please contact our office law clerk, Ms. Annie R. Pressley. Ms. Pressley can be reached at either (202) 347-7026 or (202) 270-9156.

383

Thank you for your immediate attention and cooperation regarding these matters.

Sincerely,

Christopher Anwah, Esq.
Attorney for D~~elonta~~ W~~ilkins~~

cc:    Client's file

384

# Law Office,
# Christopher N. Anwah, LLC

Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
   (DC, MD, NJ)
Fatmata Barrie, Esq.
   (DC, FL)

Federal District Building
1010 Vermont Avenue, N.W.
 Suite 600
Washington, D.C. 20005
Phone: (202) 347-7026
Fax: (202) 347-7108
Email: Lawoffcna@aol.com

## FACSIMILE COVER LETTER

**DATE:**
    March 26, 2004

**TO:**
    Mr. James Ricks - Principal

**COMPANY:**
    Village Learning Center Public Charter School

**FAX NUMBER:**
    (202) 541-0573

**FROM:**
    Christopher Anwah, Esq.

**TOTAL NUMBER OF PAGES INCLUDING COVER SHEET _2_**

**MESSAGE:** Request for evaluations ordered by HOD for D█████ W██████ - DOB: ██/██/89

If there is any problem with this transmission, please call as soon as possible at (202) 347-7026

### *** CONFIDENTIALLY NOTE ***

The pages accompany this facsimile transmission contain information from the IWEANOGE & ANWAH law offices which is confidential or privileged, or both. The information is intended to be for the use of the individual or entity named on this cover letter. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this facsimile in error, please notify us by telephone immediately at (202) 347-7026 so that we can arrange for the retrieval of the original documents at no cost to you.

385

06/21/2004 12:30 FAX 202 442 5098          OFF. OF GENERAL COUNSEL
06/16/2004  18:23    2025410579               VLOPCS

DW-11

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## WASHINGTON, D.C.
### INDIVIDUALIZED EDUCATIONAL PROGRAM

DCPS - IEP  Page 1 of 1
Additional Comments: ☐

## I. IDENTIFICATION INFORMATION

Student Name: Last **Wilkins**  First **Demetrius**  MI A

Student ID **00382703**  Soc. Sec. No. _____  Age: **14**  Grade **9**

Gender ☑ M ☐ F  Date of Birth **/89**  Ethnic Group **African American**

Address **5019 11th Street NE**

**Washington DC  20017**

☐ Non-attending

Attending School **Village Learning Ctr.**  Home School **Backus MS**

☐ Elem. ☐ Mid/JHS ☐ SHS ☐ CHS

Parent **Marlon Murphy**

Address of (if different from student): ☑ Parent ☐ Guardian ☐ Surrogate

Telephone: Home **202-823-1048**  Work **202-423-8159**

## II. CURRENT INFORMATION

Date of IEP Meeting: **4/22/04**

Date of Last IEP Meeting: **11/7/04**

Date of Most Recent Eligibility Decision: **4/22/04**

Purpose of IEP Conference:
☐ Initial IEP  ☑ Review of IEP
☐ Requested Eval.  ☐ 3yr Re-Eval.

Indicate Level of Standardized Assessment **III**

(ADDENDA TO BE ATTACHED AS NEEDED)
Check the appropriate box(es)

| BEHAVIOR | TRANSPORTATION |
|---|---|
| ESY | TRANSITION |

## III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements | |
|---|---|---|---|---|---|
| Student | English | English | English | Native Lang | Oral |
| Parent | English | English | English | Native Lang | Read/Written |
| Home | English | English | English | Native Lang | Other |

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING Gen Ed/Spec Ed/Com'l | FREQUENCY Hr: Min  O/W/M | PROVIDER (by discipline) | BEGINNING DATE mm-dd-yyyy | DURATION # wks-mos |
|---|---|---|---|---|---|
| Specialized Instruction | | 5 h  W | Special Education Teacher | 4/22/2004 | 10 mos |
| Psychological Counseling | | 5 M  W | Psychologist | 4/22/2004 | 10 mos |
| | | | | | |
| | | | | | |
| | | | | | |
| **TOTAL** | | **65** Hours Per Week | | | |

## V. Disability(ies)

**Learning Disability**

**LD**

☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Rel/Sec Services
☑ 0-20%  ☐ 21-60%  ☐ 61-100%

Percent of time NOT in a Regular Education Setting

## VI. IEP TEAM (Participants in the development of this IEP)

Print and sign your name below.

*SB Mon*  Spec Teacher

*Keesha Blythe* / Keesha Blythe  DCPS Placement Specialist
*Marian Murphy* / Marlon Murphy  Parent
*DeMyra N. Gallo* / DeMyra Gallo  English Teacher

I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in this IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature  **Marian Murphy**  Date **4/22/04**

District of Columbia Public Schools  07-22-2001  Division of Special Education  Appendix - A  IEP Page 1 of 4

386

| Student Name | _Delonte Williams_ | Managing School | _Village Learning Ctr_ | DCPS - IEP Page 2 of 4 |
|---|---|---|---|---|
| Student ID Number | _00382703_ | DOB _____89 Attending School | | |

## VII. Present Educational Performance Levels in Areas Affected by the Disability

**Additional Comments:** _WIAT  9/7/02_

**Academic Areas: (Evaluator)** _Jennifer Penn_

Math Strengths:
_Delonte is able to add & subtract_

Impact of disability on educational performance in general education curriculum:
_Weaknesses in math impact his ability to participate in mainstream courses_

Reading Strengths:

Impact of disability on educational performance in general education curriculum:

Score(s) When Available
Math Cal. _SS  79_
Math Res. ___
See goal page: ___
Date: ___
Rdg. Com ___
Rdg. Basic _SS = 98_
Written Ex _SS = 91_
See goal page: ___
Date: ___

**Communication (Speech & Language) (Evaluator)** ___

Strengths:

Impact of disability on educational performance in general education curriculum:

Score(s) When Available
Exp.Lang. ___
Rec. Lang. ___
Artic ___
Voice ___
Fluency ___
Exp. Voc. ___
Rec. Voc. ___
See goal page: ___
Date: ___

**Motor/Health (Evaluator)** ___

Strengths:

Impact of disability on educational performance in general education curriculum:

Score(s) /Results When Available
___
___
___
See goal page: ___
Date: ___

**Social Emotional Behavioral Areas: (Evaluator)** _Jennifer Penn_

Strengths:
_Delonte is able to follow directions_

Impact of disability on educational performance in general education curriculum:
_Poor attending and social-relatedness impact peer relation_

Score(s) When Available
_V/a    93_
_P/A    114_
_TSQ    103_
See goal page: ___
Date: _5/6/02_

**Cognitive/Adaptive Behavior: (Evaluator)** ___

Strengths:

Impact of disability on educational performance in general education curriculum:

Score(s) When Available
___
___
___
See goal page: ___
Date: ___

**Prevocational Skills: (Evaluator)** ___

Strengths:

Impact of disability on educational performance in general education curriculum:

Score(s) When Available
___
___
See goal page: ___
Date: ___

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 2 of 4

387

08/21/2004 12:31 FAX 202 442 5098
06/15/2004 10:23    2025410579
OFF.OF GENERAL COUNSEL
VLCPCS
@006
PAGE 07

| Student Name | | Managing School | | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number 000 38A703 | DOB 189 | Attending School VLCPCS | | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: | Goal Number: |
|---|---|---|

Area addressed by goal: **Math**

**ANNUAL GOAL: (including mastery criteria.)**

D_____ will demonstrate 1 years progress in applied math skills moving him from grade level to grade level through mastery of the following short term goals

Provider(s): General Ed and SPED Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (Include mastery criteria or benchmarks) | Data Mastered | Evaluation Schedule |
|---|---|---|
| Multiply 1 digit by 2 digits - Multiply 2 digits by 3 digits With and with out Regrouping With 70% accuracy | | Monthly |
| Divide by a 2,3, digit divisor with and without a Remainder with 80% accuracy | | Monthly |
| Solve simple word problems involving 1, 2, 3 step operation with 80% accuracy | | Monthly |
| Add, substract, like, and unlike fraction with 70% accuracy | | Monthly |
| Complete Fractional computations with 70% accuracy | | Monthly |
| Identify the place value of a number with 80% accuracy | | Monthly |
| Student will complete fractional computations With 70% accuracy | | Monthly |

**EVALUATION PROCEDURE(S)**

Portfolio    Log    Chart    (Test)    (Documented Observation)    Report    Other _____

| Student Name | ~~D████ W████~~ | Managing School | | DCPS - IEP Page 3 of 4 |
|---|---|---|---|---|
| Student ID Number | 000382783   008 | Attending School | VLCPCS | |

| VIII. SPECIALIZED SERVICES | Additional Comments: | | Goal Number: [ ] |
|---|---|---|---|
| | Area addressed by goal: | Social-Emotional | |

**ANNUAL GOAL: (including mastery criteria.)**

D████ will develop appropriate attending and Social relatedness skills

Provider(s): School counselor

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date/ Mastered | Evaluation Schedule |
|---|---|---|
| — Attend to tasks without becoming Frustrated | | |
| — Sit still during group activities | | |
| — Attempt tasks before responding "I can't" or "I don't know how" | | |
| — Attend to work time tasks until they are completed before moving on to another task | | |
| — Participate in group activities — Demonstrating continuing growth in social interactions | | |
| — Accept the give and take of interactions with peers and adults | | |

**EVALUATION PROCEDURE(S)**

Portfolio    Log    Chart    Test    Documented Observation    Report    Other _____

06/21/2004 12:32 FAX 202 442 5098          OFF.OF GENERAL COUNSEL
    06/16/2004  10:23   2025410579                    VLCPCS

Student Name: ~~Deborah Watkins~~          Managing School: VLCPCS
Student ID Number: D00392703    DOB: ~~~~ '89    Attending School: ~~~~

### Additional Comments:

**CL. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION SERVICE ALTERNATIVES**

Can curricular modification, accomodation and/or supplemental aids and services be used for a LRE setting in regular education?    Ye

Explanation for removal out of regular education classroom:

D____ is unable to be academically succ
in the general education classroom witheu
proper support

**X. Supplementary Aids and Services**

| Classroom Needs (Do not name products or classes.) | SETTING | | | FREQUENCY | | PROVIDER (by discipline) |
|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total | Hr / Min | DW/M. | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Check and list modifications and/or accommodations for testing:       None needed

| | |
|---|---|
| Timing/Scheduling: | Extended Time |
| Setting: | Small group |
| Presentation: | Repeat and Rephrase direction list |
| Response: | |
| Equipment: | Calculator, ruler |

**XI. STATE AND DISTRICT ASSESSMENTS:**

Level I   Tested with non-standard conditions under standard conditions without accommodations.

Level III (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations.

Level III (Describe accommodations for level III) Tested under standard conditions with needs accommodations.

Level IV (Describe the alternative assessment)

Level V Pending

**XII. Areas Requiring Specialized Instruction and Related Services:**

| | | | Modifications: |
|---|---|---|---|
| Reading | Physical/Sensory | Transition | Language Arts/English |
| Mathematics | Social Emotional | Vocations | Social Science |
| Written Expression | Physical Development | Independent Living | Biological & Physical Sci |
| Other: | | Speech/Language | Fine Arts |
| None | Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above. | | |

**XII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION**

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFU |
|---|---|---|
| Maximum Inclusion → Combination General Education | Accept | None |
| General Education Out of General Education | reject reject | School fail not LRE |

Modification(s)/Accommodation(s) to address the harmful effect:

Specialized Instruction & Psychological Counseling

Location for Services:

District of Columbia Public Schools     07-02-2001     Division of Special Education     Appendix - A

06/21/2004 12:33 FAX 202 442 5098       OFF.OF GENERAL COUNSEL                      ☒009
06/16/2004  10:23    2025410579                   VLCPCS                          PAGE  10

Received a

Copy of "The Caring For Our Students with Disabilities", a procedural Manual for Parents

Delivered at the Village Learning Center on 4/22/04

From

NAME

April 22, 04

DATE

Marian Murphy

Parent / Recipient

Delivered by

391

08/21/2004 12:33 FAX 202 442 5098          OFF.OF GENERAL COUNSEL                    ☑010
    06/16/2004  10:23   2025410579               VLCPCS                          PAGE  04

### DISTRICT OF COLUMBIA PUBLIC SCHOOLS
### WASHINGTON, D.C.

### INDIVIDUALIZED EDUCATION PROGRAM
### (IEP)
### MEETING NOTES

STUDENT ~~Deborah Will~~  SCHOOL Villiag Learning Ctr DATE: 4/22/04

| PARTICIPANTS: | PARTICIPANTS: (Sign Name) | DISCIPLINE |
|---|---|---|
| E.B Men | EBMen | SPED Teacher |
| Keesha Blythe | Keesha Blythe | DCPS Placement Specialist |
| Marian Murphy | May Murphy | Parent |
| De'Myra N. Gallo | DeMyra N. Gallo | English Teacher |

The MDT agrees that ~~Deborah~~ continues
to be eligible for special education services
as a child with a Learning Disability

→Services        Specialized Instruction 6 hrs/w
                 Psychological Counseling .5 min/w

→Combination General Education
→ Level III
→Accomodations: extended time, small group
      repeat and rephrase directions, calculator,
        ruler

DISTRICT OF COLUMBIA PUBLIC SCHOOLS    07-02-2001    DIVISION OF SPECIAL EDUCATION    IEP MEETING NOTES

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES

MDT

MDT REFERRAL DATE: _____     MEETING DATE: 4/27/04

STUDENT: ~~D____ W____~~     SCHOOL: Villiage Learning Ctr

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| E.B.Men | E.B.Men | Dir of SPED / SPED Teacher |
| Keesha Blythe | Keesha Blythe | DCPS Placement Specialist |
| Marian Murphy | Marian Murphy | Parent - legal guardian |
| DeMyra N. Gallo | DeMyra N. Gallo | English teacher |

The purpose of today's meeting is to discuss
current progress and review IEP.
Everyone present was introduced
The parent was provided a copy of the procedural
safeguards
Ms Murphy, grandmother is concerned with
~~D____~~ being able to formulating sentences.
In his previous IEP, D____ spelling & reading scores
are within the expected range.
Ms Gallo, reports that D____ reads very

THE PARENT (IS PRESENT) IS NOT PRESENT AT THE MEETING    ~~D____ W____~~

AFTER A REVIEW OF THE ASSESSMENTS, IT IS DETERMINED THAT _____

   CONTINUES TO BE ELIGIBLE FOR SPECIAL EDUCATION

   IS TO BE EXITED FROM SPECIAL EDUCATION

06/21/2004 12:34 FAX 202 442 5098     OFF. OF GENERAL COUNSEL     ☑012
06/15/2004 10:23    2025410579    VLCPCS    PAGE  03

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

MDT REFERRAL DATE: _____    MULTIDISCIPLINARY TEAM (MDT)    Page: ____ of ___
CONTINUATION MEETING NOTES
MEETING TYPE: MDT

STUDENT: D███████ W█████    SCHOOL: Village Learning Ctr    DATE: 4/22/04

well. D█████ has difficulties with his writing
D█████ is capable of doing the work.
When you sit with him to do the work,
D█████ is able to perform the task
M████████████████████ D██████ would
benefit from ~~needed~~ repeated/listed directions.
To help D██████
To become more organized, he could use
an assignment notebook to list daily
tasks ~~and~~ to be reviewed by classroom
teacher daily. D█████ is also diagnosed w/
ADHD and takes Concerta 54mg daily
The MDT agrees that D██████ continues to be
eligible for Special Education Services
as a child with a Learning Disability

394

```
┌─────────────────────────────────────────┐
│  TRANSMISSION VERIFICATION REPORT        │
└─────────────────────────────────────────┘

                              TIME  : 03/01/2005 05:56
                              NAME  :
                              FAX   :
                              TEL   :
                              SER.# : BROK3J760429
```

```
┌──────────────────────────────────────────────────────────────────┐
│   DATE,TIME              03/01  05:40                               │
│   FAX NO./NAME           7037392323                                │
│   DURATION               00:15:13                                  │
│   PAGE(S)                53                                         │
│   RESULT                 OK                                        │
│   MODE                   STANDARD                                  │
│                          ECM                                       │
└──────────────────────────────────────────────────────────────────┘
```

395

# Law Offices,
## Christopher N. Anwah, LLC

**Attorneys and Counselors at Law**

Christopher N. Anwah, Esq.
(DC, MD, NJ)
Fatmata Barrie, Esq.
(DC, FL)
Panya Monford, Esq.
(MD**)
**Only practices in administrative hearings in D.C.*

Carpenter's Building
1003 K Street, N.W.
Suite 500
Washington, D.C. 20001
Phone: (202) 626-0040
Fax: (202) 626-0048
Email: chrisanwahfirm@chrisanwahfirm.com

## FACSIMILE COVER LETTER

DATE: 03/01/05

TO:  Paul Dalton, Esq.

COMPANY: Dalton, Dalton & Houston

FAX NUMBER: 703-739-2323

FROM:  Fatmata Barrie, Esq.

RE:  D̶e̶l̶m̶a̶r̶ W̶i̶l̶l̶i̶a̶m̶s̶ 5-day

TOTAL NUMBER OF PAGES INCLUDING COVER SHEET        53

MESSAGE:

If there is any problem with this transmission, please call as soon as possible at (202) 626-0040

***CONFIDENTIALITY NOTICE***

The pages accompanying this facsimile transmission contain information from the Law Office of Christopher Anwah, PLLC, which is confidential or privileged, or both. The information is intended to be for the use of the individual or entity named on this cover letter. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this facsimile in error, please notify us by telephone immediately at (202) 626-0040 so that we can arrange for the retrieval of the original documents at no cost to you.

DW-12



# HIGH ROAD
## ACADEMY

Marion Murphy
5019 11th St. NE
Washington, DC 20017

March 7, 2005

RE:  D███ W█████

Dear Ms. Murphy,

I am pleased to inform you that D██████ W█████ has been accepted into the High Road
Academy LD Program.

D████████ enrollment date is also dependent upon proper authorization of a NOP/HOD
from DCPS.

Thank you for referring D██████ to our program.  We look forward to contributing to his
academic and continued growth.

Sincerely yours,

Shanon Redman
School Director
High Road Academy School of Washington, DC

cc:     Parents
        Attorney-Famata Barrie



397

| TRANSMISSION VERIFICATION REPORT |
|---|

```
                                    TIME  : 03/07/2005 12:27
                                    NAME  :
                                    FAX   :
                                    TEL   :
                                    SER.# : BROK3J760429
```

```
DATE,TIME                03/07  12:26
FAX NO./NAME             4425098
DURATION                 00:00:55
PAGE(S)                  04
RESULT                   OK
MODE                     STANDARD
                         ECM
```

# LAW OFFICES,
# CHRISTOPHER N. ANWAH, LLC

**Attorneys and Counselors at Law**

Christopher N. Anwah, Esq.
(DC, MD, NJ)
Fatmata Barrie, Esq.
(DC, FL)
Panya Monford, Esq.
(MD\*\*)
\*\*Only practices in administrative hearings in D.C.

Carpenter's Building
1003 K Street, N.W.
Suite 500
Washington, D.C. 20001
Phone: (202) 626-0040
Fax: (202) 626-0048
Email: chrisanwahfirm@chrisanwahfirm.com

## FACSIMILE COVER LETTER

DATE: 03/07/05

TO:  Michael Levy, Esq.

COMPANY: OGC

FAX NUMBER: 202-442-5098

FROM:  Fatmata Barrie, Esq.

RE:  D██████ W██████ 5-day--SUPPLEMENTAL

TOTAL NUMBER OF PAGES INCLUDING COVER SHEET          04

MESSAGE:

If there is any problem with this transmission, please call as soon as possible at (202) 626-0040

### \*\*\*CONFIDENTIALITY NOTICE\*\*\*

The pages accompanying this facsimile transmission contain information from the Law Office of Christopher Anwah, PLLC, which is confidential or privileged, or both. The information is intended to be for the use of the individual or entity named on this cover letter. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this facsimile in error, please notify us by telephone immediately at (202) 626-0040 so that we can arrange for the retrieval of the original documents at no cost to you.

399

# LAW OFFICES,
# CHRISTOPHER N. ANWAH, LLC

Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
(DC, MD, NJ)
Fatmata Barrie, Esq.
(DC, FL)
Panya Monford, Esq.
(MD**)
**Only practices in administrative hearings in D.C.*

Carpenter's Building
1003 K Street, N.W.
Suite 500
Washington, D.C. 20001
Phone: (202) 626-0040
Fax: (202) 626-0048
Email: chrisanwahfirm@chrisanwahfirm.com

## FACSIMILE COVER LETTER

DATE: 03/01/05

TO:  Michael Levy, Esq.

COMPANY:  OGC

FAX NUMBER: 202-442-5098

FROM:  Fatmata Barrie, Esq.

RE:  D████ W██████' 5-day

TOTAL NUMBER OF PAGES INCLUDING COVER SHEET        53

MESSAGE:

If there is any problem with this transmission, please call as soon as possible at (202) 626-0040

***CONFIDENTIALITY NOTICE***

The pages accompanying this facsimile transmission contain information from the Law Office of Christopher Anwah, PLLC, which is confidential or privileged, or both. The information is intended to be for the use of the individual or entity named on this cover letter. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this facsimile in error, please notify us by telephone immediately at (202) 626-0040 so that we can arrange for the retrieval of the original documents at no cost to you.

400

```
┌─────────────────────────────────────────────┐
│   TRANSMISSION VERIFICATION REPORT           │
└─────────────────────────────────────────────┘

                              TIME  : 03/01/2005 05:38
                              NAME  :
                              FAX   :
                              TEL   :
                              SER.# : BROK3J760429


┌──────────────────────────────────────────────────────────────────┐
│                                                                    │
│    DATE,TIME              03/01  05:24                              │
│    FAX NO./NAME           4425097                                   │
│    DURATION               00:14:54                                 │
│    PAGE(S)                52                                        │
│    RESULT                 OK                                        │
│    MODE                   STANDARD                                  │
│                           ECM                                       │
│                                                                    │
└──────────────────────────────────────────────────────────────────┘
```

401

**FAX TRANSMISSION COVER SHEET**
**Dalton, Dalton & Houston P.C.**
**Attorneys at Law**
**1008 Pendleton Street**
**Alexandria, Virginia 22314**
**(703) 739-4300**
**FAX (703) 739-2323**

**DATE:**      March 1, 2005

**TO:**        Sharon Newsome

**AT FAX:**    202-442-5556

**FROM:**      Paul S. Dalton, Esq.

**RE:**        ~~Delante Wilkins~~ 5-day

**NUMBER OF PAGES INCLUDING THIS PAGE:**     23

**ADDITIONAL INFORMATION:**

_____

**PLEASE DELIVER ASAP.**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
**THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE**
**PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND**
**ATTORNEY WORK PRODUCT DOCTRINE.**

**IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECI-**
**PIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION,**
**DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS**
**STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNI-**
**CATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELE-**
**PHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE**
**ABOVE ADDRESS.**
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

402

Law Offices
## DALTON, DALTON & HOUSTON, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703)-739-4300
Facsimile:  (703)-739-2323
E-MAIL: DCSPEDLAW@AOL.COM

Washington DC. Office:
601 Pennsylvania Avenue, N.W.
South Building,  Suite 900
Washington, DC 20004
Telephone: (202)-393-0060
Facsimile: (202)-393-1555

Paul S. Dalton*
Ellen Douglass Dalton*
William E. Houston+
Talib Abdus Shahid+
Laura E. Duos~
*ALSO ADMITTED IN D.C. & W.VA
+ ADMITTED IN D.C. & PA
~ADMITTED IN MD

February 16, 2005

**VIA FACSIMILE ONLY: 202-626-0048**

Ms. Fatmata Barrie, Esq.
Carpenter's Building
1003 K Street, NW
Washington, DC 20001

RE:    D̶e̶v̶o̶n̶t̶a̶ ̶W̶i̶l̶k̶i̶n̶s̶
DOB:̶ ̶█̶█̶█̶89

Dear Ms. Barrie:

    A Due Process Hearing has been scheduled for D̶e̶v̶o̶n̶t̶a̶ ̶W̶i̶l̶k̶i̶n̶s̶ on March 8th at 11:00 a.m. pursuant to 34 C.F.R. 300.509(b)(1).  The purpose of this letter is to provide you with the following list of witnesses and documents we may rely on in the hearing.

## WITNESSES:

1.    Mr. Michael Cordell, Principal Upper School F..E. CG Woodson Sen. Aca.
2.    Mr. Wallace Henry, Special Education Coordinator F.E.P.C.S.
3.    Kia Lewis, school psychologist
4.    Mr. Yisreal, case manager
5.    Ms. Pimentel, regular education teacher
6.    Barbara Frazier, regular education teacher
7.    Mr. Smith, Transitions teacher

    **Some of the above witnesses may testify by telephone or use a designee.**

## DOCUMENTS

Edison 01 –  Educational Evaluation                    08/31/04

Edison 02 – IEP dated                            09/17/04

**Edison 03 – Counseling Notes**                              **2004-2005**


\* We reserve the right to examine any witnesses disclosed by DCPS or the PARENT as if they were witnesses for our client and the right to rely on all other documents in the possession or previously filed or filed in a 5 Day Disclosure filed by the District of Columbia Public Schools (DCPS) or the PARENT or presented at the DPH.




Sincerely,


Paul S. Dalton, Esq.

cc: Student Hearing Office
    Mr. Michael Levy, DCPS Attorney-Advisor

404

## EDUCATIONAL EVALUATION

Name: ███████, ███████                School: F.E.C.A.
Date of Birth: ██/██/1989             Grade: 10.0
Age: 14 years, 11 months
Sex: Male
Date of Testing: 08/31/2004

### TESTS ADMINISTERED

*WJ III Tests of Achievement*

These tests provide measures of ███████ academic achievement.  A description of each ability is provided.  His performance in each broad category is compared to grade peers using a standard score range.  ███████ proficiency is described categorically, ranging from limited to average; his test performance can be generalized to similar, non-test, grade-level tasks.  Additional interpretation of academic task performance is provided.

## ACHIEVEMENT

When compared to others in his grade, ███████ academic achievement is in the average range in Reading Comprehension (reading vocabulary and the ability to comprehend connected discourse while reading).

Broad Written Language includes production of written text, including spelling ability, writing fluency, and quality of written expression.  Although ███████ overall written language standard score is within the average range, his performance varied on two different types of tasks measuring effective expression in written language.  ███████ performance is advanced on tasks requiring the ability to convey ideas in writing.  His performance is limited on tasks requiring the ability to write rapidly with ease (automaticity), requiring minimal analytic attention or problem-solving.

Written Expression measures ███████ fluency of production and quality of expression in writing.  Although ███████ overall written expression standard score is within the average range, he performed differently on two types of writing fluency tasks.  ███████ performance is advanced on tasks requiring the production and organization of ideas in writing.  His performance is limited on tasks requiring the ability to write rapidly with ease (automaticity), requiring minimal analytic attention or problem-solving.

Broad Reading includes reading decoding, reading speed, and the ability to comprehend connected discourse while reading.  ███████ reading standard score is within the low average to average range (percentile rank range of 20 to 27; standard score range of 87 to 91) for his grade.  His overall reading ability is limited; reading tasks above the grade 8.7 level will be quite difficult for him.

Math Calculation Skills measures ███████ computational skills and automaticity with basic math facts.  ███████ mathematics calculation skills standard score is within the low average range (percentile rank range of 9 to 19; standard score range of 80 to 87) for his grade.  His mathematics calculation skills are limited to average; math calculation tasks above the grade 9.0 level will be quite difficult for him.

Broad Math includes mathematics reasoning and problem solving, number facility, and automaticity.  ███████ mathematics standard score is within the low average range (percentile rank range of 9 to 17; standard score range of 80 to 86) for his grade.  His overall mathematics ability is limited; math tasks above the grade 8.4 level will be quite difficult for him.

Edison - 01

405

Educational Evaluation                                                    Page 2
Delashem, William
August 31, 2004

Academic Processing

William academic skills are limited to average.  Specifically, his spelling is average.  His sight reading ability is limited to average.  William math calculation skill is limited.

The fluency with which William performs academic tasks is limited.  For example, his fluency with mathematics problems is limited to average.  His writing fluency is limited.  William fluency with reading tasks is very limited.

Academic Applications.  William writing ability is advanced.  His passage comprehension ability is limited to average.  His quantitative reasoning is limited.

TEST SESSION OBSERVATIONS

William conversational proficiency seemed very advanced for his grade level.  He was exceptionally cooperative throughout the examination; his activity level seemed typical for his grade.  He appeared confident, self-assured, and attentive to the tasks throughout the examination.  He responded promptly, but carefully, to test questions, generally persisting with difficult tasks.

                                    SUMMARY

When compared to others at his grade level, William overall level of achievement is average.  His fluency with academic tasks is low average.  His academic skills and his ability to apply those skills are both within the average range.

When compared to others at his grade level, William performance is average in reading comprehension, written language, and written expression; and low average in broad reading, mathematics, and math calculation skills.

**Educational Evaluation**                                           **Page 3**
Delante, William
August 31, 2004

TABLE OF SCORES: *Woodcock-Johnson III Tests of Achievement*
Report Writer for the WJ III, Version 1.1
Norms based on grade 10.0

| CLUSTER/Test | Raw | GE | EASY to DIFF | | RPI | PR | SS(68% BAND) | AE |
|---|---|---|---|---|---|---|---|---|
| TOTAL ACHIEVEMENT | – | 7.3 | 5.6 | 9.5 | 71/90 | 27 | 91 (90-92) | 12-9 |
| BROAD READING | – | 7.2 | 5.8 | 8.7 | 56/90 | 23 | 89 (87-91) | 12-7 |
| BROAD MATH | – | 6.3 | 4.8 | 8.4 | 62/90 | 12 | 83 (80-86) | 11-10 |
| BROAD WRITTEN LANG | – | 9.1 | 6.4 | 13.0 | 88/90 | 43 | 97 (94-101) | 14-10 |
| READING COMP | – | 7.6 | 5.1 | 10.8 | 79/90 | 30 | 92 (89-95) | 12-10 |
| MATH CALC SKILLS | – | 6.5 | 4.7 | 9.0 | 68/90 | 13 | 83 (80-87) | 12-0 |
| WRITTEN EXPRESSION | – | 8.7 | 5.9 | 13.0 | 86/90 | 40 | 96 (92-101) | 14-1 |
| ACADEMIC SKILLS | – | 8.0 | 6.2 | 10.7 | 79/90 | 29 | 92 (89-95) | 13-9 |
| ACADEMIC FLUENCY | – | 6.3 | 5.2 | 8.0 | 44/90 | 15 | 85 (83-86) | 11-10 |
| ACADEMIC APPS | – | 7.9 | 5.4 | 12.2 | 83/90 | 32 | 93 (89-97) | 13-1 |

Form A of the following achievement tests was administered:

| | Raw | GE | EASY to DIFF | | RPI | PR | SS(68% BAND) | AE |
|---|---|---|---|---|---|---|---|---|
| Letter-Word Identification | 62 | 8.0 | 6.4 | 10.1 | 76/90 | 37 | 95 (92-98) | 13-6 |
| Reading Fluency | 54 | 7.1 | 6.2 | 0.1 | 21/90 | 22 | 88 (86-90) | 12-6 |
| Calculation | 22 | 6.7 | 5.2 | 8.9 | 66/90 | 21 | 88 (83-93) | 12-4 |
| Math Fluency | 75 | 6.1 | 3.8 | 9.0 | 70/90 | 12 | 82 (80-84) | 11-6 |
| Spelling | 43 | 9.9 | 7.1 | 12.9 | 90/90 | 49 | 100 (96 104) | 15 10 |
| Writing Fluency | 18 | 5.7 | 4.5 | 7.2 | 44/90 | 14 | 84 (80-88) | 11-2 |
| Passage Comprehension | 32 | 5.8 | 3.9 | 9.1 | 70/90 | 22 | 88 (83-93) | 10-11 |
| Applied Problems | 38 | 6.0 | 4.9 | 7.6 | 50/90 | 19 | 87 (83-90) | 11-7 |
| Writing Samples | 20-E | >18.0 | 16.2 | >18.0 | 98/90 | 99 | 138 (125-150) | >23 |
| Reading Vocabulary | – | 9.1 | 6.6 | 12.4 | 86/90 | 43 | 97 (94-101) | 14-7 |

**Educational Evaluation**                                                      **Page 4**
Dalton, William
August 31, 2004

### Descriptions of WJ III Tests Administered

*Letter-Word Identification* measured William ability to identify letters and words. He was not required to know the meaning of any word.

*Reading Fluency* measured William ability to quickly read simple sentences, decide if the statement is true, and then circle Yes or No. He was asked to complete as many items as possible within a 3-minute time limit.

*Calculation* measured William ability to perform mathematical computations. The items required him to perform addition, subtraction, multiplication, division, and combinations of these basic operations.

*Math Fluency* measured William ability to solve simple addition, subtraction, and multiplication facts quickly. He was presented with a series of simple arithmetic problems to complete in a 3-minute time limit.

*Spelling* measured William ability to write orally presented words correctly.

*Writing Fluency* measured William skill in formulating and writing simple sentences quickly. He was required to write sentences relating to a given stimulus picture that includes a set of three words. This test had a 7-minute time limit.

*Passage Comprehension* measured William ability to understand what is being read during the process of reading. Test items required William to read a short passage and identify a missing key word that makes sense in the context of the passage.

*Applied Problems* measured William ability to analyze and solve math problems. To solve the problems, he was required to listen to the problem, recognize the procedure to be followed, and then perform relatively simple calculations. Because many of the problems included extraneous information, William needed to decide not only the appropriate mathematical operations to use but also what information to include in the calculation.

*Writing Samples* measured William skill in writing responses to a variety of demands. He was asked to produce written sentences that were evaluated with respect to the quality of expression. William was not penalized for any errors in basic writing skills, such as spelling or punctuation.

*Reading Vocabulary* measured William skill in reading words and supplying appropriate meanings. He was administered three subtests: Synonyms, Antonyms, and Analogies. The first subtest required William to read words and provide synonyms. The second subtest required him to read words and then provide antonyms. The third subtest required William to read three words of an analogy and then provide the fourth word to complete the analogy.

4 of 8

Mar. 1. 2005  4:33PM   Dalton, Dalton,& Houston                    No.8192   P. 8

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**WASHINGTON, D.C.**
**INDIVIDUALIZED EDUCATIONAL PROGRAM**

DCPS - IEP Page 1 of 4
Additional Comments: ☐

## I. IDENTIFICATION INFORMATION

Student Name: Last _Wa_____ First _Al_____ MI _A_

Student ID _0038270 3_ Soc. Sec. No. _____ Age: _14_ Grade _9_

Gender ☒M ☐F  Date of Birth _____ Ethnic Group _African American_

Address: _5019 11th Street NE_

_Washington, DC 20017_

☐ Non-attending
Attending School _F.E.C.A._  Home School _Cooling SHS_

☐ Elem. ☐ MM/JHS ☒SHS ☐ CWS ☐
Parent _Marion Murphy_

Address of: (if different from student): ☐ Parent ☒ Guardian ☐ Surrogate

Telephone: Home _2/ 823-048_  Work _2/ 423-8157_

### II. CURRENT INFORMATION

Date of IEP Meeting: _9/17/04_
Date of Last IEP Meeting: _4/22/04_
Date of Most Recent Eligibility Decision: _9/17/04_

Purpose of IEP Conference:
☐ Initial IEP    ☒ Review of IEP
☐ Requested Eval.    ☐ 3yr ReEval.

Indicate Level of Standardized Assessment: _III_

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| BEHAVIOR | TRANSPORTATION |
| CEY ☐ | ☒ TRANSITION |

### III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements |
|---|---|---|---|---|
| Student | English | English | English | |
| Parent | English | English | English | |
| Home | English | English | | |

To be completed by Office of Bilingual Education
English and Math Proficiency Assessment
Oral
Rdg./ Written
Instrument:
Date:

### IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd SpEd Total | FREQUENCY Hr./ Min D/W/M. | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yy | DURATION # wks./mos |
|---|---|---|---|---|---|
| Specialized Instruction | 12.5 12.5 | hr. W | Special Ed Teacher | 9/20/04 | 10 mos |
| Psychological Counseling | .5 .5 | m W | | 9/20/04 | 10 mos |
| | | | | | |
| | | | | | |
| **TOTAL** | 13 13 | Hours Per Week | | | |

### V. Disability(ies)

_Learning Disabled_

LD

☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☐ 0-20%  ☒ 21-60%  ☐ 61-100%

Percent of time NOT in a Regular Education Setting _3/_

### VI. IEP TEAM (Participants in the development of the IEP)   Print and sign your name below.

_Tamira Murphy_  Parent  _Tamila Murp____
_Charlie M____  Spec. Coordinator  _Charlene Glynn_
_Kirk Vitt____  Psychologist
_Barbara Frozier_  General Ed teacher  _Barbara Frozier_
_S. Green_  Sp. Educator

☒ I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of the IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature _Tamira Murp____  Date _9-17-04_

District of Columbia Public Schools    07-02 2001    Division of Special Education    Appendix - A    IEP Page 1 of 4

_Edison - 02_

409

| Student Name | _Deshawn Wilkins_ | Managing School | _Friendship Edison College_ | DCPS - RCL* |
| Student ID Number | DO 382703 | DOB | ___-87 | Attending School | _F.E.C.A_ | Page 2 of 4 |

**VII. Present Educational Performance Levels in Areas Affected by the Disability**

Additional Comments: ☐
NJ-7th

**Academic Areas: (Evaluator)** C. Williams

Score(s) When Available

**Math Strengths:**

Deshawn Wilkins is on 6-7 grade level

Math Cal _3-58 /6. 7_
Math Rea. _____

**Impact of disability on educational performance in general education curriculum:**

Calculation problems above 7th grade may
be quite difficult for him.

See goal page: _____
Date: _9/17/04_
Rdg. Comp _8 = 97/7.6_
Rdg. Basic

**Reading Strengths:**

Reading fluency is a strength at 7st grade lev

Written Ex _55 = 138 / 18-0_ >

**Impact of disability on educational performance in general education curriculum:**

Passage comprehension is limited at 5th grade level

See goal page:
Date: _9/17/07_

**Communication (Speech & Language) (Evaluator)**
Strengths:

Score(s) When Available
Exp. Lang. _____
Rec. Lang. _____
Artic. _____
Voice _____

**Impact of disability on educational performance in general education curriculum:**

Fluency _____
Exp. Voc. _____
Rec. Voc. _____
See goal page: _____
Date: _____

**Motor/Health (Evaluator)**
Strengths:

Score(s) /Results
When Available
_____
_____
_____

**Impact of disability on educational performance in general education curriculum:**

_____
See goal page: _____
Date: _____

**Social Emotional Behavioral Areas: (Evaluator)**
Strengths:

Score(s) When Available
_____
_____
_____

**Impact of disability on educational performance in general education curriculum:**

See goal page: _____
Date: _____

**Cognitive/Adaptive Behavior: (Evaluator)**
Strengths:

Score(s) When Available
_____
_____
_____

**Impact of disability on educational performance in general education curriculum:**

See goal page: _____
Date: _____

**Prevocational Skills: (Evaluator)**
Strengths:

Score(s) When Available
_____
_____
_____

**Impact of disability on educational performance in general education curriculum:**

See goal page: _____
Date: _____

410

Mar. 1. 2005  4:33PM   Dalton, Dalton,& Houston                    No.8192   P. 10

| Student Name | ~~D██████ W██████~~ | | Managing School | |  | DCPS - IEP |
|---|---|---|---|---|---|---|
| Student ID Number | 00█382703 | DCS | Attending School | VLCPCS | | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: | | Goal Number: |
|---|---|---|---|

Area addressed by goal: __SOCIAL~EMOTIONAL__

ANNUAL GOAL: (including mastery criteria.)

D█████ will develop approvpriate attending and
social relatedness skills

Provider(s):  __School counselor__

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (including mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Attend to tasks ~~with out becoming~~ Frustrated | | |
| Sit still during group activities | | |
| Attempt tasks before responding "I can't" or "I don't know how" | | |
| Attend to work time tasks until they are completed before moving on to another task | | |
| Participate in group activities | | |
| Demonstrating continuing growth in social interactions | | |
| Accept the give and take of interactions with peers and adults | | |

EVALUATION PROCEDURE(S)

Portfolio   Log   Chart   Test   Documented Observation   Report   Other

411

Mar. 1. 2005  4:34PM     Dalton, Dalton,& Houston                     No.8192   P. 11

Parent Name: _____

Parent ID number: 000 38 0703     DOB: ___ 89     Attending School: _____

DCPS-IEP
Page 3 of 4

VIII. SPECIALIZED SERVICES     Additional Comments:     Goal Number ___

Area addressed by goal: **Math**

**ANNUAL GOAL (including mastery criteria):**

D___ will demonstrate 1 years progress in applied Math skills moving him from grade level to grade level through mastery of the following short term goals

Provider(s): General Ed and SPED Teacher

Consider: audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Multiply 1 digit by 2 digits Multiply 2 digits by 3 digits with and with wt Regrouping with 70% accuracy |  | Monthly |
| Divide by a 2,3, digit divisor with and without a Remainder with 80% accuracy |  | Monthly |
| Solve simple word problems involving 1, 2, 3 step operation with 80% accuracy |  | Monthly |
| Add, substract, like, and unlike fraction with 70% accuracy complete fractional computations with 70% accuracy |  | Monthly |
| Identify the place value of a number with 80% accuracy |  | Monthly |
| Student will complete fractional computations with 70% accuracy |  | Monthly |

**EVALUATION PROCEDURE(S)**

Portfolio     Log     Chart     Test     Documented Observation     Record     Other _____

District of Columbia Public Schools     07-02-2001     Division of Special Education     Appendix - A     IEP Page 3 of 4

412

| Student Name | | Managing School | VLCPCS | DCPS - 187 |
|---|---|---|---|---|
| Student ID Number | 00382703 | Amending School | | Page 4 of 4 |

**Additional Comments:**

**IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION**
**SERVICE ALTERNATIVES**

Can curricular modification, accommodation and or supplemental aids and services be used for a LRE setting in regular education?    Yes    No

Explanation for removal out of regular education classroom.

is unable to be academically successful in the general education classroom without proper support

**X. Supplementary Aids and Services**

| Classroom Needs (Do not name product or companies.) | SETTING | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yy) |
|---|---|---|---|---|---|---|---|
| | Gen Ed | Sp Ed | Total | Hrs/Min | D/W/M | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for testing:    None needed

| | |
|---|---|
| Timing/Scheduling | Extended time |
| Setting | Small group |
| Presentation | Repeat and Rephrase direction (written) (list directions) |
| Response | |
| Equipment | Calculator, ruler |

**XI. STATE AND DISTRICT ASSESSMENTS:**

Level I   Tested with non-disabled peers under standard conditions without accommodations.

Level III  Describe non-uniform conditions for new; Tested under non-standard conditions in permissible accommodations.

Level V   Portfolio:

Level II   Describe accommodations for level II; Tested under standard conditions with special accommodations.

Level IV  Describe the alternative assessment:

**XII. Areas Requiring Specialized Instruction and Related Services:**

Reading                 Physical/Sensory              Transition
Mathematics             Social Emotional              Vocational
Written Expression      Physical Development          Independent Living
Other:                                                Speech/Language
None          Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

**Modifications:**

Language Arts/English
Social Sciences
Biological & Physical Sciences
Fine Arts

**XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION**

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| Maximum Inclusion - (Combination) General Education | Accept | None |
| General Education | reject | school failure |
| Out of General Education | reject | not LRE |

Modifications/Accommodations to address the harmful effects:

Specialized Instruction & Psychological Counseling

Location for Services



*Marian Murphy*

Received a

<u>Copy of "The Caring For Our Students with Disabilities"</u>, a procedural Manual for Parents

Delivered at the Village Learning Center on ___4/22/04___

From *E B Nien*

<u>NAME</u>

*April 22, 04*

DATE

*Marian Murphy*

Parent / Recipient

*E B Nien*

Delivered by



Edison Collegiate
Public Charter School  Community Vision... World Class Education
Cantil G. Woodson Campus
4095 Minnesota Avenue, NE
Washington, DC 20019

### INDIVIDUALIZED EDUCATION PROGRAM
### (IEP)
### MEETING NOTES

UDENT _D_____ W____l_____ SCHOOL _F. E. C. A_____ DATE _9/17/04_

| PARTICIPANT | PARTICIPANTS (Sign Name) | DISCIPLINE |
|---|---|---|
| Tamika Murphy | Tamika Murphy | parent |
| Taylor Tisen | J. Tisen | Sp. Ed. Teacher |
| Charlen | Charlena Obyrd | Gen Ed Teacher |
| Brian Beck | Brian Beck | Principal |
| Kya E. Lewis | Kya E. Lew | Psychologist |
| Barbara Frozier | Barbara Frozier | Teacher (He) |

This meeting was convened following the I.E.P. meeting where D_____ W____ was found eligible for Special Education services as a Learning Disabled Student.

the previous I.E.P. did not include transition services. D_____ I.E.P. was instructional hrs were increased to accommodate his educational and transitions needs from 6.5 to 13.5 hours

Mar. 1. 2005 4:34PM    Dalton, Dalton, & Houston    No.8192    P. 15

**Edison-Friendship Collegiate Academy**
*Carter G. Woodson Campus*
4095 Minnesota Avenue, N.E.
Washington, D.C. 20019



### IEP CONTINUATION PAGE

Student Name ~~Alexander Webb~~ ADOB ~~4/1/89~~ Date 9/17/07

Student ID Number 382703    School F.E.C.A.

INSTRUCTIONS: Use this addendum when additional space is needed on an IEP section or part. Enter the *section/part, page number or addendum to identify each item being continued. Attach this addendum to the form.

*Section/Part I.E.P. notes cont. Page 2 of 2 or Addendum _____ (Repeat for each section or part.)

His educational goals will be carried over until they are mastered by the student.

Mar. 1. 2005 4:34PM    Dalton, Dalton,& Houston    No.8192  P. 16
Mar 01 05 03:29p    P.39

# Friendship-Edison Public Charter School, Carter G. Woodson Campus
## Group Note

Student Name: _____    ID#: _____    School: FECA

Group: _____    Clinician(s): _____    Group Start Date: 5/28/04

IEP/Treatment Objectives: _____

Date: 5/28/04

| Group goals: | Behavior: | Participation Level: | Begin Time: 9:35 | End Time: | Duration: Hrs. Min. | Affect: | Response to Treatment: | Group Session Topic/Modality: |
|---|---|---|---|---|---|---|---|---|

**Group goals:**
- ☐ Anger management
- ☐ Communicate assertively
- ☐ Disruptive
- ☐ Describe positive self image
- ☐ Express feelings
- ☐ Improve attention span
- ☐ Identify Conflicts
- ☐ Identify feelings
- ☐ Identify stressors
- ☐ Identify expressive outlets
- ☐ Improve impulse control
- ☐ Identify internal cues
- ☐ Identify new coping skills
- ☐ Identify positive statements
- ☐ Improve problem solving
- ☐ Improve self concept
- ☐ Improve self control
- ☐ Identify sources of conflict
- ☐ Identify support systems
- ☐ Identify values
- ☐ Practice coping skills
- ☐ State fears
- ☐ Support peers
- ☐ Tolerate emotions
- ☐ Use expressive outlets
- ☐ Use nurturing techniques
- ☐ Other

**Participation Level:**
- ☐ Avoidant
- ☐ Active with encouragement
- ☐ Disruptive
- ☐ Did not participate
- ☐ Dominates
- ☐ Independently active
- ☐ Intrusive
- ☐ Listens attentively
- ☐ Minimally active
- ☐ Oppositional

**Behavior:**
- ☐ Accepts limits
- ☐ Attentive
- ☐ Distracted
- ☐ Drowsy
- ☐ Follow directions
- ☐ Irritable
- ☐ Monopolizing
- ☐ Restless/Fidgeting
- ☐ Spontaneous interaction
- ☐ Task initiation (by self)
- ☐ Tearful
- ☐ Withdrawn

**Affect:**
- ☐ Angry
- ☐ Anxious
- ☐ Cheerful
- ☐ Full range
- ☐ Labile
- ☐ Sad
- ☐ Suspicious

**Content of Speech:**
- ☐ Appropriate
- ☐ Concrete
- ☐ Hyperverbal
- ☐ Nonverbal
- ☐ Profane
- ☐ Repetitive
- ☐ Suspicious

**Response to Treatment:**
- ☐ Denial
- ☐ Demonstrated skill
- ☐ Discussed information
- ☐ Expressed emotion
- ☐ Gained insight
- ☐ Learned skill
- ☐ Made decision
- ☐ Passive
- ☐ States understanding
- ☐ Supported others

**Plan/Recommendations/Comments:**

Clinician Signature/Credentials: _____    Date: _____

Clinician Signature/Credentials: _____    Date: 5/28/04

Group Progress Note, MBS, Loessner, 8/24/04

Edison-03    417

# Friendship-Edison Public Charter School, Carter G. Woodson Campus
## Group Note

Student Name: _____  ID#: 645-86-63  School: FECA

Group: _____  Clinician(s): _____  Group Start Date: _____

IEP/Treatment Objective: _____

Date: 10/1/04

| Begin Time: | End Time: | Duration: | Group Session Topic/Modality: |
|---|---|---|---|
| am pm | am pm | Hrs.  Min. | |

**Group goals:**
- ☐ Anger management
- ☐ Communicate assertively
- ☐ Describe positive self image
- ☐ Express feelings
- ☐ Improve attention span
- ☐ Identify Conflicts
- ☐ Identify feelings
- ☐ Identify stressors
- ☐ Identify expressive outlets
- ☐ Improve impulse control
- ☐ Identify internal cues
- ☐ Identify new coping skills
- ☐ Identify positive statements
- ☐ Improve problem solving
- ☐ Improve self concept
- ☐ Improve self control
- ☐ Identify sources of conflict
- ☐ Identify support systems
- ☐ Identify values
- ☐ Practice coping skills
- ☐ State fears
- ☐ Support peers
- ☐ Tolerate emotions
- ☐ Use expressive outlets
- ☐ Use nurturing techniques
- ☐ Other _____

**Participation Level:**
- ☐ Avoidant
- ☐ Active with encouragement
- ☐ Disruptive
- ☐ Did not participate
- ☐ Dominates
- ☐ Independently active
- ☐ Intrusive
- ☐ Listened attentively
- ☐ Minimally active
- ☐ Oppositional

**Behavior:**
- ☐ Accepts limits
- ☐ Attentive
- ☐ Distracted
- ☐ Follows directions
- ☐ Drowsy
- ☐ Irritable
- ☐ Monopolizing
- ☐ Restless/Fidgeting
- ☐ Spontaneous interaction
- ☐ Task Initiation (by self)
- ☐ Tearful
- ☐ Withdrawn

**Affect:**
- ☐ Angry
- ☐ Anxious
- ☐ Cheerful
- ☐ Full range
- ☐ Labile
- ☐ Sad

**Content of Speech:**
- ☐ Appropriate
- ☐ Congrate
- ☐ Hyperverbal
- ☐ Nonverbal
- ☐ Profane
- ☐ Repetitive
- ☐ Suspicious

**Response to Treatment:**
- ☐ Denial
- ☐ Demonstrated skill
- ☐ Discussed information
- ☐ Expressed emotion
- ☐ Gained insight
- ☐ Learned skill
- ☐ Made decision
- ☐ Passive
- ☐ States understanding
- ☐ Supported others

**Plan/Recommendations/Comments:**

Clinician Signature/Credentials: _____  Date: _____

Clinician Signature/Credentials: _____  Date: _____

Group Progress Note, MBS, Locsinsz, 8/24/04

418

# Friendship-Edison Public Charter School, Carter G. Woodson Campus
## Group Note

Student Name: _____  ID#: _____  School: _____

Group: _____  Clinician(s): _____  Group Start Date: _____

IEP/Treatment Objective: _____

| Date: | Begin Time: | End Time: | Duration: | Group Session Topic/Modality: |
|---|---|---|---|---|
| | am pm | am pm | Hrs. / Mins. | |

**Group goals:**

- [ ] Anger management
- [ ] Communicate assertively
- [ ] Describe positive self image
- [ ] Express feelings
- [ ] Improve attention span
- [ ] Identify Conflicts
- [ ] Identify feelings
- [ ] Identify stressors
- [ ] Identify expressive outlets
- [ ] Improve impulse control
- [ ] Identify internal cues
- [ ] Identify new coping skills
- [ ] Identify positive statements
- [ ] Improve problem solving
- [ ] Improve self concept
- [ ] Improve self control
- [ ] Identify sources of conflict
- [ ] Identify support systems
- [ ] Identify values
- [ ] Practice coping skills
- [ ] State fears
- [ ] Support peers
- [ ] Tolerate emotions
- [ ] Use expressive outlets
- [ ] Use nurturing techniques
- [ ] Other

**Participation Level:**
- [ ] Avoidant
- [ ] Active with encouragement
- [ ] Disruptive
- [ ] Did not participate
- [ ] Dominates
- [ ] Independently active
- [ ] Intrusive
- [ ] Listened attentively
- [ ] Minimally active
- [ ] Oppositional

**Behavior:**
- [ ] Accepts limits
- [ ] Attentive
- [ ] Distracted
- [ ] Drowsy
- [ ] Follows directions
- [ ] Irritable
- [ ] Monopolizing
- [ ] Restless/Fidgeting
- [ ] Spontaneous interaction
- [ ] Task initiation (by self)
- [ ] Tearful
- [ ] Withdrawn

**Affect:**
- [ ] Angry
- [ ] Anxious
- [ ] Cheerful
- [ ] Full range
- [ ] Labile
- [ ] Sad

**Content of Speech:**
- [ ] Appropriate
- [ ] Concrete
- [ ] Hyperverbal
- [ ] Nonverbal
- [ ] Profane
- [ ] Repetitive
- [ ] Suspicious

**Response to Treatment:**
- [ ] Denial
- [ ] Demonstrated skill
- [ ] Disclosed information
- [ ] Expressed emotion
- [ ] Gained insight
- [ ] Learned skill
- [ ] Made decision
- [ ] Passive
- [ ] States understanding
- [ ] Supported others

**Plan/Recommendations/Comments:**

Clinician Signature/Credentials: _____  Date: _____

Clinician Signature/Credentials: _____  Date: _____

419

# Friendship-Edison Public Charter School, Carter G. Woodson Campus
## Group Note

Student Name: _Dakota Wells_    ID#_545243_    School: _FECA_

Group: _Friendship_    Clinician(s): _Jill E. Levin_    Group Start Date: _9/08/04_

IEP/Treatment Objective: _Skills_

Date: _10/21/04_    Begin Time: _3:30 pm_  End Time: _4:05 pm_    Duration: Hrs. _0_ Min. _35_

Group Session Topic/Modality: _Success Resource Preservation_

**Group goals:**
- ☐ Anger management
- ☐ Communicate assertively
- ☐ Describe positive self image
- ☐ Express feelings
- ☐ Improve attention span
- ☐ Identify Conflicts
- ☐ Identify feelings
- ☐ Identify stressors
- ☐ Identify expressive outlets
- ☐ Improve impulse control
- ☐ Identify internal cues
- ☐ Identify new coping skills
- ☐ Identify positive statements
- ☐ Improve problem solving
- ☑ Improve self concept
- ☐ Improve self control
- ☐ Identify support systems
- ☐ Identify sources of conflict
- ☐ Identify values
- ☐ Practice coping skills
- ☐ State fears
- ☐ Support peers
- ☐ Tolerate emotions
- ☐ Use expressive outlets
- ☐ Use nurturing techniques
- ☐ Other

**Participation Level:**
- ☐ Avoidant
- ☑ Active with encouragement
- ☐ Disruptive
- ☐ Did not participate
- ☐ Dominate
- ☑ Independently active
- ☐ Intrusive
- ☐ Listened attentively
- ☐ Minimally active
- ☐ Oppositional

**Behavior:**
- ☑ Accepts limits
- ☑ Attentive
- ☐ Distracted
- ☐ Drowsy
- ☐ Follows directions
- ☐ Labile
- ☐ Irritable
- ☐ Monopolizing
- ☐ Restless/Fidgeting
- ☐ Spontaneous interaction
- ☐ Task initiation (by self)
- ☐ Tearful
- ☐ Withdrawn

**Affect:**
- ☐ Angry
- ☐ Anxious
- ☐ Cheerful
- ☑ Full range
- ☐ Labile
- ☐ Sad

**Content of Speech:**
- ☑ Appropriate
- ☐ Concrete
- ☐ Hyperverbal
- ☐ Nonverbal
- ☐ Profane
- ☐ Repetitive
- ☐ Suspicious

**Response to Treatment:**
- ☐ Denial
- ☐ Demonstrated skill
- ☐ Disclosed information
- ☑ Expressed emotion
- ☐ Gained insight
- ☑ Learned skill
- ☐ Made decision
- ☐ Passive
- ☑ States understanding
- ☐ Supported others

**Plan/Recommendations/Comments:** _will check attention at next social problem_

Clinician Signature/Credentials: _Jill E. Levin_    Date: _10/21/04_

Clinician Signature/Credentials: _____    Date: _____

Group Progress Note, MHS, Licensure, 8/24/04

420

Mar. 1. 2005  4:35PM    Dalton, Dalton,& Houston        No.8192  P. 20
Mar 01 05 03:31p                                                p.43

# Friendship-Edison Public Charter School, Carter G. Woodson Campus

## Group Note

Student Name: [redacted]                    ID#: 895-82-63        School: FEPCS

Group: Process Group          Clinician(s): Kyra Elders        Group Start Date: 9/28/04

IEP/Treatment Objective: [handwritten]

| Date: | Begin Time: | End Time: | Duration: | Group Session Topic/Modality: |
|---|---|---|---|---|
| 9/21/04 | | | Hrs. 60 Mins. | |

**Group goal(s):**
- ☐ Anger management
- ☐ Communicate assertively
- ☐ Describe positive self image
- ☐ Express feelings
- ☐ Improve attention span
- ☐ Identify Conflicts
- ☐ Identify feelings
- ☐ Identify stressors
- ☐ Identify expressive outlets
- ☐ Improve impulse control
- ☐ Identify internal cues
- ☐ Identify new coping skills
- ☐ Identify positive statements
- ☐ Improve problem solving
- ☐ Improve self concept
- ☐ Improve self control
- ☐ Identify sources of conflict
- ☐ Identify support systems
- ☐ Identify values
- ☐ Practice coping skills
- ☐ State fears
- ☐ Support peers
- ☐ Tolerate emotions
- ☐ Use expressive outlets
- ☐ Use nurturing techniques
- ☐ Other

**Participation Level:**
- ☐ Avoidant
- ☐ Active with encouragement
- ☐ Disruptive
- ☐ Did not participate
- ☐ Dominates
- ☐ Independently active
- ☐ Intrusive
- ☐ *Licensed attentively
- ☐ Minimally active
- ☐ Oppositional

**Behavior:**
- ☐ Accepts limits
- ☐ Attentive
- ☐ Distracted
- ☐ Drowsy
- ☐ Follows directions
- ☐ Irritable
- ☐ Monopolizing
- ☐ Restless/Fidgeting
- ☐ Spontaneous interaction
- ☐ Task initiation (by shl)
- ☐ Tearful
- ☐ Withdrawn

**Affect:**
- ☐ Angry
- ☐ Anxious
- ☐ Cheerful
- ☐ Full range
- ☐ Labile
- ☐ Sad

**Content of Speech:**
- ☐ Appropriate
- ☐ Concrete
- ☐ Hyperverbal
- ☑ Nonverbal
- ☐ Profane
- ☐ Repetitive
- ☐ Suspicious

**Response to Treatment:**
- ☐ Denial
- ☐ Demonstrated skill
- ☐ Disclosed information
- ☐ Expressed emotion
- ☐ Gained insight
- ☐ Learned skill
- ☐ Made decision
- ☐ Passive
- ☐ States understanding
- ☐ Supported others

**Plan/Recommendations/Comments:**

[handwritten notes]

Group Progress Note, MBS, Leesner, 9/24/04

Clinician Signature/Credentials: [signature]        Date: [handwritten]

Clinician Signature/Credentials: [signature]        Date: [handwritten]

421

Mar. 1. 2005 4:35PM    Dalton, Dalton,& Houston    No.8192    P. 21
Mar 01 05 03:31p    P.44

# Friendship-Edison Public Charter School, Carter G. Woodson Campus
## Group Note

Student Name: ~~[redacted]~~    Clinician(s): ~~[redacted]~~    DOB: 843-82-63    School: FECW

Group: ~~[redacted]~~    Group Start Date: 9/28/04

IEP/Treatment Objective: ~~[redacted]~~

Date: 11/17/04

| Group goals: | Participation Level: | Behavior: | Affect: | Group Session Topic/Modality: |
|---|---|---|---|---|
| ☐ Anger management | ☐ Avoidant | ☐ Accepts limits | ☐ Angry | ~~hostile feelings~~ |
| ☐ Communicate assertively | ☐ Active with encouragement | ☒ Attentive | ☐ Anxious | **Response to Treatment:** |
| ☐ Describe positive self image | ☐ Disruptive | ☒ Distracted | ☒ Cheerful | ☐ Denial |
| ☐ Express feelings | ☐ Did not participate | ☐ Follows directions | ☐ Full range | ☒ Demonstrated skill |
| ☐ Improve attention span | ☒ Independently active | ☐ Drowsy | ☐ Labile | ☐ Discussed information |
| ☐ Identify conflicts | ☒ Intrusive | ☐ Irritable | ☐ Sad | ☐ Expressed emotion |
| ☐ Identify feelings | ☐ Listened attentively | ☐ Monopolizing | | ☐ Gained insight |
| ☐ Identify stressors | ☐ Minimally active | ☐ Restless/Fidgeting | **Content of Speech:** | ☐ Learned skill |
| ☐ Identify expressive outlets | ☐ Oppositional | ☐ Spontaneous interaction | ☒ Appropriate | ☐ Made decision |
| ☐ Improve impulse control | | ☐ Task initiation (by self) | ☐ Concrete | ☐ Passive |
| ☐ Identify internal cues | | ☐ Tearful | ☐ Hyperverbal | ☐ States understanding |
| ☐ Identify new coping skills | | ☐ Withdrawn | ☐ Nonverbal | ☐ Supported others |
| ☒ Identify positive statements | | | ☐ Profane | |
| ☐ Improve problem solving | | | ☐ Repetitive | |
| ☐ Improve self concept | | | ☐ Suspicious | |
| ☐ Improve self control | | | | |
| ☐ Identify support systems | | | | |
| ☐ Identify sources of conflict | | | | |
| ☐ Identify values | | | | |
| ☐ Practice coping skills | | | | |
| ☐ State fears | | | | |
| ☐ Support peers | | | | |
| ☐ Tolerate emotions | | | | |
| ☐ Use expressive outlets | | | | |
| ☐ Use nurturing techniques | | | | |
| ☐ Other | | | | |

Begin Time: 5:00    End Time: 5:30    Duration: Hrs. __ Mins. 30

**Plan/Recommendations/Comments:**

Clinician Signature/Credentials: ~~[redacted]~~    Date: 11/17/04

Clinician Signature/Credentials: ~~[redacted]~~    Date: ____

Group Progress Note, MBS, Loessiter, 8/24/04

422

Mar. 1. 2005 4:35PM    Dalton, Dalton,& Houston                    No.8192   P. 22

Mar 01 05 03:31p                                                              p.45

# Friendship-Edison Public Charter School, Carter G. Woodson Campus
## Group Note

Student Name: _____    ID#: ____    School: __EPCW__

Group: _Friendship_    Clinician(s): _____    Group Start Date: _____

IEP/Treatment Objective: _Behavior Management_

Date: _12/22/04_    Begin Time: _8:00_ am/pm    End Time: _9:37_ am/pm    Duration: _Hrs. 50 Mins._

**Group goals:**

| | |
|---|---|
| ☑ Anger management | |
| ☐ Communicate assertively | |
| ☐ Describe positive self image | |
| ☐ Express feelings | |
| ☐ Improve attention span | |
| ☐ Identify conflicts | |
| ☒ Identify feelings | |
| ☐ Identify stressors | |
| ☐ Identify expressive outlets | |
| ☐ Improve impulse control | |
| ☐ Identify internal cues | |
| ☐ Identify new coping skills | |
| ☐ Identify positive statements | |
| ☒ Improve problem solving | |
| ☐ Improve self concept | |
| ☐ Improve self control | |
| ☐ Identify sources of conflict | |
| ☐ Identify support systems | |
| ☐ Identify values | |
| ☐ Practice coping skills | |
| ☐ State fears | |
| ☐ Support peers | |
| ☐ Tolerate emotions | |
| ☐ Use expressive outlets | |
| ☐ Use nurturing techniques | |
| ☒ Other _identity_ | |

**Participation Level:**

☑ Accepts limits
☐ Active with encouragement
☐ Disruptive
☐ Did not participate
☐ Dominates
☒ Independently active
☐ Intrusive
☒ Listened attentively
☐ Minimally active
☐ Oppositional

**Behavior:**

☐ Avoidant
☒ Attentive
☒ Distracted
☐ Drowsy
☐ Follows directions
☐ Irritable
☐ Monopolizing
☐ Restless/Fidgeting
☐ Spontaneous interaction
☐ Task Initiation (by self)
☐ Tearful
☐ Withdrawn

**Affect:**

☐ Angry
☐ Anxious
☒ Cheerful
☐ Full range
☐ Labile
☐ Sad

**Content of Speech:**

☒ Appropriate
☐ Concrete
☐ Hyperverbal
☐ Nonverbal
☐ Profane
☐ Repetitive
☐ Suspicious

**Group Session Topic/Modality:**

**Response to Treatment:**

☐ Denial
☒ Demonstrated skill
☒ Disclosed information
☒ Expressed emotion
☐ Gained insight
☐ Learned skill
☐ Made decision
☒ Passive
☐ States understanding
☐ Supported others

**Plan/Recommendations/Comments:**

_Reflective listening skills_
_Active vs Passive_

Clinician Signature/Credentials: _____    Date: _12/22/04_

Clinician Signature/Credentials: _____    Date: _____

423

Mar. 1. 2005  4:35PM    Dalton, Dalton, & Houston    No. 8192    P. 23

# Friendship Edison Public Charter School, Carter G. Woodson Campus
## Group Note

Student Name: _____    ID# 845-82-63    School: _____

Group: _____    Clinician(s): _____    Group Start Date: _____

IEP/Treatment Objective: _____

Date: 1/13/05

**Group goals:**
- ☐ Anger management
- ☑ Communicate assertively
- ☐ Describe positive self image
- ☐ Express feelings
- ☐ Improve attention span
- ☐ Identify Conflicts
- ☐ Identify feelings
- ☐ Identify stressors
- ☐ Identify expressive outlets
- ☑ Improve impulse control
- ☐ Identify internal cues
- ☐ Identify new coping skills
- ☐ Identify positive statements
- ☐ Improve problem solving
- ☐ Improve self concept
- ☐ Improve self control
- ☐ Identify sources of conflict
- ☐ Identify support systems
- ☐ Identify values
- ☐ Practice coping skills
- ☐ State fears
- ☐ Support peers
- ☐ Tolerate emotions
- ☐ Use expressive outlets
- ☐ Use nurturing techniques
- ☐ Other

**Begin Time:** 2:11 pm    **End Time:** 2:28 pm    **Duration:** Hrs _____ Min _____

**Participation Level:**
- ☐ Avoidant
- ☑ Active with encouragement
- ☐ Disruptive
- ☐ Did not participate
- ☐ Dominates
- ☐ Independently active
- ☐ Intrusive
- ☑ Listened attentively
- ☑ Minimally active
- ☐ Oppositional

**Behavior:**
- ☐ Accepts limits
- ☑ Attentive
- ☐ Distracted
- ☐ Follows directions
- ☐ Drowsy
- ☐ Irritable
- ☐ Monopolizing
- ☐ Restless/Fidgety
- ☐ Spontaneous interaction
- ☐ Task Initiation (by self)
- ☐ Tearful
- ☐ Withdrawn

**Affect:**
- ☐ Angry
- ☐ Anxious
- ☑ Cheerful
- ☐ Full range
- ☐ Labile
- ☐ Sad

**Content of Speech:**
- ☑ Appropriate
- ☐ Concrete
- ☐ Hyperverbal
- ☐ Nonverbal
- ☐ Profane
- ☐ Repetitive
- ☐ Suspicious

**Group Session Topic/Modality:**
_____

**Response to Treatment:**
- ☑ Denial
- ☑ Demonstrated skill
- ☐ Disclosed information
- ☐ Expressed emotion
- ☐ Gained insight
- ☐ Learned skill
- ☐ Made decision
- ☐ Passive
- ☐ States understanding
- ☐ Supported others

**Plan/Recommendations/Comments:**
_____

Clinician Signature/Credentials: _____    Date: 1/13/05

Clinician Signature/Credentials: _____    Date: _____

424

```
┌─────────────────────────────────────┐
│   TRANSMISSION VERIFICATION REPORT   │
└─────────────────────────────────────┘
```

```
                              TIME   : 02/08/2005 10:16
                              NAME   : STUDENT HEARINGS OFF
                              FAX    : 2024425556
                              TEL    : 2024425432
                              SER.#  : BROH3J608601
```

```
┌───────────────────────────────────────────────────────────────────┐
│   DATE,TIME              02/08  10:15                                │
│   FAX NO./NAME           96260048                                   │
│   DURATION               00:00:28                                   │
│   PAGE(S)                01                                         │
│   RESULT                 OK                                         │
│   MODE                   STANDARD                                  │
│                          ECM                                       │
└───────────────────────────────────────────────────────────────────┘
```

# District of Columbia Public Schools
## *Office of Compliance*
## STUDENT HEARING OFFICE
### 825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



### HEARING NOTICE

| MEMORANDUM VIA: [✓] FACSIMILE  [ ] MAIL  [ ] HAND DELIVERY |
|---|

TO:      Parent (or Representative): _F. BARRIE_      Fax No.: _626-0048_

LEA Legal Counsel: _M. LEVY_

RE:      _W_____, J_____      and (LEA) DOB: ___/__/89_
         Student's Name

FROM:   _SHARON NEWSOME_
        Special Education Student Hearing Office Coordinator

DATE SENT: _2/8/05_

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
_2/3/05_ . Please be advised that the hearing has been scheduled for:

DATE: _3/8/05_

TIME: _11:00 Am_

425

```
┌─────────────────────────────────────┐
│  TRANSMISSION VERIFICATION REPORT    │
└─────────────────────────────────────┘
                              TIME  : 02/08/2005 10:34
                              NAME  : STUDENT HEARINGS OFF
                              FAX   : 2024425556
                              TEL   : 2024425432
                              SER.# : BROH3J608601

┌──────────────────────────────────────────────────────────────┐
│  DATE,TIME           02/08  10:34                              │
│  FAX NO./NAME        97037392323                               │
│  DURATION            00:00:19                                  │
│  PAGE(S)             01                                        │
│  RESULT              OK                                        │
│  MODE                STANDARD                                  │
│                      ECM                                       │
└──────────────────────────────────────────────────────────────┘
```

# District of Columbia Public Schools
### *Office of Compliance*
## STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



### HEARING NOTICE

| MEMORANDUM VIA: ☒ FACSIMILE [ ] MAIL [ ] HAND DELIVERY |
|---|

TO:    Parent (or Representative):   P. DALTON          Fax No.: (703) ~~228-2323~~
                                                                    739 - 2323

       LEA Legal Counsel:   M. LEVY

RE:    W̶̶̶̶̶̶̶̶, D̶̶̶̶̶̶̶   and (LEA)  DOB: ██/██/89
              Student's Name

FROM:  SHARON NEWSOME
       Special Education Student Hearing Office Coordinator

DATE SENT:   2/8/05

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
2/3/05 . Please be advised that the hearing has been scheduled for:

       DATE:   3/8/05

       TIME:   11:00 AM

       AT:   825 North Capitol Street, N.E. Washington, DC

426

## STUDENT HEARING OFFICE OF THE DISTRICT OF COLUMBIA
## EXPEDITED REQUEST FOR MEDIATION/HEARING

> ➤ **This form shall be used to give notice to the District of Columbia Public Schools and/or a District of Columbia Public Charter School of parental disagreement with the identification, evaluation or educational placement of their child with a disability, or the timely provision of a free appropriate public education to that child, and to request a hearing and/or mediation regarding the same.**
> ➤ **This form must be sent to the Student Hearing Office of the District of Columbia, 825 North Capitol Street, N.E., 8th Floor, Washington, D.C. 20002. Fax number 202-442-5556**

---

Federal law requires that when a parent or representative requests mediation, it shall be offered at no cost to the parent. Mediation may be beneficial in your case. Please indicate your decision:

___ I REQUEST MEDIATION  ___ I REQUEST MEDIATION AND A HEARING  _X_ I REQUEST A HEARING

---

## STUDENT FOR WHOM MEDIATION/DUE PROCESS HEARING IS REQUESTED

Student Name: D██████ W█████████            DOB: _____89

Address: _5019-11TH STREET, N.E., WASHINGTON, D.C. 20017_

Present School of Attendance: Friendship Edison PCS     Home School: UNKNOWN
                                                          (Neighborhood school where child is registered)

**COMPLAINT IS MADE AGAINST:**    DCPS & Friendship Edison PCS
                                   DCPS and/or D.C. Public Charter School (specify)

## INDIVIDUAL REQUESTING MEDIATION/DUE PROCESS HEARING

Name: _MS. MARIAN MURPHY_

Address: _5019-11TH STREET, N.E., WASHINGTON, D.C. 20017_

Phone: (H) _(202) 832-1048_    (W) _____    (Fax) _____

RECEIVED
FEB - 3 2005
STUDENT HEARING OFFICE

Relationship to Student: _X_ Parent ____ Self ____ Legal Guardian ____ Parent Surrogate ___ Public Agency

## PARENT REPRESENTATIVE/ATTORNEY/ADVOCATE (if applicable): _____

**Name:** _Fatmata Barrie, Esq._ (Christopher Anwah's Law Office) **Phone:** (W) (202) 626-0040

Address: _1003 K Street, N.W., Suite 500, Washington, D.C. 20001_  Fax: (202) 626-0048

---

Form 101

427

2—~~Delonte Williams~~ (~~xx/xx~~/89)

1. You must indicate three (3) dates when you and your representative (if you have one) are available within the next twenty (20) days for mediation (if you are requesting mediation) and/or three (3) dates within the next 35 days (or 30 days if you represent a student enrolled at ETS or Rock Creek Academy) when you, your representative, and witnesses will be available to appear for a hearing (if you are requesting a hearing). Please indicate whether you are available in the AM, PM, or both on the identified dates.

Hearings: __February 24, 2005__     __February 25, 2005__     __February 28, 2005__

Mediation: _____

**FOR ALL DCPS STUDENTS, IF YOU PROPOSE DATES MORE THAN 35 DAYS FROM THE DATE OF YOUR REQUEST, YOUR SIGNATURE BELOW WILL INDICATE YOUR WAIVER OF YOUR RIGHT TO A HEARING OFFICER DETERMINATION WITH 45 DAYS OF THIS REQUEST. IN THE CASE OF A WAIVER, THE STUDENT HEARING OFFICE WILL CONTINUE TO USE BEST EFFORTS TO ISSUE A HEARING OFFICER DETERMINATION WITHIN 45 DAYS OF YOUR REQUEST (OR AS CLOSE TO 45 DAYS AS IS POSSIBLE).**

**FOR STUDENTS ATTENDING ETS OR ROCK CREEK ACADEMY, IF YOU PROPOSE DATES BEYOND THE 30-DAY PERIOD, YOUR SIGNATURE BELOW WILL INDICATE YOUR WAIVER OF YOUR RIGHT TO A HEARING WITHIN THAT PERIOD.**

Every effort will be made to accommodate your requested dates. Please be aware that proposed hearing dates which fall fewer than 21 days from the date of your request are difficult to accommodate. Your dates are most likely to be available if you propose hearing dates between 21 and 35 (or 30, for students enrolled at ETS or Rock Creek Academy) days from the date your request is received and docketed by the Student Hearing Office.

If none of your proposed dates are available, or if you fail to specify any dates, the Student Hearing Office will schedule your hearing for the first available date. Upon receipt of a Hearing Notice confirming the date of your hearing, you will have an opportunity to file a Motion for Continuance, if necessary, by using the form Motion attached to your Hearing Notice. *Please do not contact the Hearing Office by phone to request a continuance. Only the Hearing Officer assigned to your case is authorized to grant requests for continuances.*

Unless you receive notice that the Hearing Officer has granted your request for a continuance, you must appear for the hearing as scheduled. Failure to report for the hearing may result in dismissal of this case, or in a default decision against you. Disclosure of evidence and witnesses to the opposing party is required at least five business days prior to the hearing, with copies to the Special Education Student Hearing Office.

2. Special Accommodation Requests for Mediation/Due Process Hearing (please be specific):

> Interpreter
> ___ Foreign Language _____
> ___ Sign Language _____

Form 101

428

3—Delante William (.40000/89)

Other _____
Special Communications _____
Special Accommodation for Disability _____
Other _____

3. In accordance with the Individuals with Disabilities Education Act (IDEA), please answer below:
   (You may attach additional pages to provide more information if needed.)

   **Describe the nature of the problem:** Counsel for parent and student incorporates all previous
   IDEA violations in prior HODs, Settlement Agreements, Disciplinary Hearings, and Parent/Teacher
   Conferences.

   1.  DCPS and FEPCS has failed to adhere to the June 24, 2004, a Settlement Agreement by
       not convening an MDT/IEP/Placement meeting for Delante.
   2.  DCPS and FEPCS has failed to complete an appropriate IEP for Delante because his IEP
       is expired and his IEP does not include the amount of counseling recommended by DCPS'
       psychologist.
   3.  DCPS and FEPCS has failed to provide Delante with an appropriate placement.
   4.  DCPS and FEPCS has failed to provide Delante with appropriate special education.
   5.  DCPS and FEPCS has failed to provide Delante with FAPE for several years by not
       providing him with the appropriate services, IEP and placement.

   **Describe issues to be addressed at the mediation and/or hearing, with specificity:**

   1.  Whether DCPS and FEPCS denied Delante FAPE when it failed to adhere to the June 24,
       2004, Settlement Agreement by not convening an MDT/IEP/Placement meeting for
       Delante?
   2.  Whether DCPS and FEPCS denied Delante FAPE when it failed to complete an
       appropriate IEP for Delante?
   3.  Whether DCPS and FEPCS denied Delante FAPE when it failed to provide Delante with
       an appropriate placement?
   4.  Whether DCPS and FEPCS denied Delante FAPE when it failed to provide Delante with
       appropriate special education services?
   5.  Whether DCPS and FEPCS denied Delante FAPE for several years by not providing him
       with the appropriate services, IEP and placement?

   **Describe relevant facts relating to the problem:**

   On June 24, 2004, DCPS counsel and parent's counsel signed a settlement agreement in which
   DCPS agreed to fund independent psychiatric and social history evaluations. Within 15 business
   days of the receipt of the last independent evaluation, DCPS would conduct an MDT meeting to
   review the evaluations, review and revise the IEP, determine placement and discuss the need for
   compensatory education.

   Parent's counsel obtained the independent psychiatric and social history evaluations and forwarded
   copies to Jack L. Schriebman, DCPS Attorney Advisor, on September 5, 2004. The letter reminded

| Form 101 |
| --- |

4 — Delonte Williams (██/██/89)

Mr. Schreibman that DCPS had fifteen (15) business days of the receipt of the independent evaluations to convene an MDT meeting to review/revise the student's IEP, to discuss placement, and compensatory education. Counsel for parent requested that DCPS contact its office to negotiate a mutual date and time to schedule the MDT meeting, but DCPS has yet to respond.

Additonally, on December 18, 2004 counsel for parent notified the Office of Mediation and Compliance of DCPS's failure to comply with the stipulations on the Settlement Agreement. However, the office of compliance has not responded to the letter of notification of the violation of the settlement agreement.

Currently, Delonte's IEP is expired and does not provide for the 45 minutes of counseling recommended by DCPS' psychologist or services to deal with his ADHD. Furthermore, he is not receiving his needed related services which includes counseling and services for his ADHD diagnosis.

Although Delonte has not been academically successful for years and DCPS has been aware that he could only succeed if he has someone working closely with him, DCPS has continued to provide him with and IEP and program that does not provide him with the amount of one on one that he needs.

On 01/31/05, parent's counsel again forwarded the evaluations to DCPS counsel as part of a 5-day disclosure but DCPS has yet to convene an MDT/IEP/Placement meeting.

At this time, the student continues to be without appropriate specialized instructions, IEP, placement, and denied compensatory education award. Therefore, the parent is bringing forth this complaint to induce DCPS to comply with the Settlement Agreement, to provide Delonte with an appropriate IEP and with an appropriate Placement.

**State how you would like to see the problem corrected:** Ms. Murphy is seeking the following relief: (1) DCPS to convene an MDT/IEP meeting within five (5) days of the issuance of its order to discuss the independent evaluations; (2) DCPS to fund all necessary and appropriate specialized instructions, related, and transition services, including transportation; (3) DCPS to develop an appropriate IEP; (4) DCPS to fund a placement of parent's choice; and, (5) DCPS to provide compensatory education for the past denial of FAPE and the present denial of FAPE.

_____               __February 2, 2005__
Signature of Applicant/Parent (Required)                Date (Required)

**MAIL, FAX, OR DELIVER APPLICATION TO:**
**Student Hearing Office of the District of Columbia**
**828 North Capitol Street, NE, 8th Floor**
**Washington, DC 20002 FAX: (202) 442-5556**

Form 101

430

5—Delete Wilkins(~~4~~89)

> **FOR OFFICE USE ONLY:**
> Case Number: _____
> Student ID#: _____
>
> Form 101                                   Revised 02/01/2003

Form 101

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
STUDENT HEARING OFFICE


IN THE MATTER OF D█████ W█████

HEARING DATE:   MARCH 3, 2005


TRANSCRIBED BY
LEGAL PERSONNEL, INC.   (301) 277-5711

APPEARANCES

HEARING OFFICER:                    HERBERT ST. CLAIR


ATTORNEY ADVISOR FOR
    DISTRICT OF COLUMBIA
    PUBLIC SCHOOLS                  Mr. Michael Levy

ATTORNEY FOR GRANDPARENT           Ms. Famata Barrie

433

1    HEARING OFFICER:  Good Morning today is Tuesday, March 8,

2    2005.  It's approximately 11:30.  This is a confidential

3    Administrative Hearing concerning the special education services

4    being provided to D██████ W██████ by the District of Columbia

5    Public Schools.  D██████.  D██████.  D██████ was born on

6    ██████████, 1989.  This hearing is authorized by Public Law

7    105-17, the Individuals With Disabilities Education Act

8    Amendments of 1997, Title 34, the Code of Federal Regulations,

9    Part 300 and Title V of the District of Columbia Municipal

10    Regulations. This Hearing is conducted under the auspices of the

11    District of Columbia Public Schools Hearing Act referred to

12    DCPS. This Hearing is being tape-recorded and either party may

13    request a copy of the tape or a transcript by making a written

14    request for both or either to the Student Hearing Office, DCPS.

15    My name is Herbert St. Clair.  I'm the Hearing Officer. I'm

16    going counsel to identify themselves.  Let's begin with the

17    attorney advisor.

18    MR. LEVY:  Yes.  Good Morning Mr. St. Clair, Michael Levy

19    Attorney Advisor, D.C. Public Schools.

20    MS. BARRIE: Famata Barrie, attorney for the grandmother.

21    HEARING OFFICER: Okay. I have a disclosure from the parent

22    dated February 16th, 2005.

23    MS. BARRIE: You put it over there.

1          HEARING OFFICER: Dated March 1st.  Okay.  This is already in

2     the record.  I have a second disclosure, one dated March 1st,

3     2005.  And do I have one from the District of Columbia Public

4     Schools.

5          MR. LEVY: Yes sir.  I put it in front of you.  A list of

6     witnesses.  It is also.

7          HEARING OFFICER: Oh! A disclosure statement and Motion to

8     Join --.

9          MR. LEVY: That is correct.

10          HEARING OFFICER: Compel Attendance.  All right, I'm going

11     to place that into the record.  Now, where are we Ms. Barrie?

12     What would satisfy --?

13          MR. LEVY: I have a preliminary issue sir.

14          HEARING OFFICER: Okay. Yes.

15          MR. LEVY: It's really not against Ms. Barrie. There was a

16     Mr. Paul Dalton on behalf of the Public -Friendship Edison

17     Public Charter School filed a Motion to Dismiss the Friendship

18     Edison Public Charter School as a party to this action prior to

19     today's date. It was in fact filed and apparently served on

20     March 2nd both on Ms. Barrie and on our office.

21          HEARING OFFICER: Okay.

22          MR. LEVY: The Hearing Officer Smith a issued a motion –

23     issued a Order dismissing the other parties' action which I do

4

435

1  not have a copy, but Ms. Barrie has kindly showed me this

2  morning before we began.

3      HEARING OFFICER: Okay.  All right.

4      MR. LEVY: And DCPS is position that the letter – the

5  disclosure letter is also a motion to join or retain the party,

6  Friendship Edison Public Charter School, as you can see in the

7  body of the text, in the third full paragraph, it says, "DCPS

8  hereby moves the Hearing Officer to join and or retain

9  Friendship Edison Public Charter School as a necessary party to

10  this Hearing as many or all of the issues raised in the Hearing

11  Request related to matters arising at that school and for which

12  that school has its own LEA is responsible."  We were not aware

13  of the fact that it was going to be ruling on the Motion to

14  Dismiss or on our ruling to retain Friendship Edison until the

15  date of the Hearing. And in the circumstances we would ask that

16  either the Motion, that the Order be set aside that dismiss them

17  as party because I believe they are a necessary part of the

18  several of the allegations, excuse me in the Hearing Request

19  related by most all of the allegations refer to DCPS and

20  Friendship Edison Public Charter School.  And some of the issues

21  are not covered by the Motion that Mr. Dalton filed because he

22  refers to his client being unaware of the settlement agreement

23  which was made at the preceding this Hearing between Mr.

436

1    Shridmon sp? from our offices and Ms. Barrie and there are other

2    issues that do not relate to the Settlement Agreement at all,

3    including the delivery of services at Friendship Edison during

4    the current school year because the student is actually enrolled

5    there current, which are not addressed by his Motion to Dismiss.

6         HEARING OFFICER: Let me see the Motion to Dismiss and Mr.

7    Smith's Order.

8         MR. LEVY: And if I could also point out that --.

9         HEARING OFFICER: Just a minute.  Go ahead, Mr. --.

10        MR. LEVY: Yes sir.  In addition to that in the Hearing

11   Request, on the last page of the Hearing Request dated February

12   2nd, 2005, which is the one from which we are here today --.

13        HEARING OFFICER: HmmmHmmm.

14        MR. LEVY: It says on the third paragraph on the last page,

15   the D▓▓▓▓▓▓ IEP has expired and does not provide for 45

16   minutes of counseling recommended by DCPS psychologist services

17   to deal with ADHD.  Furthermore he is not really receiving

18   needed related services which include counseling and services

19   for his ADHD diagnosis.  The IEP that we are referring to is the

20   one dated April 22, 2004 which is parent's exhibit DW11 --.

21        HEARING OFFICER:  HmmmHmmm.

22        MR. LEVY: Dated, like I said.

23        HEARING OFFICER:  Just a second.

437

1    MR. LEVY: Sure.

2    HEARING OFFICER: Okay, now this is the one that just

3    recently.

4    MR. LEVY:  This is the one, it's actually not expired. This

5    one is the one I was the last one that was done for him.

6    HEARING OFFICER:  For what school?

7    MR. LEVY: Village Learning Center is where he was then

8    attending, which is also a public charter school, which is now

9    non-existent.

10    HEARING OFFICER:  I know but that was a DCPS charter.

11    MR. LEVY: It was a DCPS charter, but it is no longer in

12    existence, but at the time when it was developed, that's where

13    the student was attending. He is now moved to and is enrolled at

14    the Friendship Edison.

15    HEARING OFFICER: What did DCPS agree to?

16    MR. LEVY: The Settlement Agreement I believe is also in the

17    record sir.  Bear with me for one moment.  DW02 and we agreed

18    essentially to have a meeting.

19    HEARING OFFICER:  Did you have the meeting?

20    MR. LEVY: I'm not sure sir.

21    HEARING OFFICER:  As I read through it, I think that the –

22    you agreed to provide two independent evaluations and to hold an

23    MDT meeting when --.

438

1      MR. LEVY: (Inaudible)

2      HEARING OFFICER:  Right Okay.  Where the evaluations

3  delivered to DCPS?

4      MR. LEVY: Yes they were sir.

5      HEARING OFFICER:  Did DCPS convene a meeting?

6      MR. LEVY: We did not sir as far as I am aware of.

7      HEARING OFFICER:  Was DCPS, was the parent supposed to do

8  something to perfect their right to request a Due Process like

9  notifying the compliance office?

10     MR. LEVY: Yes they were.

11     HEARING OFFICER:  Did they do that?

12     MR. LEVY: That I'm not sure of.

13     MS. BARRIE: Yes sir.

14     HEARING OFFICER:  Where is your letter for that Ms.  --.

15     MS. BARRIE: It is parent's Exhibit Number DW07.  December

16  18th, 2004.

17     MR. LEVY: But our contention is --.

18     HEARING OFFICER:  Just a minute.

19     MR. LEVY: Yes sir.  Yes sir.

20     HEARING OFFICER:  All right. Did you get a response to

21  this?

22     MS. BARRIE: No. No sir.

23     HEARING OFFICER:  I'm referring to (Inaudible).  Just for

1    the record.   Yes sir.

2        MR. LEVY: My contention is even if DCPS weren't to be in

3    violation of that Settlement Agreement, that does absolve the

4    Public Charter School from its obligation to (Inaudible)

5    services, which is its on LEA, and that is admittedly so.   They

6    have their own counsel and everything. If you look at the Motion

7    by Mr. Dalton to Dismiss, all his allegations relate a lack of

8    knowledge of the Settlement Agreement.   And it should be noted

9    that it is not supported by a Declaration or Affidavit from any

10   of his clients, there being bald assertions by the attorney for

11   the organization.   It  is our position that insofar as their

12   allegations that are in the present Hearing Request that relate

13   to the Public Charter School that are not addressed by his

14   Motion, that Motion ought to be set aside or at the very least

15   to be set down for Hearing before Mr. Smith who dismissed the

16   Hearing Request to permit those issues to be addressed all at

17   one time and Hearing, rather than bifurcate in a proceedings

18   today to deal with any violation of the Settlement Agreement

19   today and to deal with the issues relating to the violation by –

20   by the Public Charter School on another occasion because we

21   believe that there is nothing in the law that requires us to

22   reply to the Motion prior to the today's Hearing.   In fact my

23   expectation was that both my Motions for him to be retained for

440

1    the Public Charter School as a party because they are already

2    joined as a party or to end his Motion to Dismiss would be heard

3    at a sit-down Hearing today when the matter was sat down. In

4    fact, I expected it to be sat-down before Mr. Smith if he was

5    going to be the one ruling on the Motion to Dismiss.

6        HEARING OFFICER:  What does that have to do with DCPS's

7    agreement with the parent?

8        MR. LEVY: It has to do with - the issues are in some degree

9    separate.  But, --.

10       HEARING OFFICER:  You agreed to fund evaluations and to

11   hold an MDT/IEP placement meeting.

12       MR. LEVY: That is correct.

13       HEARING OFFICER:  You didn't do that.  What does Edison

14   have to do with that?

15       MR. LEVY: Edison doesn't have to do with that, except that

16   I believe they need to establish than just by more than just a

17   letter from their attorney that they did not know about the

18   Settlement Agreement.

19       HEARING OFFICER:  Fine.  Let's assume that they did not

20   file a Motion to - For Dismissal as to themselves.  What does

21   that have to do DCPS and the Settlement Agreement?

22       MR. LEVY: It has to do with their other issues in the

23   Hearing Request.  The Hearing Request speaks to other - other

441

1    issues. First of all I do not know for a fact, that they were

2    unaware of the Settlement Agreement.  That's what they are

3    asserting, that is what the attorney is asserting.

4        HEARING OFFICER:  All right.

5        MR. LEVY: But even if we get pass that issue.

6        HEARING OFFICER:  Let's assume that they were aware.  What

7    difference does it make?

8        MR. LEVY: Ms. Barrie is here today saying that Friendship

9    Edison has not provided services currently to the student. The

10   student is there right now.

11       HEARING OFFICER:  Fine. I understand that.  But what about

12   - are you trying to say that when the child enrolled - when the

13   parent enrolled the child at Edison that was a cancellation of

14   the DCPS Settlement Agreement?

15       MR. LEVY: I'm not saying that it is a cancellation

16   necessarily of the Settlement Agreement, but I do believe that

17   there is some potential liability to joined on several liability

18   with the Public Charter School because they are the ones  --

19   right now I think we could credibly argue that once a student

20   moves into another LEA, that's on - another charter school that

21   has its own LEA, they assume certain responsibilities regarding

22   the student, in addition to DCPS.

23       HEARING OFFICER:  Yes, assuming --.

442

1    MR. LEVY: Possibly in place of DCPS, depending on the

2    factual circumstances under which they took the student in.

3    HEARING OFFICER:  Assuming everything you're saying is true

4    -.

5    MR. LEVY: Yes sir.

6    HEARING OFFICER:  What impact does that have on the

7    obligation of DCPS to live up to its agreement?

8    MR. LEVY: It may have a very significant impact if in fact

9    they were aware of the Settlement Agreement.

10   HEARING OFFICER:  Let's assume they were aware of the

11   Settlement Agreement.  What would that - what would how that -

12   what would that have to do with DCPS?

13   MR. LEVY: I believe it come meant that they are taking on

14   the obligation by taking the student into their school.  They

15   could be taking on the obligation of have previously been

16   assumed by DCPS under the agreement.

17   HEARING OFFICER: All right.  Let me ask you this?  Do you

18   have proof, do you have evidence that this statement that Mr. -

19   that Edison Friendship did know about it?

20   MR. LEVY: I don't think I have to establish proof. I think

21   if there - they have no proof other than a letter from their

22   attorney saying they were not aware of the Settlement Agreement.

23   As far as I am concerned, that is not evidence.  He filed a

443

1    motion without - not supported by any affidavits or declarations

2    from his client and then the Motion is dismissed before we come

3    to sit down at the table. He doesn't bring a client.

4        HEARING OFFICER: Okay. Let's assume they did know about it.

5    I don't see how - I don see how.  What I think you need to do

6    Mr. Levy is speak to how DCPS has been absolved for non-

7    performance. That's what you got speak to.

8        MR. LEVY: What I am saying to you sir is the issue of the

9    settlement agreement is not necessarily directed connection

10   Friendship Edison unless factually there was an assumption of

11   the obligation to have a meeting.

12       HEARING OFFICER: And what would that be?

13       MR. LEVY: What's that?

14       HEARING OFFICER: What circumstances - you're saying that

15   when the parent enrolled the child there, that cancelled the

16   Settlement Agreement.

17       MR. LEVY:  I'm not saying necessarily that. I'm saying that

18   possibly they could - Friendship could have assumed the

19   obligation to have that meeting once the student comes through

20   their doors.  And what I am saying in addition to that is that

21   even - let me put it this way.  If you rule on this Motion, on

22   this Hearing Request today, that extinguishes any possibility of

23   the matter being pursued against Friendship Edison for its

444

1    violations with regard to this issue. Because they've already

2    been dismissed.

3         HEARING OF FICER:  What violations?

4         MR. LEVY:  Because they are not, the allegation from Ms.

5    Barrie is that there are services - excuse me, supposed to be

6    currently receiving at Friendship Edison which he is not. You

7    need to look at the issues (inaudible). That is not the right

8    page.

9         HEARING OFFICER:  They are numbered which ones?

10        MR. LEVY: Everyone one of them actually refers to DCPS and

11   Friendship Edison.  If you go down the list --.

12        HEARING OFFICER:  HmmmHmmm.

13        MR. LEVY: Every single one of them lists both.

14        HEARING.OFFICER:  All right fine. Mr. Smith dismissed

15   Friendship Edison.

16        MR. LEVY:  On the basis of a letter from Mr. Dalton saying

17   they weren't aware of the Settlement Agreement.  He does not

18   address in any way the issue of whether or not services were

19   being delivered to the student in accordance with the

20   allegations made in the Hearing Request.

21        HEARING OFFICER:  Tell you what.  What I'm going to do is

22   put you on proof - on your proof for compliance with the

23   Settlement Agreement.  Whether or not - I don't see how - I

445

1    don't see how what Friendship Edison did as far as the IEP is

2    concerned has anything to do with DCPS meeting its obligations.

3    By the way when were - when was the - when were the evaluations

4    given to DCPS?

5        MS. BARRIE: September.

6        HEARING OFFICER:  Was that before the beginning of school?

7    September 5th.

8        MS. BARRIE: September 5th.  The day is --.

9        HEARING OFFICER: Listen Mr. Levy, I've listened to this. I

10   you can see DCPS did something.  But you can't DCPS did

11   anything.  Right?

12       MR. LEVY: I can't say that they did.  But - to my - are you

13   saying - let me understand you correctly sir.  If I understand

14   your position correctly --.

15       HEARING OFFICER: I understand my understanding.  You have a

16   position.  She has a position.  I'm just trying to understand

17   this. Go ahead.

18       MR. LEVY: Well my understanding of what you're saying to me

19   is that you're going to put DCPS upon its proof of whether or

20   not complied to the Settlement Agreement --.

21       HEARING OFFICER: HmmmHmmm.

22       MR. LEVY:  We haven't even talked about the fact that there

23   was a intervening motion by Mr. Shriver in another Hearing

446

1    Request where you dismissed the Hearing Request that was filed

2    by --.

3        HEARING OFFICER: Oh!

4        MS. LEVY: Ms. Barrie for - without prejudice, which allowed

5    her to refile.

6        HEARING OFFICER: Sure.  Because she let the school

7    (inaudible).

8        MR. LEVY:  Right.  Which is a violation under - It's not in

9    conformity with 34 CFR 300.507, which--.

10       HEARING OFFICER:  By the way, that gave you another

11   opportunity to live up to the Settlement Agreement, right?

12       MR. LEVY:  Not me, but DCPS.

13       HEARING OFFICER:  I'm sorry your client!

14       MR. LEVY:  Of course.  The intervening --.

15       HEARING OFFICER:  But let me --.

16       MR. LEVY:  After that was a fact --.

17       HEARING OFFICER:  But Mr. Levy.  I gave you a second

18   chance.  Did you client do anything?

19       MR. LEVY:  I cannot say that he has sir.

20       HEARING OFFICER:  All right. Okay.  I'm going to direct the

21   finding for the parent.  The violation of your --.  Your

22   client's violation of your client's agreement to hold an MDT/IEP

23   meeting, and even after they sent Ms. Barrie - the parent sent a

16

447

1    letter to the your client's Office of Compliance, which was in

2    the Settlement Agreement in order for them to perfect their

3    right to file for Due Process.  And you can't tell me your

4    client did anything right?

5        MR. LEVY:  That's correct sir.

6        HEARING OFFICER:  All right. Fine!  What do you want Ms.

7    Barrie?

8        MR. LEVY:  To --  sir (inaudible) what does that do with

9    regard to the allegations made against Friendship Edison and the

10    Hearing Request relating to non-delivery of services by DCPS --.

11        HEARING OFFICER:  Let me ask you this.  Let me ask you

12    this.  Whose – I mean are you representing Friendship Edison

13    now?

14        MR. LEVY: I'm not.  I'm representing my client with DCPS.

15        HEARING OFFICER:  Yeah but, that's the parent made the

16    allegation against – they made – the parent made the allegation

17    against Friendship Edison – Edison Friendship?

18        MR. LEVY:  Friendship Edison.

19        HEARING OFFICER:  Friendship Edison.  I mean, let them

20    litigate that.

21        MR. LEVY:  You know sir, they are not going to ask for

22    relief based not only on DCPS's violation to failure to have a

23    meeting, but also on Friendship Edison's failure to deliver

448

1    services, the student

2        HEARING OFFICER:  Did DCPS is not.

3        MR. LEVY: On which they claim entitlement

4        HEARING OFFICER: I'll tell you what --.

5        MR. LEVY: To private --.

6        HEARING OFFICER: I'll tell you what I'll do.

7        MR. LEVY: So.

8        HEARING OFFICER:  I'll tell you what I'll do.  I'll put in

9    your order that no compensatory education shall be awarded to

10   the student from DCPS for any allegations on non-enforcement of

11   the IEP after the child is enrolled in Friendship Edison. How's

12   that?

13       MS. BARRIE: So that's means we can --.

14       HEARING OFFICER:  That's means you just deal with them on

15   that.  That's an issue between the parent and Friendship Edison.

16   I'll put in the order that DCPS is not liable for any

17   compensatory education or any claims of non-delivery of services

18   after the child matriculated to Friendship Edison - Edison

19   Friendship?

20       MS. BARRIE: Friendship Edison.

21       MR. LEVY: Yes sir.

22       HEARING OFFICER:  All right.  Now let me see what you got

23   in here Ms. Barrie.  Acceptance letter.  We are coming along.

449

1    We are taking - we are paying attention to the T's and the I's.

2    Where is it?   You going to stipulate the educational benefit at

3    the --.

4         MS. BARRIE: High Road.

5         HEARING OFFICER:   The High Road School in Washington - the

6    High Road Academy Mr. Levy?   All right. You got this?

7         MS. BARRIE: Right here.

8         MR. LEVY: Just give me a second sir; I got a copy of this

9    thing from Ms. Barrie yesterday I believe it was.

10        MS. BARRIE: What's the first?

11        HEARING OFFICER: What?   I have nothing to say.

12        MR. LEVY: What IEP did she - they base their determination

13   on?

14        MS. BARRIE: That one and the one that Ms. Dalton disclosed?

15   Look in Dalton's disclosure, there should be one in there, from

16   September.

17        MR. LEVY: I'll stipulate.

18        HEARING OFFICER: You'll stipulate?

19        MR. LEVY: Yes.

20        HEARING OFFICER: All right. I'm a get the HOD out by

21   Monday, by Tuesday for sure.   Is that acceptable Ms. Barrie?

22        MS. BARRIE: Yes sir.

23        HEARING OFFICER:   Anything further Ms. Barrie?

450

1       MS. BARRIE: Well, I guess in your regular Motion to –

2       HEARING OFFICER:  Am I supposed to understand what you're

3   saying?

4       MS. BARRIE: (LAUGHTER) you need to review – (laughter) you

5   need to meet – I mean for me to review those evaluations.

6       HEARING OFFICER: I'm going to put the child there.  Do you

7   want me to order DCPS to have a meeting again, or just wait --?

8   I don't want you back here again on this.  You got what your

9   client wanted.

10      MS. BARRIE: Okay, then under the --.

11      HEARING OFFICER: I'll just leave that out.

12      MS. BARRIE: The next scheduled meeting ---.

13      HEARING OFFICER: Yeah. Yeah.  No I'm just going to – that –

14  -.

15      MR. LEVY:  I can (inaudible) within 30 days of the

16  student's enrollment. I'm going to tell you why sir, because his

17  IEP right now is only for about 14.5 hours of specialized

18  instruction.

19      HEARING OFFICER: Okay.

20      MR. LEVY:  I told you I would include related services.

21      HEARING OFFICCER: On your recommendation I'll order an MDT

22  and IEP placement meeting Mr. Levy. I'm going to put the child

23  there on an Interim basis.

451

1    MS. BARRIE: Okay.

2    HEARING OFFICER:  Okay.  Anything further Ms. Barrie.

3    MS. BARRIE: And at that meeting can I discuss comp ed

4  please?

5    HEARING OFFICER: Yes and I'll exempt the --.

6    MS. BARRIE: But before --.

7    HEARING OFFICER: Yes.  For the period since the child has

8  matriculated to Friendship Edison.  Anything further Ms. Barrie?

9    MS. BARRIE: No sir.

10    HEARING OFFICER: Anything further Mr. Levy?

11    MR. LEVY: No Sir.

12    HEARING OFFICER: Thank you for your attention counsel.

13  Good morning the record is closed.

14    MS. BARRIE: Thank you.

452