UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| D.W., *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>    Defendants. | Civil Action No. 07-1241 (RCL) |

**MEMORANDUM OPINION**

Now before the Court comes plaintiffs D.W. and Marian Murphy's Motion for Summary Judgment [14] and defendants District of Columbia and Michelle Rhee's Cross Motion for Summary Judgment [17]. Upon consideration of the motions, plaintiffs' reply [26], defendants' reply [29], the entire record herein, and the applicable law, the Court will GRANT plaintiffs' motion and DENY defendants' motion.

**I.   BACKGROUND**

Plaintiffs D.W. and Marian Murphy filed this suit under the Individuals with Disabilities Education Act against the District of Columbia and Michelle Rhee, the Chancellor of District of Columbia Public Schools, seeking relief for defendants' alleged failure to provide D.W. with a free appropriate public education. Plaintiffs in their complaint seek the following relief: (1) reversal of the administrative ruling of April 11, 2007; (2) reinstatement of the administrative ruling of September 1, 2005; and (3) award of attorneys' fees and costs. Defendants responded

1

by filing a cross motion for summary judgment. Both motions are currently before the Court.

### A.    **Factual Background**

In the latest episode evincing its utter inability to heed the directives of the Individuals with Disabilities Education Act ("IDEA"), District of Columbia Public Schools ("DCPS") has forced plaintiffs to commence five separate actions and engage in two rounds of settlement negotiations in a vain attempt to force it to comply with Congressional mandates. Plaintiffs have still not received complete relief and seek redress before this Court.

D.W. is an eighteen-year-old male who has been classified as learning disabled by DCPS, pursuant to the IDEA. (Compl. ¶ 2.) Experiencing difficulties coordinating an individualized education program ("IEP") for D.W., plaintiffs and DCPS signed a settlement agreement on February 28, 2002, which called for DCPS to perform a variety of evaluations and then convene a multi-disciplinary team ("MDT") meeting to develop an appropriate plan for D.W. (R. at 44.) In an administrative hearing on August 23, 2002, a hearing officer issued a hearing officer's determination ("HOD") recognizing the settlement agreement as binding between the parties (*Id.*)

D.W. subsequently attended Backus Middle School, an institution for which DCPS is responsible, from the fall of 2002 until the spring of 2004. (R. at 3-4.) Since DCPS had still not taken the necessary steps to comply with the requirements enunciated in the IDEA, plaintiffs once more engaged in discussions with the District, culminating on June 24, 2004 in a second settlement agreement. (R. at 16.) DCPS agreed to conduct evaluations of D.W. and then convene an MDT meeting to update D.W.'s IEP. (*Id.*) DCPS further pledged to discuss with plaintiffs the possibility of developing a framework for compensatory education, if such a step

was warranted under the circumstances. (*Id.*)

D.W. left Backus Middle School and began attending Friendship Edison Public Charter School ("FEPCS") (R. at 3-4.). FEPCS operates as its own Local Education Agency under the IDEA, and hence DCPS is not responsible for any shortcomings. (*Id.*) While D.W. was attending FEPCS, plaintiffs filed an administrative due process complaint, alleging DCPS had violated the second settlement agreement by failing to convene an MDT meeting to develop a new IEP. (R. at 77.) The resulting HOD ordered DCPS to place D.W. at High Road Academy, convene an MDT to coordinate an updated IEP, and discuss with plaintiffs the possibility of compensatory education. (R. at 79.)

DCPS failed to comply with the latest HOD, and plaintiffs were forced to file yet another due process complaint. (R. at 126-27.) The hearing officer agreed with plaintiffs' contentions, and he issued an HOD on September 1, 2005 requiring DCPS to perform two evaluations of D.W. and then convene an MDT team to develop a revised IEP. (*Id.*) Furthermore, the HOD ordered DCPS to provide two years of compensatory education, including one-on-one tutoring, to atone for its failure to abide by the IDEA. (*Id.*) In an unrelated hearing, plaintiffs filed a complaint against FEPCS and received relief on September 28, 2005 in the form of an award of compensatory education resulting from that school's failure to provide appropriate services to D.W. during his enrollment there. (R. at 163.)

Though DCPS complied with part of the September HOD, it failed altogether to provide D.W. with compensatory education. (R. at 3-4.) Plaintiffs again were left with no choice but to file a due process complaint to seek another order compelling DCPS to develop a program of compensatory education. (*Id.*) Noting that he was "not a potted plant" and "not just [there] to

rubber stamp what somebody else does," (R. Supp. at 19-20), the hearing officer on April 11, 2007 overruled the September 1, 2005 HOD. (R. at 4.) He reasoned that FEPCS, not DCPS, owed D.W. compensatory education, and that the HOD stating the converse was "on its face wrong." (R. Supp. at 20, 26.) The hearing officer further noted that an award of compensatory education would be superfluous, since plaintiffs could not show D.W. had been deprived of a quality education since enrolling at High Road Academy. (R. Supp. at 24.) The hearing officer subsequently issued an HOD illustrating the reasons supporting his decision to overturn the September 1, 2005 HOD. (R. at 4.) Plaintiffs responded by filing this action, pursuant to 20 U.S.C. § 1415(i)(2)(A), to overturn the hearing officer's 2007 decision.

B.  **Statutory Background**

In enacting the IDEA in 1970, Congress recognized that "improving educational results for children with disabilities is an essential element of our national policy of ensuring equality of opportunity, full participation, independent living, and economic self-sufficiency for individuals with disabilities." Individuals with Disabilities Education Act, 20 U.S.C. § 1400(c)(1) (2005). Before passage of the legislation, Congress contended that disabled children's needs were not being met because they "did not receive appropriate educational services," and "undiagnosed disabilities prevented the children from having a successful educational experience." *Id.* § 1400(c)(2).

Almost thirty-five years after the initial enactment of the IDEA, Congress reaffirmed its commitment to providing quality educational services to children with disabilities through its 2005 amendments. *See id.* § 1400(c)(4). The impetus for revising the statute stemmed from the observation that "the implementation of this chapter has been impeded by low expectations and

4

an insufficient focus on applying replicable research on proven methods of teaching and learning for children with disabilities." *Id.* In response to this perceived hindrance to maximal progress under the statute, Congress stressed that it remained committed to "ensur[ing] that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." *Id.* § 1400(d)(1)(A).

The Supreme Court has recognized that "the primary vehicle for implementing these congressional goals is the [IEP], which the [IDEA] mandates for each child." *Honig v. Doe*, 484 U.S. 305, 311-12 (1988). An IEP is a "written statement for each child with a disability that is developed, reviewed, and revised . . . ." 20 U.S.C. § 1401(15). In view of the centrality of the role of the IEP in providing appropriate education to every child with a disability, Congress explicitly provided for frequent and thorough monitoring and revising of the program. *See id.* § 1414. The breadth of the IEP extends beyond purely academic concerns, including under its compass "the use of positive behavioral interventions and supports." *Id.* § 1414(d)(3)(B)(I).

The IDEA establishes a comprehensive framework of procedural safeguards in an effort to further the realization of its far-reaching goals. *See id.* § 1415. Parties may first raise grievances at an impartial administrative hearing conducted by a hearing officer. *See id.* § 1415(f). If unsatisfied with the results of the administrative hearing, parties may then appeal the hearing officer's decision in a civil action. *Id.* § 1415(g). To compensate parties for costs associated with seeking relief, the IDEA expressly gives courts the right to award attorneys' fees to a prevailing party provided the party is the parent of a child with a disability. *Id.* § 1415(i)(2)(B)(i)(I).

## II.　ANALYSIS

### A.　Standards for Summary Judgment

Summary judgment is appropriate where the record before the court "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  Affording substantial deference to the nonmoving party, the summary judgment standard mandates that "all inferences must be viewed in a light most favorable to the non-moving party." *McCready v. Nicholson*, 465 F.3d 1, 7 (D.C. Cir. 2006).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and summary judgment is appropriate against only those parties "who fail[] to make a showing sufficient to establish the existence of an element essential to [their] case, and on which [they] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Supreme Court has stressed that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Co.*, 475 U.S. 574 (1986).

In judicial review of administrative decisions under the IDEA, summary judgment is often particularly appropriate. *See Hawkins ex rel. D.C. v. District of Columbia*, 539 F. Supp. 2d 108, 112 (D.D.C. 2008).  Where, as here, "no additional evidence is introduced in a civil suit seeking review of an HOD, a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record." *Id.* (citations and internal quotation marks omitted).

### B.     Standards for Review of Administrative Decisions Under the IDEA

The IDEA states simply that in reviewing administrative decisions under the statute, courts should base their decisions on the "preponderance of the evidence." 20 U.S.C. § 1415(i)(2)(c). Courts have stressed that this standard "does not authorize unfettered de novo review." *Hawkins*, 539 F. Supp. 2d at 112. Instead, "consideration of the record impliedly requires courts to give 'due weight' to the administrative proceedings ," and courts "upsetting a hearing officer's decision must at least explain [their] basis for doing so." *Id.* (citations and internal quotation marks omitted).

Nevertheless, courts reviewing administrative dispositions under the IDEA enjoy a significant degree of discretion in issuing a determination. *See Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005). The court in *Reid* emphasized that the "IDEA plainly suggests less deference than is conventional in administrative proceedings." *Id.* Moreover, "a hearing decision without reasoned and specific findings deserves little deference." *Id.* (citations and internal quotation marks omitted).

### C.     Legal Analysis

Plaintiffs argue that D.W. was denied a free appropriate public education ("FAPE") when DCPS refused to provide him with compensatory education as ordered in the September 1, 2005 HOD. (*See* Pl. Mot. Summ. J. 8-9.) Accordingly, plaintiffs contend that the HOD of April 11, 2007 was issued in error, as the hearing officer misunderstood the applicable facts and law. (*See id.*) Defendants counter that D.W. was not denied FAPE, because he has received a quality education at High Road Academy since his placement there in 2005. (*See* Def. Cross Mot. Summ. J. 16.) Defendants further argue that compensatory education is unnecessary since D.W.

has enjoyed a beneficial educational experience for the last two years at High Road Academy. (*See* Def. Reply 2.) Therefore, defendants reason, the HOD of April 11, 2007 should be upheld as a final resolution of these claims. (*See* Def. Cross Mot. Summ. J.) This Court agrees with plaintiffs' arguments, and accordingly grants their motion for summary judgment. Because the underlying merits of the case are dispositive of all claims, this Court finds it unnecessary to determine the precise parameters of the 2007 hearing officer's authority in analyzing prior administrative decisions.

### 1. Interpretation of September, 2005 Determinations

To begin with, the hearing officer who issued the April 11, 2007 HOD (hereinafter "hearing officer") misinterpreted the import of the determinations issued in September, 2005. The hearing officer reasoned that the September 1, 2005 HOD was entered in error because it should have ordered FEPCS, not DCPS, to provide compensatory education to D.W. (*See* R. at 4.) The hearing officer further deduced that D.W. was enrolled at FEPCS during the "relevant time period" covered by both September determinations, and therefore the September 1 determination is "on its face wrong" because FEPCS owes the requisite compensatory education. (R. Supp. at 20, 26.)

The hearing officer was misguided in this analysis of the September, 2005 hearing officer determinations. The first such determination, issued on September 1, 2005, ordered DCPS to provide compensatory education stemming from its failures during D.W.'s enrollment at Backus Middle School, an institution for which DCPS is responsible. (R. at 77-79.) In the September 28, 2005 HOD, the same hearing officer dealt exclusively with the time period covering D.W.'s attendance of FEPCS, and he ordered that school to provide D.W. with compensatory education

resulting from its failures to provide D.W. with FAPE. (*Id.*) Hence, the HOD issued on September 1, 2005, with its order that DCPS provide D.W. with two years of compensatory education, dealt exclusively with D.W.'s time at Backus Middle School and left untouched his experiences at FEPCS. The administrative record thus compels the conclusion that the 2007 hearing officer confused the decisions from the September, 2005 hearings, and he thereby grounded his analysis on erroneous interpretations of previous hearing officer determinations.

### 2.    Compensatory Education Under the IDEA

Finding the April 11, 2007 HOD was entered in error, this Court now analyzes the merits underlying the substantive claims made by plaintiffs. Defendants principally argue that D.W. is not entitled to compensatory education, since he has received quality educational services since 2005. (Def. Reply 3.) Hence, defendants continue, D.W. has not been denied FAPE and there is no actionable claim. (*Id.*) This Court disagrees.

Courts have reasoned that purely prospective relief under the IDEA is not always sufficient to address the needs of a disabled child. *See, e.g.*, *Reid*, 401 F.3d at 522. The "theory of compensatory education" rests on the belief that "courts and hearing officers may award educational services . . . to be provided prospectively to compensate for a past deficient program." *Id.* (internal quotation marks omitted).

Contrary to defendants' assertions, a presently appropriate educational program does not abate the need for compensatory education. *See Flores ex rel. J.F. v. District of Columbia*, 437 F. Supp. 2d 22, 30 (D.D.C. 2006) (holding that even though DCPS had placed plaintiff in appropriate school and framed revised IEP, plaintiff was still entitled to original award of compensatory education). Indeed, programs of compensatory education are expected to yield

9

tangible results, distinct from those conferred on the child by other programs: "whereas ordinary IEPs need only provide 'some benefit,' compensatory awards must do more - they must *compensate*." *Reid*, 401 F.3d at 525 (holding district court should not have assumed that student's placement in appropriate educational program was sufficient to erase need for compensatory award). In sum, the appropriate education received by D.W. for the past two years does not mitigate DCPS's duty to provide him with compensatory education.

Defendants further contend that plaintiffs' grievances are purely procedural rather than substantive, and, as such, they must show that the alleged harms substantially deprived D.W. of FAPE.[1] (*See* Def. Mot. Summ. J. 15.) The preceding discussion compels the conclusion that failure to respond effectively to an order of compensatory education is not subject to analysis under the substantive-procedural dichotomy. Nevertheless, even viewing through this prism the failure to provide D.W. with compensatory education, such deprivation constitutes a substantive, not procedural, harm.

Courts have held that "an IDEA claim is viable only if . . . procedural violations affected the student's *substantive* rights." *Lesesne ex rel. B.F. v. District of Columbia*, 447 F.3d 828, 834 (D.C. Cir. 2006). However, courts have generally confined use of this rule to dismiss only those claims arising from fairly trivial violations. *See, e.g.*, *Kingsmore ex rel. Lutz v. District of Columbia*, 466 F.3d 118, 119 (D.C. Cir. 2006) (holding plaintiffs' receipt of incomplete transcript of hearing was procedural violation); *Sykes v. District of Columbia*, 518 F. Supp. 2d

---

[1] Defendants cite for this proposition 20 U.S.C. § 1415(f), which states that if an administrative complaint involves only procedural issues, a hearing officer may find the child is entitled to full relief as a violation of the IDEA only if procedural inadequacies "impeded the child's right to free appropriate public education."

261 (D.D.C. 2007) (holding procedural violations included failing to include all necessary elements in response to notice of administrative complaint and denying access to all relevant school records); *Roark ex rel. Roark v. District of Columbia*, 460 F. Supp. 2d 32 (D.D.C. 2006) (classifying as procedural violation DCPS's failure to place its own representative on otherwise effective IEP team).  Indeed, the *Lesesne* court explicitly contrasted procedural violations with those substantive violations articulated by the court in *Reid*.  *Lesesne*, 447 F.3d at 834.  The violations catalogued by the *Reid* court focused on DCPS's unwillingness both to revise the student's IEP and to recognize that he needed special education outside of the general curriculum. *See Reid*, 401 F.3d at 519-20.  Similar to the omissions by defendants described in *Reid*, DCPS's current failure to provide D.W. with compensatory education threatens his prospects of success under the IDEA and therefore constitutes a substantive violation.  Accordingly, defendants' claims fail even under this method of analysis.

### III.   CONCLUSION

For the foregoing reasons, the Court concludes that plaintiffs' Motion for Summary Judgment will be GRANTED, and defendants' Cross Motion for Summary Judgment will be DENIED.

A separate order shall issue this date.

Signed by Chief Judge Royce C. Lamberth, on June 23, 2008.